**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CENTER FOR PUBLIC INTEGRITY**, *Plaintiff,* v. **U.S. DEPARTMENT OF DEFENSE**, and **OFFICE OF MANAGEMENT AND BUDGET**, *Defendants*. | Case No. 1:19-cv-03265-CKK |

**DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ............................................................................................................... 2

I.      Statutory and Regulatory Background ............................................................... 2

II.     Defendants' FOIA Workloads ............................................................................ 3

      A.     DoD ................................................................................................... 3

      B.     OMB .................................................................................................. 4

III.    Plaintiff's FOIA Requests ................................................................................... 5

      A.     Plaintiff's FOIA Request to DoD and DoD's Response ....................... 5

      B.     Plaintiff's FOIA Request to OMB and OMB's Response ..................... 7

IV.    This Litigation .................................................................................................... 9

ARGUMENT .................................................................................................................... 10

I.      Standard of Review ............................................................................................ 10

II.     Preliminary Injunctive Relief Is Generally Not Appropriate in FOIA Cases ................. 11

III.    Plaintiff Has Failed to Show Entitlement to a Preliminary Injunction ............................ 14

      A.     Plaintiff Has Failed to Establish a Likelihood of Success on the Merits .............. 15

      B.     Plaintiff Has Failed To Establish That It Would Suffer Irreparable Harm ........... 19

      C.     The Balance of Equities and the Public Interest Weigh Against a
           Preliminary Injunction ....................................................................... 22

CONCLUSION .................................................................................................................. 25

# TABLE OF AUTHORITIES

## Cases

*Aguilera v. Federal Bureau of Investigation*, 941 F. Supp. 144 (D.D.C. 1996) .......................... 20

*Al-Fayed v. CIA*, 254 F.3d 300 (D.C. Cir. 2001) ............................................... 2, 14, 21

*Al-Fayed v. CIA*, No. 1:00-cv-2092(CKK), 2000 WL 34342564 (D.D.C. Sept. 20, 2000) ......... 14

*Allied Progress v. Consumer Fin. Prot. Bureau*, No. 1:17-cv-686(CKK), 2017 WL 1750263
(D.D.C. May 4, 2017) ......................................................................... 11, 13

*Aronson v. U.S. Dep't of Hous. & Urban Dev.*, 869 F.2d 646 (1st Cir. 1989) ............................ 14

*Baker v. Consumer Fin. Prot. Bureau*, No. 1:18-cv-2403(CKK), 2018 WL 5723146 (D.D.C.
Nov. 1, 2018) ................................................................................ 22, 24

*Beta Steel Corp. v. NLRB*, No. 2:97-cv-358, 1997 WL 836525 (N.D. Ind. Oct. 22, 1997) ......... 14

*Carlson v. USPS*, No. 02-cv-5471, 2005 WL 756573 (N.D. Cal. Mar. 31, 2005) ...................... 14

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290 (D.C. Cir. 2006) ...................... 11

*CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738 (D.C. Cir. 1995) ................ 11, 19

*Cleaver v. Kelley*, 427 F. Supp. 80 (D.D.C. 1976) ........................................................ 20

*Cobell v. Kempthorne*, 455 F.3d 301 (D.C. Cir. 2006) ................................................... 12

*Cobell v. Norton*, 391 F.3d 251 (D.C. Cir. 2004) ........................................................ 10

*Daily Caller v. U.S. Dep't of State*, 152 F. Supp. 3d 1 (D.D.C. 2015) .............................. 2, 13, 24

*Dorfmann v. Boozer*, 414 F.2d 1168 (D.C. Cir. 1969) .................................................... 12

*Elec. Privacy Info. Ctr. v. U.S. Dep't of Justice*, No. 1:03-cv-2078(JR) (D.D.C. Oct. 20, 2003),
*vacated as moot* 2004 WL 2713119 (D.C. Cir. 2004) .................................................. 13

*Fed. Election Comm'n*, 711 F.3d 180 (D.C. Cir. 2013) ................................................... 3, 15

*Friends of Animals v. U.S. Bureau of Land Mgmt.*, No. 1:17-0136(CRC), 2017 WL 499882
(D.D.C. Feb. 7, 2017) ......................................................................... 10

*Gas Co. v. FERC*, 758 F.2d 669 (D.C. Cir. 1985) ........................................................ 19, 20

*Hubbard v. United States*, 496 F. Supp. 2d 194 (D.D.C. 2007) ......................................... 15

*Info. Privacy Ctr. v. U.S. Dep't of Justice*, 15 F. Supp. 3d 32 (D.D.C. 2014) ............ 12, 16, 21, 23

*Landmark Legal Found. v. EPA*, 910 F. Supp. 2d 270 (D.D.C. 2012) .................................... 13, 21

*Long v. U.S. Dep't of Homeland Sec.*, 436 F. Supp. 2d 38 (D.D.C. 2006) ................................... 13

*Munaf v. Green*, 553 U.S. 674 (2008) ................................................................................... 10, 13

*Nat'l Conf. on Ministry to the Armed Forces v. James*, 278 F. Supp. 2d 37 (D.D.C. 2003) ........ 12

*Nation Magazine v. Dep't of State*, 805 F. Supp. 68 (D.D.C. 1992) ..................................... 21, 23

*Nken v. Holder*, 556 U.S. 418 (2009) ...................................................................................... 11

*Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976) .................... 2

*Pinnacle Armor, Inc. v. United States*, No. 07-1655,
    2008 WL 108969 (E.D. Cal. Jan. 7, 2008) ................................................................ 14

*Protect Democracy Project, Inc. v. U.S. Dep't of Def.*,
    263 F. Supp. 3d 293 (D.D.C. 2017) ........................................................... 17, 23, 24

*Sampson v. Murray*, 415 U.S. 61 (1974) ................................................................................. 19

*Sherley v. Sebelius*, 644 F.3d 388 (D.C. Cir. 2011) ................................................................. 11

*Univ. of Texas v. Camenisch*, 451 U.S. 390 (1981) ................................................................. 12

*Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921 (D.C. Cir. 1958) ......... 11, 19

*Wadelton v. Dep't of State*, 941 F. Supp. 2d 120 (D.D.C. 2013) ........................................... 13, 22

*Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841 (D.C. Cir. 1977) ...... 11

*Wash. Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61 (D.D.C. 2006) ............................... 19

*Wiedenhoeft v. United States*, 189 F. Supp. 2d 295 ................................................................. 14

*Winter v. Nat. Res. Def. Council*, 555 U.S. 7 (2008) ................................................................ 10

## Statutes and Regulations

5 U.S.C. § 552(a)(3)(A) ........................................................................... 11, 15

5 U.S.C. § 552(a)(4)(C) ............................................................................. 3, 11

5 U.S.C. § 552(a)(6)(E) .......................................................................... 2, 16, 17

5 U.S.C. § 552(b) ................................................................................... 18, 24

Pub. L. No. 104-231 ...................................................................................... 2

5 C.F.R. § 1303.40……………………………………………………………...3

32 C.F.R. § 286.8………………………………………………………………….3, 6

## Other Authority

H.R. Rep. No. 104-795, 1996 U.S.C.C.A.N. 3448 (Sept. 17, 1996)..………………………...2, 24

**INTRODUCTION**

Plaintiff Center for Public Integrity moved for a preliminary injunction on October 31, 2019, the day after filing its complaint in this case under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. At issue in Plaintiff's complaint is its FOIA requests, directed to Defendants the U.S. Department of Defense ("DoD") and the Office of Management and Budget ("OMB"), seeking communications both within DoD and between DoD and OMB about the Ukraine Security Assistance Initiative ("USAI"). Plaintiff's motion for preliminary injunction seeks an order requiring DoD and OMB to process Plaintiff's FOIA requests on an expedited basis and produce all non-exempt, responsive portions of records responsive to Plaintiff's FOIA requests by December 12, 2019. *See* Pl. Mot. for a Preliminary Injunction, ECF No. 4 ("Pl. Mot."); Plaintiff's Memorandum in Support, ECF No. 4, at 3 ("Pl. Mem."); Plaintiff's Proposed Order, ECF No. 4-1 ("Pl. Proposed Order").

Plaintiff's motion should be denied. Fundamentally, Plaintiff seeks emergency relief that typically is considered inappropriate in FOIA cases. Moreover, Plaintiff has failed to sustain its burden of demonstrating that the requested injunction should be issued. First, Plaintiff has failed to show that it is likely to succeed on the merits of its claims. Plaintiff's argument that it should be deemed to have exhausted its administrative remedies due to the lack of agency response within the statutory timeframes proves nothing with respect to a reasonable timeframe for production of responsive, non-exempt records. Nor has Plaintiff demonstrated that it is entitled to expedited processing based on the showing it made when it submitted its requests. Plaintiff has also failed to show that it is likely to suffer actual, irreparable harm if its FOIA requests are not completely processed by December 12, 2019. Finally, the balance of harms and public interest favor allowing the agencies to process Plaintiff's FOIA requests on the more-than-reasonable schedule they have proposed, with an initial production of responsive, non-exempt records made

by December 20, 2019, and subsequent productions to follow. Accordingly, Plaintiff's motion for a preliminary injunction should be denied.

## BACKGROUND

### I.   Statutory and Regulatory Background

Agencies ordinarily process FOIA requests on a first-in, first-out basis. *Daily Caller v. U.S. Dep't of State*, 152 F. Supp. 3d 1, 8 (D.D.C. 2015) (citing *Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976)). In 1996, Congress amended the FOIA to create a limited exception to this general rule whereby agencies could prioritize certain requests by granting them "expedited processing." *See* Electronic Freedom of Information Amendments of 1996 ("EFOIA"), Pub. L. No. 104-231, § 8, 110 Stat. 3048 (1996), (codified at 5 U.S.C. § 552(a)(6)(E)). The statute requires that agency regulations provide for expedited processing of requests for records: (i) "in cases in which the person requesting the records demonstrates a compelling need," 5 U.S.C. § 552(a)(6)(E)(i)(I); and (ii) "in other cases determined by the agency," *id.* § 552(a)(6)(E)(i)(II). FOIA defines "compelling need" to mean, as relevant here, "with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." *Id.* § 552(a)(6)(E)(v)(II). The "other cases determined by the agency" provision (subsection (E)(i)(II)) gives agencies "'latitude to expand the criteria for expedited access' beyond cases of 'compelling need.'" *Al-Fayed v. CIA*, 254 F.3d 300, 307 n.7 (D.C. Cir. 2001) (quoting EFOIA, H.R. Rep. No. 104-795 (1996), at 26, reprinted in 1996 U.S.C.C.A.N. 3448, 3469, 1996 WL 532690 (Sept. 17, 1996)).

Defendants have adopted regulations implementing the FOIA's expedited processing provision. DoD has promulgated regulations providing that "expedited processing is granted to a requester upon a specific request for such and when the requester demonstrates a compelling

need for the information," as the term "compelling need" is defined under the statute. 32 C.F.R.

§ 286.8(e)(1)(i). DoD regulations further require that "[a] requester who seeks expedited

processing must submit a statement, certified to be true and correct, explaining in detail the basis

for making the request for expedited processing." *Id. at* § 286.8(e)(3). Similarly, OMB

regulations provide that "[r]equests and appeals will be given expedited treatment in cases where

OMB determines: . . . (ii) There is an urgency to inform the public about an actual or alleged

Federal Government activity." 5 C.F.R. § 1303.40(e)(1). OMB regulations likewise require that

"[a] requester who seeks expedited processing must submit a statement, certified to be true and

correct to the best of the requester's knowledge and belief, explaining in detail the basis for

requesting expedited processing. OMB may waive this certification requirement at its

discretion." *Id.* at § 1303.40(e)(3).[1]

## II.     Defendants' FOIA Workloads

### A.      DoD

As relevant to this case, when a FOIA request submitted to the Office of the Secretary of

Defense and Joint Staff ("OSD/JS") FOIA Request Service Center enters litigation, processing

responsibility for that request transfers from the Executive Services Directorate, Freedom of

Information Division to the DoD Office of Information Counsel ("OIC"). Herrington Declaration

("Herrington Decl.") ¶ 4. OIC is a subcomponent of DoD's Office of General Counsel ("OGC").

---

[1] In addition to expedited processing, Congress also accelerated litigation involving all FOIA claims. *See* 5 U.S.C. § 552(a)(4)(C) (providing that government defendants have 30 days in which to answer a FOIA complaint as opposed to the ordinary 60 days provided by Rule 12 of the Federal Rules of Civil Procedure). FOIA litigation is further accelerated in this District because FOIA cases are exempt from Rule 16 requirements. *See* Local Civ. Rule 16.5(c)(1). Despite these provisions allowing for expedited processing of litigation of FOIA claims, "[a] district court may of course consider FOIA cases in the ordinary course" as "[t]here is no statutory mandate for district courts to prioritize FOIA cases ahead of other civil cases on their dockets." *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 189 n.7 (D.C. Cir. 2013).

*Id.* ¶ 3. OIC oversees records review, analysis, and production for DoD in a variety of contexts including FOIA, discovery in civil litigation, and congressional inquiries. *Id.* ¶ 5.

OIC's staff currently consists of eleven full-time attorneys, fifteen analysts, one paralegal, and three administrative assistants. *Id.* OIC currently is litigating approximately 40 other FOIA cases. *Id.* ¶ 6. Many of those cases concern matters of great interest to the public. *Id.* In addition, OIC is responsible for responding to FOIA requests that are not in litigation but for which DoD OGC may have responsive material. *Id.* There are currently approximately 200 such requests. *Id.* Finally, OIC is also responsible for managing records processing in response to congressional inquiries, including congressional inquiries about DoD's Ukraine Security Assistance Initiative. *Id.*

### B.    OMB

In recent years, OMB has experienced an unprecedented increase in FOIA requests and FOIA lawsuits. Walsh Declaration ("Walsh Decl.") ¶ 11. OMB currently has a disproportionately large FOIA docket for an agency its size. *Id.* ¶ 12. In Fiscal Year 2019, the number of incoming FOIA requests approached the total number of employees at the agency. *Id.* While OMB has increased its staffing and resources with contractors to help keep pace with the increased workload, the number of incoming FOIA requests and FOIA cases in litigation has risen at an even greater proportion. *Id.* OMB's FOIA cases in litigation make demands on agency resources that greatly impact OMB's ability to timely process FOIA requests and reduce its backlog. *Id.* ¶ 14. More OMB staff are being diverted from processing requests in order to meet the demands placed on the agency by FOIA litigants. *Id.*

Currently, OMB has a backlog of over 600 FOIA requests, and the agency is involved in nearly 40 FOIA lawsuits. *Id.* ¶ 13. By comparison, OMB's backlog was less than 200 FOIA requests in Fiscal Year 2017, and the agency was involved in a total of five FOIA lawsuits

during all of Fiscal Years 2015 and 2016. *Id.* OMB presently has 10 FOIA cases in litigation

with either a court-imposed or court-approved rolling production schedule. *Id.* ¶ 15. Collectively,

these 10 cases require OMB to process over 3,400 documents per month. *Id.*

## III.   Plaintiff's FOIA Requests

This case concerns two separate but substantially similar and overlapping FOIA requests

submitted by Plaintiff to DoD and OMB. Both requests were submitted in late September 2019,

and both seek communications between DoD and OMB about the USAI. Compl. Exh. A & B.

### A.   Plaintiff's FOIA Request to DoD and DoD's Response

On September 25, 2019, Plaintiff submitted a FOIA request to DoD seeking records of

communications concerning the USAI. Compl. ¶ 7 & Exh. A at 1. Specifically, the request seeks:

> All records reflecting any communication between Defense Department acting comptroller Elaine McCusker or other officials within the comptroller's office and employees or officials of the Office of Management and Budget concerning the Ukraine Security Assistance Initiative . . . dated between April 2019 and the date you process this request. **These should include any and all communications pertinent to apportionment requests related to the funds for this initiative during this period.**

*Id.* (emphasis in original). Additionally, the request seeks similar "records reflecting any

communication between Defense Department acting comptroller Elaine McCusker or other

officials within the comptroller's office and Secretary of Defense Mark Esper or Deputy

Secretary of Defense David Norquist." *Id.* Plaintiff requested expedited processing of the FOIA

request because the subject matter is "of immediate concern to the American public, given

extensive media interest in the fate of the program and the pressures placed upon the department

regarding this program," and is "the subject of imminent congressional hearings and action."

Compl. ¶ 7 & Exh. A at 2.

On September 27, 2019, the Freedom of Information Division at DoD sent a letter

acknowledging receipt of Plaintiff's FOIA request. Herrington Decl. ¶ 9. As relevant here, the

letter denies Plaintiff's request for expedited processing because Plaintiff failed to meet its

burden of clearly demonstrating that it has "a compelling need for the information" and that "the

information has a particular value that would be lost if not processed on an expedited basis." *Id.*;

*see also* 32 C.F.R. § 286.8. The letter further states that Plaintiff's request was placed in the

"complex processing queue and is being worked on [in] the order in which the request was

received," behind approximately 2,987 open requests. Herrington Decl. ¶ 9 & Attachment B at 1.

Additionally, the letter explains that narrowing the scope of the request could reduce processing

time. *Id.* Attachment B at 2.

In light of heightened interest in the USAI, on October 3, 2019, the DoD General Counsel

issued a memorandum across DoD requesting cooperation in identifying, preserving, and

collecting documents and other records regarding the USAI and in responding to anticipated

requests for such materials. *Id.* ¶ 7 & Attachment A. DoD has received at least 12 other FOIA

requests regarding the USAI. *Id.* ¶ 13. In an effort to ensure efficient, thorough, and consistent

responses to congressional requests, press inquiries, internal reviews, and FOIA requests from

the public regarding the USAI, OIC has compiled a set of records from relevant custodians, from

which focused searches can be conducted. The two offices from which Plaintiff has requested

records were included in this collection of records. *Id.* ¶ 8.

OIC has conducted a search within this repository for records responsive to Plaintiff's

requests and has located approximately 500 potentially responsive records. *Id.* ¶ 10. Based upon

an initial review, OIC believes that most of these records are responsive. *Id.* However, there is a

fairly significant amount of duplication. *Id.* This duplication exists because the set currently

includes continued email chains from both email inboxes and outboxes, as well as earlier

iterations of emails that are subsumed in later email chains. *Id.* OIC is diligently working to

deduplicate the records and exclude non-responsive records. *Id.* Once a set of responsive, non-duplicative records is established, those records will need to be processed for release to Plaintiff; this requires identifying equities, coordinating reviews of those equities by multiple DoD components and other agencies, reviewing records for appropriate redactions under FOIA's exemptions, and preparing records for release. *Id.* ¶ 11. The time required to complete each of these steps can be influenced by a number of factors, some of which are outside the control of DoD. *Id.*

Based in part upon an initial review of the responsive records, DoD has determined that it could make an initial production on December 20, 2019. *Id.* ¶ 14. At that time DoD would be in a better position to know the volume of records remaining to be processed and could confer with Plaintiff regarding a production schedule for any remaining records. *Id.*

**B.     Plaintiff's FOIA Request to OMB and OMB's Response**

On September 30, 2019, Plaintiff submitted a FOIA request to OMB seeking communications between OMB and DoD concerning the Ukraine Security Assistance Initiative. Compl. ¶ 12 & Exh. B at 1. Specifically, the request seeks:

> All records reflecting any communication between officials and employees of the Office of Management and Budget and the office of Defense Department acting comptroller Elaine McCusker or other officials within the comptroller's [office] concerning the Ukraine Security Assistance Initiative . . . dated between April 2019 and the date you process this request. **These should include any and all communications pertinent to apportionment requests related to the funds for this initiative during this period.**

*Id.* (emphasis in original). The following day, October 1, 2019, OMB acknowledged receipt of Plaintiff's FOIA request. Walsh Decl. ¶ 6. Plaintiff requested expedited processing of the FOIA request because the subject matter is "of immediate concern to the American public, given extensive media interest in the fate of the program and the pressures placed upon the department regarding this program," and is "the subject of imminent congressional hearings and action."

Compl. ¶ 7 & Exh. B at 2. OMB has not made a determination with respect to Plaintiff's request for expedited processing. Walsh Decl. ¶ 10.

As of the date of this filing, OMB has received a total of approximately 22 FOIA requests related to Ukraine. *Id.* ¶ 16. The first such FOIA request was submitted by Bloomberg News on September 24, 2019, and it seeks "all records relating to the 'freeze' on Ukraine aid in fiscal year 2019." *Id.* The next three FOIA requests on the same topic were submitted by American Oversight on the same day—September 24, 2019. *Id.* American Oversight's three FOIA requests are also the subject of litigation in this district. *See, e.g., American Oversight v. Office of Management and Budget*, No. 19-cv-3213 (JEB); Walsh Decl. ¶ 16. Besides Bloomberg News and American Oversight, other FOIA requesters seeking information on the same topic from OMB include CNN, The Washington Post, The New York Times, and Thomson Reuters. *Id.*

Of the 22 FOIA requests in OMB's queue related to Ukraine, 11 were received in Fiscal Year 2019, and all but four of those 11 requests seek expedited processing. *Id.* ¶¶ 17 & 19. Plaintiff's request at issue in this case was the last of these 11 Ukraine-related FOIA requests submitted to OMB in Fiscal Year 2019. *Id.* In Fiscal Year 2020, OMB thus far has received 11 additional FOIA requests related to Ukraine. *Id.* ¶ 18.

On October 9, 2019, OMB compiled all of the FOIA requests related to Ukraine, reviewed each request, formulated broad search parameters, and initiated an electronic search of all OMB employees' emails, calendars, and work folders in an effort to capture all potentially responsive records on the topic in a single search. *Id.* ¶ 7.

As of the date of this filing, OMB has not completed the processing of any of the 22 FOIA requests related to Ukraine. *Id.* ¶ 19. This includes the 10 FOIA requests submitted ahead

of Plaintiff's submission as well as the 11 FOIA requests submitted after Plaintiff's submission.
*Id.*

OMB has consulted with DoD concerning the overlapping nature of Plaintiff's FOIA requests to OMB and DoD. *Id.* ¶ 24. OMB is prepared to work closely with DoD to complete the internal consultation process for an initial production to Plaintiff of responsive, non-exempt information by December 20, 2019. *Id.* ¶ 26. Like DoD, OMB expects to know by that date the volume of responsive records remaining to be processed in order to confer with Plaintiff regarding a production schedule for any remaining records. *Id.*

## IV.   This Litigation

On October 30, 2019, Plaintiff filed the instant lawsuit. *See* Compl. The next day, October 31, Plaintiff served the complaint and a motion for a preliminary injunction on the government. In that motion Plaintiff seeks an order compelling the Defendants to "process Plaintiff's FOIA requests on an expedited basis" and to "produce all non-exempt portions of records responsive to [Plaintiff's] requests by December 12, 2019, or by such date as the Court deems appropriate." Pl. Proposed Order; Pl. Mem. at 9. Defendants' response to the complaint is not due until December 2, 2019.

On November 4, 2019, the Court conducted a teleconference with the parties to discuss the processing status of the Plaintiff's FOIA requests and to set a briefing schedule on the Plaintiff's motion for a preliminary injunction. After the teleconference, the Court set a briefing schedule and noted that the schedule "should give the parties adequate time to determine the volume of documents in Plaintiff's requests and to decide if a production schedule can be agreed upon." Nov. 4, 2019 Minute Order.

As discussed above, Defendants have initiated searches for records responsive to Plaintiff's FOIA requests, but work remains to be done to review potentially responsive records

for responsiveness and deduplication, and then for whether any information is exempt under FOIA's statutory exemptions. Herrington Decl. ¶ 10 & 11; Walsh Decl. ¶¶ 7, 24. Because the FOIA requests seek communications between DoD and OMB, DoD's responsive records will be the same as OMB's. *See, e.g.,* Walsh Decl. ¶ 22. In light of that fact, OMB expects to be involved in the consultative review of DoD's records to protect its equities, and consultations to other agencies or entities with equities in the documents may be necessary. Herrington Decl. ¶ 11; Walsh Decl. ¶ 26. Given this fact, OMB proposes to rely upon DoD's search of its records in response to Plaintiff's request for communications between OMB and DoD, rather than divert OMB's limited resources to a redundant search and review of its records for the same communications. Walsh Decl. ¶¶ 23-25. This will allow OMB to instead spend its resources on reviewing the single set of documents gathered by DoD, which will expedite production to Plaintiff of responsive, non-exempt materials. *Id.*

On November 8, 2019, Defendants proposed to Plaintiff that Defendants can make an initial production of responsive, non-exempt records by December 20, and can discuss a schedule for further productions at that time when they have a more definitive idea of the number of responsive, nonduplicative records to process. *See also id.* ¶ 14. Plaintiff rejected that proposal.

## ARGUMENT

### I.    Standard of Review

Preliminary injunctive relief "is 'an extraordinary remedy never awarded as of right.'" *Friends of Animals v. U.S. Bureau of Land Mgmt.*, 232 F. Supp. 3d 53, 60 (D.D.C. 2017) (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008)); *see Munaf v. Green*, 553 U.S. 674, 689 (2008) ("A preliminary injunction is an extraordinary and drastic remedy.") (citation

omitted)). It "should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004).

A party moving for a preliminary injunction must establish: (1) a substantial likelihood of success on the merits; (2) that it would suffer irreparable injury if the injunction is not granted; (3) that an injunction would not substantially injure other interested (nonmoving) parties; and (4) that the public interest would be furthered by the injunction. *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995); *see also, e.g.*, *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 842-43 (D.C. Cir. 1977). The final two "factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Although the D.C. Circuit has not yet definitively decided whether *Winter* abrogates the "sliding scale" approach for assessing these four factors previously applied in this Circuit, "[s]everal judges" on the Circuit have "read *Winter* at least to suggest if not to hold 'that a likelihood of success is an independent, free-standing requirement for a preliminary injunction.'" *See Allied Progress v. Consumer Fin. Prot. Bureau*, No. 17-cv-686(CKK), 2017 WL 1750263, at *2 (D.D.C. May 4, 2017) (quoting *Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011)). This Circuit has also emphasized that a showing of irreparable harm is an "independent prerequisite" for a preliminary injunction. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).

## II.   Preliminary Injunctive Relief Is Generally Not Appropriate in FOIA Cases

As an initial matter, preliminary injunctive relief is generally not appropriate in FOIA cases, for a number of reasons.

First, FOIA establishes its own specialized procedural framework controlling the processing of FOIA requests and procedures for FOIA litigation. *See, e.g.*, 5 U.S.C. § 552(a)(3)(A) (providing that a FOIA request must reasonably describe the records sought and

must be filed in accordance with published rules and procedures); *id.* § 552(a)(4)(C) (requiring responsive filing within thirty days of service of a complaint). Courts should not casually sidestep this statutory framework through issuance of preliminary relief.

In addition, the traditional purpose of a preliminary injunction is to "preserve the status quo" so that the court can issue a meaningful decision on the merits. *Cobell v. Kempthorne*, 455 F.3d 301, 314 (D.C. Cir. 2006) (citation omitted). Therefore, when, as here, a movant seeks mandatory injunctive relief, *i.e.*, an injunction that "would alter, rather than preserve, the status quo by commanding some positive act—the moving party must meet a higher standard than in the ordinary case by showing clearly that he or she is entitled to relief or that extreme or very serious damage will result from the denial of the injunction." *Elec. Privacy Info. Ctr. v. U.S. Dep't of Justice*, 15 F. Supp. 3d 32, 39 (D.D.C. 2014) (citations omitted); *see also Nat'l Conf. on Ministry to the Armed Forces v. James*, 278 F. Supp. 2d 37, 43 (D.D.C. 2003) ("A district court should not issue a mandatory preliminary injunction unless the facts and law clearly favor the moving party." (quotation omitted)). An order compelling accelerated processing of a FOIA request would not merely preserve the status quo but would force specific action by Defendants.

Finally, because preliminary injunctive relief is not intended to provide plaintiffs with a means to bypass the litigation process and achieve rapid victory, "a preliminary injunction should not work to give a party essentially the full relief he seeks on the merits." *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 n.13 (D.C. Cir. 1969) (per curiam); *see also Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("[I]t is generally inappropriate for a federal court at the preliminary injunction stage to give a final judgment on the merits."). As Plaintiff has indicated, however, that is essentially what it seeks here: an injunction that the Defendants "shall process Plaintiff's FOIA requests on an expedited basis" and "shall produce all non-exempt, responsive

portions of records responsive to [Plaintiff's] FOIA requests . . . by December 12, 2019." Pl.

Proposed Order at 1. Plaintiff's motion thus should be denied as a mere tactic to circumvent the

standard litigation process. *See Daily Caller*, 152 F. Supp. 3d at 6-7 (noting that "in seeking a

preliminary order requiring the State Department to process fully the plaintiff's outstanding

FOIA requests, and produce all responsive non-exempt documents within twenty business days,

the plaintiff essentially requests the full relief it seeks in filing its underlying Complaint").

Indeed, rather than treating a preliminary injunction as an "extraordinary and drastic

remedy," *Munaf*, 553 U.S. at 689, Plaintiff seeks an emergency, mandatory injunction as a means

of jumping ahead of other requests (including those already in the expedited processing track).

Not only is this procedure unfair to other FOIA requesters, but also it results in burdensome and

unnecessary motion practice for the parties and the Court. *See, e.g.*, *Long v. U.S. Dep't of*

*Homeland Sec.*, 436 F. Supp. 2d 38, 44 (D.D.C. 2006) (denying motion for preliminary

injunction to compel processing within twenty days, and explaining that "[t]he government has

not yet had a chance to review its files, prepare and file a dispositive motion, and provide the

Court the information necessary to make a decision on any material that might be subject to an

exemption"); *Allied Progress*, 2017 WL 1750263, at *1 (denying request for a preliminary

injunction mandating expedited processing and production where requester failed to show a

likelihood of success on the merits and irreparable harm); *Elec. Privacy Info. Ctr. v. U.S. Dep't*

*of Justice*, No. 1:03-cv-2078, Order at 1 (D.D.C. Oct. 20, 2003), ECF No. 4 (denying a request

"'enjoining defendant DOJ from continuing to deny plaintiff expedited processing of plaintiff's

Freedom of Information Act request'" because such relief "would effectively grant all the relief

plaintiff seeks"), *vacated as moot* 2004 WL 2713119 (D.C. Cir. Nov. 24, 2004).[2] The Court

---

[2] *See also, e.g.*, *Wadelton v. U.S. Dep't of State*, 941 F. Supp. 2d 120, 124 (D.D.C. 2013)
(denying request for a preliminary injunction to expedite processing where requester failed to

should similarly deny Plaintiff's motion for preliminary injunctive relief here, and not reward

Plaintiff for filing an improper motion for emergency relief by setting a processing schedule to

which Plaintiff is not entitled.

## III.    Plaintiff Has Failed to Show Entitlement to a Preliminary Injunction

The generally inapposite nature of preliminary injunctions as remedies in FOIA cases

notwithstanding, Plaintiff has failed to meet its burden to show that it is entitled to such an

extraordinary remedy on the facts of this case. Plaintiff has failed to show likelihood of success

on the merits because, for example, Plaintiff cannot show why it is entitled to receive all

responsive, non-exempt records by December 12. Nor can Plaintiff show that it would suffer

actual, irreparable harm if its FOIA requests are not completely processed by December 12.

Finally, the balance of harms and public interest favor the fair result of having Plaintiff's FOIA

---

meet all four elements); *Landmark Legal Found. v. EPA*, 910 F. Supp. 2d 270, 279 (D.D.C. 2012) (denying request for a preliminary injunction to expedite processing where agency stated request is already at the top of the queue and requester failed to meet other elements); *Al-Fayed v. CIA*, No. 1:00-cv-2092(CKK), 2000 WL 34342564, *6 (D.D.C. Sept. 20, 2000) (finding that "upon consideration of the parties' arguments, the statutory and regulatory context, and the applicable case law," emergency relief was not warranted despite the agency's delay in responding to FOIA requests), *aff'd*, 254 F.3d 300 (D.C. Cir. 2001); Order at 1, *Judicial Watch v. U.S. Dep't of Justice*, No. 1:00-cv-1396(JR), (D.D.C. June 27, 2000), ECF No. 4 (denying plaintiff's "emergency motion for expedited treatment" to "compel defendant to respond to plaintiff's Freedom of Information Act request" and noting that the FOIA "was not designed and does not operate as a vehicle to provide immediate and continuing access to government records through litigation"). Courts in other districts do so as well. *See, e.g.*, *Aronson v. U.S. Dep't of Hous. & Urban Dev.*, 869 F.2d 646, 648 (1st Cir. 1989) (Breyer, J.) (denying preliminary injunction); *Pinnacle Armor, Inc. v. United States*, No. 07-cv-1655, 2008 WL 108969, at *9 (E.D. Cal. Jan. 7, 2008) (denying injunctive relief and noting that "[p]laintiff has not provided any authority for the proposition that the claim for the Freedom of Information Act supports a claim for an injunction"); *Carlson v. USPS*, No. 02-cv-5471, 2005 WL 756573, at *8 (N.D. Cal. Mar. 31, 2005) (denying request for injunction sought to compel "timely" response to FOIA request); *Beta Steel Corp. v. NLRB*, No. 2:97-cv-358, 1997 WL 836525, at *2 (N.D. Ind. Oct. 22, 1997) (denying preliminary injunction); *cf. Wiedenhoeft v. United States*, 189 F. Supp. 2d 295, 296-97 (D. Md. 2002) (refusing to issue temporary restraining order to force "immediate compliance" with plaintiff's FOIA requests by moving them "to the head of the queue forthwith").

requests processed in accordance with the schedule proposed by Defendants, with an initial

production by December 20. Accordingly, Plaintiff has failed to sustain its burden, and its

motion for preliminary injunction must be denied.

### A.      Plaintiff Has Failed to Establish a Likelihood of Success on the Merits

Before a court may enter a preliminary injunction, "[i]t is particularly important for the

movant to demonstrate a substantial likelihood of success on the merits," because "absent a

substantial indication of likely success on the merits, there would be no justification for the

[C]ourt's intrusion into the ordinary processes of administration and judicial review." *Hubbard v.*

*United States*, 496 F. Supp. 2d 194, 198 (D.D.C. 2007) (internal quotation marks and citation

omitted). Here, Plaintiff cannot do so.

First, Plaintiff argues that it is likely to succeed on its FOIA claims because it "has

complied with all necessary procedures . . . and is therefore highly likely to establish its

entitlement to production of records." Pl. Mem. at 6-7. Plaintiff cannot show entitlement to the

production of records just because Defendants have not responded to the requests within the

typical 20-day statutory timeframe for responding to a request. Agencies are not required to

make all records available within the 20 days but rather to make them "promptly available," 5

U.S.C. § 552(a)(3)(A). And even when an agency fails to respond to the request within 20 days,

the requester is simply deemed as result to have exhausted administrative remedies for purposes

of seeking immediate judicial review of the agency's processing of the FOIA request. *Citizens*

*for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 189 (D.C. Cir.

2013) ("If the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the

agency cannot rely on the administrative exhaustion requirement to keep cases from getting into

court."); *Daily Caller v. United States Dep't of State*, 152 F. Supp. 3d 1, 11 (D.D.C. 2015)

("Standing alone, [the agency's failure to issue a determination within 20 days] does not

conclusively demonstrate that the plaintiff is likely to prevail in its underlying effort to accelerate the processing of its FOIA requests and the ultimate production of any responsive, non-exempt records."); *Elec. Privacy Info. Ctr.*, 15 F. Supp. 3d at 40 ("[N]othing in the FOIA statute establishes that an agency's failure to comply with this 20-day deadline automatically results in the agency's having to produce the requested documents without continued processing, as EPIC suggests."). To the extent that Plaintiff asserts an immediate right to the requested records based upon the lack of response within the statutory timeframes, that is not the law. It is particularly not the law with respect to any portions of any responsive records that are properly exempt from disclosure under FOIA.

Plaintiff also argues that it is likely to succeed on the merits of its request for expedited processing because "there is a compelling need for the information requested." Pl. Mem. at 7. Plaintiff argues that "there is an urgent need to inform the public . . . before the current impeachment inquiry is concluded." *Id.* However, the statute provides that "judicial review shall be based on the record before the agency at the time of the determination." 5 U.S.C. § 552(a)(6)(E)(iii). Plaintiff's requests for expedited processing failed to show that Plaintiff is primarily engaged in disseminating information. 5 U.S.C. § 552(a)(6)(E)(v)(II). Plaintiff's requests also failed to demonstrate "urgency," as they did not show "that the information has a particular value that would be lost if not processed on an expedited basis." Herrington Decl. Attachment A at 1; *Al-Fayed*, 254 F.3d at 310. Accordingly, Plaintiff failed to carry its burden of demonstrating an entitlement to expedited processing.

Even if Plaintiff could demonstrate that Defendants should have granted Plaintiff's requests for expedited processing, Plaintiff cannot show entitlement to an order requiring production of all responsive, non-exempt records by December 12. FOIA does not dictate a

specific, compressed schedule for processing expedited requests; rather, the statute directs an

agency merely to "process *as soon as practicable* any request for records to which the agency

has granted expedited processing." 5 U.S.C. § 552(a)(6)(E)(iii) (emphasis added). A Senate

Judiciary Committee report explained the expedited processing provisions as follows:

> Once . . . the request for expedited access is granted, the agency must then
> proceed to process that request "as soon as practicable." No specific number of
> days for compliance is imposed by the bill since, depending upon the complexity
> of the request, the time needed for compliance may vary. The goal is not to get the
> request for expedited access processed within a specific time frame, but to give
> the request priority for processing more quickly than otherwise would occur.

Electronic Freedom of Information Improvement Act of 1995, S. Rep. No. 104-272, at 17

(1996), *available at* 1996 WL 262861. Accordingly, this Court has recognized that when

expedited treatment is warranted, the statute requires only that "requests must be 'process[ed] as

soon as practicable.'" *Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d

293, 296 (D.D.C. 2017) (quoting 5 U.S.C. § 552(a)(6)(E)(iii)). In other words, a grant of

expedited treatment is not an assurance of immediate processing. Multiple requests may be

granted expedited treatment at any given time, and a grant of expedited processing does not

entitle the requester to jump in front of other requesters who have previously been granted

expedited processing.

Defendants' declarations establish that it would not be practicable to produce all

responsive, non-exempt records by December 12. Herrington Decl. ¶¶ 12 & 14; Walsh Decl. ¶¶

11-15. As noted above, both agencies have initiated searches for records responsive to Plaintiff's

requests, but work remains to be done to review potentially responsive records for

responsiveness and deduplication, and then for whether any information is exempt under FOIA's

statutory exemptions. Herrington Decl. ¶ 10; Walsh Decl. ¶ 7. DoD has gathered approximately

500 potentially responsive records, which it must review for responsiveness and deduplication,

and then determine what information within the records can be produced and what information is exempt from disclosure. Herrington Decl. ¶¶ 10 & 11. This process will involve seeking OMB's input on withholdings of information, because the request seeks communications between DoD and OMB; this process could also require consultations with other agencies or entities with equities in the documents. *Id.* ¶ 11; Walsh Decl. ¶¶ 23 & 24. Indeed, many of the responsive records are likely to be statutorily exempt from production. For example, Plaintiff seeks internal communications within DoD and between OMB and DoD, many of which are likely to be subject to exemption under 5 U.S.C. § 552(b)(5).

Defendants must complete this work alongside their other FOIA obligations, including court-ordered productions in other cases in litigation. For example, DoD is currently litigating approximately 40 other FOIA cases, many of which "concern matters of great interest to the public." Herrington Decl ¶ 6. DoD "is currently conducting searches within the USAI repository for approximately 12 other FOIA requests regarding the USAI." *Id.* ¶ 13. In addition, the same component of DoD responsible for processing such FOIA requests "is also responsible for managing records processing in response to congressional inquiries, including congressional inquiries about DoD's Ukraine Security Assistance Initiative ("USAI"). *Id.* ¶ 6. Likewise, OMB is currently litigating nearly 40 FOIA cases. Walsh Decl. ¶ 13. Ten of these cases involving have either a court-imposed or a court-approved rolling production schedule; these cases collectively require OMB to process over 3,400 documents per month. *Id.* ¶ 15.

Despite these significant strains on agency resources, Defendants have committed to making an initial production of responsive, non-exempt records to Plaintiff by December 20— less than three weeks after Defendants' response to the complaint is due—with subsequent monthly rolling productions to follow. *See, e.g.,* Herrington Decl. ¶ 14. Completing production

of *all* responsive, non-exempt material by December 12 is not, however, practicable in any sense of the word.

**B.    Plaintiff Has Failed To Establish That It Would Suffer Irreparable Harm**

"[T]he basis of injunctive relief in the federal courts has always been irreparable harm." *CityFed Fin. Corp.*, 58 F.3d at 747 (quoting *Sampson v. Murray*, 415 U.S. 61, 88 (1974), internal quotation marks omitted). The D.C. Circuit "has set a high standard for irreparable injury." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). The party seeking injunctive relief must show that its injury is "both certain and great," and that it is "actual and not theoretical." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (*per curiam*). It is a "well known and indisputable principle[]" that an "unsubstantiated and speculative" harm cannot constitute "irreparable harm" sufficient to justify injunctive relief. *Id.* In short, "[t]he key word in this consideration is *irreparable*. . . . The possibility that adequate . . . corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm." *Id.* (quoting *Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958)).

Thus, where courts have granted preliminary injunctions in FOIA cases, they have done so upon finding that the plaintiff would be irreparably harmed by an actual, impending deadline. *See, e.g.*, Minute Order, *Nat'l Immigration Law Ctr. v. U.S. Dep't of Homeland Sec.*, No. 1:19-cv-866 (D.D.C. Apr. 1, 2019) (finding that the plaintiff established "irreparable harm" because "if Plaintiff is unable to obtain the information sought in its FOIA request, the individuals Plaintiff represents in Tennessee may lose their ability to pursue *Bivens* claims due to the imminent lapsing of the relevant statute of limitations"); *Wash. Post v. U.S. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 75 (D.D.C. 2006) ("Because the urgency with which the plaintiff

makes its FOIA request is predicated on a matter of current national debate, due to the impending election [(which was only three weeks away)], a likelihood for irreparable harm exists if the plaintiff's FOIA request does not receive expedited treatment."); *Aguilera v. FBI*, 941 F. Supp. 144, 151-52 (D.D.C. 1996) (finding, in a case where the documents at issue were key evidence in an evidentiary hearing scheduled for the near future regarding the requester's conviction for murder, that a preliminary injunction requiring the FBI to expedite the processing of plaintiff's FOIA request was warranted); *Cleaver v. Kelley*, 427 F. Supp. 80, 81-82 (D.D.C. 1976) (granting a preliminary injunction and ordering expedited processing of plaintiff's FOIA request where plaintiff had been indicted for attempted murder and assault, and trial was scheduled to begin in a month).

Plaintiff's sole argument on irreparable harm is that it needs the responsive records during the impeachment inquiry, and that if it gets the records after the inquiry is over, it will be irreparably harmed. Pl. Mem. at 7. But Plaintiff fails to offer any justification as to why the information will no longer be valuable after its arbitrary deadline of December 12. Plaintiff does not, for example, claim that the impeachment inquiry will be over by then. Although it is surely not known at this time, as public hearings in the inquiry are just about to begin, precisely when the inquiry will end, even assuming reports are to be credited that a trial in the Senate on any articles of impeachment could be completed by Christmas, Plaintiff would receive an initial production of responsive records in time for the intended use under Defendants' proposal. *See American Oversight v. State*, 2019 WL 5665930, at *1, 3 (D.D.C. Oct. 25, 2019). And it is of course unknown at this time, and indeed speculative, how long the impeachment inquiry and any trial in the Senate will actually take. *See Wis. Gas Co.*, 758 F.2d at 674 ("Injunctive relief will not be granted against something merely feared as liable to occur at some indefinite time[;] the

party seeking injunctive relief must show that the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." (citations and quotation marks omitted)); *Long v. Dep't of Homeland Sec.*, 436 F. Supp. 2d 38, 44 (D.D.C. 2006) (finding failure to demonstrate irreparable harm because "plaintiffs have failed to identify a time frame in which the requested information would no longer be valuable.").

Moreover, as noted above, it is likely that much of the information in any responsive records will be exempt from disclosure. Although Plaintiff seems to think that there will be no "legal basis" to withhold any of the responsive records, Pl. Mem. at 8, the nature of the request, seeking internal agency communications, suggests that there will indeed be legal bases to withhold information contained in responsive records. In the absence of a showing that Plaintiff would likely be entitled to a significant release of documents, Plaintiff cannot meet its burden to establish that it will be irreparably harmed if it fails to receive a determination on its expedited timeframe. *See Elec. Privacy Info. Ctr.*, 15 F. Supp. 3d at 46 (finding that a requestor "cannot claim to be injured—much less 'irreparably' so—if the [defendant] withholds documents that [plaintiff] is not entitled to access in the first instance"); *Nation Magazine v. U.S. Dep't of State*, 805 F. Supp. 68, 74 (D.D.C. 1992) (denying preliminary injunction on ground that plaintiff had failed to demonstrate irreparable harm because "[e]ven if this Court were to direct the speed up of processing of their requests, [plaintiffs] have not shown at this time that they are entitled to the release of the documents they seek" as "it is undisputed that at least some of the documents . . . are probably exempt from production under the FOIA").

In *American Oversight*, the court did not find persuasive the argument that the plaintiff would not be irreparably harmed if the responsive records were exempt, but that was because the requests at issue there included certain categories of records that "would not appear to be subject

to any FOIA exemptions," particularly communications between the State Department and Rudolph W. Guiliani, President Trump's personal lawyer, "who is not a government employee." *American Oversight*, 2019 WL 5665930, at *4. By contrast here, Plaintiff's FOIA requests seek only internal communications within DoD and between DoD and OMB; thus there is no easily identifiable category of responsive records likely to be disclosed to Plaintiff.

### C. The Balance of Equities and the Public Interest Weigh Against a Preliminary Injunction

Along with alleged harm to Plaintiff, the Court must consider whether a preliminary injunction of the sort demanded by Plaintiff would be in the public interest or harm other FOIA requesters who are not party to this lawsuit. *See Al-Fayed*, 254 F.3d at 303. In this case, Plaintiff seeks relief that does not serve the public interest but rather would harm other FOIA requesters. *See Wadelton v. U.S. Dep't of State*, 941 F. Supp. 2d 120, 124 (D.D.C. 2013).

Plaintiff's request for the proposed preliminary injunction threatens to compromise the delicate balancing of interests that Congress undertook in enacting the FOIA. Importantly, granting Plaintiff's December 12 deadline would disadvantage other, similarly situated members of the press (or the public) who themselves have FOIA requests pending before Defendants (some of which also may be viewed as urgent by the requestors). *See Baker v. Consumer Fin. Prot. Bureau*, No. 18-cv-2403(CKK), 2018 WL 5723146, at *5 (D.D.C. Nov. 1, 2018) (finding that a "preliminary injunction ordering the immediate processing and release of the requested records" "would harm the approximately 100 other requesters . . . in line ahead of Plaintiff and would erode the proper functioning of the FOIA system").

Plaintiff argues that the Court should overlook as negligible the fact that granting expedited processing of Plaintiff's requests will delay the processing of other requests in the queue. Pl. Mem. at 8. However, an order requiring Defendants to complete production of all

responsive, non-exempt information by December 12 would divert resources from those other, preexisting requests. Herrington Decl. ¶ 13; Walsh Decl. ¶¶ 16, 20-22. Indeed, such extreme accelerated processing of Plaintiff's requests would no doubt divert resources away from other requests seeking similar information that also could inform public opinion with respect to the very impeachment inquiry which Plaintiff claims justifies special treatment of its requests in this case. DoD has already received approximately 12 FOIA requests relating to the very same topic of Plaintiff's requests, the Ukraine Security Assistance Initiative, Herrington Decl. ¶ 13, while OMB has received 22 FOIA requests related to Ukraine, including a number of requests on "Ukraine aid" and other similar topics. Walsh Decl. ¶ 16. Plaintiff's December 12 deadline would undermine the interests of those requesters and the public, as well as the overall public interest in proper operation of the FOIA. In *American Oversight*, the court "appreciate[d] that the [State] Department faces a substantial FOIA backlog, including numerous other Ukraine-related requests" and ordered the parties to meet and confer in an attempt to narrow the requests to reduce the number of records that will require accelerated processing. 2019 WL 5665930, at *4.[3] Plaintiff offers no reason why its FOIA requests should take such priority over other Ukraine-related FOIA requests, including those submitted ahead of Plaintiff's requests.

In addition, granting Plaintiff's request for an infeasible and extraordinary processing schedule would compromise the public interest in ensuring that certain types of documents, the disclosure of which would cause harm, are carefully redacted consistent with FOIA exemptions.

---

[3] *See also Nation Magazine*, 805 F. Supp. at 74 (entry of a preliminary injunction expediting a FOIA request over other pending requests "would severely jeopardize the public's interest in an orderly, fair, and efficient administration of [ ] FOIA"); *Elec. Privacy Info. Ctr.*, 15 F. Supp. 3d at 47 ("[A]llowing [a plaintiff] to jump to the head of the line would upset the agency's processes and be detrimental to the other expedited requesters, some of whom may have even more pressing needs."); *Protect Democracy Project*, 263 F. Supp. 3d at 303 ("[R]equiring production by a date certain, without any factual basis for doing so, might actually disrupt FOIA's expedited processing regime rather than implement it.").

The exemptions listed in 5 U.S.C. § 552(b) embody a judgment by Congress that the public interest would best be served by allowing agencies to withhold certain records. Indeed, Congress specifically recognized that, in certain cases, depending on the subject matter of the request, additional time would be required to ensure that the public's interest in preventing the public disclosure of these exempted documents was not compromised. *See* H.R. Rep. No. 104-795, at 23, 1996 U.S.C.C.A.N. at 3466 ("In underscoring the requirement that agencies respond to requests in a timely manner, the Committee does not intend to weaken any interests protected by the FOIA exemptions. Agencies processing some requests may need additional time to adequately review requested material to protect those exemption interests.").

Ordering Defendants to complete production of all responsive, non-exempt records by December 12 presents a high risk that exempt material will be inadvertently disclosed. *See Daily Caller*, 152 F. Supp. 3d at 14 ("Requiring the agency to process and produce [requested] materials under an abbreviated deadline raises a significant risk of inadvertent disclosure of records properly subject to exemption under FOIA."); *Protect Democracy Project*, 263 F. Supp. 3d at 302 ("Imposing on Defendants an arbitrary deadline for processing would run the risk of overburdening them, and could even lead to the mistaken release of protected information."); *Baker*, 2018 WL 5723146, at \*5 ("Ordering Defendant to process and release documents according to Plaintiff's timeline risks that, in its haste, Defendant will inadvertently release records which fall under a FOIA exception and Congress has decided should not be released."). For this reason as well, the public interest weighs in favor of applying the normal, statutorily-provided processing schedule to Plaintiff's request.

Finally, Defendants' proposed schedule demonstrates that they will expeditiously produce responsive, non-exempt records to Plaintiff. The public interest is best served by

permitting the processing of those records in accordance with that schedule without diverting resources with unnecessary litigation.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion for a Preliminary Injunction.

Dated: November 12, 2019        Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

MARCIA BERMAN
Assistant Director
Federal Programs Branch

*/s/ Amber Richer*
AMBER RICHER (CA Bar No. 253918)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Telephone: (202) 514-3489
E-mail: amber.richer@usdoj.gov

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 12, 2019, I electronically transmitted the foregoing to

the parties and the clerk of court for the United States District Court for the District of Columbia

using the CM/ECF filing system.

          /s/ Amber Richer
AMBER RICHER (CA Bar No. 253918)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Tel: (202) 514-3489
Email: amber.richer@usdoj.gov