**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
CENTER FOR PUBLIC INTEGRITY | |
     Plaintiff, | |
v. | Civil Action No. 19-3265 (CKK) |
U.S. DEPARTMENT OF DEFENSE | |
and | |
OFFICE OF MANAGEMENT AND BUDGET | |
     Defendants. | |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS**
**MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiff, the Center for Public Integrity, replies to Defendants' Opposition as follows:

Plaintiff recognizes that the granting of a preliminary injunction in a Freedom of Information Act ("FOIA") lawsuit is an extraordinary remedy. But the ongoing impeachment inquiry in the House of Representatives is an even more extraordinary and momentous occurrence in American history and has created a compelling need for prompt production of the records Plaintiff has requested. *Compare American Oversight v. U.S. Department of State*, 2019 WL 5665930, at *4 (D.D.C., Oct. 25, 2019). Defendant DoD has acknowledged that it has already reviewed the requested documents, which it estimates to be substantially less than 500 records. Given the gravity of the impeachment proceedings and the potential importance of the records to the public's ability to assess the president's conduct, the expedited release of those records is plainly warranted.

## ARGUMENT

I. **DEFENDANTS HAVE NOT CAST DOUBT ON PUBLIC INTEGRITY'S LIKELIHOOD OF SUCCESS ON THE MERITS.**

Plaintiff's Motion for a Preliminary Injunction seeks production of "all non-exempt, responsive portions of records responsive to Public Integrity's requests" on an accelerated schedule. Defendants have not disputed — and cannot dispute — that the FOIA requires them to make such a production. The only effect of the preliminary injunction is to require an earlier date than Defendants prefer, which the unusual circumstances here warrant.

Despite Defendants' contention that Plaintiff is seeking the equivalent of "a final judgment on the merits" (see Defs.' Opp., at 12-13), Plaintiff has asked for more limited relief. Production pursuant to a preliminary injunction would necessarily include only the records that Defendants have determined are responsive and non-exempt. At a later stage, typically in FOIA cases at the summary judgment stage, any of Defendants' withholdings or redactions would be subjected to judicial review. Plaintiff is therefore using the preliminary injunction procedure exactly as it was intended and is not attempting to circumvent a final judgment on the merits as Defendants assert.

Defendants speculate, without substantiation, that "many of the responsive records are likely to be statutorily exempt from production." Defs.' Opp., at 18. If some information is exempt, Defendants nevertheless have a statutory obligation to produce the segregable non-exempt portions. 5 U.S.C. § 552(b). The proportion of exempt to non-exempt material is irrelevant. Release of even portions of records constitutes success on the merits.

Plaintiffs' requests merit expedited processing under the FOIA. Plaintiff has no record of receiving the September 27 letter by which Defendant DoD denied expedited processing status,[1] but the grounds stated in the letter (Herrington Decl., Attachment B) are in any case deficient. Plaintiff's request noted that "the topic of the Defense Department's handling of the Ukraine Security Assistance program is a matter of immediate concern to the American public, given extensive media interest in the fate of the program and the pressures placed upon the department regarding this program. These matters are the subject of imminent congressional hearings and action." Complaint, Exhibit A. Defendant DoD's actions in collecting records related to military aid to Ukraine (see Herrington Decl., at ¶¶ 7-8 and Attachment A) demonstrate that it was aware of the public and congressional interest in this subject. Despite Defendants' claim that "Plaintiff's requests for expedited processing failed to show that Plaintiff is primarily engaged in disseminating information" (Defs.' Opp., at 16), Plaintiff's requests in fact stated that it is "primarily engaged in disseminating information" and provided detailed substantiation that Plaintiff "is a news media organization." Complaint, Exhibit A. Defendant OMB admits that it "has not acted on Plaintiff's request for expedited processing" (Walsh Decl. at ¶ 10), despite the statutory requirement to do so within 10 days of the request. 5 U.S.C. § 552(a)(6)(E)(ii)(I).

II.    **THERE IS AN URGENT NEED FOR THE PUBLIC TO OBTAIN THE REQUESTED RECORDS AS SOON AS POSSIBLE.**

Defendants' contention that Plaintiff has failed to show "that the information [requested] has a particular value that would be lost if not processed on an expedited basis" (Defs.' Opp., at

---

[1] In addition, counsel for Plaintiff on October 30, 2019, made telephone inquiries about the status of Plaintiff's requests. See also Walsh Decl., at ¶ 8 (telephone inquiry to OMB). An action officer at DoD's FOIA Requester Service Center for the Offices of the Secretary of Defense and Joint Staff confirmed receipt of Plaintiff's request to DoD but said she could not tell counsel whether there had been a determination on the request for expedited processing.

16) is false. A formal impeachment inquiry has already begun in the House of Representatives relating directly to the records requested by Plaintiff, which seek to discover why OMB placed a hold on Congressionally approved aid to Ukraine. The unavailability of the requested records has already impaired the ability of the public to understand and participate in this process. Every day until the records are released exacerbates that impairment.[2]

Defendants suggest that there is no harm as long as they produce responsive records before the end of the impeachment inquiry and any Senate impeachment trial. *See* Defs.' Opp., at 20. Such a view completely misunderstands the situation. The public has an interest — indeed a First Amendment right — in being able to petition the government, including members of Congress. Plaintiff does not presume to know whether information in the requested records would strengthen or weaken the case for impeachment, which is a matter of politics as much as law. But citizens on any side of the issue would be able to more intelligently communicate their opinions to their elected representatives if they possessed that information. If the House were to vote to impeach before Defendants produce the records, citizens opposed to impeachment would be particularly aggrieved, notwithstanding the possibility of acquittal in the Senate. Likewise, if the House votes not to impeach, those favoring impeachment would be aggrieved if they lack the relevant information.

Defendants contend that Plaintiff — and the American public for that matter — should be content with receiving a wholly undefined "initial production of responsive records" by December 20, which Defendants themselves acknowledge may be a matter of days before or after the impeachment process is completed. Under Defendants' position, they could produce the vast bulk of the responsive documents after the impeachment inquiry is over, depriving the

---

[2] The public interest in receiving this information and the irreparable harm to Public Integrity if it cannot report this information to the public are two sides of the same coin. Therefore they will not be discussed separately.

citizenry of potentially critical information relating to the proceeding at a time in which they

could petition their members of Congress to take appropriate actions. Defendants' argument that

the American people should be satisfied with a mere sliver of relevant information regarding a

matter as critical as impeachment is wholly unpersuasive.

      In short, there is clearly "an urgency to inform the public about an actual or alleged

Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II). Obtaining this information after

important proceedings have been completed would indeed cause harm of an irreparable sort.

Compliance with the deadline Plaintiff requests is essential to allow fully informed participation

of the citizenry in the impeachment process, thereby fulfilling the very purpose of the FOIA

statute.


III.     **DEFENDANTS HAVE NOT OFFERED A PRODUCTION SCHEDULE THAT
ACCOMMODATES THE URGENT PUBLIC INTEREST IN RELEASE OF THE
REQUESTED RECORDS.**

      Defendants' offer to "make an initial production … by December 20" (See Defs.' Opp.,

at 10) is without substance. Defendants have declined to commit to releasing any minimum

volume of records in that initial production, or to provide any deadline for completing

production.

      Defendants' assertion that they have "establish[ed] that it would not be practicable to

produce all responsive, non-exempt records by December 12th" (Defs.' Opp., at 17) is belied by

their own declarations. For example, the Declaration of Mark Herrington for Defendant DoD (at

¶ 10) acknowledges that he has already collected roughly 500 responsive documents, reviewed

them and determined that the number of documents requiring processing will "likely … lessen

substantially" because of duplication. In essence, Defendant DoD would have this Court believe

that it is simply not possible for it to process several hundred documents relating to a matter as

critical as impeachment within several weeks as proposed by Plaintiff. This position strains credulity and establishes nothing more than DoD's desire to delay production of information that goes to the heart of an ongoing impeachment proceeding.

Defendants' claim that the records require substantial additional processing time is not warranted. The DoD documents were collected in early October, and processing commenced immediately. Herrington Decl., at ¶¶ 7-8. In testimony three weeks ago to the Permanent Select Committee on Intelligence, which is leading the House impeachment inquiry, Deputy Assistant Secretary of Defense for Russia, Ukraine, and Eurasia Laura Cooper said that "the way that the Department of Defense is handling the requests for information, both for the subpoena but also a number of Freedom of Information requests…is to have the Joint Service Provider, we call it JSP, our IT professionals, do a document pull." Deposition of Laura Katherine Cooper, reproduced at https://context-cdn.washingtonpost.com/notes/prod/default/documents/8c6fd38b-3a93-4367-99b1-bb41dad255ad/note/39e5b021-476c-4491-85f1-9c90063ecedb.pdf, at p. 39. In her testimony, which occurred on Oct. 23, Cooper went on to say that "The vast majority of our documents are electronic. We keep almost no paper records anymore of anything. So the fact that the IT staff are pulling these documents behind the scenes means that we as individuals, or I personally, have not had to take any specific action." *Id.* She testified that the documents had been sufficiently well-organized by the time she was speaking — three weeks ago — to enable her to review them beforehand. *Id.*

Plaintiff believes the documents it has requested are included in those already collected and organized for the benefit of Cooper's testimony and for the purpose of DoD and OMB responses to other requests, including those made by Congress and already provided to lawmakers. In some respects Plaintiff's requests are narrower than those by other news media,

according to Defendants' Opposition, making a quick response to Plaintiff's request more reasonable. Plaintiff is seeking, for example, highly specific communications involving the DoD comptroller's office, and some narrow communications involving the defense secretary and deputy defense secretary, not "all records related to the 'freeze' on Ukraine aid," as another news organization has requested. See Walsh Decl., at ¶ 16. (Plaintiff notes, however, that its two requests are not precisely identical, and that Defendants are not accurate in suggesting that "DoD's responsive records will be the same as OMB's" in their entirety. Defs.' Opp., at 10.)  Nonetheless, the idea that eliminating duplication in just 500 email documents, which have already been collected and organized, would take more than a day or two of work seems incredible. And once this is done processing should be swift and straightforward, since Mr. Herrington predicts the actual number of documents remaining would be "substantially" fewer than 500.

Moreover, despite persistent backlogs of requests for many years,[3] Defendant DoD, like many other federal agencies, has not responded by devoting significant new resources to processing FOIA requests. Instead they argue that processing even the most urgent requests must be constrained by the level of resources they themselves have allocated, and they attempt to pit one group of FOIA requesters against others, in competition for their limited resources.

Federal courts can insist that agencies accommodate the public interest in particular cases. For instance, earlier this year a court found with respect to DoD "that a 5,000-page-per-month processing rate remains 'practicable' for FOIA purposes, even if meeting this demand calls upon DOD to augment, temporarily or permanently, its review resources, human and/or technological." *Open Soc'y Justice Initiative v. Cent. Intelligence Agency*, No. 19 Civ. 1329

---

[3] FOIA processing statistics are available at https://open.defense.gov/Transparency/FOIA/DoD-Annual-Reports-to-AG/ or https://www.foia.gov/data.html.

(PAE), 2019 WL 3561889 (S.D.N.Y. Aug. 6, 2019). In short, production by December 12 of what the Defendant claims is "substantially" fewer than 500 pages is indeed "practicable." When courts have found that a preliminary injunction is warranted in FOIA cases, they have typically ordered production within a relatively short amount of time. *See, e.g.*, *Elec. Frontier Found. v. Office of the Dir. of Nat'l Intelligence*, 542 F. Supp. 2d 1181, 1187 (N.D. Cal. 2008) (preliminary injunction requiring production within 13 and 17 days); *Washington Post v. Department of Homeland Security*, 459 F. Supp. 2d 61 (D.D.C. 2006) (preliminary injunction requiring production within 10 days); *Aguilera v. FBI*, 941 F. Supp. 144 (D.D.C. 1996) (30 days); *Cleaver v. Kelley*, 427 F. Supp. 80 (D.D.C. 1976) (21 days).

If the timely production of substantially fewer than 500 documents is not warranted in a matter as consequential as presidential impeachment, it is hard to imagine any circumstances in which expedited production would be appropriate. This is not a circumstance in which Plaintiff is seeking the impossible or impractical from the government. It is simply asking the government to expedite production of a relative handful of documents by a matter of weeks so that the American public can have access to information critical to their assessment of whether the President of the United States should remain in office. This is not an abuse of the FOIA statute, as the government suggests, but rather a reasonable effort to ensure its purpose is fulfilled.

Defendants opine that granting relief to Plaintiff in this case would encourage other FOIA requesters to bring lawsuits. That is possible. But the solution is not for the Court to deny the remedy appropriate for this plaintiff's case. Defendants must instead meet their legal obligations to all requesters who have presented proper requests for expedited processing.

## **CONCLUSION**

For the foregoing reasons, Public Integrity asks the Court to order that Defendants produce all non-exempt, responsive portions of records responsive to Public Integrity's requests by December 12, 2019, or by such date as the Court deems appropriate.


Respectfully submitted,


_____/S/_____
Peter Newbatt Smith
D.C. Bar #458244
Center for Public Integrity
910 17th Street, N.W., 7th Floor
Washington, DC 20006-2606
202-481-1239
psmith@publicintegrity.org

Attorney for Plaintiff