**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |  |
|---|---|
| CENTER FOR PUBLIC INTEGRITY,<br>     Plaintiff<br><br>     v.<br><br>UNITED STATES DEPARTMENT OF<br>DEFENSE, *et al.*,<br>     Defendants | Civil Action No. 19-3265(CKK) |

**MEMORANDUM OPINION**
(November 25, 2019)

This is a Freedom of Information Act ("FOIA") action, in which Plaintiff Center for Public Integrity seeks records from the United States Department of Defense ("DOD") and the United States Office of Management and Budget ("OMB") regarding communications between the DOD and the OMB with the DOD's comptroller concerning the DOD's Ukraine Security Assistance Initiative ("USAI"). The subject matter of Plaintiff's FOIA requests closely relate to an ongoing impeachment inquiry before the United States House of Representatives, considering whether or not President Donald Trump and his administration withheld payments under the USAI in order to pressure the government of Ukraine to conduct an investigation. Before the Court is Plaintiff's [4] Motion for a Preliminary Injunction, which is opposed. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record for purposes of this motion, the Court GRANTS Plaintiff's [4] Motion. While preliminary injunctions are infrequent

---

[1] The Court's consideration has focused on the following documents:
- Pl.'s Mot. for a Prelim. Inj. ("Pl.'s Mot."), ECF No. 4;
- Defs.' Opp'n to Pl.'s Mot. for a Prelim. Inj. ("Defs.' Opp'n"), ECF No. 10;
- Pl.'s Reply in Support of its Mot. for a Prelim. Inj. ("Pl.'s Reply"), ECF No. 11;
- The Parties' Joint Status Report ("JSR"), ECF No. 12;
- Defs.' Notice ("Notice"), ECF No. 13; and
- Pls.' Res. to Defs.' Notice ("Pl.'s Res."), ECF No. 15.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

in the FOIA context, the Court concludes that Plaintiff has made the requisite showing for a preliminary injunction.

In its Motion, Plaintiff requests the release of all responsive, non-exempt documents by December 12, 2019 or by a date reasonable to the Court. Following Plaintiff's Motion, Defendants identified 120 unique records, totaling approximately 211 pages, responsive to Plaintiff's requests. In their Notice, Defendants indicated that they are able to make an initial release of responsive non-exempt records on December 12, 2019 with the release of remaining non-exempt records on December 20, 2019. However, Defendants did not indicate the number of records which would be processed by the December 12, 2019 production. Plaintiff requests that Defendants process half of the responsive pages—at least 106 pages—by the December 12, 2019 production and the remaining half by the December 20, 2019 production. As such, at this point, the only dispute is the number of pages that Defendants will process prior to the December 12, 2019 production.

The Court ORDERS that Defendants process at least half the responsive pages—approximately 106 pages—and produce the responsive, non-exempt documents to Plaintiff by DECEMBER 12, 2019.[2] The Court further ORDERS that the remaining records be processed, and all responsive, non-exempt documents be produced by DECEMBER 20, 2019, at the latest. As practicable, Defendants shall release responsive, non-exempt documents to Plaintiff on a rolling basis between December 12, 2019 and December 20, 2019.

---

[2] The Court recognizes that processing exactly 106 pages may result in Defendants processing only a portion of a document. The Court would expect that Defendants complete the processing of that document even if doing so results in the processing of slightly more than 106 pages.

## I. BACKGROUND

Plaintiff is a nonprofit, nonpartisan, non-advocacy, independent journalism organization. Compl., ECF No. 1, ¶ 4. Plaintiff submitted two FOIA requests. On September 25, 2019, Plaintiff requested from the DOD "[a]ll records reflecting any communication between Defense Department acting comptroller Elaine McCusker or other officials within the comptroller's office and employees or officials of the Office of Management and Budget concerning the Ukraine Security Assistance Initiative." *Id.* at ¶ 7. Plaintiff also requested from the DOD "[a]ll records reflecting any communication between Defense Department acting comptroller Elaine McCusker or other officials within the comptroller's office and Secretary of Defense Mark Esper or Deputy Secretary of Defense David Norquist concerning the Ukraine Security Assistance Initiative." *Id.* And, on September 30, 2019, Plaintiff requested from the OMB "[a]ll records reflecting any communication between officials and employees of the Office of Management and Budget and the office of Defense Department acting comptroller Elaine McCusker or other officials within the comptroller's office concerning the Ukraine Security Assistance Initiative." *Id.* at ¶ 12. Plaintiff requested expedited processing for both FOIA requests. *Id.* at ¶¶ 7, 12.

Defendants acknowledged receipt of the FOIA requests. But, prior to the filing of this lawsuit, Defendants did not provide a determination on Plaintiff's requests. Defendant DOD initially denied Plaintiff's request for expedited processing, but Defendant OMB has yet to make a decision on Plaintiff's request. Dec. of Mark H. Herrington, ECF No. 10-1, ¶ 9; Dec. of Heather V. Walsh, ECF No. 10-2, ¶ 10.

On October 30, 2019, Plaintiff filed this lawsuit. And, on October 31, 2019, Plaintiff filed its Motion, requesting the release of all non-exempt documents responsive to Plaintiff's FOIA requests by December 12, 2019 or by a date deemed appropriate by the Court. Pl.'s Mot., ECF No. 4, 1.

3

In their Opposition, Defendants indicated that, beginning on October 3, 2019, the DOD General Counsel issued a memorandum across the DOD requesting cooperation in identifying, preserving, and collecting documents and other records regarding the USAI based on anticipated requests for such material. Dec. of Mark H. Herrington, ECF No. 10-1, ¶ 7. Despite the fact that Defendant DOD initially denied Plaintiff's request for expedited processing, following the submission of Plaintiff's Motion, the DOD Office of Information Counsel conducted a search within that repository of documents for records responsive to both of Plaintiff's FOIA requests. Initially, 500 potentially responsive records, inclusive of duplicates, were located. *Id.* at ¶ 10. In their Opposition, Defendants indicated that they would be able to make an initial production of an undisclosed number of documents by December 20, 2019. Defs.' Mot., ECF No. 10, 7.

Briefing on Plaintiff's Motion was completed on November 14, 2019. On November 15, 2019, the Court ordered the parties to file a further Joint Status Report indicating whether or not Defendants would be able to process and release all non-exempt, responsive records by December 20, 2019. On November 19, 2019, the parties filed a Joint Status Report. In that Report, Defendants stated that they "anticipate they will be able to provide a final response to Plaintiff's FOIA requests and release all non-exempt, responsive information to Plaintiff by December 20, 2019." JSR, ECF No. 12.

Following this Report, the Court held a teleconference with the parties, during which a court reporter was present. The Court asked whether or not Defendants would be able to begin making rolling productions of responsive, non-exempt documents on December 12, 2019 with a final production of all documents by December 20, 2019. Defendants indicated that making rolling productions would slow the processing of documents. However, at the time of the teleconference, Defendants were still unsure of how many documents, exclusive of duplicates,

were responsive to Plaintiff's FOIA requests. The Court ordered the parties to file a further notice updating the Court as to the number of documents, exclusive of duplicates, responsive to Plaintiff's FOIA requests.

On November 22, 2019, Defendants filed a Notice indicating that only 120 documents, totaling approximately 211 pages, require processing prior to the release of all non-exempt documents responsive to Plaintiff's FOIA requests. Notice, ECF No. 13. As previously stated, Defendants have agreed to release all non-exempt, responsive documents by December 20, 2019. JSR, ECF No. 12. Defendants have further agreed to process an undisclosed number of documents and make an initial production by December 12, 2019. Notice, ECF No. 13. Plaintiff requests that Defendants process half the pages prior to the December 12, 2019 production and the remaining pages prior to the December 20, 2019 production. Pl.'s Res., ECF No. 15.

## II. LEGAL STANDARD

"A preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)); *see also Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." (emphasis in original; quotation marks omitted)). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014) (quoting *Sherley*, 644 F.3d at 392 (quoting *Winter*, 555 U.S. at 20) (alteration in original; quotation marks omitted)). "'When seeking a preliminary injunction, the movant has the burden to show that all four factors, taken

together, weigh in favor of the injunction.'" *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014) (quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009)). The Court notes that where, as here, the preliminary injunction would be a mandatory one, meaning that its terms would alter rather than preserve the status quo, the Court's power to issue a preliminary injunction "should be sparingly exercised." *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir. 1969).

"The four factors have typically been evaluated on a 'sliding scale.'" *Davis*, 571 F.3d at 1291 (citation omitted). Under this sliding-scale framework, "[i]f the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Id.* at 1291-92. But, it is not clear whether this Circuit's sliding-scale approach to assessing the four preliminary injunction factors survives the Supreme Court's decision in *Winter*. *See Save Jobs USA v. U.S. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 112 (D.D.C. 2015). Several judges on the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") have "read *Winter* at least to suggest if not to hold 'that a likelihood of success is an independent, free-standing requirement for a preliminary injunction.'" *Sherley*, 644 F.3d at 393 (quoting *Davis*, 571 F.3d at 1296 (concurring opinion)). However, the Court of Appeals has yet to hold definitively that *Winter* has displaced the sliding-scale analysis. *See Id.*; *see also Save Jobs USA*, 105 F. Supp. 3d at 112. In any event, this Court need not resolve the viability of the sliding-scale approach today as the Court determines that a preliminary injunction is warranted under either approach.

### III. DISCUSSION

The Court begins by acknowledging that preliminary injunctions are ordinarily not awarded in FOIA cases. However, this is not an ordinary FOIA case. Currently, the United States House of Representatives is in the process of conducting impeachment proceedings concerning

6

the same subject matter as the documents requested by Plaintiff. As such, the requested documents are sought in order to inform the public on a matter of extreme national concern. Only an informed electorate can develop its opinions and persuasively petition its elected officials to act in ways which further the aims of those opinions. In FOIA cases such as this, where the records are sought to inform an imminent public debate, courts in this Circuit have granted preliminary injunctions. *See Wash. Post v. U.S. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61 (D.D.C. 2006) (granting a preliminary injunction where the records concerned White House visitor logs and where midterm elections were occurring shortly); *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246 (D.D.C. 2005) (granting expedited processing of records where the records concerned the monitoring of federal elections and certain provisions of the Voting Rights Act were set to expire); *Elec. Privacy Info. Ctr. v. U.S. Dep't of Justice*, 416 F. Sup. 2d 30 (D.D.C. 2006) (granting preliminary injunction where records concerned the presidential administration's policy of conducting surveillance of domestic communications without prior authorization and congressional hearings were ongoing); *Am. Oversight v. U.S. Dep't of State*, No. 19-cv-2934-CRC, 2019 WL 5665930 (D.D.C. Oct. 25, 2019) (granting preliminary injunction for communications between the State Department and the President's personal lawyer and documents concerning the recall of a U.S. ambassador to Ukraine because the documents were relevant to the ongoing impeachment inquiry).

Having determined that preliminary injunctions may be appropriate in cases such as this, the Court will now explain why the four factors to consider in deciding a motion for a preliminary injunction—likelihood of success on the merits, irreparable harm, the balance of the hardships, and the public interest—weigh in favor of granting the requested relief.

## A. Plaintiff Establishes a Likelihood of Success on the Merits

Plaintiff seeks expedited processing with respect to its FOIA requests; as such, the Court finds that the question with respect to Plaintiff's likelihood of success on the merits "is whether [Plaintiff] is entitled to *expedited* processing and not just whether it is entitled to a response." *Landmark Legal Found. v. EPA*, 910 F. Supp. 2d 270, 274 (D.D.C. 2012); *Wadelton v. U.S. Dep't of State*, 941 F. Supp. 2d 120, 122 (D.D.C. 2013) (evaluating the plaintiff's likelihood of success in obtaining expedited processing). Defendant DOD has already denied Plaintiff's request for expedited processing. In denying Plaintiff's request for expedited processing, Defendant DOD explained that Plaintiff had "not clearly demonstrated how the information will lose its value if not processed on an expedited basis." Dec. of Mark H. Herrington, ECF No. 10-1, Ex. B. Defendant OMB has yet to make a decision on Plaintiff's request.

A court reviews an agency's denial of expedited processing de novo. 5 U.S.C. § 552(a)(6)(E)(iii), *id.* § 4(B). And, "judicial review shall be based on the record before the agency at the time of the determination." *Id.* § 552(a)(6)(E)(iii).

Pursuant to FOIA, agencies are to provide expedited processing when the requester shows a "compelling need." *Id.* § 552(a)(6)(E)(i)(I). In turn, a requester has demonstrated a compelling need "with respect to a request made by a person primarily engaged in disseminating information" where there is "urgency to inform the public concerning actual or alleged Federal Government activity." *Id.* § 552(a)(6)(E)(v)(II).

Reviewing the request for expedited processing de novo, the Court concludes that Plaintiff has shown a likelihood of success on the merits. In making this determination, the Court considers the record before the agencies at the time of the determination. In its FOIA request to Defendant DOD, Plaintiff requested expedited processing. First, Plaintiff explained that it is an

8

organization primarily engaged in disseminating information. Ex. A, ECF No. 1-1. Plaintiff further explained that it "intends to produce one or more original investigative reports based on the analysis of the requested information." *Id*. Second, Plaintiff explained that it requested the information because there is an urgency to inform the public concerning Federal Government activity. According to Plaintiff, "the topic of the Defense Department's handling of the Ukraine Security Assistance program is a matter of immediate concern to the American public, given extensive media interest in the fate of the program and pressure placed upon the department regarding this program. These matters are the subject of imminent congressional hearings and action." *Id.* Plaintiff's proffer to Defendant OMB in its request for expedited processing was the same as its proffer to Defendant DOD in all relevant ways. Ex. B, ECF No. 1-1.

The Court finds that Plaintiff has established a likelihood of success on the merits of its requests for expedited processing because Plaintiff has shown a compelling need for obtaining the requested information in an expedited manner. Plaintiff has established that it is an entity primarily engaged in disseminating information. And, Plaintiff has explained that it requests the information in order to share the information with the public through investigative reports. Additionally, Plaintiff has established an urgent need to obtain the information which concerns Federal Government activity. Plaintiff explained that the subject matter of the requested information—the White House's potential influence on the USAI funding—is of immediate concern to the American public due to the ongoing congressional hearings. In fact, Congress itself has issued subpoenas to both the DOD and the OMB which encompass the information requested by Plaintiff's FOIA requests. *See Infra* Sec. III.B. Given that the congressional hearings and any potential congressional action are "imminent," the Court finds that Plaintiff

adequately demonstrated that the value of the information would be lessened or lost absent expedited processing.

For these reasons, the Court concludes that Plaintiff has shown a likelihood of success on the merits of its requests for expedited processing.

### B. Plaintiff Shows Irreparable Harm

Plaintiff has also made a sufficient showing that it will suffer irreparable harm if a preliminary injunction is not issued. To show that a preliminary injunction is warranted, Plaintiff must demonstrate that there is a likelihood of irreparable harm. *See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) ("A movant's failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief."). The D.C. Circuit "has set a high standard for irreparable injury." *Id.* "First, the injury must be both certain and great; it must be actual and not theoretical." *Id.* (internal quotation marks omitted). "Second, the injury must be beyond remediation." *Id.*

In this case, the value and import of the information requested by Plaintiff is directly tied to the current, ongoing impeachment proceedings. The records sought by Plaintiff go to the core of the impeachment proceedings as alleged—whether or not President Trump and his administration withheld payments under the USAI in order to pressure Ukraine to conduct an investigation. As an impeachment proceeding has the potential to result in the removal of the President from office, the current impeachment proceedings are of the highest national concern.

Additionally, Plaintiff has requested the information in order to inform the public about matters relating to the impeachment proceeding. The dissemination of information relating to the ongoing impeachment proceedings contributes to an informed electorate capable of developing knowledgeable opinions and sharing those knowledgeable opinions with their elected leaders. As

10

the United States Supreme Court has opined, an informed public is "a structural necessity in a real democracy." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

If the requested information is released after the impeachment proceedings conclude, the information may still be of historical value. However, for Plaintiff, the primary value of the information lies in its ability to inform the public of ongoing proceedings of national importance; and, in these circumstances, "stale information is of little value." *Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988). As such, Plaintiff has shown that a delay in the release of the requested information would cause irreparable harm. *See Wash. Post.*, 459 F. Supp. 2d at 75 ("Because the urgency with which the plaintiff makes its FOIA request is predicated on a matter of current national debate, due to the impending election, a likelihood for irreparable harm exists if the plaintiff's FOIA request does not receive expedited treatment."); *Aguilera v. FBI*, 941 F. Supp. 144, 151-152 (D.D.C. 1996) (finding irreparable harm where the requested documents were to be used as evidence in an evidentiary hearing scheduled for the near future); *Am. Oversight*, 2019 WL 5665930, at * 3-4 (finding irreparable harm where the requested documents related to the ongoing impeachment proceedings).

Defendants counter that Plaintiff has failed to show irreparable harm because Plaintiff has failed to establish a date certain for when the impeachment proceedings will conclude causing the information to become stale. While congressional politicians have expressed hope that the impeachment proceedings will conclude by the end of the year, an end-date has yet to be announced. *See* Heather Caygle, Pelosi Has 'No Idea' if Impeachment Inquiry Will Wrap by Year's End, Politico (Nov. 17, 2019), https://www.politico.com/news/2019/11/17/pelosi-impeachment-democrats-trump-071315.

The Court finds that the lack of a precise end-date for the impeachment proceedings is not detrimental to Plaintiff's claim of irreparable harm. The impeachment proceedings are ongoing. And, in order to ensure informed public participation in the proceedings, the public needs access to relevant information. As such, irreparable harm is already occurring each day the impeachment proceedings move forward without an informed public able to access relevant information. Given that the impeachment proceedings are ongoing, that they are of immense national concern, and that they are intended to conclude by the end of the year, the Court finds that the processing of at least 106 pages and the release of non-exempt documents by December 12, 2019, with the remaining approximately 106 pages processed and the non-exempt documents released by December 20, 2019, is reasonable. *See Wash. Post*, 459 F. Supp. 2d at 75 (preliminary injunction requiring production of responsive documents in 10 days).

Defendants further argue that Plaintiff has failed to show irreparable harm because "it is likely that much of the information in any responsive records will be exempt from disclosure." Defs.' Opp'n, ECF No. 10, 21. While some of the requested information may very well be exempt from disclosure, Plaintiff's Motion requests only non-exempt information. And, at this point in the litigation, knowing nothing about the content of the responsive documents, the Court is not prepared to find that all of the requested information is exempt from FOIA.

Moreover, absent an expedited response to Plaintiff's FOIA request, it is not clear to the Court that the public would otherwise have access to this relevant information. Congress has sought similar documents from both the DOD and the OMB through subpoenas. *See* Letter from Adam Schiff, Chairman, House Permanent Select Comm. on Intelligence, Eliot Engle, Chairman, House Comm. on Foreign Affairs, and Elijah Cummings, Chairman, House Comm. on Oversight and Reform, to Mark T. Esper, Sec. of Defense (Oct. 7, 2019); *see also* Letter from

12

Adam Schiff, Chairman, House Permanent Select Comm. on Intelligence, Eliot Engle, Chairman, House Comm. on Foreign Affairs, and Elijah Cummings, Chairman, House Comm. on Oversight and Reform, to Russell T. Vought, Acting Director, Office of Management and Budget (Oct. 7, 2019). However, the White House has indicated that it has no intention of responding to these subpoenas due to White House concerns about the validity of the impeachment process. *See* Letter from Pat A. Cipollone, Counsel to the President, to Nancy Pelosi, Speaker, House of Representatives, Adam Schiff, Chairman, House Permanent Select Comm. on Intelligence, Eliot Engle, Chairman, House Comm. on Foreign Affairs, and Elijah Cummings, Chairman, House Comm. on Oversight and Reform (Oct. 8, 2019). And, even if the DOD and the OMB were to provide the requested documents to the House of Representatives, there is no guarantee that such documents would be made public.

For these reasons, the Court concludes that Plaintiff has shown irreparable harm absent a preliminary injunction.

### C. The Balance of Hardships and the Public Interest Weigh in Plaintiff's Favor

Finally, the Court finds that Plaintiff has shown that the balance of hardships and the public interest weigh in favor of granting injunctive relief. "'These factors merge when the Government is the opposing party.'" *FBME Bank Ltd. v. Lew*, 125 F. Supp. 3d 109, 127 (D.D.C. 2015) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)). When balancing the equities, the Court must "consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (internal quotation marks omitted). Moreover, "courts of equity should [have] particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* (internal quotation marks omitted).

13

Here, the Court finds that the hardship placed on Defendants is minimal. The Court acknowledges that Defendants have a pressing FOIA backlog. However, Defendants' search in response to Plaintiff's FOIA requests identified only approximately 211 pages for processing. Notice, ECF No. 13. Additionally, Plaintiff requests only non-exempt information, which means that Defendants will not be required to create a *Vaughn* index or to provide declarations in support of withholdings at this time. Moreover, Defendants have already agreed to process and produce some responsive, non-exempt documents by December 12, 2019, with the remainder of non-exempt documents processed and released by December 20, 2019. *Id*. From the time that Defendants agreed to make an initial production on December 12, 2019, Defendants had approximately three weeks to process responsive documents in preparation for that production. As such, the only concession required is that Defendants agree to process at least 106 pages and release non-exempt records by December 12, 2019—the agreed upon date for an initial production. As Defendants, presumably, will not be waiting until the final week to process the majority of the responsive documents, processing at least half the pages by December 12, 2019 presents a minimal burden.

Additionally, the Court finds that the hardship on other FOIA requesters is not a bar to relief. The grant of a preliminary injunction in this case will likely place Plaintiff's request ahead of others in Defendants' FOIA queues. However, the Court finds that the extraordinary circumstances presented in this case warrant such line-cutting. Moreover, as of the date of Defendants' Opposition, Defendant DOD had received at least 12 other FOIA requests and Defendant OMB had received at least 22 other FOIA requests all related to the same subject matter as Plaintiff's FOIA requests. Defs.' Opp'n, ECF No. 10, 6, 8. In processing the documents

responsive to Plaintiff's FOIA requests, Defendants will also be completing some of the work necessary for processing the other, similar FOIA requests.

Finally, the Court finds that public interest merits the extraordinary relief of a preliminary injunction in this case. "There is public benefit in the release of information that adds to citizens' knowledge" of the activities of their government. *Ctr. To Prevent Handgun Violence v. U.S. Dep't of Treasury*, 49 F. Supp. 2d 3, 5 (D.D.C. 1999). Here, Plaintiff's FOIA requests relate to the federal government's activities concerning the USAI, the subject matter of ongoing impeachment proceedings.

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). This case presents an archetypal FOIA case. The requested information has the potential to inform citizens about an issue of the highest national concern—the validity of impeachment proceedings alleging that the President conditioned the USAI funding on Ukraine's agreement to conduct an investigation. In a functioning democracy, an informed electorate always inures to the public benefit.

Accordingly, the Court finds that both the balance of the hardships and the public interest weigh in favor of granting a preliminary injunction.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's [4] Motion for a Preliminary Injunction is GRANTED. Plaintiff has shown that it has a likelihood of success on the merits, that it will face irreparable harm, and that the balance of the hardships and the public interest weigh in Plaintiff's favor. The Court ORDERS that Defendants process at least 106 pages of responsive records by

15

DECEMBER 12, 2019 and release the non-exempt documents to Plaintiff by DECEMBER 12, 2019. The Court further ORDERS that the remaining responsive, non-exempt documents be produced no later than DECEMBER 20, 2019. As practicable, Defendants shall release responsive, non-exempt documents to Plaintiff on a rolling basis between December 12, 2019 and December 20, 2019.

    An appropriate Order accompanies this Memorandum Opinion.

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge