**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR PUBLIC INTEGRITY,⟩<br><br>⟩ Plaintiff, ⟩<br>⟩<br>v. ⟩<br>⟩ U.S. DEPARTMENT OF DEFENSE, ⟩<br>⟩ and ⟩<br>⟩ OFFICE OF MANAGEMENT AND ⟩ BUDGET, ⟩<br>⟩ Defendants. ⟩<br>⟩ | Civil Action No. 1:19-cv-03265 (CKK) |

<u>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**</u>

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, Defendants the U.S.

Department of Defense and the Office of Management and Budget hereby move the Court to

enter summary judgment in their favor. Attached in support of this motion are: a memorandum

of points and authorities; a statement of material facts as to which there is no genuine issue; the

Declaration of David V. Trulio; the Declaration of Colonel Henry Dolberry, Jr. and exhibits

thereto, including Defendants' *Vaughn* Index; the Declaration of Heather V. Walsh and exhibits

thereto, including Defendants' *Vaughn* Index; and a proposed order.

Dated: January 31, 2020                    Respectfully submitted,

                                           JOSEPH H. HUNT
                                           Assistant Attorney General

                                           MARCIA BERMAN
                                           Assistant Director
                                           Federal Programs Branch

  /s/ Amber Richer
AMBER RICHER (CA Bar No. 253918)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Tel: (202) 514-3489
Email: amber.richer@usdoj.gov

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR PUBLIC INTEGRITY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| U.S. DEPARTMENT OF DEFENSE, | ) |
| | ) |
| and | ) |
| | ) |
| OFFICE OF MANAGEMENT AND BUDGET, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Civil Action No. 1:19-cv-03265 (CKK)

**<u>DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................. 1

I.     OMB's Apportionment Function .................................................................................. 1

II.    Plaintiff's FOIA Requests ............................................................................................ 3

III.   Plaintiff's Motion for Preliminary Injunction ............................................................. 5

IV.    Defendants' Production ................................................................................................. 7

ARGUMENT ...................................................................................................................... 10

I.     Defendants Conducted an Adequate Search for Responsive Records ......................... 10

II.    Defendants Properly Withheld Exempt Information Pursuant to Well-Established FOIA
       Exemptions ................................................................................................................... 16

   A.   Defendants Properly Withheld Information Pursuant to FOIA's Exemption 1 ............ 16

   B.   Defendants Properly Withheld Information Pursuant to FOIA's Exemption 3 ............ 19

   C.   Defendants Properly Withheld Information Pursuant to FOIA's Exemption 5 ............ 22

      1.   Attorney-client privilege ........................................................................................ 22

      2.   Deliberative process privilege ................................................................................ 25

      3.   Presidential communications privilege ................................................................... 34

   D.   Defendants Properly Withheld Personal Information of Agency Employees Pursuant to
        FOIA's Exemption 6 ................................................................................................... 36

III.   Defendants Have Not Waived the Application of Any of These Exemptions ................ 40

IV.    Defendants Have Processed and Released All Reasonably Segregable Information ....... 42

CONCLUSION ................................................................................................................... 42

# TABLE OF AUTHORITIES

**Cases**

*Access Reports v. Dep't of Justice,*
    926 F.2d 1192 (D.C. Cir. 1991) ......................................................................... passim

*ACLU v. CIA,*
    710 F.3d 422 (D.C. Cir. 2013) ................................................................................ 40

*ACLU v. Dep't of Def.,*
    389 F. Supp. 2d 547 (S.D.N.Y. 2005) .................................................................... 20

*Agolli v. Office of Inspector Gen., U.S. Dep't of Justice,*
    125 F. Supp. 3d 274 (D.D.C. 2015)
    *aff'd*, No. 15-5273, 2016 WL 6238495 (D.C. Cir. Sept. 22, 2016) ......................... 11

*Army Times Pub. Co. v. Dep't of the Air Force,*
    998 F.2d 1067 (D.C. Cir. 1993) .............................................................................. 34

*Baker & Hostetler LLP v. U.S. Dep't of Commerce,*
    473 F.3d 312 (D.C. Cir. 2006) ................................................................................ 11

*Bloomberg, L.P. v. SEC,*
    357 F. Supp. 2d 156 (D.D.C. 2004) ........................................................................ 27

*Brayton v. Office of the U.S. Trade Representative,*
    641 F.3d 521 (D.C. Cir. 2011) .................................................................................. 9

*Bureau of Nat. Affairs, Inc. v. U.S. Dep't of Justice,*
    742 F.2d 1484 (D.C. Cir. 1984) ........................................................................ 26, 34

*CIA v. Sims,*
    471 U.S. 159 (1985) ................................................................................................ 16

*Coastal States Gas Corp. v. Dep't of Energy,*
    617 F.2d 854 (D.C. Cir. 1980) ........................................................................... 23, 27

*Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice,*
    331 F.3d 918 (D.C. Cir. 2003) ................................................................................ 16

*Ctr. for Pub. Integrity v. U.S. Office of Pers. Mgmt.,*
    No. 04-1274 GK, 2006 WL 3498089 (D.D.C. Dec. 4, 2006) .................................. 38

*DiBacco v. Dep't of the Army,*
    926 F.3d 827 (D.C. Cir. 2019) ................................................................................ 19

*Edmonds v. FBI*,
   272 F. Supp. 2d 35 (D.D.C. 2003) .......................................................................... 42

*Elec. Frontier Found. v. U.S. Dep't of Justice*,
   739 F.3d 1 (D.C. Cir. 2014) ........................................................................... 27, 32

*Elec. Privacy Info. Cntr. v. DHS*,
   928 F. Supp. 2d 139 (D.D.C. 2013) ........................................................................ 29

*Fed. Labor Relations Auth. v. U.S. Dep't of Treasury, Fin. Mgmt. Serv.*,
   884 F.2d 1446 (D.C. Cir. 1989) ............................................................................ 38

*Fed. Trade Comm'n v. Boehringer Ingelheim Pharm., Inc.*,
   892 F.3d 1264 (D.C. Cir. 2018) ............................................................................ 22

*Fitzgibbon v. CIA*,
   911 F.2d 755 (D.C. Cir. 1990) ............................................................................. 41

*Formaldehyde Inst. v. U.S. Dep't of Health and Human Servs.*,
   889 F.2d 1118 (D.C. Cir. 1989) ....................................................................... 22, 27

*Frugone v. CIA*,
   169 F.3d 772 (D.C. Cir. 1999) ............................................................................. 41

*Gold Anti-Tr. Action Comm., Inc. v. Bd. of Gov'rs*,
   762 F. Supp. 2d 123 (D.D.C. 2011) ........................................................................ 27

*In re Sealed Case*,
   121 F.3d 729 (D.C. Cir. 1997) ............................................................................. 35

*James Madison Project v. CIA*,
   344 F. Supp. 3d 380 (D.D.C. 2018) ......................................................................... 9

*Johnson v. Executive Office for United States Attorneys*,
   310 F.3d 771 (D.C. Cir. 2002) ............................................................................. 14

*Jordan v. U.S. Dep't of Justice*,
   591 F.2d 753 (D.C. Cir. 1978) ............................................................................. 26

*Juarez v. Dep't of Justice*,
   518 F.3d 54 (D.C. Cir. 2008) .............................................................................. 42

*Judicial Watch, Inc. v. Dep't of Justice*,
   365 F.3d 1108 (D.C. Cir. 2004) ....................................................................... 22, 35

*Judicial Watch, Inc. v. Export-Import Bank,*
   108 F. Supp. 2d 19 (D.D.C. 2000) ........................................................... 26

*Judicial Watch, Inc. v. FDA,*
   449 F.3d 141 (D.C. Cir. 2006) ......................................................... 37, 38

*Judicial Watch, Inc. v. U.S. Dep't of Def.,*
   715 F.3d 937 (D.C. Cir. 2013) ......................................................... 10, 16

*Larson v. Dep't of State,*
   565 F.3d 857 (D.C. Cir. 2009) ........................................... 13, 16, 17, 19

*Light v. Dep't of Justice,*
   968 F. Supp. 2d 11 (D.D.C. 2013) ............................................................. 9

*Long v. U.S. Office of Pers. Mgmt.,*
   692 F.3d 185 (2d Cir. 2012) .................................................................... 38

*Mapother v. Dep't of Justice,*
   3 F.3d 1533 (D.C. Cir. 1993) ................................................................... 26

*Mead Data Ctr., Inc. v. U.S. Dep't of Air Force,*
   566 F.2d 242 (D.C. Cir. 1977) ................................................................. 23

*Medina-Hincapie v. Dep't of State,*
   700 F.2d 737 (D.C. Cir. 1983) ................................................................. 41

*Meeropol v. Meese,*
   790 F.2d 942 (D.C. Cir. 1986) ................................................................. 13

*Military Audit Project v. Casey,*
   656 F.2d 724 (D.C. Cir. 1981) ................................................................. 10

*Nat'l Ass'n of Home Builders v. Norton,*
   309 F.3d 26 (D.C. Cir. 2002) ................................................................... 37

*Nat'l Inst. of Military Justice v. U.S. Dep't of Def.,*
   404 F. Supp. 2d 325 (D.D.C. 2005)
   *aff'd on other grounds,* 512 F.3d 677 (D.C. Cir. 2008) ....................... 19, 20

*Newport Aeronautical Sales v. Dep't of Air Force,*
   684 F.3d 160 (D.C. Cir. 2012) ................................................................. 21

*NLRB v. Sears, Roebuck & Co.,*
   421 U.S. 132 (1975) ................................................................................. 26

*Oglesby v. U.S. Dep't of Army*,
  920 F.2d 57 (D.C. Cir. 1990) .................................................................. 11, 13

*People for the Am. Way Found. v. Nat'l Park Serv.*,
  503 F. Supp. 2d 284 (D.D.C. 2007) ............................................................... 37

*Perry v. Block*,
  684 F.2d 121 (D.C. Cir. 1982) ....................................................................... 14

*Pinson v. Dep't of Justice*,
  313 F. Supp. 3d 88 (D.D.C. 2018) .................................................................. 39

*Protect Democracy Project, Inc. v. U.S. Dep't of Def.*,
  320 F. Supp. 3d 162 (D.D.C. 2018) ........................................................... 30, 36

*Quarles v. Dep't of the Navy*,
  893 F.2d 390 (D.C. Cir. 1990) ....................................................................... 32

*Renegotiation Board v. Grumman Aircraft Eng'g Corp.*,
  421 U.S. 168 (1975) ...................................................................................... 26

*Rockwell Int'l Corp. v. U.S. Dep't of Justice*,
  235 F.3d 598 (D.C. Cir. 2001) ....................................................................... 22

*Russell v. Dep't of the Air Force*,
  682 F.2d 1045 (D.C. Cir. 1982) ................................................................ 26, 29

*SafeCard Servs., Inc. v. SEC*,
  926 F.2d 1197 (D.C. Cir. 1991) ..................................................................... 11

*Safeway Stores Inc. v. FTC*,
  428 F. Supp. 346 (D.D.C. 1977) .................................................................... 41

*Schrecker v. U.S. Dep't of Justice*,
  349 F.3d 657 (D.C. Cir. 2003) ....................................................................... 14

*Shapiro v. Dep't of Justice*,
  153 F. Supp. 3d 253 (D.D.C. 2016) ............................................................... 37

*Sussman v. U.S. Marshals Serv.*,
  494 F.3d 1106 (D.C. Cir. 2007) ..................................................................... 42

*Tax Analysts v. IRS*,
  117 F.3d 607 (D.C. Cir. 1997) ....................................................................... 22

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press,*
   489 U.S. 749 (1989) ........................................................................................ 38

*U.S. Dep't of State v. Wash. Post Co.,*
   456 U.S. 595 (1982) ........................................................................................ 37

*United States v. Nixon,*
   418 U.S. 683 (1974) ........................................................................................ 35

*Upjohn Co. v. United States,*
   449 U.S. 383 (1981) ........................................................................................ 23

*ViroPharma Inc. v. HHS,*
   839 F. Supp. 2d 184 (D.D.C. 2012) ................................................................ 29

*Washington Post v. U.S. Dep't of Def.,*
   766 F. Supp. 1 (D.D.C. 1991) ................................................................... 41, 42

*Weisberg v. U.S. Dep't of Justice,*
   705 F.2d 1344 (D.C. Cir. 1983) ...................................................................... 15

*Weisberg v. U.S. Dep't of Justice,*
   745 F.2d 1476 (D.C. Cir. 1984) ................................................................. 11, 14

*Wolf v. CIA,*
   473 F.3d 370 (D.C. Cir. 2007) ........................................................................ 41

*Wolfe v. U.S. Dep't of Health and Human Servs.,*
   839 F.2d 768 (D.C. Cir. 1988) ........................................................................ 26

*Worldnetdaily.com, Inc. v. U.S. Dep't of Justice,*
   215 F. Supp. 3d 81 (D.D.C. 2016) ............................................................. 29, 34

### Statutes

5 U.S.C. §552 ........................................................................................................ 1

5 U.S.C. § 552(a)(4)(B) ....................................................................................... 10

5 U.S.C. § 552(b)(1) ............................................................................................ 16

5 U.S.C. § 552(b)(3) ............................................................................................ 19

5 U.S.C. § 552(b)(3)(A)(ii) .................................................................................. 21

5 U.S.C. § 552(b)(3)(B) ....................................................................................... 21

5 U.S.C. § 552(b)(5) ............................................................................................ 22

5 U.S.C. § 552(b)(9) ............................................................................................ 42

10 U.S.C. § 130c(a) .............................................................................................. 19

10 U.S.C. § 130c(b) ....................................................................................... 20, 21

31 U.S.C. § 501 ....................................................................................................... 1

31 U.S.C. § 1512 ..................................................................................................... 2

Pub. L. 106-398, 114 Stat. 1654 (Oct. 30, 2000) ............................................... 21

Pub. L. No. 104-231, 110 Stat. 3048 (Oct. 2, 1996) .......................................... 11

Pub. L. No. 115-245, 132 Stat. 2981 (Sept. 28, 2018) ......................................... 3

**Legislative Materials**

H.R. Rep. No. 89-1497 (1966) ............................................................................. 37

S. Rep. No. 89-813 (1965) ................................................................................... 37

S. Rep. No. 88-1219 (1964) ................................................................................. 37

**Regulations**

Exec. Order No. 13526, 75 Fed. Reg. 707 (Dec. 29, 2009) ........................... 17, 18

**Rules**

Fed. R. Civ. P. 56(a) ..................................................................................... 1, 9, 10

L.Cv.R. 7(h) ................................................................................................... 1, 9, 10

## INTRODUCTION

Plaintiff Center for Public Integrity challenges the decisions of Defendants the U.S. Department of Defense ("DoD") and the Office of Management and Budget ("OMB") to withhold information pursuant to statutory exemptions under the Freedom of Information Act ("FOIA"), 5 U.S.C. §552. Plaintiff submitted FOIA requests seeking communications both within DoD and between DoD and OMB about the Ukraine Security Assistance Initiative ("USAI"). Pursuant to this Court's Order issued November 25, 2019, ECF No. 16, Defendants produced all responsive, non-exempt information in an interim production on December 12, 2019, and a final production on December 20, 2019. Accordingly, Defendants are now entitled to summary judgment because they have fully complied with their obligations under FOIA. Defendants conducted a reasonable search for responsive records and appropriately withheld from production only information logically or plausibly subject to one or more of the following FOIA exemptions: (1) information properly deemed classified (Exemption 1); (2) information prohibited from disclosure by another statute (Exemption 3); (3) information protected by one or more legal privileges (Exemption 5); or (4) information protected from disclosure to preserve the personal privacy interests of individual employees at the defendant agencies (Exemption 6). Defendants thus have produced all reasonably segregable, non-exempt information that is responsive to Plaintiff's FOIA requests. Accordingly, Defendants now respectfully move for summary judgment on all claims. Fed. R. Civ. P. 56(a); L.Cv.R. 7(h).

## BACKGROUND

### I.     OMB's Apportionment Function

OMB "is an office in the Executive Office of the President," 31 U.S.C. § 501, and generally assists the President in carrying out his constitutional duty to "take Care that the Laws be faithfully executed." U.S. Const. Art. II, Sec. 3; Declaration of Heather V. Walsh ("Walsh

Decl.") ¶ 19. One way in which OMB carries out this general function is by ensuring that Federal agencies spend appropriated funds in an efficient and effective manner that is consistent with the purpose for which the funds were appropriated. Walsh Decl. ¶ 19. Congressional appropriations specify the purpose, time period, and amount of funding authorized. *Id.* Congress has authorized OMB to apportion funds appropriated for a definite period to ensure that they last for the entirety of the period for which they were apportioned by Congress, and to apportion funds appropriated for an indefinite period "to achieve the most effective and economical use." 31 U.S.C. §§ 1512, 1513; Walsh Decl. ¶ 19. This authority allows OMB to apportion funds for any time period or purpose authorized by the appropriation. 31 U.S.C. § 1512; Walsh Decl. ¶ 19.

In carrying out its apportionment function, OMB relies upon close collaboration with the relevant Federal agencies. Walsh Decl. ¶ 20. The decisionmaking process with respect to apportionments requires extensive back-and-forth discussion with agencies to gather information, evaluate and analyze data, and develop policy recommendations. Walsh Decl. ¶ 25. During this process, OMB routinely relies upon expertise at the agencies for detailed information about their respective programs and operations. Walsh Decl. ¶¶ 20-26. Ultimately, OMB staff use the information and recommendations gathered from the agencies during this process to make recommendations to the President concerning apportionments. Walsh Decl. ¶¶ 20-26.

Beginning around mid-June and continuing over the course of the summer of 2019, OMB engaged in precisely this collaborative process with DoD over the apportionment of approximately $214 million in DoD appropriations authorized for the USAI during fiscal year 2019. Walsh Decl. ¶ 21. The funds were authorized "to provide assistance, including training; equipment; lethal assistance; logistics support, supplies and services; sustainment; and intelligence support to the military and national security forces of Ukraine." *See* Department of

Defense Appropriations Act, 2019, Pub. L. No. 115-245, div. A, title IX, § 9013, 132 Stat. 2981,

3044 (Sept. 28, 2018). OMB officials, including Associate Director for National Security

Programs Michael Duffey, engaged in an ongoing dialogue with officials at DoD, particularly

DoD Acting Comptroller Elaine McCusker, to gather information and analysis with respect to

the USAI for the purpose of providing advice and recommendations to the President concerning

the apportionment of USAI funds. Walsh Decl. ¶ 21. These discussions between OMB and DoD

informed a series of decisions made over the course of the summer about the apportionment of

USAI funds. Walsh Decl. ¶¶ 17-26. Specifically, on July 25, 2019, OMB placed a footnote in the

apportionment for the account that includes the USAI funds that stated:

> Amounts apportioned, but not yet obligated as of the date of this reapportionment,
> for the Ukraine Security Assistance Initiative (Initiative) are not available for
> obligation until August 5, 2019, to allow for an interagency process to determine
> the best use of such funds. Based on OMB's communication with DoD on July 25,
> 2019, OMB understands from the Department that this brief pause in obligations
> will not preclude DOD's timely execution of the final policy direction. DOD may
> continue its planning and casework for the Initiative during this period.

Walsh Decl. ¶ 22; *Vaughn* Index Document Number ("Doc. No.") 3. In a series of decisions,

OMB issued apportionment footnotes extending this pause in the availability of appropriated

funds for obligation (often referred to alternatively as a "hold") for a limited period of time.

Walsh Decl. ¶ 23; *Vaughn* Index Doc. Nos. 1-5. OMB issued these apportionment footnotes, or

variations on them, on August 6, 15, 20, 27, and 31; and on September 5, 6, and 10, 2019. *Id.*

OMB removed the footnote to the apportionment for USAI funds on September 12, 2019,

thereby lifting the pause on the availability of USAI funds for obligation. Walsh Decl. ¶ 23;

*Vaughn* Index Doc. No. 4.

## II.      Plaintiff's FOIA Requests

This case concerns substantially similar and overlapping FOIA requests submitted by

Plaintiff to DoD and OMB for communications about the USAI. Dolberry Decl. ¶ 3 & Exhibit 1;

Walsh Decl. ¶ 5 & Exhibit 1.

On September 25, 2019, Plaintiff submitted a FOIA request to DoD seeking records of

communications between the DoD Comptroller's office and OMB concerning USAI. Dolberry

Decl. ¶ 3 & Exhibit 1. Specifically, the request seeks:

> All records reflecting any communication between Defense Department acting
> comptroller Elaine McCusker or other officials within the comptroller's office and
> employees or officials of the Office of Management and Budget concerning the
> Ukraine Security Assistance Initiative . . . dated between April 2019 and the date
> you process this request . . . **These should include any and all communications
> pertinent to apportionment requests related to the funds for this initiative
> during this period.**

Dolberry Decl. ¶ 3 & Exhibit 1 at 1 (emphasis in original). Additionally, the request seeks

internal DoD communications, specifically asking for similar "records reflecting communication

between Defense Department acting comptroller Elaine McCusker or other officials within the

comptroller's office and Secretary of Defense Mark Esper or Deputy Secretary of Defense David

Norquist." Dolberry Decl. ¶ 3 & Exhibit 1 at 1. On September 27, 2019, DoD sent a letter

acknowledging receipt and denying expedited processing of Plaintiff's FOIA request. Dolberry

Decl. ¶ 4 & Exhibit 2.

Meanwhile, on September 30, 2019, Plaintiff submitted a mirror-image FOIA request to

OMB seeking the same communications between the DoD comptroller's office and OMB

concerning USAI for the same time period. Walsh Decl. ¶ 5 & Exhibit 1 at 1. Specifically, the

request to OMB seeks:

> [A]ll records reflecting any communication between officials and employees of
> the [Office of Management and Budget] and the office of Defense Department
> acting comptroller Elaine McCusker or other officials within the comptroller's

4

[office] concerning the Ukraine Security Assistance Initiative . . . dated between April 2019 and the date [you process] this request . . . [**These**] **should include any and all communications pertinent to apportionment requests related to the funds for this initiative during this period.**

*Id.* (emphasis in original). The following day, October 1, 2019, OMB acknowledged receipt of Plaintiff's FOIA request. Walsh Decl. ¶ 6 & Exhibit 2.

### III.     Plaintiff's Motion for Preliminary Injunction

On October 30, 2019, Plaintiff filed its Complaint for Declaratory and Injunctive Relief, initiating this proceeding. ECF No. 1. On October 31, 2019, just one day after filing the complaint, Plaintiff filed a motion for preliminary injunction, seeking an order that would require DoD and OMB to process Plaintiff's FOIA requests and produce all non-exempt, responsive portions of records responsive to Plaintiff's FOIA requests by December 12, 2019. *See* Pl. Mot. for a Prelim. Inj., ECF No. 4 ("Pl. Mot."); Mem. in Supp. of Pl.'s Mot. for a Prelim. Inj., ECF No. 4 ("Pl. Mem."); Proposed Order, ECF No. 4-1 ("Pl. Proposed Order"). Defendants filed their response opposing the motion on November 12, 2019. *See* Defs.' Opp'n to Pl.'s Mot. for a Prelim. Inj., ECF No. 10 ("Def. Opp. to PI").

At the time that the parties were litigating Plaintiff's preliminary injunction motion, DoD already had completed its search and was in the process of reviewing search results. Def. Opp. to PI at 6; Dolberry Decl. ¶¶ 5, 6. Indeed, on October 3, 2019, the DoD General Counsel had issued a memorandum requesting cooperation from DoD components in identifying, preserving, and collecting documents and other records regarding the USAI and in responding to anticipated requests for such materials. Dolberry Decl. ¶¶ 5, 6; Def. Opp. to PI at 6. Accordingly, DoD had compiled a set of records from relevant custodians, from which focused searches could be conducted. Dolberry Decl. ¶¶ 5, 6; Def. Opp. to PI at 6. That set included the two DoD offices from which Plaintiff requested records. Dolberry Decl. ¶¶ 5, 6; Def. Opp. to PI at 6.

OMB similarly collected documents from an electronic search in October 2019, that was designed to ensure the broadest collection of records potentially responsive to the myriad Ukraine-related FOIA requests submitted to OMB. Walsh Decl. ¶ 11. However, because DoD was so much farther along in processing and because Plaintiff's request to OMB sought the same information Plaintiff requested from DoD, Defendants jointly determined to rely upon a single search conducted by DoD. Def. Opp. to PI at 10 ("Because the FOIA requests seek communications between DoD and OMB, DoD's responsive records will be the same as OMB's. . . . Given this fact, OMB proposes to rely upon DoD's search . . . rather than divert OMB's limited resources to a redundant search and review of its records for the same communications."). *See also, e.g.,* Declaration of Heather V. Walsh, ECF No. 10-2 (Nov. 12, 2019), *attached to* Def. Opp. to PI, ¶¶ 22-26. Accordingly, OMB proposed "having the Department of Defense continue expeditiously processing the records in its possession and allowing the Department to fulfill Plaintiff's overlapping FOIA requests on behalf of both agencies." *Id.* ¶ 24. Acknowledging the "possibility that this approach could result in a slightly over-inclusive or under-inclusive production that would only be revealed through separate searches by each agency," OMB nonetheless concluded that "the likelihood of such disparity is remote." *Id.* ¶ 25.

On November 19, 2019, the parties filed a Joint Status Report, ECF No. 12, in response to the Court's Minute Order (November 15, 2019) seeking additional information to assist the Court in determining "a reasonable timeline for processing the responsive documents, exclusive of duplicates, and releasing the non-exempt information." In that Joint Status Report, Defendants reiterated that OMB would be relying upon DoD's search in order to complete production by December 20, as Defendants proposed in that filing. Joint Status Report ¶ 3, ECF No. 12

(November 19, 2019) ("As stated in the Declaration of Heather Walsh (ECF No. 10-2), Defendant Office of Management and Budget ("OMB") proposes to rely upon the search conducted by Defendant Department of Defense ("DoD"), *rather than conduct a separate and duplicative search*. This approach will allow OMB to focus more efficiently upon reviewing a single set of documents.") (emphasis added). That same day, the Court held a teleconference to discuss scheduling relating to the processing and release of non-exempt, responsive documents. After that call, the Court issued a Minute Order requiring the parties to "to file a notice by noon on November 22, 2019, updating the Court as to the number of documents responsive to Plaintiff's FOIA requests, exclusive of duplicates." Pursuant to the Court's order, Defendants filed a Notice on November 22, 2019, informing the Court and Plaintiff that "the Department of Defense ('DoD') has reduced the number of documents to be processed to approximately 211 pages." Notice 2, ECF No. 13.

On November 25, 2019, the Court issued a Memorandum Opinion, ECF No. 17, and Order, ECF No. 16, granting the preliminary injunction and requiring Defendants to process half the 211 pages of responsive search results and produce responsive, non-exempt portions of those pages by December 12, 2019. Order, ECF No. 16. The Court further ordered that Defendant process the remaining half of the pages of search results and produce any non-exempt, responsive information by December 20, 2019. *Id.*

## IV.    Defendants' Production

After engaging in consultative review of the responsive search results, Defendants jointly made an interim production of 146 responsive pages on December 12, 2019, followed by a final production of the remaining 146 responsive pages on December 20, 2019. Dolberry Decl. ¶ 7; Walsh Decl. ¶ 8. Along with the final production on December 20, Defendants also re-released

15 pages from the interim production after determining to release additional information from those records. *Id.* Although Defendants initially had estimated that the total production would be approximately 211 pages, the actual production consisted of 292 pages. Dolberry Decl. ¶ 7; Walsh Decl. ¶ 8.

The day after Defendants' interim production, Plaintiffs filed a Motion to Enforce Preliminary Injunction, ECF No. 19, in which they argued that Defendants' interim production failed to comply with the Preliminary Injunction Order by improperly withholding information not subject to any statutory exemption. In an Order, ECF No. 20, issued that same day, December 13, 2019, the Court denied Plaintiff's Motion, finding that the Preliminary Injunction Order "required the production of only non-exempt information" and that "Defendants have complied with the Court's Order." The Court went on to "recognize[] that the issue of disputed exemptions will have to be litigated" and thus ordered the parties to submit a proposed schedule for submitting the *Vaughn* Index and conducting summary judgment briefing or cross-briefing. *Id*. The parties filed their respective proposals in a Joint Status Report on December 17, 2019, ECF No. 21, and the Court issued the current briefing schedule, Minute Order (Dec. 18, 2019).

On January 22, 2020, the parties conferred about narrowing of the matters at issue on summary judgment. Plaintiff indicated on January 23 that Plaintiff does not object to the Exemption 6 redactions of email addresses, phone numbers, and other similar contact information where the name of the person appears in the produced documents.

Concurrent with this filing, Defendants are releasing additional information from two pages previously produced to Plaintiff in the final production on December 20, 2019. Walsh Decl. ¶ 8. Defendants are making this additional release to be consistent with information already released on duplicate pages on December 20, 2019. *Id.*

In accordance with the Court's Order, Defendants now file this Motion for Summary
Judgment, along with the *Vaughn* Index and supporting declarations, as well as a statement of
material facts as to which there is no genuine issue. Fed. R. Civ. P. 56(a); L.Cv.R. 7(h).

## LEGAL STANDARD

Summary judgment is appropriate whenever the moving party demonstrates that "there is
no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of
law." Fed. R. Civ. P. 56(a). "When the court is presented with cross-motions for summary
judgment, it analyzes the underlying facts and inferences in each party's motion in the light most
favorable to the non-moving party." *James Madison Project v. CIA*, 344 F. Supp. 3d 380, 386
(D.D.C. 2018). However, "[a] dispute is 'genuine' only if a reasonable fact-finder could find for
the non-moving party; a fact is 'material' only if it is capable of affecting the outcome of the
litigation." *Id.*

Most FOIA cases are appropriately resolved on motions for summary judgment. *Brayton
v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011) (observing that
"the vast majority of FOIA cases can be resolved on summary judgment."). To be entitled to
summary judgment, "[t]he defendant in a FOIA case must show that its search for responsive
records was adequate, that any exemptions claimed actually apply, and that any reasonably
segregable non-exempt parts of records have been disclosed after redaction of exempt
information." *Light v. Dep't of Justice*, 968 F. Supp. 2d 11, 23 (D.D.C. 2013). Defendants bear
the burden of justifying the withholding of material responsive to Plaintiff's request, and this
Court reviews Defendants' response to that request *de novo*. *See* 5 U.S.C. § 552(a)(4)(B). "[A]n
agency's justification for invoking a FOIA exemption is sufficient if it appears logical or
plausible" to the court. *Judicial Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir.
2013) (per curiam) (citation omitted).

The Court may award summary judgment in a FOIA action solely on the basis of information provided by the agency through declarations that describe "the documents and the justifications for nondisclosure with reasonably specific detail," that "demonstrate that the information withheld logically falls within the claimed exemption[s]," and that are "not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (footnote omitted).

## ARGUMENT

Defendants are entitled to summary judgment because they have conducted an adequate search for responsive records and produced all non-exempt, records or portions of records responsive to Plaintiff's FOIA requests. Defendants appropriately withheld information logically or plausibly subject to one or more exemptions under the FOIA based upon the fact that such information is: (1) properly deemed classified (Exemption 1); (2) prohibited from disclosure by another statute (Exemption 3); (3) privileged (Exemption 5); or (4) protected from disclosure to preserve the personal privacy interests of individual employees at the defendant agencies (Exemption 6). Finally, Defendants carefully reviewed the responsive documents and have produced any reasonably segregable, non-exempt parts of those documents after redaction of the exempt information. Accordingly, Defendants are entitled to summary judgment on all claims. Fed. R. Civ. P. 56(a); L.Cv.R. 7(h).

### I.   DEFENDANTS CONDUCTED AN ADEQUATE SEARCH FOR RESPONSIVE RECORDS

An agency is entitled to summary judgment in a FOIA case with respect to the adequacy of its search if the agency shows "that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990), *superseded by statute on other grounds by* Electronic FOIA Amendments Act of 1996, Pub. L. No. 104-231,

110 Stat. 3048 (Oct. 2, 1996). "The adequacy of an agency's search for records in response to a FOIA request is measured by a standard of reasonableness and depends on the individual circumstances of each case." *Agolli v. Office of Inspector Gen., U.S. Dep't of Justice*, 125 F. Supp. 3d 274, 282 (D.D.C. 2015) (Kollar-Kotelly, J.), *aff'd*, No. 15-5273, 2016 WL 6238495 (D.C. Cir. Sept. 22, 2016). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). An agency can establish the reasonableness of its search by "reasonably detailed, nonconclusory affidavits describing its efforts." *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006). "Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

Applying these principles, Defendants have conducted an adequate search for responsive records. At the time that the parties were litigating Plaintiff's motion for a preliminary injunction, DoD had already begun processing documents potentially responsive to Plaintiff's requests. Dolberry Decl. ¶¶ 5, 6; Def. Opp. to PI at 6. In a memorandum dated October 3, 2019, the DoD General Counsel requested cooperation from DoD components in identifying, preserving, and collecting documents and other records regarding the USAI in anticipation of requests for such materials. Dolberry Decl. ¶ 5; Def. Opp. to PI at 6. The DoD Office of Information Counsel ("OIC"), the component of DoD's Office of General Counsel that oversees FOIA operations, identified relevant custodians in each pertinent office and requested that the information technology specialists conduct a search of the email folders and folders of electronically stored information on the custodians' individual drives at all classification levels.

Dolberry Decl. ¶ 5. The search terms used for this initial collection were: ""USAI" OR (("Ukraine" or "Ukrainian") AND ("security" OR "1250" OR ("FMF" OR "Foreign Military Financing") OR "impound" OR "obligation"))." Dolberry Decl. ¶ 5. The timeframe for the search was between May 1, 2019, and September 30, 2019. Dolberry Decl. ¶ 5. The resulting set of records was placed into e-discovery software. Dolberry Decl. ¶ 5. To respond to Plaintiff's FOIA requests, this set of records was searched for any electronic communications between the Acting Comptroller Ms. Elaine McCusker and any members in her Office and 1) the Secretary of Defense, the Deputy Secretary of Defense, and members of their immediate senior staff, and 2) all electronic communications between Ms. McCusker or her members of her staff with individuals whose email addresses exhibited the email domain used by personnel at OMB. Dolberry Decl. ¶ 6.

OMB had initiated a search of its files in October 2019, using broad search parameters intended to capture all records potentially responsive to the multiple Ukraine-related FOIA requests OMB had received. Def. Opp. to PI at 8; Walsh Decl. ¶ 11. But given the extremely short amount of time Plaintiff was demanding for a final response to its request, the overlap between the requests sent to DoD and OMB, and DoD's being further along in its processing, OMB determined that it made much more sense for DoD to continue expeditiously processing the communications between DoD and OMB in its possession and have DoD fulfill Plaintiff's overlapping FOIA requests on behalf of both agencies. As OMB explained to the Court in making this proposal, allowing OMB to proceed in this manner "will expedite the processing timeline by freeing up OMB's limited resources to focus on reviewing a single set of documents rather than independently collecting and reviewing the same documents twice and duplicating

the consultation process in the reverse direction as the Department [of Defense]." Declaration of

Heather V. Walsh ¶ 24, ECF No. 10-2.

OMB's reliance on DoD's search was reasonable, particularly in the circumstances of

this case. *Larson v. Dep't of State,* 565 F.3d 857, 869 (D.C. Cir. 2009) (quoting *Meeropol v.*

*Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986)) ("In determining whether the agency has discharged

its FOIA responsibilities, the issue [the Court] must resolve is whether the search for documents

was adequate, 'and adequacy is measured by the reasonableness of the effort in light of the

specific request.'"). As the Court acknowledged on page 6 of its Memorandum Opinion

explaining the basis for the preliminary injunction order, "preliminary injunctions are ordinarily

not awarded in FOIA cases," adding that "[h]owever, this is not an ordinary FOIA case." Mem.

Op. 6, ECF No. 17. The fact that Plaintiff requested from OMB only communications between

OMB and DoD made it entirely reasonable for Defendants to conclude that DoD's search for

those communications would yield any results which a separate but identical search of OMB's

files would be likely to yield. Moreover, Plaintiff's demand for production by December 12

effectively required extraordinary prioritization beyond even "expedited" processing; this

exigency made it reasonable for Defendants to place good-faith reliance upon the presumed

redundancy between the two agencies' records of their communications. *Oglesby*, 920 F.2d at 68

("There is no requirement that an agency search every record system.").

Significantly, at no point did Plaintiff object to Defendants' reliance on DoD's search,

despite Defendants consistently making clear to Plaintiff and the Court that that was what they

intended to do. *See, e.g.,* Declaration of Heather V. Walsh ¶¶ 20-26, ECF No. 10-2; Joint Status

Report ¶ 3, ECF No. 12 (November 19, 2019), ("As stated in the Declaration of Heather Walsh

(ECF No. 10-2), Defendant Office of Management and Budget ("OMB") proposes to rely upon

the search conducted by Defendant Department of Defense ("DoD"), *rather than conduct a separate and duplicative search*. This approach will allow OMB to focus more efficiently upon reviewing a single set of documents.") (emphasis added); Def. Opp. to PI at 10 ("Because the FOIA requests seek communications between DoD and OMB, DoD's responsive records will be the same as OMB's. . . . Given this fact, OMB proposes to rely upon DoD's search . . . rather than divert OMB's limited resources to a redundant search and review of its records for the same communications."). Given the emergency timeframes, the thoroughness of DoD's search, and the likelihood that a duplicative search at OMB would not identify unique results, Defendants exercised reasonable judgment in determining under the circumstances to rely upon DoD's search. *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 662 (D.C. Cir. 2003) ("FOIA, requiring as it does both systemic and case-specific exercises of discretion and administrative judgment and expertise, is hardly an area in which the courts should attempt to micro manage the executive branch.") (quoting *Johnson v. Executive Office for United States Attorneys,* 310 F.3d 771, 776 (D.C. Cir. 2002)). As all parties recognized at the time, this compromise made it possible for Defendants to meet Plaintiff's demand for production on an emergency timeframe. And the order to process and produce all responsive records by December 20 was predicated upon Defendants' representations and Defendants' estimate of the volume of responsive records based upon the search of DoD's files. *See* Order (November 25, 2019), ECF No. 16.

Having made a final production of all responsive, non-exempt records or portions of records after conducting a reasonable search, Defendants are not required to go back and perform additional searches to locate any additional records that Plaintiff might speculate exist. *Weisberg*, 745 F.2d at 1485; *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982) (agency need not demonstrate that all responsive documents were found and that no other relevant documents

could possibly exist). Nor is there any distinction between the agencies' production at the preliminary injunction stage and the summary judgment stage. In granting the preliminary injunction, again based on Defendants' representations about the search, the Court ordered Defendants to produce all non-exempt responsive records by December 20 and did not order additional searches and processing after that deadline. Furthermore, in proposing a summary judgment briefing schedule, Defendants made clear that they would be concentrating their resources post-production on preparing their *Vaughn* index and declarations and summary judgment submission. *See* Joint Status Report 2-3, ECF No. 21.[1]

Defendants have conducted in good faith a search they believe was reasonably calculated to uncover all responsive records. This is all that FOIA requires. Defendants were not required to conduct redundant searches for duplicative records in order to satisfy the standard of reasonableness. Having conducted a search that was "reasonably calculated to uncover all relevant documents," *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983), Defendants are entitled to summary judgment with respect to the adequacy of the search.

## II.    DEFENDANTS PROPERLY WITHHELD EXEMPT INFORMATION PURSUANT TO WELL-ESTABLISHED FOIA EXEMPTIONS

Although FOIA generally calls for "broad disclosure of Government records," the statute also recognizes that "public disclosure is not always in the public interest and thus provide[s] that agency records may be withheld from disclosure under any of the nine exemptions defined

---

[1] OMB notes that it recently conducted a search within its general Ukraine-related search results, collected in October 2019, for purposes of producing records in another FOIA case, *American Oversight v. OMB*, No. 19-cv-3213 (JEB) (D.D.C.). Walsh Decl. ¶ 11. For that production, made on January 21, 2020, OMB searched for sent emails of two OMB officials, Deputy/Acting Director Russell Vought and Associate Director for National Security Programs Michael Duffey. Walsh Decl. ¶ 12. In the course of making that production, OMB did not identify any new records responsive to the Plaintiff's request in this case that were not already produced in December 2019. Walsh Decl. ¶ 12. The fact that OMB did not identify any additional responsive records as a result of this search supports the reasonableness of OMB's reliance upon DoD's search of its files in this case, as this demonstrates that a redundant search at OMB would be unlikely to reveal additional responsive records.

in 5 U.S.C. § 552(b)." *CIA v. Sims*, 471 U.S. 159, 166-67 (1985). As noted above, Defendants' "justification for invoking a FOIA exemption is sufficient if it appears logical or plausible" to the court. *Judicial Watch*, 715 F.3d at 941 (per curiam) (citation omitted). In their production of responsive records, Defendants properly withheld information pursuant to FOIA Exemptions 1, 3, 5, and 6. Declaration of David V. Trulio ("Trulio Decl.") ¶ 11; Dolberry Decl. ¶¶ 12-26; Walsh Decl. ¶ 13. Defendants are entitled to summary judgment because they have withheld only information which one or more statutory exemptions logically and plausibly protects from disclosure.

## A. Defendants Properly Withheld Information Pursuant to FOIA's Exemption 1

Exemption 1 under the FOIA protects from disclosure information that is classified "under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" and "in fact properly classified pursuant to such Executive order." 5 U.S.C. §552(b)(1). The courts "accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record because the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse [e]ffects might occur as a result of a particular classified record." *Larson v. Dep't of State*, 565 F.3d 857, 864 (D.C. Cir. 2009) (quoting *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 927 (D.C. Cir. 2003)); *Judicial Watch*, 715 F. 3d at 940-41. "If an agency's statements supporting exemption contain reasonable specificity of detail as to demonstrate that the withheld information logically falls within the claimed exemption and evidence in the record does not suggest otherwise, as is the case here, the court should not conduct a more detailed inquiry to test the agency's judgment and expertise or to evaluate whether the court agrees with the agency's opinions." *Larson*, 565 F.3d at 865.

As explained in detail in the Trulio Declaration, Defendants have appropriately withheld under Exemption 1 information that has been properly classified in the interest of national security, pursuant to Classified National Security Information, Executive Order ("E.O.") No. 13526, 75 Fed. Reg. 707 (Dec. 29, 2009). Trulio Decl. ¶ 11. To establish that information has been properly withheld under Exemption 1, an agency must demonstrate that the information meets the four classification requirements set forth in section 1.1(a) of E.O. 13526: (1) an original classification authority is classifying the information; (2) the information is owned by, produced by or for, or is under the control of the U.S. Government; (3) the information falls within one or more of the categories of information listed in section 1.4 of Executive Order 13526; and (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in some level of damage to the national security, and the original classification authority is able to identify or describe the damage. Trulio Decl. ¶ 7; E.O. 13526 § 1.1(a). As relevant here, section 1.4(c) permits classification of information pertaining to, reflecting, or constituting "intelligence activities (including covert action), intelligence sources or methods, or cryptology;" 1.4(d) permits classification of information pertaining to "foreign relations or foreign activities of the United States;" and 1.4(g) permits classification of "vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security." Trulio Decl. ¶ 7.

In this case, DoD has concluded that the information withheld under Exemption 1 satisfies these classification criteria under E.O. 13526. Trulio Decl. ¶¶ 9-11. Mr. Trulio is authorized to exercise classification authority. Trulio Decl. ¶¶ 1, 8. Mr. Trulio has determined that the information withheld under Exemption 1 is currently and properly classified at the Secret

level, Trulio Decl. ¶¶ 10, 11, and attests that this determination has not been made for an unlawful or inappropriate purpose. Trulio Decl. ¶ 9.

Pursuant to Exemption 1, Defendants have withheld information from three documents. Trulio Decl. ¶ 11; *Vaughn* Index Doc. Nos. 108, 109, & 110. Document Nos. 108 and 109 contain briefing material and talking points produced by the Under Secretary of Defense for Policy to prepare the Secretary of Defense for a meeting to relay DoD's opinions and recommendations on the obligation of the USAI funds, and Document No. 110 is an email communication from the Under Secretary of Defense for Policy to the Secretary of Defense relaying the discussion that occurred at an interagency meeting on July 26 regarding Ukraine and the USAI funding. Trulio Decl. ¶ 11. Portions of all three documents are currently and properly classified at the Secret level pursuant to section 1.4(d) of E.O. 13526, because the information reflects foreign relations or foreign activities of the United States. Trulio Decl. ¶ 11. Specifically, the information withheld details how support to Ukraine might impact global competition and future economic opportunities of the United States, as well as the ramifications of such support on the relative geo-political strengths and weaknesses of both partners and competitors of the United States. Trulio Decl. ¶ 11. Information contained in document 110 also contains information regarding intelligence sources and methods, and is properly withheld pursuant to section 1.4(c) of E.O. 13526. Trulio Decl. ¶ 11.

As explained in the Trulio Declaration, disclosure of this information could reasonably be expected to damage national security interests. Trulio Decl. ¶¶ 12-13. Releasing this information could harm national security in several ways, including by undermining the confidence of allies, which is essential to continued cooperation on matters of mutual interest. *Id.* DoD has thus

determined that avoiding the disclosure of such information is essential to the Government's ability to pursue the geo-political, economic, and national security goals of the United States. *Id.*

The information withheld under Exemption 1 also contains intelligence information, including reference to intelligence sources and methods such as foreign liaison relationships. *Id.* DoD has determined that disclosure of such information could seriously jeopardize its use and diminish its value. *Id.*

Defendants therefore have properly withheld information pursuant to Exemption 1.

## B.   Defendants Properly Withheld Information Pursuant to FOIA's Exemption 3

Exemption 3 allows for the withholding of information "specifically exempted from disclosure by statute," provided that such statute either "(A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). "To invoke Exemption 3, the government 'need only show . . . that the withheld material falls within' a statute meeting the exemption's conditions." *DiBacco v. Dep't of the Army*, 926 F.3d 827, 835 (D.C. Cir. 2019) (quoting *Larson*, 565 F.3d at 865). Here, Defendants relied upon 10 U.S.C. § 130c, which provides that DoD "may withhold from public disclosure otherwise required by law sensitive information of foreign governments in accordance with this section." 10 U.S.C. § 130c(a). Dolberry Decl. ¶¶ 24, 25; *Vaughn* Index Doc. Nos. 8, 19, 26, 39, 80, and 81.

Courts have found that 10 U.S.C. § 130c meets the requirements of Exemption 3. *See Nat'l Inst. of Military Justice v. U.S. Dep't of Def.*, 404 F. Supp. 2d 325 (D.D.C. 2005) (plaintiff conceded that 10 U.S.C. § 130c satisfies the requirements of Exemption 3), *aff'd on other grounds*, 512 F.3d 677 (D.C. Cir. 2008); *ACLU v. Dep't of Def.*, 389 F. Supp. 2d 547, 554

(S.D.N.Y. 2005) (holding that "the statute does not provide that the promulgation of regulations is a necessary precondition to the statute's effectiveness," and thus rejecting argument that 10 U.S.C. § 130c does not apply on the basis that DoD has not promulgated regulations supporting the Secretary's determination). The statute plainly meets the requirements of 5 U.S.C. § 552(b)(3) by establishing particular criteria for withholding sensitive information of foreign governments. Pursuant to the statute, "information is sensitive information of a foreign government only if the national security official concerned," here the Secretary of Defense according to subsection (h), makes three required determinations with respect to the information, as prescribed in subsection (b). 10 U.S.C. § 130c(b). Specifically, to withhold as sensitive information of foreign governments under 10 U.S.C. §130c, Secretary of Defense must find:

(1) That the information was provided by, otherwise made available by, or produced in cooperation with, a foreign government or international organization.

(2) That the foreign government or international organization is withholding the information from public disclosure (relying for that determination on the written representation of the foreign government or international organization to that effect).

(3) That any of the following conditions are met:

(A) The foreign government or international organization requests, in writing, that the information be withheld.

(B) The information was provided or made available to the United States Government on the condition that it not be released to the public.

(C) The information is an item of information, or is in a category of information, that the national security official concerned has specified in regulations prescribed under subsection (g) as being information the release of which would have an adverse effect on the ability of the United States Government to obtain the same or similar information in the future.

*Id.* Thus, this statute clearly satisfies the requirements of 5 U.S.C. § 552(b)(3). *Newport Aeronautical Sales v. Dep't of Air Force*, 684 F.3d 160, 165 (D.C. Cir. 2012) (because the

withholding statute "plainly sets forth a 'particular type[ ] of matter[ ] to be withheld,' 5 U.S.C. § 552(b)(3)(A)(ii), [the relevant statute] readily qualifies as an Exemption 3 statute."). Although "[t]o qualify as an Exemption 3 statute, a statute enacted after the OPEN FOIA Act of 2009 must also specifically cite to the relevant paragraph of FOIA," 5 U.S.C. § 552(b)(3)(B), "[t]hat requirement is not at issue here because . . . [the statute] was enacted well before 2009." *Id.* at 165. Here, the statute permitting the withholding of sensitive information of foreign governments was adopted in 2000, Pub. L. 106-398, 114 Stat. 1654 (Oct. 30, 2000); thus the statute need not expressly refer to FOIA to qualify as a withholding statute under Exemption 3. Accordingly, there can be no doubt that 10 U.S.C. § 130c meets the requirements of FOIA Exemption 3.

Having clearly established that the statute meets the conditions of Exemption 3, DoD need only show that the information withheld in this case falls within the ambit of 10 U.S.C. § 130c. As the Dolberry Declaration explains, DoD withheld pursuant to Exemption 3 specific, sensitive information about the military equipment that Ukraine needed to fulfill its national security needs, the specification of the equipment, and their associated costs. Dolberry Decl. ¶ 25. This information is based upon extensive cooperation between the United States and Ukraine regarding what military aid best supports the national security interests of both countries. *Id.* Given the sensitivities of the information, which could reveal both Ukraine's capabilities and potential vulnerabilities, the Ukrainian government has informed the United States that Ukraine does not publicize such information and requested, in writing, that such information not be produced under the FOIA. *Id.* The Department has agreed to comply with that request from a foreign government, and accordingly withheld such information pursuant to 10 U.S.C. § 130c. Dolberry Decl. ¶ 25; *Vaughn* Index Doc. Nos. 8, 19, 26, 39, 80, & 81.

Accordingly, Defendants are entitled to summary judgment with respect to the withholding of information pursuant to Exemption 3.

### C.      Defendants Properly Withheld Information Pursuant to FOIA's Exemption 5

FOIA Exemption 5 generally exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption "encompass[es] the protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context," including the attorney-client, deliberative process, and presidential communications privileges. *Rockwell Int'l Corp. v. U.S. Dep't of Justice*, 235 F.3d 598, 601 (D.C. Cir. 2001) (quoting *Formaldehyde Inst. v. U.S. Dep't of Health and Human Servs.*, 889 F.2d 1118, 1121 (D.C. Cir. 1989)); *see also Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1113 (D.C. Cir. 2004). Accordingly, Defendants have withheld under Exemption 5 information protected by one or more of these privileges. Dolberry Decl. ¶ 13; Walsh Decl. ¶ 14.

### 1.      Attorney-client privilege

The attorney-client privilege protects "a confidential communication between attorney and client if the communication was made for the purpose of obtaining or providing legal advice." *Fed. Trade Comm'n v. Boehringer Ingelheim Pharm., Inc*., 892 F.3d 1264, 1267 (D.C. Cir. 2018). "In the governmental context, the 'client' may be the agency and the attorney may be an agency lawyer." *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997). "The privilege covers both (i) those communications in which an attorney gives legal advice; and (ii) those communications in which the client informs the attorney of facts that the attorney needs to understand the problem and provide legal advice." *Boehringer Ingelheim Pharm., Inc*., 892 F.3d at 1267. To invoke the attorney-client privilege, a party must demonstrate that the information it

seeks to withhold: (1) involves "confidential communications between an attorney and his client"; and (2) relates to "a legal matter for which the client has sought professional advice." *Mead Data Ctr., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977). A court may infer confidentiality when the communications suggest that "the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980). The attorney-client privilege reflects the Supreme Court's finding "that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

Defendants appropriately withheld pursuant to the attorney-client privilege, information in confidential communications involving attorneys in DoD or OMB's Office of General Counsel and relating to legal matters for which DoD or OMB sought legal advice. Dolberry Decl. ¶¶ 13-19; Walsh Decl. ¶¶ 27-29; *Vaughn* Index Doc. Nos. 20, 21, 24, 31, 33, 34, 38, 40, 41, 42, 45, 46, 47, 51, 52, 54, 65, 66, 69, 70, 71, 73, 74, 75, 76, 77, 94, 95, 96 & 98. Over the course of the decisionmaking process, officials at DoD and OMB sought advice and analysis from agency attorneys concerning various legal issues, such as the technical drafting of apportionment footnotes and talking points, as well as the legal implications of extensions of the apportionment footnote pausing the availability of USAI funds for obligation. *Id.* Officials at DoD and OMB also discussed and shared with each other the legal advice that each had received from their respective agency attorneys. Walsh Decl. ¶ 28.

Much of the information withheld under the attorney-client privilege consists of communications from DoD Acting Comptroller Elaine McCusker to DoD General Counsel Paul Ney conveying confidential information and analysis to keep the General Counsel fully informed

so that he could provide sound legal advice and advocacy. *See Boehringer Ingelheim Pharm., Inc.*, 892 F.3d at 1267 (attorney-client privilege covers "those communications in which the client informs the attorney of facts that the attorney needs to understand the problem and provide legal advice."). For example, emails dated September 5, 2019, from Ms. McCusker to Mr. Ney provide a "level of detail," in anticipation of another apportionment footnote from OMB, for the purpose of obtaining informed legal advice, particularly in the context of the ongoing decisionmaking process among senior DoD officials about how to engage with OMB concerning the pause on the availability of USAI funds. Dolberry Decl. ¶¶ 18, 19; Walsh Decl. ¶¶ 28, 29; *Vaughn* Index Doc. Nos. 38, 95, & 96. Similarly, an email dated August 21, 2019, from Ms. McCusker to Mr. Ney and other DoD leaders provides an update on the latest USAI apportionment footnote from OMB; the information withheld from this email reflects confidential communications with the General Counsel that were sent for the express purpose of making sure he was kept "in the loop on the latest" so that he could provide sound legal advice in this situation. Dolberry Decl. ¶¶ 18, 19; *Vaughn* Index Doc. No. 40. These communications also helped inform the requested legal analysis of issues such as the legal implications of the ongoing pause on the availability of USAI funds. Dolberry Decl. ¶ 19; Walsh Decl. ¶¶ 28, 29. Such communications must be protected to avoid a chilling effect on agency personnel's continued provision of necessary information to agency attorneys for the purpose of keeping them fully informed and thus in position to provide sound legal advice and advocacy. Dolberry Decl. ¶¶ 14-19; Walsh Decl. ¶¶ 28, 29.

Defendants also have withheld pursuant to attorney-client privilege, back-and-forth discussions involving agency attorneys concerning a variety of legal questions. As noted above, these communications concerned the legal issues involved in the technical drafting of documents

such as the apportionment footnotes and talking points for responding to inquiries about the apportionment footnotes, determining the duration of the pause on the availability of appropriated USAI funds for obligation, and the potential consequences associated with the pause on the availability of USAI funds for obligation. Dolberry Decl. ¶¶ 13, 16-19; Walsh Decl. ¶¶ 27-29. For instance, Documents 20 and 21 include legal questions about draft talking points and discussion of responsive legal analysis provided by DoD and OMB attorneys. Dolberry Decl. ¶¶ 16, 17. Attorney-client privilege also applies to communications with agency attorneys involving questions and information relevant to the analysis of fiscal law issues with respect to the continuation of the pause on obligation of USAI funds. Dolberry Decl. ¶ 19; Walsh Decl. ¶¶ 28, 29; *Vaughn* Index Doc. Nos. 38, 40, 65, 75, 76, 94, 95, 96, 97, 98, & 111. Disclosure of such legal consultations likewise would undermine the ability of agency officials at OMB and DoD to obtain sound, candid legal advice to inform their decisionmaking.

Defendants also have withheld under attorney-client privilege confidential communications in which agency officials are discussing their understanding of the legal advice provided by attorneys in the OMB and DoD Offices of General Counsel. Walsh Decl. ¶ 28. During the course of the decisionmaking process with respect to the series of apportionment footnotes, officials at OMB and DoD discussed and shared the legal advice that each received from their respective legal offices. Walsh Decl. ¶ 28. Such communications must be protected to avoid disclosing the confidential legal advice of agency attorneys, so that agency officials can continue to receive candid advice from agency attorneys. Walsh Decl. ¶ 29.

Agency officials and attorneys must be able to communicate freely with each other in seeking and conveying legal advice concerning issues like the USAI apportionment. Application of the attorney-client privilege in this context upholds the public purpose of allowing agencies to

obtain sound legal advice through free and candid communication. Defendants thus have properly applied Exemption 5 to withhold information protected by the attorney-client privilege.

### 2.      Deliberative process privilege

The deliberative process privilege is a "long-recognized privilege" intended to "prevent injury to the quality of agency decisions." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151, 152–53 (1975). The privilege is intended to "encourage the frank discussion of legal and policy issues within the government." *Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1194 (D.C. Cir. 1991) (quoting *Wolfe v. U.S. Dep't of Health and Human Servs.*, 839 F.2d 768, 773 (D.C. Cir. 1988) (*en banc*)) (internal quotation marks omitted). It also "protects the public from confusion that would result from premature exposure to discussions occurring before the policies affecting it had actually been settled upon" and ensures the "integrity of the decision-making process" by allowing agency officials to be judged for their final decisions, "not for matters they considered before making up their minds." *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982) (quoting *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 772-73 (D.C. Cir. 1978)).

The deliberative process privilege "protects materials that are both predecisional and deliberative." *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). The factors to be considered in finding that a record is predecisional include the decisionmaking authority of the person or office issuing the record, and whether the document has been generated as part of a continuing process of agency decisionmaking. *Bureau of Nat. Affairs, Inc. v. U.S. Dep't of Justice*, 742 F.2d 1484, 1497 (D.C. Cir. 1984) ("views submitted by one agency to a second agency that has final decisional authority are predecisional materials exempt from disclosure under FOIA") (citing *Renegotiation Board v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168,

187-88 (1975)). "To establish that a document is predecisional, the agency need not point to an agency final decision, but merely establish what deliberative process is involved, and the role that the documents at issue played in that process." *Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 35 (D.D.C. 2000) (citing *Formaldehyde Inst. v. HHS*, 889 F.2d 1118, 1223 (D.C. Cir. 1989)). Accordingly, "even if an internal discussion does not lead to the adoption of a specific government policy, its protection under Exemption 5 is not foreclosed as long as the document was generated as part of a definable decision-making process." *Gold Anti-Tr. Action Comm., Inc. v. Bd. of Gov'rs*, 762 F. Supp. 2d 123, 135–36 (D.D.C. 2011) (citation omitted). A deliberative record is one that "reflects the give-and-take of the consultative process." *Coastal States Gas*, 617 F.2d at 866.

The deliberative process privilege typically covers documents such as "drafts, recommendations, proposals, and suggestions that reflect the personal opinions of the author rather than the policy of the agency[.]" *Bloomberg, L.P. v. SEC*, 357 F. Supp. 2d 156, 168 (D.D.C. 2004). Deliberative process privilege covers briefing materials intended to advise and inform senior agency officials. *Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1196-97 (D.C. Cir. 1991). The privilege does not protect "purely factual . . . material," but it does cover factual material that would disclose "the inner workings of the deliberative process itself" or "is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations." *Elec. Frontier Found. v. U.S. Dep't of Justice*, 739 F.3d 1, 13 (D.C. Cir. 2014) (citations and internal quotation marks omitted).

In this case, Defendants properly applied the deliberative process privilege to a total of 81 documents. Walsh Decl. ¶ 16; Doc. Nos. 1, 6, 8, 9, 11, 12, 13, 14, 15, 16, 17, 20, 21, 22, 23, 24, 25, 28, 30, 31, 33, 34, 35, 36, 37, 38, 40, 41, 42, 43, 44, 45, 46, 47, 49, 51, 52, 53, 54, 56, 57, 60,

62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 82, 83, 86, 92, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110 & 111. As a threshold matter, all of these documents involve intra- or inter-agency communications. *Id.* In fact, Plaintiff's FOIA requests in this case specifically call for precisely such communications, making it entirely reasonable and foreseeable that a significant percentage of responsive records would contain information protected by the deliberative process privilege. *See, e.g.,* Def. Opp. to PI at 18 (anticipating that a large number of responsive records would contain communications protected by the deliberative process privilege). Many of these documents are emails exchanged between DoD and OMB officials, including DoD Acting Comptroller Elaine McCusker and OMB Principal Associate Director for National Security Programs Michael Duffey, as part of OMB's decisionmaking process in issuing a series of apportionment footnotes making USAI funds unavailable for obligation. Walsh Decl. ¶¶ 17-26. As explained above, OMB's process for gathering relevant information, making decisions, and providing advice and recommendations concerning such apportionments relies heavily upon ongoing and extensive consultation with the subject Federal agency, as it did here. Walsh Decl. ¶¶ 15-26. In general, Defendants have applied the deliberative process privilege to withhold discussions forming part of the creative review and development of draft documents; internal DoD discussions providing advice and recommendations to senior agency officials about various issues involving these decisions; strategic discussions about how to respond to inquiries from Congress and others; and discussions back and forth between DoD and OMB meant to inform the series of decisions involving the apportionment of funds appropriated for USAI. Dolberry Decl. ¶¶ 13-23; Walsh Decl. ¶¶ 15-26.

More specifically, Defendants have appropriately withheld under the deliberative process privilege internal DoD discussions in which DoD Acting Comptroller McCusker shares with senior DoD officials her analysis and recommendations concerning the timing required and logistical next steps needed to obligate the USAI funds by the end of the fiscal year on September 30, 2019. Dolberry Decl. ¶ 14. Such discussions are properly withheld under Exemption 5 because they reflect recommendations and advice being sent up to senior DoD officials as part of an ongoing deliberation within DoD about the agency's strategy for engaging with OMB concerning the series of apportionment footnotes issued by OMB to pause the availability of appropriated USAI funds for obligation. *Access Reports*, 926 F.2d at 1196-97 (memo properly withheld under Exemption 5 because it contributed to the decisionmaking process concerning "how to shepherd the FOIA bill through Congress"); *Worldnetdaily.com, Inc. v. U.S. Dep't of Justice*, 215 F. Supp. 3d 81 (D.D.C. 2016) (memo from AUSAs to supervisors conveying recommendation not to prosecute properly withheld under Exemption 5). These internal DoD discussions include advice and recommendations on whether and when to send a particular letter to OMB. Dolberry Decl. ¶ 14; *Vaughn* Index Doc. Nos. 6, 33, 34, 35, 36, 46, and 69. Draft versions of the letter, which was never signed, were also withheld under the deliberative process privilege. Dolberry Decl. ¶ 14; *Vaughn* Index Doc. Nos. 36 and 49. The D.C. Circuit has long recognized that the deliberative process privilege under Exemption 5 protects this type of creative discussion involved in developing such draft documents. *See, e.g., Russell*, 682 F. 2d at 1048 (recognizing the need for "creative debate and candid consideration of the alternatives," and finding that "[f]ailure to apply the protections of Exemption (b)(5) to the [agency's] editorial review process would effectively make such discussion impossible."); *Elec. Privacy Info. Cntr. v. DHS,* 928 F. Supp. 2d 139, 151-52 (D.D.C. 2013); *ViroPharma Inc. v.*

29

*HHS,* 839 F. Supp. 2d 184, 193 (D.D.C. 2012). To determine how to communicate with other Federal agencies in order to most effectively represent DoD's interests, senior DoD officials must be able to rely upon frank and candid internal advice, the release of which could chill DoD personnel from providing such advice in future deliberations. Dolberry Decl. ¶ 14.

Defendants have withheld information from document number 81 that reflects a DoD employee's analysis and estimated calculations with respect to the form and value of military support provided to Ukraine from other NATO countries. Dolberry Decl. ¶ 23. The release of the estimations calculated by a DoD employee, which were not confirmed by the foreign nations, could confuse the public by appearing to be established facts. *Id.*

Defendants also have withheld discussions involving the review of draft apportionment footnotes exchanged between agencies. *See, e.g.,* Walsh Decl. ¶ 16; *Vaughn* Index Doc. Nos. 9 & 30. Disclosing such information not only risks confusing the public about the agency's actual final decisions, but also could have a chilling effect on such discussions in the future if agency officials apprehend that their review of drafts in development will be exposed to public scrutiny. Walsh Decl. ¶¶ 24-26.

The deliberative process privilege also covers deliberative exchanges and talking points regarding how to respond to inquiries from the public, the press, or Congress because "[r]evealing their contents would expose the process by which agency officials crafted a strategy for responding to the press and to Congress." *Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 320 F. Supp. 3d 162, 177 (D.D.C. 2018) (explaining that "these sorts of documents reflect deliberation about the decision of how to respond to the press—or, as relevant in this case, to members of Congress."). Defendants have properly withheld under the deliberative process privilege information reflecting advice and recommendations about how to respond to requests

for information from Congress or the media, including the development of talking points.
Dolberry Decl. ¶ 15; Walsh Decl. ¶¶ 15-26; *Vaughn* Index Doc. Nos. 1, 6, 17, 20, 21, 28, 47, 62,
71, 95, 108, and 109.  These discussions are predecisional because they involve the development
of agency strategy regarding such responses and contain advice meant to inform the
decisionmaking process. *Id.* These discussions are also deliberative because they involve the
provision of advice and recommendations to decisionmakers. *Id.* Withholding of this information
is essential to ensure that agency employees can continue to engage in the honest and free
exchange of such analysis and recommendations, and to avoid public confusion regarding the
agency's official position. Dolberry Decl. ¶ 15; Walsh Decl. ¶¶ 15-26. Accordingly, this
information reflecting internal deliberations about how to respond to congressional and other
inquiries has been properly withheld under the deliberative process privilege.

    In addition, Defendants properly withheld under the deliberative process privilege
discussions regarding the effects of continuing the pause on the availability of USAI funds for
obligation. Dolberry Decl. ¶ 18; Walsh Decl. ¶¶ 15-26. Particularly in mid- to late August and
early September, DoD Acting Comptroller McCusker and other senior DoD officials exchanged
emails discussing how to respond to OMB's continuing issuance of apportionment footnotes
pausing obligation of USAI funds and the potential effects of the continued pause on the timing
and logistics of execution of the funding. Dolberry Decl. ¶ 18; Walsh Decl. ¶¶ 15-26; *Vaughn*
Index Doc. Nos. 38, 40, 65, 75, 76, 94, 95, 96, 97, 98, and 111. These discussions were
predecisional because they were intended to inform the ongoing decisionmaking process of
senior DoD officials deliberating how to engage with OMB concerning the series of decisions at
OMB about whether to extend the pause on the obligation of USAI funds by issuing another
apportionment footnote. Dolberry Decl. ¶ 18; Walsh Decl. ¶¶ 15-26. These discussions were

deliberative because they involve Ms. McCusker's providing her analysis of the implications of

the continuing pause for the purpose of providing advice about the potential ramifications if the

pause were extended. Dolberry Decl. ¶ 18; Walsh Decl. ¶¶ 15-26. Protecting the confidentiality

of these communications is essential to avoid chilling future provision of such candid advice to

senior agency leaders on sensitive matters. Dolberry Decl. ¶ 18; Walsh Decl. ¶¶ 15-26.

Defendants also withheld deliberative information from weekly updates from the

Comptroller to the Deputy Secretary of Defense. Dolberry Decl. ¶ 20. Six documents (*Vaughn*

Index Doc. Nos. 100-105) contain weekly reports from Ms. McCusker to the Deputy Secretary

of Defense that provide overviews of funding and related issues for military programs in

progress, including information on items unrelated to USAI. Dolberry Decl. ¶ 20. These reports

reflect Ms. McCusker's analysis of issues requiring attention and decisionmaking from senior

DoD officials, including her advice and recommendations on issues to be prioritized. Dolberry

Decl. ¶ 20. The withheld information from these reports includes such advice and

recommendations with respect to the pause in obligation of USAI funds. Dolberry Decl. ¶ 20.

The withheld information also includes entries unrelated to USAI, the disclosure of which could

chill candid reporting to senior officials in the future. Dolberry Decl. ¶ 20; *see Elec. Frontier*

*Found.*, 739 F.3d at 13 (allowing withholding of factual material if release would harm the

deliberative process); *Quarles v. Dep't of the Navy*, 893 F.2d 390, 392-93 (D.C. Cir. 1990)

(deliberative process privilege allows withholding of factual material on the grounds that

disclosure would expose agency's decisionmaking process and chill future deliberations).

Accordingly, information from the weekly reports has been properly withheld under the

deliberative process privilege.

Similarly, Defendants properly withheld information conveying advice and recommendations in internal briefing materials intended to prepare the Secretary of Defense for a high-level meeting concerning USAI funds. Dolberry Decl. ¶ 21; *Vaughn* Index Doc. Nos. 108 & 109. These documents contain briefing material and talking points from the Under Secretary of Defense for Policy to advise the Secretary of Defense in preparation for a meeting to relay DoD's opinions and recommendations on the obligation of the USAI funds. *Id.* The withheld information contains advice and recommendations to the Secretary about points to emphasize and thus ultimately reflect the advice and recommendations of the Department in a wider interagency Executive Branch deliberation. *Id.* The release of such information could chill future candid deliberations on important Executive Branch decisionmaking. *Id.* Accordingly, Defendants have properly withheld under the deliberative process privilege such advice and recommendations in briefing materials provided to the Secretary of Defense. *Id.*; *see Access Reports*, 926 F.2d at 1196-97 (briefing materials to prepare senior agency officials protected under deliberative process privilege).

Along the same lines, Defendants withheld information from an email from the Under Secretary of Defense for Policy for the Secretary of Defense, relaying the discussion that occurred at an interagency meeting on July 26 regarding Ukraine and the USAI funding. Dolberry Decl. ¶ 22; *Vaughn* Index Doc. No. 110. This "readout" memorializes the advice and recommendations of both DoD and other Executive Branch agencies, advice on how best to proceed, and requests for additional analysis from the relevant agencies. *Id.* The release of this information could similarly chill frank and candid deliberations on vital Executive Branch decisionmaking. *Id.* Defendants thus properly withheld this information pursuant to the deliberative process privilege. *Id.*

33

A number of the withholdings contain interagency discussions that formed part of OMB's investigation and analysis of the USAI program to inform OMB's recommendations and decisionmaking with respect to a series of apportionment footnotes affecting the obligation of funds appropriated for USAI. Walsh Declaration ¶¶ 15-26; *Vaughn* Index Doc. Nos. 1, 8, 9, 11, 12, 13, 14, 15, 16, 22, 23, 24, 25, 30, 31, 41, 42, 43, 51, 52, 53, 66, 67, 68, 74, and 106. Beginning sometime around mid-June 2019 and continuing throughout the summer of 2019, OMB reached out to DoD for information and analysis concerning the USAI. Walsh Decl. ¶ 21. These policy discussions remained ongoing and aimed to inform OMB's advice and recommendations concerning a series of apportionment actions. *Id.* These discussions are predecisional because they reflect the advice and recommendations of DoD personnel to decisionmakers at OMB, the agency with authority under 31 U.S.C. § 1512 to issue apportionment decisions. *Bureau of Nat'l Affairs*, 742 F.2d at 1497 (EPA budget recommendations to OMB properly withheld under Exemption 5 because "the President, not the EPA, makes the final decision" concerning budget requests to Congress). These discussions reflect the weighing of options, opinions, and arguments as part of the confidential discussions and deliberations that informed the Executive Branch's internal process of formulating policy regarding the use of USAI funds. Walsh Decl. ¶ 18. As explained in the Walsh Declaration, the discussions and information-gathering reflected in these documents are representative of the kinds of deliberations in which OMB routinely engages agencies across the Executive Branch of the Federal government. Walsh Decl. ¶¶ 24-26. OMB relies upon precisely this type of free-flowing, candid analysis from agency experts to understand affected Federal programs and thus carry out its apportionment duties pursuant to 31 U.S.C. §§ 1512 & 1513. Walsh Decl. ¶ 26. "Disclosure of that analysis could 'actually inhibit candor in the decision-making process if

made available to the public.' *Worldnetdaily.com*, 215 F. Supp. 3d at 85 (quoting *Army Times Pub. Co. v. Dep't of the Air Force*, 998 F.2d 1067, 1072 (D.C. Cir. 1993)). Maintaining the confidentiality of such discussions is essential to ensure that agency experts share fully with OMB their honest personal assessments. Walsh Decl. ¶¶ 24-26. Because such discussions are crucial to OMB's ability to perform its core responsibilities with respect to apportionment of appropriated funds, disclosing such confidential discussions here could be reasonably anticipated to undermine OMB's ability to carry out such crucial deliberations with respect to other Federal programs across the Executive Branch. Walsh Decl. ¶¶ 24-26. OMB therefore has appropriately applied the deliberative process privilege to maintain the confidentiality of back-and-forth discussions between OMB and DoD concerning the USAI. *Id.*

### 3.    Presidential communications privilege

Exemption 5 also includes the presidential communications privilege, which protects communications among the President and his advisors. *Judicial Watch v. Dep't of Justice*, 365 F.3d 1108 (D.C. Cir. 2004). The presidential communications privilege is "fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution." *United States v. Nixon*, 418 U.S. 683, 708 (1974). The privilege is intended to allow the "President and those who assist him" to "explore alternatives in the process of shaping policies and making decisions and to do so in a way many would be unwilling to express except privately." *Id.* "The President's need for complete candor and objectivity from advisers calls for great deference from the courts." *Id.* at 706.

The presidential communications privilege is broader than the deliberative process privilege. *See In re Sealed Case*, 121 F.3d 729, 745 (D.C. Cir. 1997). It "applies to documents in their entirety, and covers final and post-decisional materials as well as pre-deliberative ones." *Id.*

It also applies to "communications made by presidential advisers in the course of preparing advice for the President," including "when these communications are not made directly to the President." *Id.* at 752. In order "to provide sufficient elbow room for advisers to obtain information from all knowledgeable sources, the privilege must apply both to communications which these advisers solicited and received from others as well as those they authored themselves." *Id.* Although the privilege does not independently extend to executive branch agencies, it does encompass communications "solicited and received" by White House advisers and their staff "investigating and formulating the advice to be given the President." *Id.* "[E]ven if the legal analysis in the memorandum was not communicated to the President," solicitation by a presidential advisor "leading up to" a presidential decision will suffice to show "that the document was created for the purpose of advising the President on that decision." *Protect Democracy Project*, 320 F. Supp. 3d at 174.

Here, Defendants properly invoked the presidential communications privilege with respect to 24 documents. Walsh Decl. ¶ 31; *Vaughn* Index Doc. Nos. 12, 13, 20, 28, 33, 34, 35, 37, 44, 46, 56, 57, 63, 64, 66, 78, 82, 83, 92, 95, 99, 107, 108 & 109. Although the presidential communication privilege allows for a document to be withheld in full, Defendants have not withheld in full any documents involving protected presidential communications. Walsh Decl. ¶ 31. The determination to withhold information under the presidential communications privilege was made in consultation with the White House Counsel's Office. Walsh Decl. ¶ 32.

As the Walsh Declaration explains, the documents from which information has been withheld under the presidential communications privilege are emails that reflect communications by the President, the Vice President, or the President's immediate advisors regarding Presidential decisionmaking about the scope, duration, and purpose of the hold on USAI funds. Walsh Decl.

¶ 31. The information withheld under this privilege consists of either the status of an ongoing decisionmaking process involving the President, information that was solicited and received by the President as part of his official duties, or information that was solicited and received by the President's immediate advisors, including Robert Blair, who is an Assistant to the President and Senior Advisor to the White House Chief of Staff. Walsh Decl. ¶ 32. Mr. Blair's official duties and responsibilities include national security issues. Walsh Decl. ¶ 32. As the withheld information was solicited and received by the President or Mr. Blair, disclosure of such communications would foreseeably harm the quality of information and advice available to the President. Walsh Decl. ¶¶ 30-32.

### D. Defendants Properly Withheld Personal Information of Agency Employees Pursuant to FOIA's Exemption 6

Exemption 6 "protects information about individuals in 'personnel and medical files and similar files' when its disclosure 'would constitute a clearly unwarranted invasion of personal privacy.'" *Shapiro v. Dep't of Justice*, 153 F. Supp. 3d 253, 257 (D.D.C. 2016) (quoting 5 U.S.C. § 552(b)(6)). Congress intended the term "similar files" to be interpreted broadly. *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599-603 (1982) (citing H.R. Rep. No. 89-1497, at 11 (1966); S. Rep. No. 89-813, at 9 (1965); S. Rep. No. 88-1219, at 14 (1964)). "The Supreme Court has read Exemption 6 broadly, concluding the propriety of an agency's decision to withhold information does not 'turn upon the label of the file which contains the damaging information.'" *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006) (quoting *Wash. Post*, 456 U.S. at 601).

The D.C. Circuit has explained that Exemption 6 can embrace "bits of personal information, such as names," *Judicial Watch*, 449 F.3d at 152, but the mere fact that an agency file or record contains personal, identifying information is not enough—the information must

also be "of such a nature that its disclosure would constitute a clearly unwarranted privacy invasion," *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002). To make that determination, the agency weighs "'the private interest involved (namely the individual's right of privacy) against the public interest (namely, the basic purpose of [FOIA], which is to open agency action to the light of public scrutiny).'" *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 304 (D.D.C. 2007) (quoting *Judicial Watch*, 449 F.3d at 153). The privacy interest at issue belongs to the individual, not the agency holding information pertaining to the individual. *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 763-65 (1989).

In this case, Defendants properly withheld under Exemption 6 personal information of individual employees at the Defendant agencies, including the names of line-level employees at DoD as well as the email addresses and phone numbers of all agency employees. Dolberry Decl. ¶¶ 9-12; Walsh Decl. ¶ 33. Protection of such information avoids the risk that these employees will suffer harassment. *Id.* By contrast, disclosure of this information would not shed any light on agency decisionmaking processes. *Id.*

Particularly in a high-profile case such as this, line-level employees at DoD have a strong individual privacy interest in avoiding the disclosure of their names in connection with such a highly public matter. *See, e.g., Long v. U.S. Office of Pers. Mgmt.*, 692 F.3d 185, 192 (2d Cir. 2012) ("It is not uncommon for courts to recognize a privacy interest in a federal employee's work status (as opposed to some more intimate detail) if the occupation alone could subject the employee to harassment or attack."); *Fed. Labor Relations Auth. v. U.S. Dep't of Treasury, Fin. Mgmt. Serv.*, 884 F.2d 1446, 1453 (D.C. Cir. 1989) (holding that "federal employees have privacy interests in their names and home addresses that must be protected and that the relevant

public interest in disclosure, though not nothing, is outweighed"); *Ctr. for Pub. Integrity v. U.S. Office of Pers. Mgmt.*, No. 04-1274 GK, 2006 WL 3498089, at *6 (D.D.C. Dec. 4, 2006) ("Accordingly, because the privacy interest of the federal employees at issue in this case in the nondisclosure of their names and duty stations outweighs the minimal FOIA-related public interest in disclosure, the Court concludes that disclosure would constitute a 'clearly unwarranted invasion of personal privacy.'").

In this case, DoD has followed its general practice of withholding the names of individual employees who are at the military rank of Colonel or below and at the civilian federal pay level of GS-15 or below. Dolberry Decl. ¶ 9. Moreover, neither the Plaintiff nor the general public has any need to know the names of individual, line-level employees included in various communications. Disclosing the names of these employees would not serve FOIA's purpose of shedding light on governmental decisionmaking. Dolberry Decl. ¶ 10. The majority of DoD personnel involved in the discussions contained in the responsive records are senior officials, and Defendants have not withheld the names of such senior DoD officials. Dolberry Decl. ¶ 11. Accordingly, there is no reason why the privacy interest of individual, line-level employees in the non-disclosure of their names should be disturbed and these employees subjected to the unwarranted risk of harassment.

Similarly, Defendants have properly withheld the personal contact information of individual agency employees. Dolberry Decl. ¶¶ 9-12; Walsh Decl. ¶ 33; *Pinson v. Dep't of Justice*, 313 F. Supp. 3d 88, 112 (D.D.C. 2018) (observing that courts have come to differing conclusions regarding protection of work telephone numbers and email addresses of federal employees, and holding that such information is withholdable). As the requested records consist primarily of emails, the responsive documents contain throughout in the headings and signature

lines personal contact information such as email addresses, phone numbers, and office numbers of individual employees. Dolberry Decl. ¶ 11; Walsh Decl. ¶ 33. This information has been withheld throughout under 5 U.S.C. § 552(b)(6) to protect the privacy interests of these employees against the undue risk of harassment. Dolberry Decl. ¶¶ 11, 12; Walsh Decl. ¶ 33. The individuals involved have a strong privacy interest in avoiding the disclosure of their direct contact information, as such disclosure could lead to harassment. *Id.* Moreover, the Plaintiff and the general public can have little interest in the email addresses and phone numbers of the individuals involved. *Id.*

Disclosing the personal contact information of agency employees would not serve FOIA's purpose of shedding light on governmental decisionmaking. *Id.* Indeed, Plaintiff generally does not challenge the withholding of email addresses and phone numbers. When the parties conferred on January 22 & 23 about potentially narrowing the scope of issues to be litigated at summary judgment, Plaintiff agreed to the withholding under Exemption 6 of email addresses, phone numbers, and other similar contact information where the name of the person appears in the produced documents. Accordingly, this information has been properly withheld to avoid undue risk of harassment of agency employees.

Thus, Defendants have logically and plausibly applied Exemption 6 to protect agency employees from unwarranted harassment that could result from the disclosure of their personal information. Defendants therefore are entitled to summary judgment with respect to their withholding of private information pursuant to Exemption 6.

### III.   DEFENDANTS HAVE NOT WAIVED THE APPLICATION OF ANY OF THESE EXEMPTIONS

As shown above, Defendants have properly withheld information only where statutory exemptions logically and plausibly apply. A plaintiff seeking nonetheless to compel the

disclosure of such properly withheld information must bear the burden of showing that the

agency has waived the applicable statutory exemption by publicly disclosing that information

through an official acknowledgment. *ACLU v. CIA*, 710 F.3d 422, 426 (D.C. Cir. 2013). To

establish that the agency has officially acknowledged the information, a plaintiff must

demonstrate that such information: (1) is as specific as the information previously released; (2)

matches the information previously disclosed; and (3) already has been made public through an

official and documented disclosure. *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007) (citing

*Fitzgibbon v. CIA*, 911 F.2d 755, 765-66 (D.C. Cir. 1990)).

Even a purposeful disclosure of documents would not constitute a waiver of an applicable

FOIA exemption if the disclosure was unauthorized. *See, e.g.*, *Medina-Hincapie v. Dep't of

State*, 700 F.2d 737, 742 n.20 (D.C. Cir. 1983) (agency's unauthorized disclosure of documents

it seeks to withhold did not waive FOIA exemption); *Safeway Stores Inc. v. FTC*, 428 F. Supp.

346, 347 (D.D.C. 1977) ("In any event, an unauthorized 'leak' does not constitute a waiver of the

(b)(5) exemption."). Defendants are not obligated to confirm or acknowledge information as a

result of reports of unofficial disclosure through unidentified source(s). *Washington Post v. U.S.

Dep't of Def.*, 766 F. Supp. 1, 9 (D.D.C. 1991). Nor would even a possible disclosure by one

government agency constitute an official acknowledgement by another. *Frugone v. CIA*, 169

F.3d 772, 774 (D.C. Cir. 1999) ("we do not deem 'official' a disclosure made by someone other

than the agency from which the information is being sought").

Plaintiff cannot meet its burden to show that Defendants have waived the right to

withhold information by relying on news reports that are purportedly based upon review of

unredacted versions of some of the responsive documents. On January 2, 2020, Just Security

published an online report vaguely claiming the author "has viewed unredacted copies of these

41

emails."  *See* Kate Brannen, *Exclusive: Unredacted Ukraine Documents Reveal Extent of Pentagon's Legal Concerns*, Just Security (Jan. 2, 2020), https://www.justsecurity.org/67863/exclusive-unredacted-ukraine-documents-reveal-extent-of-pentagons-legal-concerns/. However, the article does not allege that either DoD or OMB has made an official acknowledgement of any of the emails the author reports to have seen. Defendants have not made an official disclosure of these emails and maintain their legal prerogative to withhold the information pursuant to the applicable statutory exemptions. *See, e.g., Edmonds v. FBI*, 272 F. Supp. 2d 35, 49 (D.D.C. 2003) (because "the statements in the press were made by anonymous sources, even documents containing identical information may properly be withheld because 'release would amount to official confirmation or acknowledgment of their accuracy.'") (quoting *Washington Post,* 766 F. Supp. at 9). Accordingly, Defendants have not waived their right to withhold information pursuant to statutory exemptions, and Defendants are entitled to summary judgment on all claims.

## IV.   DEFENDANTS HAVE PROCESSED AND RELEASED ALL REASONABLY SEGREGABLE INFORMATION

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b)(9). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). And a reviewing court "may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated." *Juarez v. Dep't of Justice*, 518 F.3d 54, 61 (D.C. Cir. 2008).

Here, the agencies have conducted a careful review of each responsive document and withheld only such portions which are exempt under 5 U.S.C. § 552(b). Dolberry Decl. ¶ 28; Walsh Decl. ¶ 34. Defendants have not withheld in full any responsive documents. *Id.* Accordingly, there can be no genuine dispute that Defendants have complied with their obligation to produce all reasonably segregable information and now are entitled to summary judgment on this issue.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their motion for summary judgment with respect to all claims and accordingly dismiss the present action.


Dated: January 31, 2020                     Respectfully submitted,



                                            JOSEPH H. HUNT
                                            Assistant Attorney General

                                            MARCIA BERMAN
                                            Assistant Director
                                            Federal Programs Branch


                                             /s/ Amber Richer
                                            AMBER RICHER (CA Bar No. 253918)
                                            Trial Attorney
                                            U.S. Department of Justice
                                            Civil Division, Federal Programs Branch
                                            1100 L Street, NW
                                            Washington, D.C. 20530
                                            Tel: (202) 514-3489
                                            Email: amber.richer@usdoj.gov

                                            *Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR PUBLIC INTEGRITY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 1:19-cv-03265 (CKK) |
| U.S. DEPARTMENT OF DEFENSE, | ) |
| | ) |
| and | ) |
| | ) |
| OFFICE OF MANAGEMENT AND BUDGET, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS**
**AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Local Civil Rule 7(h)(1), Defendants the U.S. Department of Defense ("DoD") and the Office of Management and Budget ("OMB") respectfully submit the following statement of material facts as to which there is no genuine dispute.

**I.      OMB's Apportionment Function**

1.      OMB "is an office in the Executive Office of the President," 31 U.S.C. § 501, and generally assists the President in carrying out his constitutional duty to "take Care that the Laws be faithfully executed." U.S. Const. Art. II, Sec. 3; Declaration of Heather V. Walsh ("Walsh Decl.") ¶ 19.

2.      One way in which OMB carries out this general function is by ensuring that Federal agencies spend appropriated funds in an efficient and effective manner that is consistent with the purpose for which the funds were appropriated. Walsh Decl. ¶ 19.

1

3.      Congressional appropriations specify the purpose, time period, and amount of funding authorized. Walsh Decl. ¶ 19.

4.      Congress has authorized OMB to apportion funds appropriated for a definite period to ensure that they last for the entirety of the period for which they were apportioned by Congress, and to apportion funds appropriated for an indefinite period "to achieve the most effective and economical use." 31 U.S.C. §§ 1512, 1513; Walsh Decl. ¶ 19.

5.      This authority allows OMB to apportion funds for any time period or purpose authorized by the appropriation. 31 U.S.C. § 1512; Walsh Decl. ¶ 19.

6.      In carrying out its apportionment function, OMB relies upon close collaboration with the relevant Federal agencies. Walsh Decl. ¶¶ 20, 24-26.

7.      The decisionmaking process with respect to apportionments requires extensive back-and-forth discussion with agencies to gather information, evaluate and analyze data, and develop policy recommendations. Walsh Decl. ¶¶ 24-26.

8.      During this process, OMB routinely relies upon expertise at the agencies for detailed information about their respective programs and operations. Walsh Decl. ¶¶ 24-26.

9.      OMB staff use the information and recommendations gathered from the agencies during this process to make recommendations to the President concerning apportionments. Walsh Decl. ¶¶ 24-26.

10.     Beginning around mid-June and continuing over the course of the summer of 2019, OMB engaged in precisely this collaborative process with DoD over the apportionment of approximately $214 million in DoD appropriations authorized for the USAI during fiscal year 2019. Walsh Decl. ¶ 21.

11.     The funds were authorized "to provide assistance, including training; equipment; lethal assistance; logistics support, supplies and services; sustainment; and intelligence support to the military and national security forces of Ukraine." Department of Defense Appropriations Act, 2019, Pub. L. No. 115-245, div. A, title IX, § 9013, 132 Stat. 2981, 3044-45 (Sept. 28, 2018).

12.     OMB officials, including Associate Director for National Security Programs Michael Duffey, engaged in an ongoing dialogue with officials at DoD, particularly DoD Acting Comptroller Elaine McCusker, to gather information and analysis with respect to the USAI for the purpose of providing advice and recommendations to the President concerning the apportionment of USAI funds. Walsh Decl. ¶ 21.

13.     These discussions between OMB and DoD informed a series of decisions made over the course of the summer about how to apportion USAI funds. Walsh Decl. ¶ 21.

14.     Specifically, on July 25, 2019, OMB placed a footnote in the apportionment for the account that includes the USAI funds that stated:

> Amounts apportioned, but not yet obligated as of the date of this reapportionment, for the Ukraine Security Assistance Initiative (Initiative) are not available for obligation until August 5, 2019, to allow for an interagency process to determine the best use of such funds. Based on OMB's communication with DoD on July 25, 2019, OMB understands from the Department that this brief pause in obligations will not preclude DOD's timely execution of the final policy direction. DOD may continue its planning and casework for the Initiative during this period.

Walsh Decl. ¶ 22; *Vaughn Index* Document Number ("Doc. No.") 3.

15.     OMB issued apportionment footnotes extending this pause in the availability of appropriated funds for obligation (often referred to alternatively as a "hold") for a limited period of time. Walsh Decl. ¶ 23; *Vaughn* Index Doc. Nos. 1-5.

16.     OMB issued these apportionment footnotes, or variations on them, on August 6, 15, 20, 27, and 31; and on September 5, 6, and 10, 2019. Walsh Decl. ¶ 23; *Vaughn* Index Doc. Nos. 1-5.

17.     OMB removed the footnote to the apportionment for USAI funds on September

12, 2019, thereby lifting the pause on the availability of USAI funds for obligation. Walsh Decl.

¶ 23; *Vaughn* Index Doc. No. 4.

## II.     Plaintiff's FOIA Requests

18.     On September 25, 2019, Plaintiff submitted a FOIA request to DoD seeking:

All records reflecting any communication between Defense Department acting comptroller Elaine McCusker or other officials within the comptroller's office and employees or officials of the Office of Management and Budget concerning the Ukraine Security Assistance Initiative . . . dated between April 2019 and the date you process this request. **These should include any and all communications pertinent to apportionment requests related to the funds for this initiative during this period.**

[and]

All records reflecting communication between Defense Department acting comptroller Elaine McCusker or other officials within the comptroller's office and Secretary of Defense Mark Esper or Deputy Secretary of Defense David Norquist concerning the Ukraine Security Assistance Initiative, including but not limited to letters, emails, memoranda, reports, appointment calendars, and telephone call logs, and dated between April 2019 and the date you process this request. **These should include any and all communications pertinent to apportionment requests related to the funds for this initiative during this period.**

Declaration of Colonel Henry Dolberry, Jr. ("Dolberry Decl.") ¶ 3 and Exhibit ("Exh.") 1

at 1 (emphasis in original).

19.     On September 27, 2019, DoD sent a letter acknowledging receipt and denying

expedited processing of Plaintiff's FOIA request. Dolberry Decl. ¶ 4 & Exh. 2.

20.     On September 30, 2019, Plaintiff submitted a FOIA request to OMB seeking:

All records reflecting any communication between officials and employees of the Office of Management and Budget and the office of Defense Department acting comptroller Elaine McCusker or other officials within the comptroller's [office] concerning the Ukraine Security Assistance Initiative . . . dated between April 2019 and the date you process this request. **These should include any and all communications pertinent to**

> **apportionment requests related to the funds for this initiative during this period.**

Declaration of Heather V. Walsh ("Walsh Decl.") ¶ 5 & Exh. 1 at 1 (emphasis in original).

21. The following day, October 1, 2019, OMB acknowledged receipt of Plaintiff's FOIA request. Walsh Decl. ¶ 6 and Exh. 2.

### III.   Defendants' Search for Records

22. In light of heightened interest in the Ukraine Security Assistance Initiative ("USAI"), on October 3, 2019, the DoD General Counsel had issued a memorandum to DoD components requesting cooperation in identifying, preserving, and collecting documents and other records regarding the USAI and in responding to anticipated requests for such materials. Dolberry Decl. ¶ 5.

23. Pursuant to this written guidance, the DoD Office of Information Counsel (OIC) has requested that information technology specialists conduct a search of the email folders and folders of electronically stored information on the "H drives" at all classification levels of individuals in various offices believed to have familiarity with the USAI designated as "custodians," including the Secretary of Defense, the Deputy Secretary of Defense, and members of their immediate staffs with relevant expertise or access; lawyers in the Office of the General Counsel with oversight or expertise as to fiscal matters and Ukraine; the Acting Under Deputy Secretary of Defense (Comptroller) and members of her staff who would have been involved in discussions regarding USAI; and relevant individuals in the Office of the Under Secretary of Defense for Policy with oversight or expertise relating to military aid or Ukraine. Dolberry Decl. ¶ 5.

24. The two DoD offices from which Plaintiff has requested records were included in this collection of records. Dolberry Decl. ¶ 5.

25.    The search terms used for this initial collection of potentially relevant material

were:   ""USAI" OR (("Ukraine" or "Ukrainian") AND ("security" OR "1250" OR ("FMF" OR

"Foreign Military Financing") OR "impound" OR "obligation"))." Dolberry Decl. ¶ 5.

26.    That set of records was placed into e-discovery software. Dolberry Decl. ¶ 5.

27.    The initial search was conducted for electronic records between May 1, 2019, and

early October 2019, when the search was conducted. Dolberry Decl. ¶ 5.

28.    The search was later supplemented with electronic records dated January 1, 2019

through April 30, 2019, using the same terms. Dolberry Decl. ¶ 5.

29.    To respond to Plaintiff's FOIA requests, the set of potentially responsive

electronic records collected pursuant to the General Counsel's October 3 memorandum was

searched for any electronic communications between the Acting Comptroller Ms. Elaine

McCusker and any members in her Office and 1) the Secretary of Defense, the Deputy Secretary

of Defense, and members of their immediate senior staff, and 2) all electronic communications

between Ms. McCusker or her members of her staff with individuals whose email addresses

exhibited the email domain used by personnel at OMB. Dolberry Decl. ¶ 6.

30.    This search was conducted when only the records dated between May 1, 2019,

and early October 2019, had been collected. Dolberry Decl. ¶ 6.

31.    As explained in the Declaration of Colonel Henry Dolberry, Jr., Defendants do

not believe responsive records exist in the records dated prior to May 1, 2019, because the letter

from Under Secretary of Defense for Policy John Rood to members of Congress certifying that

the Ukrainian government had taken sufficient action to trigger delivery of the USAI was dated

May 25, 2019. Dolberry Decl. ¶ 6.

32.     As of November 12, 2019, DoD had located approximately 500 potentially responsive records, although DoD anticipated that the final number would be much lower after removing duplicates and non-responsive records. ECF No. 10 at 6.

33.     By November 22, 2019, DoD had reduced its estimate of the volume to approximately 211 pages. ECF No. 13.

34.     To expedite Plaintiff's request and because time was of the essence, Defendants proposed without objection that OMB would not need to independently conduct a redundant search for the requested communications between OMB and the DoD, as Plaintiff's Request to OMB was fully subsumed by its FOIA request to DoD. Walsh Decl. ¶ 10.

35.     To meet the production deadlines under the preliminary injunction, OMB relied upon DoD's search results. Walsh Decl. ¶ 10.

36.     In October 2019, OMB collected documents through a back-end electronic search of all OMB employees' emails, calendars, and work folders. Walsh Decl. ¶ 11.

37.     OMB's back-end electronic search included the terms Ukraine, Ukraine Security Assistance Initiative, USAI, or Zelensk* (wild card). Walsh Decl. ¶ 11.

38.     All of the terms OMB used in running the October 2019 search were in the disjunctive to ensure the broadest collection of documents on the topic. Walsh Decl. ¶ 11.

39.     OMB searched this collection for purposes of producing records in another FOIA case, *American Oversight v. OMB*, No. 19-cv-3213 (JEB) (D.D.C.). Walsh Decl. ¶ 12.

40.     For that production, made on January 21, 2020, OMB searched for sent emails of two OMB officials, Deputy/Acting Director Russell Vought and Associate Director for National Security Programs Michael Duffey. Walsh Decl. ¶ 12.

41.     In the course of making that production, OMB did not identify any new records responsive to the Plaintiff's request in this case that were not already produced in December 2019. Walsh Decl. ¶ 12.

**IV.     Defendants' Production**

42.     During the review process, Defendants determined that the actual number of responsive pages was 292, not their prior estimate of 211. Dolberry Decl. ¶ 7; Walsh Decl. ¶ 8.

43.     Defendants jointly made an interim production of 146 pages on December 12, 2019. Dolberry Decl. ¶ 7; Walsh Decl. ¶¶ 8, 9.

44.     Defendants jointly made a final production of the remaining 146 pages on December 20, 2019. Dolberry Decl. ¶ 7; Walsh Decl. ¶¶ 8, 9.

45.     Along with the final production on December 20, Defendants also re-released 15 pages from the interim production after determining to release additional information from those records. Dolberry Decl. ¶ 7; Walsh Decl. ¶¶ 8, 9.

46.     For consistency, concurrent with this filing, Defendants are releasing additional information from two pages previously produced to Plaintiff in the final production on December 20, 2019; the two pages are: CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 025 and CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 073. Walsh Decl. ¶ 8.

47.     Defendants produced all 292 pages of responsive records and have not withheld in full any responsive pages. Dolberry Decl. ¶¶ 7, 28; Walsh Decl. ¶ 9.

48.     Defendants have withheld information pursuant to FOIA Exemptions 1, 3, 5, and 6. Declaration of David V. Trulio ("Trulio Decl.") ¶ 11; Dolberry Decl. ¶¶ 12-26; Walsh Decl. ¶ 13.

49.     The Trulio Declaration sets forth the basis for the Defendants' withholdings under Exemption 1. Trulio Decl. ¶¶ 6-13.

50.     Defendants have withheld information pursuant to Exemption 1 to protect currently and properly classified information that appears in the following three documents: *Vaughn* Index Document Numbers ("Doc. Nos.") 108, 109, and 110. Trulio Decl. ¶ 11.

51.     Defendants have withheld information pursuant to Exemption 3 to protect sensitive information of foreign governments, pursuant to 10 U.S.C. § 130c, which provides in subsection (a) that DoD "may withhold from public disclosure otherwise required by law sensitive information of foreign governments in accordance with this section." Dolberry Decl. ¶¶ 24, 25.

52.     The Dolberry Declaration sets forth the basis for Defendants' withholding of information pursuant to Exemption 3. Dolberry Decl. ¶¶ 24, 25.

53.     Defendants have withheld information pursuant to Exemption 3 from the following documents: *Vaughn* Index Doc. Nos. 8, 19, 26, 39, 80, and 81. Dolberry Decl. ¶¶ 24, 25.

54.     Defendants have withheld information pursuant to Exemption 5 to protect information covered by the attorney-client, deliberative process, and presidential communications privileges. Dolberry Decl. ¶ 13; Walsh Decl. ¶ 14.

55.     The Dolberry Declaration and the Walsh Declaration set forth the bases for Defendants' withholding of information pursuant to Exemption 5. Dolberry Decl. ¶ 13; Walsh Decl. ¶ 14.

56.     Defendants have withheld under the attorney-client privilege confidential communications involving attorneys in DoD or OMB's Office of General Counsel and relating

to legal matters for which DoD or OMB has sought legal advice. Dolberry Decl. ¶ 13, 16-19; Walsh Decl. ¶¶ 27-29.

57.     Defendants have withheld information pursuant to the attorney-client privilege from the following 30 documents: *Vaughn* Index Doc. Nos. 20, 21, 24, 31, 33, 34, 38, 40, 41, 42, 45, 46, 47, 51, 52, 54, 65, 66, 69, 70, 71, 73, 74, 75, 76, 77, 94, 95, 96 & 98. Dolberry Decl. ¶ 13, 16-19; Walsh Decl. ¶¶ 27-29.

58.     Pursuant to the deliberative process privilege, Defendants have withheld information reflecting discussions forming part of the creative review and development of draft documents; internal DoD discussions advising agency leaders about various issues involving these decisions; strategic discussions about how to respond to inquiries from Congress and others; and discussions back and forth between DoD and OMB meant to inform the series of decisions involving the apportionment of funds appropriated for USAI. Dolberry Decl. ¶¶ 13-23; Wash Decl. ¶¶ 15-26.

59.     Defendants have withheld information pursuant to the deliberative process privilege from a total of 81 documents, including: *Vaughn* Index Doc. Nos. 1, 6, 8, 9, 11, 12, 13, 14, 15, 16, 17, 20, 21, 22, 23, 24, 25, 28, 30, 31, 33, 34, 35, 36, 37, 38, 40, 41, 42, 43, 44, 45, 46, 47, 49, 51, 52, 53, 54, 56, 57, 60, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 82, 83, 86, 92, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110 & 111. Walsh Decl. ¶ 16.

60.     As explained in detail in the Walsh Declaration, Defendants have withheld pursuant to the presidential communications privilege information from emails that reflect communications by the President, the Vice President, or the President's immediate advisors

regarding Presidential decisionmaking about the scope, duration, and purpose of the hold on USAI funds. Walsh Decl. ¶¶ 30-32.

61.    Defendants have withheld information pursuant to the presidential communications privilege from the following 24 documents: *Vaughn* Index Doc. Nos. 12, 13, 20, 28, 33, 34, 35, 37, 44, 46, 56, 57, 63, 64, 66, 78, 82, 83, 92, 95, 99, 107, 108 & 109. Walsh Decl. ¶ 31.

62.    Defendants have withheld information pursuant to Exemption 6 to protect the personal privacy interests of agency employees against harassment. Dolberry Decl. ¶¶ 9-12; Walsh Decl. ¶ 33.

63.    The Dolberry Declaration and the Walsh Declaration set forth the basis for Defendants' withholding of information pursuant to Exemption 6. Dolberry Decl. ¶¶ 9-12; Walsh Decl. ¶ 33.

64.    Pursuant to Exemption 6, Defendants have withheld from nearly every responsive document the contact information of federal employees, including email addresses and phone numbers of agency employees. Dolberry Decl. ¶¶ 9-12; Walsh Decl. ¶ 33.

65.    Pursuant to Exemption 6, Defendants have withheld the names of DoD employees at the military rank of Colonel or below, or at the civilian pay grade of GS-15 or below. Dolberry Decl. ¶¶ 9, 10.

66.    Defendants have not withheld the names of senior DoD officials. Dolberry Decl. ¶ 11.

67.    Defendants have determined that no public interest in the information withheld under Exemption 6 outweighs the individuals' significant privacy information in this information. Dolberry Decl. ¶¶ 9-12; Walsh Decl. ¶ 33.

68.     Defendants reviewed the responsive records and determined that they have produced all reasonably segregable non-exempt, responsive information. Dolberry Decl. ¶ 28; Walsh Decl. ¶ 34.


Dated: January 31, 2020                    Respectfully submitted,



                                           JOSEPH H. HUNT
                                           Assistant Attorney General

                                           MARCIA BERMAN
                                           Assistant Director
                                           Federal Programs Branch



                                            /s/ Amber Richer_____
                                           AMBER RICHER (CA Bar No. 253918)
                                           Trial Attorney
                                           U.S. Department of Justice
                                           Civil Division, Federal Programs Branch
                                           1100 L Street, NW
                                           Washington, D.C. 20530
                                           Tel: (202) 514-3489
                                           Email: amber.richer@usdoj.gov

                                           *Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Center for Public Integrity | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-03265-CKK |
| | ) | |
| U.S. Department of Defense, et. al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DECLARATION OF DAVID V. TRULIO

I, David V. Trulio, hereby declare under penalty of perjury that the following information is true and correct:

1.     I am currently Senior Advisor and Chief of Staff to the Under Secretary of Defense for Policy (OUSD(P)), having been appointed to that position on June 13, 2018.  In addition, I have been delegated the responsibilities and authorities of the Principal Deputy Assistant Secretary (International Security Affairs), overseeing policy issues related to the nations and international organizations of Europe, Russia/Ukraine/Eurasia, the Middle East, Africa, and the Western Hemisphere.  As such, I am performing the duties of that position.

2.     Prior to assuming my present duties at the Department of Defense (DoD), I served in various senior positions in private industry in the defense sector, and as Special Assistant to President George W. Bush and as the Executive Secretary of the Homeland Security Council. Earlier in my federal government career, I served as Special Assistant to the Under Secretary of Defense (Comptroller)/Chief Financial Officer.  Before my government service, I was a corporate law attorney at O'Melveny & Myers, LLP.

## Administrative Background

3.     This declaration is made in support of Defendants' motion for Summary

Judgment in this proceeding.  The statements contained in this declaration are based upon my

personal knowledge or based upon information obtained through the exercise of my official

duties.

4.     On September 25, 2019, Plaintiff submitted a FOIA request to DoD for the

following:

> All records reflecting any communication between Defense Department
> acting comptroller Elaine McCusker or other officials within the
> comptroller's office and employees or officials of the Office of Management
> and Budget concerning the Ukraine Security Assistance Initiative [USAI],
> including but not limited to letters, emails, memoranda, reports, appointment
> calendars, and telephone call logs, and dated between April 2019 and the
> date you process this request. These should include any and all
> communications pertinent to apportionment requests related to the funds for
> this initiative during this period.
>
> [and]
>
> All records reflecting communication between Defense Department acting
> comptroller Elaine McCusker or other officials within the comptroller's
> office and Secretary of Defense Mark Esper or Deputy Secretary of Defense
> David Norquist concerning the Ukraine Security Assistance Initiative,
> including but not limited to letters, emails, memoranda, reports, appointment
> calendars, and telephone call logs, and dated between April 2019 and the
> date you process this request. These should include any and all
> communications pertinent to apportionment requests related to the funds for
> this initiative during this period.

Plaintiff requested expedited processing for this request.  Plaintiff sent the request to the

FOIA offices for the Offices of the Secretary of Defense and Joint Staff, which assigned it

tracking number 19-F-1934.

5.      On November 27, 2019, OUSD(P) reviewed three documents totaling 7 pages (CPI v. DoD 19-3265 (D.D.C) 20 Dec 19 137-143, Document Nos. 108-110) to determine their classification and to provide a release determination under the FOIA.

## FOIA Exemption (b)(1) – Classified Information

6.      FOIA exemption (b)(1) provides that FOIA does not require the production of records that are: "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1).

7.      Section 1.1(a) of Executive Order (E.O.) 13526 provides that information may be originally classified only if all of the following conditions are met: (1) an original classification authority is classifying the information; (2) the information is owned by, produced by or for, or is under the control of the U.S. Government; (3) the information falls within one or more of the categories of information listed in Section 1.4 of E.O. 13526; and (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in some level of damage to the national security, and the original classification authority is able to identify or describe the damage. As relevant here, Section 1.4(c) permits classification of information pertaining to, reflecting, or constituting "intelligence activities (including covert action), intelligence sources or methods, or cryptology." Section 1.4(d) permits classification of information pertaining to "foreign relations or foreign activities of the United States."

8.      In Section 1.3(a)(2) of E.O. 13526, the President authorized agency heads, which includes the Secretary of Defense, to exercise original classification authority. Pursuant to delegations authorized by Section 1.3(c) of E.O. 13526, the Principal Deputy Assistant Secretary

(International Security Affairs), the duties of which I am currently performing, is authorized to exercise original classification authority up to the level of SECRET.

9.      My determination that certain information in the requested records is classified has not been made to conceal violations of law, inefficiency, or administrative error; to prevent embarrassment to a person, organization, or agency; to restrain competition; or to prevent or delay the release of information that does not require protection in the interests of national security.

10.     The documents provided to OUSD(P) were marked "SECRET//NOFORN," which means that the documents were originally classified at the SECRET level, with the caveat that they may only be released to United States agents and may not be released to non-United States entities, to include foreign governments, partners or agents.

### Information Withheld as Classified

11.     Document Nos. 108 and 109 are briefing materials and talking points produced by the Under Secretary of Defense for Policy for the Secretary of Defense in preparation for a meeting to relay DoD's opinions and recommendations pertaining to the obligation of USAI funds.  Document No. 110 is an email communication from the Under Secretary of Defense for Policy to the Secretary of Defense relaying the discussion that occurred at an interagency meeting on July 26, 2019 regarding Ukraine and USAI funding.  Portions of all three documents are currently and properly classified at the SECRET level pursuant to Section 1.4(d) of E.O. 13526, because the information reflects foreign relations or foreign activities of the United States, and thus has been redacted under exemption (b)(1).  Specifically, the withheld information details how U.S. support to Ukraine might impact global competition and future economic opportunities of the United States, as well as the ramifications of such support on the

relative geo-political strengths and weaknesses of both partners and competitors of the United States.  Document No. 110 also contains information regarding intelligence sources and methods, and, therefore, is properly classified under Section 1.4(c) of E.O. 13526.

### Damage to National Security

12.  The information withheld in Document Nos. 108, 109, and 110 concerns U.S. foreign relations and foreign activities.  Releasing this information could reasonably be expected to cause damage to national security.  The release of assessments by the United States concerning the activities, interests, capabilities, and vulnerabilities of foreign governments can have significant implications, whether those foreign governments are considered allies, partners, adversaries, or competitors.  Competitors or adversaries could use such assessments to shape their activities going forward, to the detriment of national security.  The confidence of allies and partners is essential to continued cooperation on matters of mutual interest.  A violation of this confidence could weaken, or severely damage, the relationship between the United States and a foreign ally or partner, thus degrading the Government's ability to pursue the United States' geo-political, economic, and national security goals.

13.  The information withheld in Document No. 110 also involves intelligence information, including reference to intelligence sources and methods.  Intelligence sources and methods include not only human assets, but also foreign liaison relationships.  Intelligence sources and methods must be protected from disclosure in every situation where a certain intelligence capability, technique, or interest is unknown to those groups that could take countermeasures to nullify its effectiveness.  Once an intelligence source or method (or the fact of its use in a certain situation) is discovered, its continued successful use may be seriously jeopardized and its value is therefore diminished, to the detriment of national security.

**Segregability**

14. This Declaration only addresses information withheld on the basis of FOIA exemption (b)(1) for classified information.  Information withheld under other FOIA exemptions are addressed separately in the Declarations of Colonel Henry Dolberry, Jr., and Heather V. Walsh.  DoD has conducted a page-by-page, line-by-line review of all documents addressed herein for reasonable segregation of non-exempt information and has determined that no further segregation of meaningful information in the redacted documents can be made without disclosing information entitled to protection under the FOIA.

I, David V. Trulio, declare under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

Dated this 31st day of January 2020, at the Pentagon.

David V. Trulio
Performing the Duties of the Principal
Deputy Assistant Secretary of Defense
(International Security Affairs)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Center for Public Integrity | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 1:19-cv-03265-CKK |
| | ) |
| U.S. Department of Defense, et al, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## DECLARATION OF COLONEL HENRY DOLBERRY, JR.,
## UNITED STATES MARINE CORPS

I, Henry Dolberry, Jr., Colonel, United States Marine Corps, hereby declare under penalty of perjury that the following information is true and correct:

1.      I am currently the Military Assistant to Elaine McCusker, the Acting Under Secretary of Defense (Comptroller)/Chief Financial Officer of the U.S. Department of Defense, (DoD) and have served in this capacity since June 2018.  As Military Assistant to Ms. McCusker, I coordinate and communicate frequently with staff of the Office of Management and Budget (OMB), among others, to assist the Comptroller's Office in supervising the budget and financial management policy of the Department of Defense.  Prior to my assignment to this position, I have served more than twenty years as a United States Marine and in the U.S. Naval Service, in various units and staff positions, including command of a Marine Corps aviation unit as a designated naval aviator.

2.      The purpose of this declaration is to explain the bases for DoD's withholding of certain information responsive to Plaintiff's Freedom of Information Act (FOIA) request in

1

support of Defendants' motion for Summary Judgment in this proceeding. The statements

contained in this declaration are based upon my personal knowledge or upon information

provided to me during the exercise of my official duties as Military Assistant to Acting Under

Secretary of Defense (Comptroller) Ms. McCusker.

### Administrative Background

3.      I am familiar with Plaintiff's FOIA request, dated September 25, 2019, a true and

accurate copy of which is attached hereto as Exhibit 1, seeking the following records from the

DoD:

> All records reflecting any communication between Defense Department
> acting comptroller Elaine McCusker or other officials within the
> comptroller's office and employees or officials of the Office of Management
> and Budget concerning the Ukraine Security Assistance Initiative, including
> but not limited to letters, emails, memoranda, reports, appointment calendars,
> and telephone call logs, and dated between April 2019 and the date you
> process this request. These should include any and all communications
> pertinent to apportionment requests related to the funds for this initiative
> during this period.
>
> [and]
>
> All records reflecting communication between Defense Department acting
> comptroller Elaine McCusker or other officials within the comptroller's
> office and Secretary of Defense Mark Esper or Deputy Secretary of Defense
> David Norquist concerning the Ukraine Security Assistance Initiative,
> including but not limited to letters, emails, memoranda, reports, appointment
> calendars, and telephone call logs, and dated between April 2019 and the
> date you process this request. These should include any and all
> communications pertinent to apportionment requests related to the funds for
> this initiative during this period.

4.      On September 27, 2019, DoD sent a letter acknowledging receipt and denying

expedited processing of Plaintiff's FOIA request. A true and accurate copy of that letter is

attached hereto as Exhibit 2.

5.      In light of the heightened congressional and public interest in the Ukraine
Security Assistance Initiative (USAI) funding, the DoD General Counsel issued a memorandum
to DoD components, dated October 3, 2019, requesting cooperation in identifying, preserving,
and collecting documents and other records regarding the USAI in anticipation of requests for
such materials.  Pursuant to this written guidance, the DoD Office of Information Counsel (OIC)
requested that information technology specialists conduct a search of the email folders and
folders of electronically stored information on the "H drives" at all classification levels of
individuals in various offices believed to have familiarity with the USAI –designated as
"custodians."  Such custodians included the Secretary of Defense, the Deputy Secretary of
Defense, and members of their immediate staffs with relevant expertise or access; lawyers in the
Office of the General Counsel (OGC) with oversight or expertise as to fiscal matters and
Ukraine; the Acting Under Secretary of Defense (Comptroller) and members of her staff who
would have been involved in discussions regarding USAI; and relevant individuals in the Office
of the Under Secretary of Defense for Policy with oversight or expertise relating to military aid
or to Ukraine.  The search terms used for this initial collection of potentially relevant materials
were:  ""USAI" OR (("Ukraine" or "Ukrainian") AND ("security" OR "1250" OR ("FMF" OR
"Foreign Military Financing") OR "impound" OR "obligation"))."  That set of records was
placed into e-discovery software.  The initial search was conducted for electronic records
between May 1, 2019, and the date when the search was conducted in early October, 2019.  The
search was later supplemented with electronic records dated January 1, 2019 through April 30,
2019, using the same terms.

6.      To respond to Plaintiff's FOIA requests, the set of potentially responsive
electronic records described above was searched for any electronic communications between the

Acting Comptroller Ms. Elaine McCusker, or any members in her Office, and: 1) with the

Secretary of Defense, the Deputy Secretary of Defense, and members of their immediate senior

staff; and 2) with individuals whose email addresses exhibited the email domain used by

personnel at OMB.  This search was conducted with respect to gathered records that were dated

between May 1, 2019, and early October 2019.  Although the Plaintiff had requested records

dating back to April 1, 2019, DoD does not believe responsive records exist dated prior to May

1, 2019, because the letters from Under Secretary of Defense for Policy John Rood to Members

of Congress certifying that the Ukrainian government had taken sufficient action to trigger

delivery of USAI funds were dated May 25, 2019.

7.      DoD and OMB jointly released 146 pages of responsive records on December

12, 2019, and the remaining 146 pages of responsive records on December 20, 2019.

Additionally, on December 20, 2019, the Department and OMB released additional

information from 15 pages of records included in the December 12, 2019 release.

8.      I have reviewed the *Vaughn* Index that explains the basis for each of the

withholdings in this case.  A true and accurate copy of the *Vaughn* Index is attached hereto

as Exhibit 3.

### Information Withheld Under Exemption 6

9.      Exemption 6, 5 U.S.C. § 552(b)(6), permits the Government to withhold

information about individuals when the disclosure of such information "would constitute a

clearly unwarranted invasion of personal privacy."  DoD has a practice of withholding personally

identifying information of those members of DoD who are at the military rank of Colonel or

below, and at the civilian federal government level of GS-15 or below.

10.     The rationale for this practice is that disclosing the names of the individuals

involved could subject such individuals to annoyance or harassment in their private lives. Thus, this practice protects significant personal privacy interests. Moreover, release of the names of these field-grade military officers and mid- and low-level civilian government employees would not serve the "core purpose" of the FOIA, as it would not show "what the government is up to." Because these individuals are not the decision-makers who are typically held accountable by the public, their identities are not typically relevant or of interest to the public. Thus, there is no public interest outweighing the significant personal privacy interests involved.

11.     The majority of DoD personnel involved in the discussions contained in the responsive records are senior officials, and so their names are duly released. DoD attempted to consistently redact any personally identifying information of those members of DoD who were not senior officials, consistent with its long-standing practice. Further, to limit harassment of all federal employees and others involved in the responsive communications, Defendants redacted the contact information of those persons. These redactions include email addresses, signature blocks, phone numbers, and office locations. There is no public interest in this information outweighing the individuals' significant privacy interests in the information.

12.     Minor redactions under Exemption 6 were applied to nearly every responsive record, as detailed in Defendants' *Vaughn* Index.

### Information Withheld Under Exemption 5

13.     Exemption 5, 5 U.S.C. § 552(b)(5), permits the withholding of "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." Exemption 5 allows an agency to exempt information that is normally entitled to the protection of privileges in the civil discovery context. As relevant to

the records discussed herein, these privileges include the deliberative process privilege and the attorney-client privilege.

Deliberations Regarding Whether to Elevate Communications of DoD's Impression of the Timing and Logistics for Obligation of USAI Funds

14.     As described in OMB's declaration, DoD Acting Comptroller Elaine McCusker and OMB National Security Director Michael Duffey had extensive conversations about DoD's and OMB's opinions of the timing required and the logistical steps needed to obligate the USAI funds by the end of the fiscal year on September 30, 2019.  Within DoD, there were deliberations regarding whether to relay DoD's opinions to OMB at a more senior level, such as the Deputy Secretary of Defense, to provide greater weight to those opinions.  These internal DoD discussions included advice on whether to send a letter to OMB (document numbers as listed in the *Vaughn* Index ("Nos.") 6, 33, 34, 35, 46, and 69); if so, the timing of sending such a letter (Nos. 6, 33, 34, 35, 46, and 69); draft versions of such letters, which were never signed (Nos. 36 and 49); and analysis regarding how such a letter might be perceived (Nos. 33, 34, and 46). Considerations at the highest levels of DoD regarding how to communicate with other federal agencies in order to best represent the interests of the Department require frank and candid advice, and the release of such candid discussions of how to proceed could chill DoD personnel from providing such advice in future deliberations.  Accordingly, such information has been withheld as pre-decisional and deliberative.

Deliberations Regarding How to Respond to Questions from Congress and/or the Press Regarding USAI Funding Status

15.     Several emails (Nos. 6, 20, 21, 28, and 71) contain advice and recommendations about how to respond to requests for information from Congress or the media regarding the USAI which were either received by DoD or anticipated based upon the news coverage on any

particular day regarding the USAI funds.  Such advice and analysis is essential to ensuring an accurate and fulsome response to inquiries.  The release of the deliberations that officials engaged in before arriving at the official DoD response could hinder such discussions in the future and could confuse the public regarding the position of the Department.  These discussions were therefore withheld as pre-decisional and deliberative.

16.    Some of these discussions (Nos. 20 and 21) included attorney-client communications, including requests for legal advice or assistance and the provision of confidential information to DoD attorneys to help in obtaining such advice or assistance.

17.    The discussion in documents 20 and 21 included confidential legal questions about wording contained within draft talking points to respond to inquiries and legal analysis provided by DoD and OMB attorneys.

Deliberations Regarding Effects of OMB's Continuing Pauses on Obligation of USAI Funds

18.    The documents include email chains, particularly in mid-late August and early September, reflecting communications between Ms. McCusker and other senior DoD officials regarding how to respond to OMB's continuing issuance of apportionment footnotes pausing obligation of USAI funds, and the effects the continued pauses may have on the timing and logistics of executing the funding (Nos. 38, 40, 65, 75, 76, 94, 95, 96, 97, 98, 111).  Ms. McCusker provided her candid analysis of the implications of the continuing pauses in order to fully advise DoD's senior leaders of the potential ramifications if the pause in effect at any time was not lifted.  The release of this information could chill such candid advice in the future on sensitive matters, including how to engage with other federal agencies.  Accordingly, such information has been withheld as pre-decisional and deliberative.

19.     These communications included questions and information relevant to formulating analysis of particular fiscal law issues.  Accordingly, Ms. McCusker included the DoD General Counsel and other senior attorneys, including the fiscal law section of OGC, to seek their input and counsel.  Therefore, this information has been withheld as attorney-client communications.

Weekly Updates from the Comptroller to the Deputy Secretary of Defense

20.     Six documents (Nos. 100-105) are weekly reports from Ms. McCusker to the Deputy Secretary of Defense giving an overview of funding and related issues for military programs in progress, including information on items unrelated to USAI.  These reports reflect Ms. McCusker's assessment of what fiscal issues require the focus of, or decisions by, the Department's leadership.  They further contain advice on recommendations on actions that should be taken by DoD.  The issues highlighted by Ms. McCusker are deliberative, because focusing Mr. Norquist's attention is itself advice and making recommendations on what should be prioritized.  DoD released all information contained within these weekly reports regarding USAI funding that was factual in nature, but withheld any advice or recommendations regarding how best to proceed given the pause in obligation of the funding.  DoD also withheld information relayed by Ms. McCusker to Mr. Norquist regarding other, non-USAI action items to assist him in deliberating and deciding on future courses of action with respect to those items.  The release of this information could limit the use of such vital weekly reports in the future or greatly diminish their robust and candid analysis.  Therefore, the information was withheld from these records as pre-decisional and deliberative.

Briefing Materials in Preparation for High-Level Meeting Regarding USAI Funding

8

21.     Document Nos. 108 and 109 are briefing materials and talking points produced by the Under Secretary of Defense for Policy for the Secretary of Defense in preparation for a meeting to relay DoD's opinions and recommendations on the obligation of the USAI funds. These constitute both advice and specific recommendations regarding what points should be emphasized by the Secretary and so ultimately reflect the advice and recommendations of the Department in a wider interagency Executive Branch deliberation. The release of such information could chill frank and candid deliberations on important Executive Branch decision-making. Accordingly, they have been withheld as pre-decisional and deliberative.

Readout from Deputies Meeting Regarding Ukraine

22.     Document No. 110 is an email communication from the Under Secretary of Defense for Policy to the Secretary of Defense relaying the discussion that occurred at an interagency meeting on July 26, 2019, regarding Ukraine and the USAI funding. The readout memorializes the advice and recommendations of both DoD and other Executive Branch agencies, advice on how best to proceed, and requests for additional analysis from the relevant agencies. The release of this information could similarly chill frank and candid deliberations on vital Executive Branch decision making. They have therefore been withheld as pre-decisional and deliberative.

Analysis of Military Support Provided by other NATO Members

23. Document No. 81 is an analysis of the form and value of military support provided to Ukraine from other NATO countries. Minor redactions within this analysis were applied to information when it did not reflect information or estimates provided by those member nations, but rather the analysis and estimates of DoD personnel to aid Executive Branch officials in

9

deliberating on the relative contribution and need for U.S. military support to Ukraine, including USAI.

## Information Withheld Under Exemption 3

24.     Exemption 3, 5 U.S.C. 552(b)(3), permits the Government to withhold information that is "specifically exempted from disclosure by statute." 10 U.S.C. § 130c authorizes the withholding of "sensitive information of foreign governments."

25.     As listed in Defendants' *Vaughn* index, DoD withheld under Exemption 3 specific, sensitive information about the military equipment that Ukraine needed to fulfill its national security needs, the specification of the equipment, and their associated costs. (Nos. 8, 19, 26, 39, 80, and 81). This information is based upon extensive cooperation between the United States and Ukraine regarding what military aid best supports the national security interests of both countries. Given the obvious sensitivities of the information, which could reveal both Ukraine's capabilities and potential vulnerabilities, the Ukrainian government has informed the United States that Ukraine does not publicize such information and requested, in writing, that such information not be produced under the FOIA. The Department has agreed to comply with that request from a foreign government and accordingly withheld such information pursuant to 10 U.S.C. § 130c.

## Information Withheld Under Exemption 1

26.     Three documents, (Nos. 108, 109 and 110), contain information additionally exempt from release pursuant to 5 U.S.C. § 552(b)(1), because that information is currently classified. The basis for such withholdings is explained in a separate declaration by David V. Trulio.

## Other Information Withheld By Defendants

27.     In addition to the redactions addressed in this declaration, the Declaration of

David V. Trulio and the Declaration of Heather V. Walsh explain the bases for additional

withholdings.

## Segregability Analysis

28.     DoD has conducted a page-by-page and line-by-line review of the 292 pages of

documents at issue in this Declaration for reasonable segregation of non-exempt information and

has determined that no further segregation of meaningful information in the redacted documents

can be made without disclosing information entitled to protection under the FOIA.

I, Henry Dolberry, Jr., declare under penalty of perjury, that the foregoing is true and

correct to the best of my knowledge.


Dated this 31st day of January 2020, at the Pentagon.


Henry Dolberry, Jr.
Colonel, United States Marine Corps
Military Assistant to the Acting
Under Secretary of Defense (Comptroller')

# Exhibit 1

OSD/JS FOIA Requester Service Center
Freedom of Information Division
1155 Defense Pentagon
Washington, DC 20301-1155
Fax (571) 372-0500

Defense Finance and Accounting Service
Corporate Communications
FOIA/PA Adherence Division
8899 East 56th Street
Indianapolis, IN 46249-0150
Fax: (317) 212-8802
Email: dfas.foia@mail.mil

September 25, 2019

To Whom It May Concern;

This is a request under the Freedom of Information Act, including a request for expedited processing. Please immediately confirm receipt of this request (contact information is below).

On behalf of the Center for Public Integrity and myself, jointly, I request that you provide us copies of the records identified and described below – or of records containing the information identified and described below:

All records reflecting any communication between Defense Department acting comptroller Elaine McCusker or other officials within the comptroller's office and employees or officials of the Office of Management and Budget concerning the Ukraine Security Assistance Initiative, including but not limited to letters, emails, memoranda, reports, appointment calendars, and telephone call logs, and dated between April 2019 and the date you process this request. **These should include any and all communications pertinent to apportionment requests related to the funds for this initiative during this period.**

All records reflecting any communication between Defense Department acting comptroller Elaine McCusker or other officials within the comptroller's office and Secretary of Defense Mark Esper or Deputy Secretary of Defense David Norquist concerning the Ukraine Security Assistance Initiative, including but not limited to letters, emails, memoranda, reports, appointment calendars, and telephone call logs, and dated between April 2019 and the date you process this request. **These should include any and all communications pertinent to apportionment requests related to the funds for this initiative during this period.**

Please note that since the aid to Ukraine under this program was released on September 12, we consider these communications **not** to be governed by FOIA exemptions pertinent to ongoing policy deliberations.

Format: we prefer to receive records in the following formats, listed in order of preference:

    (1) word processing file, text-based PDF, or similar;
    (2) other non-proprietary electronic format;
    (3) paper copies.

We specifically request all portions of any record responsive to the description above. If you withhold any record or any portion of a record as exempt, we specifically request the release of all segregable non-exempt portions, including but not limited to email header information (e.g., sender, recipients, date, subject) and analogous information in non-email documents.

If you withhold any record or portion of a record, please specify which statutory exemptions are claimed for each withholding. Please separately state how disclosure would harm an interest protected by the cited exemption. Please describe each record withheld, including its date and size (e.g., amount of electronic memory or number of paper pages).

### Request for expedited processing

We request expedited processing for this request because the Center and I are "primarily engaged in disseminating information," and there is "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II). Specifically, the topic of the Defense Department's handling of the Ukraine Security Assistance program is a matter of immediate concern to the American public, given extensive media interest in the fate of the program and the pressures placed upon the department regarding this program. These matters are the subject of imminent congressional hearings and action.

### Request for fee reduction as a representative of the news media

The Center for Public Integrity is a news media organization, and therefore this request should be exempt from all fees for search and review. This request is being made in connection with the Center's newsgathering functions and not for any other commercial purpose. The Center intends to produce one or more original investigative reports based on analysis of the requested information. The Center's work has won the Pulitzer Prize in 2014 and 2017 and numerous other journalism awards (see http://www.publicintegrity.org/about/our-work/awards).

The only federal court to consider the issue has held that the Center "is entitled to treatment as a representative of the news media for purposes of FOIA." Center for Public Integrity v. HHS, Civil Case No. 06-1818, 2007 U.S. Dist. LEXIS 56172 (D.D.C. Aug. 3, 2007), https://ecf.dcd.uscourts.gov/cgi-bin/show_public_doc?2006cv1818-15. In addition, our reporters covering Congress and congressional committees are credentialed by the Standing Committee of Correspondents of the Congressional Daily Press Gallery.

We expect that duplication fees for producing electronic records will be minimal. If there are processing fees greater than $25, inform me before you fill the request, and I will provide additional information in support of a public interest fee waiver.

Please feel free to contact me about any aspect of this request. In principle, the Center is willing to consider ways in which the request might reasonably be narrowed.

I certify that the information I have provided is true and correct. Thank you for your attention to this request.

Sincerely,

R. Jeffrey Smith
Center for Public Integrity
910 17th Street N.W., 7th Floor
Washington, DC 20006-2606
Office telephone 202-481-1206
Email address: jsmith@publicintegrity.org

# Exhibit 2



**DEPARTMENT OF DEFENSE**
**FREEDOM OF INFORMATION DIVISION**
**1155 DEFENSE PENTAGON**
**WASHINGTON, DC 20301-1155**

SEP 2 7 2019
Ref: 19-F-1934

Mr. R. Jeffrey Smith
Center for Public Integrity
910 17th Street NW, 7th Floor
Washington, DC 20006-2606

Dear Mr. Smith:

This is an interim response to your September 25, 2019 Freedom of Information Act (FOIA) request, a copy of which is attached for your convenience. We received your request on September 25, 2019, and assigned it case number 19-F-1934. We ask that you use this number when referring to your request.

Although we have already begun processing your request, we will not be able to respond within the FOIA's 20-day statutory time period as there are unusual circumstances that impact our ability to quickly process your request. The FOIA defines unusual circumstances as (a) the need to search for and collect records from a facility geographically separated from this office; (b) the potential volume of records responsive to your request; and (c) the need for consultation with one or more other agencies or DoD components having a substantial interest in either the determination or the subject matter of the records. At least one, if not more, of these scenarios applies or would likely apply to your request. While this office handles FOIA requests for the Office of the Secretary of Defense (OSD), the Joint Staff (JS), and other component offices, we do not actually hold their records and our office is not geographically located with these organizations. As we do not hold the records, until the required records searches are complete, we are unable to estimate the potential volume of records or the number of consultations that will be required to make a release determination.

Expedited processing may be granted when the requester demonstrates a compelling need for the information and shows that the information has a particular value that would be lost if not processed on an expedited basis. A key word here is "demonstrates." It is, therefore, incumbent upon you to demonstrate that the requested records will serve an urgency purpose, and that they also will be meaningful in the sense that they will provide for a greater understanding of actual or alleged federal government activity on the part of the public-at-large than that which existed before such information was disseminated. Consequently, it must be clearly demonstrated that such information has a particular value that will be lost if not disseminated quickly. After careful consideration of your request, this office finds that you have not clearly demonstrated how the information will lose its value if not processed on an expedited basis. For these reasons, your request for expedited processing is denied.

Your request has been placed in our complex processing queue and is being worked based on the order in which the request was received. Our current administrative workload is approximately 2,987 open requests.

In some instances, we have found that requesters who narrow the scope of their requests experience a reduction in the time needed to process their requests.

The OSD/JS FOIA Public Liaison, Darrell Williams, is available at 571-372-0462 or by email at OSD.FOIALiaison@mail.mil to answer any concerns about the foregoing.

Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows:

> Office of Government Information Services
> National Archives and Records Administration
> 8601 Adelphi Road-OGIS
> College Park, MD 20740
> E-mail: ogis@nara.gov
> Telephone: 202-741-5770
> Fax: 202-741-5769
> Toll-free: 1-877-684-6448

We regret the delay in responding to your request and appreciate your patience. If you have any questions or wish to discuss the reformulation of your request or an alternative time frame for the processing of your request, you may contact Angeline D. Hester, at 571-372-0410 or angeline.d.hester.civ@mail.mil.

Sincerely,

Stephanie L. Carr
Chief

Enclosure:
As stated

Exhibit 3

**Vaughn Index**

**CPI v. DoD, No. 19-3265 (D.D.C.)**

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemption(s) |
|---|---|---|---|---|---|---|
| 1 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 001 - 028 | Hill Request for Apportionment Docs | 9/16/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege - This document is a draft "planned response" to a congressional inquiry about "release of the Ukraine funding hold" sent by Elaine McCusker at DoD to Michael Duffey at OMB for input. The redacted information is predecisional beause it involves a draft of a "planned response" and it is deliberative because it is part of a back-and-forth exchange with OMB.

(b)(6): personal information - email addresses of employees have been withheld pursuant to agency policy to avoid undue risk of individual harassment |
| 2 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 029 - 45 | RE: Footnote | 9/3/2019 | DoD/OMB | (b)(6) | (b)(6): personal information - email addresses and phone numbers of employees have been withheld pursuant to agency policy to avoid undue risk of individual harassment |
| 3 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 046 - 60 | FW: O&M Defense Wide 97-0100 OMB signed apportionment [Apportionment sent to Agency after Approval from | 7/26/2019 | DoD/OMB | (b)(6) | (b)(6): personal information - email addresses and phone numbers of employees, including the names of junior personnel at DoD, have been withheld pursuant to agency policy to avoid undue risk of individual harassment |
| 4 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 061 - 76 | O&M, DW apportionment | 9/16/2019 | DoD/OMB | (b)(6) | (b)(6): personal information - email addresses of employees have been withheld pursuant to agency policy to avoid undue risk of individual harassment |
| 5 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 077 - 91 | Updated USAI footnote | 9/7/2019 | DoD/OMB | (b)(6) | (b)(6): personal information - email addresses of employees have been withheld pursuant to agency policy to avoid undue risk of individual harassment |
| 6 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 092 - 094 | Re: From POLITICO - Trump slow-walks Ukraine military aid meant to contain Russia | 8/29-8/30/2019 | DoD | (b)(5), (b)(6) | (b)(5):  deliberative process privilege - Discussions among senior DoD officials about possible questions and proposed responses to Congress and the media concerning the Ukraine Security Assistance Initiative (USAI). Additionally, communications among senior DoD officials regarding whether to send a letter from the Deputy Secretary of Defense to OMB to express DoD's opinions regarding timing and logistical considerations for obligating USAI funds by the end of the fiscal year.

(b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |

Vaughn Index

**CPI v. DoD, No. 19-3265 (D.D.C.)**

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemption(s) |
|---|---|---|---|---|---|---|
| 7 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 095 | USAI | 8/16/2019 | DoD/OMB | (b)(6) | (b)(6): <u>personal information</u> - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 8 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 096 - 101 | USAI Contracting Info_16 Aug 19 0800 -- Attachment to August 16, 2019 Email at Bates 095 | 8/16/2019 | DoD/OMB | (b)(3) 10 USC 130c, (b)(5) | (b)(3), 10 USC 130c: sensitive information about Ukraine's national security needs, plans for acquisition of specific military goods with USAI funds, and associated estimated costs.<br><br>(b)(5): deliberative process privilege - Information about internal DoD contracting processes, timelines and procedures to help inform OMB's apportionment analysis. |
| 9 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 102- 103 | RE: Footnote | 8/20/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege - Email exchanges between OMB and DoD about proposed draft apportionment footnote regarding USAI funds.<br><br>(b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 10 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 104 | USAI | 8/16/2019 | DoD/OMB | (b)(6) | (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. (duplicate of Bates 095) |
| 11 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 105 | Apportionment | 8/12/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege - Email from DoD to OMB about the proposed footnote regarding the Ukraine apportionment<br><br>(b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 12 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 106 -108 | RE: USAI | 8/12/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and presidential communications privilege - Email exchanges between DoD and OMB regarding possible continuation of the apportionment footnote and the potential impacts of such a pause.  This information was shared with OMB to inform its apportionment analysis.  These email exchanges also include references to communications involving the President or his immediate advisors.<br><br>(b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |

CPI v. DoD, No. 19-3265 (D.D.C.)

Vaughn Index

**CPI v. DoD, No. 19-3265 (D.D.C.)**

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemption(s) |
|---|---|---|---|---|---|---|
| 13 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 109 -111 | RE: USAI | 8/12/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and presidential communications privilege - Email exchanges between DoD and OMB regarding possible continuation of the apportionment footnote and the potential impacts of such a pause, including references to communications involving the President or his immediate advisors

(b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. [partial duplicate of Bates 106-08] |
| 14 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 112- 114 | RE: USAI | 8/11/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege - Email exchanges between DoD and OMB regarding possible continuation of the apportionment footnote and the potential impacts of such a pause

(b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. [partial duplicate of Bates 106-08] |
| 15 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 115- 116 | RE: USAI | 8/10/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege -- Email exchanges between DoD and OMB regarding possible continuation of the apportionment footnote and the potential impacts of such a pause

(b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. [partial duplicate of Bates 106-08] |
| 16 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 117 - 118 | Attachment to August 9, 2019 email from DoD Comptroller at Bates 116. | 8/10/2019 | DoD/OMB | (b)(5) | (b)(5): deliberative process privilege -- Draft questions and answers shared between DoD and OMB regarding USAI funding processes and timelines to aid OMB in its apportionment analysis. |
| 17 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 119 | For Big 4 Breakfast | 9/16/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege - Suggested talking points drafted by DoD Comptroller for Deputy Secretary of Defense in preparation for a breakfast meeting with "Big 4" chairs and ranking members of congressional armed services, on "Projection for USAI obligations by year end" and "Section 284 border barrier obligation status."

(b)(6): personal information - The email addresses of employees, including the name of a junior DoD official, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 18 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 120 | FW: FY 2019 USAI Vendor List | 9/9/2019 | DoD | (b)(6) | (b)(6): personal information - The email addresses of employees, including the name of a junior DoD official, have been withheld pursuant to agency practice to avoid undue risk of harassment. |

CPI v. DoD, No. 19-3265 (D.D.C.)

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemption(s) |
|---|---|---|---|---|---|---|
| 19 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 121-127 | FY 19 USAI Vendor Information | N/A | DoD | (b)(3) 10 USC 130c | (b)(3), 10 USC 130c: sensitive information about Ukraine's national security needs, plans for acquisition of specific military goods with USAI funds, and associated estimated costs |
| 20 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 128 -129 | RE: From POLITICO· Trump slow-walks Ukraine military aid meant to contain Russia | 8/29/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege, attorney-client privilege and presidential communications privilege - Email exchange among senior DoD officials, including General Counsel and Deputy General Counsel (Fiscal) deliberating draft talking points in response to a news article entitled "Trump slow-walks Ukraine military aid to contain Russia" and related discussions between DoD and OMB. One of the internal DoD email exchanges also includes a reference to communications involving the President or his immediate advisors.<br><br>(b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 21 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 130 | RE: From POLITICO - Trump slow-walks Ukraine military aid meant to contain Russia | 8/29/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email exchange among senior DoD officials, including General Counsel and Deputy General Counsel (Fiscal), and between DoD and OMB deliberating draft talking points in response to a news article entitled "Trump slow-walks Ukraine military aid to contain Russia." Partial duplicate of Bates 128-29.<br><br>(b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 22 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 131 | RE: Ukraine | 8/9/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege - Email from DoD to OMB regarding USAI funding processes and timelines to aid OMB in its apportionment analysis.<br><br>(b)(6): personal information - The email addresses of employees, including the name of a junior DoD official, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 23 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 132 | Re: Ukraine Funding Plan | 22-Jul-19 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege - Email from OMB to DoD requesting "Ukraine funding plan" to assist OMB in its apportionment analysis.<br><br>(b)(6): personal information - The email addresses of employees, including the name of a junior DoD official, have been withheld pursuant to agency practice to avoid undue risk of harassment. |

**Vaughn Index**

**CPI v. DoD, No. 19-3265 (D.D.C.)**

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemption(s) |
|---|---|---|---|---|---|---|
| 24 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 133 | Ukraine | 7/19/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email from OMB to DoD regarding USAI funding implications to aid OMB in its apportionment analysis, including legal implications and advice of counsel.<br><br>(b)(6): personal information - The email addresses of employees, including the name of a junior DoD official, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 25 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 134 | RE: Ukraine Funding Plan | 7/22/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege - Email from OMB to DoD requesting "Ukraine funding plan" to assist OMB in its apportionment analysis.<br><br>(b)(6): personal information - The email addresses of employees, including the name of a junior DoD official, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 26 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 135 | FY 19 Tranche 1 ($125M) notified to Congress in March | | DoD | (b)(3) 10 USC 130c | (b)(3), 10 USC 130c: sensitive information about Ukraine's national security needs, plans for acquisition of specific military goods with USAI funds, and associated estimated costs |
| 27 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 136 | RE: USAI | 9/12/2019 | DoD | (b)(6) | (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 28 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 137 | RE: USAI | 9/12/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege and presidential communications privilege - Email from DoD SecDef Chief of Staff to DoD senior officials regarding assessments about the release of funds, including references to communications involving the President or his immediate advisors. Partial duplicate of Bates 136.<br><br>(b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 29 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 138 | USAI | 8/26/2019 | DoD/OMB | (b)(6) | (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 30 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 139 | Footnote | 8/20/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege - Email from OMB about proposed draft apportionment footnote regarding USAI funds.<br><br>(b)(6): personal information - The email addresses and phone numbers of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |

CPI v. DoD, No. 19-3265 (D.D.C.)

## CPI v. DoD, No. 19-3265 (D.D.C.)

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemption(s) |
|---|---|---|---|---|---|---|
| 31 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 140-146 | RE: Any news | 8/20/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email exchanges between DoD and OMB regarding possible continuation of the apportionment footnote and the potential impacts of such a pause, including an email from OMB reflecting legal advice provided by its Office of General Counsel. <br><br>(b)(6): personal information - The email addresses and phone numbers of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 32 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 001 | RE: USAI | 9/12/2019 | DoD | (b)(6) | (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. Duplicate of Dec. 12 Bates 135. |
| 33 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 002 - 004 | Re_ Ukraine | 9/1/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege, attorney-client privilege and presidential communications privilege - Email exchanges among senior DoD officials, including the General Counsel, regarding whether to relay DoD's opinions regarding logistics and timing of obligating funds at a more senior level, such as the Deputy Secretary of Defense, to provide greater weight to those opinions, as well as email exchanges between OMB and DoD regarding possible continuation of the apportionment footnote and the potential impacts of such a pause. These exchanges include references to communications involving the President or his immediate advisors. <br><br>(b)(6): personal information - The email addresses and phone numbers of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 34 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 005 - 007 | Re_ Ukraine | 9/1/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege, attorney-client privilege and presidential communications privilege - Email exchanges among senior DoD officials, including the General Counsel, regarding whether to relay DoD's opinions regarding logistics and timing of obligating funds at a more senior level, such as the Deputy Secretary of Defense, to provide greater weight to those opinions, as well as email exchanges between OMB and DoD regarding possible continuation of the apportionment footnote and the potential impacts of such a pause.  These exchanges include references to communications involving the President, the Vice President, or his immediate advisors. <br><br>(b)(6): personal information - The email addresses and phone numbers of employees have been withheld pursuant to agency practice to avoid undue risk of harassment [partial duplicate of Bates 002-004] |

Vaughn Index

**CPI v. DoD, No. 19-3265 (D.D.C.)**

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemption(s) |
|---|---|---|---|---|---|---|
| 35 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 008 | Ukraine | 9/1/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege and presidential communications privilege - Email exchange between SECDEF Chief of Staff and DoD Comptroller regarding whether to relay DoD's opinions regarding logistics and timing of obligating funds at a more senior level, such as the Deputy Secretary of Defense, to provide greater weight to those opinions.  This exchange includes references to communications involving the President, the Vice President, or his immediate advisors.<br><br>(b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 36 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 009 | Draft USAI Letter to OMB v2.docx | 8/28/2019 | DoD | (b)(5) | (b)(5): deliberative process privilege - The exempt information is a pre-decisional draft letter to OMB that was never sent and does not reflect final agency opinions or policy. |
| 37 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 010 - 012 | RE: POTUS follow up | 6/25/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege and presidential communications privilege - Internal DoD email exchange discussing follow-up questions from the President and how to respond to those questions.  The email exchange includes a specific reference to communications involving the President or his immediate advisors.<br><br>(b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 38 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 013 - 014 | Ukraine | 9/5/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email from DoD Comptroller to Comptroller's office personnel and senior DoD officials, including the DoD's General Counsel, regarding OMB notification of another pending apportionment pause footnote and providing background information to aid deliberation in crafting DoD response to the notification.<br><br>(b)(6): personal information - The email addresses of employees, including the names of junior DoD official, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 39 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 015 - 016 | Copy of USAI Award Matrix_31 August_2019_working copy.xlsx | 9/5/2019 | DoD | (b)(3) 10 USC 130c | (b)(3), 10 USC 130c: Spreadsheet tracking commitment and obligation dates of USAI-funded equipment that includes sensitive information about Ukraine's national security needs, plans for acquisition of specific military goods with USAI funds, and associated estimated costs. |

**Vaughn Index**

**CPI v. DoD, No. 19-3265 (D.D.C.)**

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemption(s) |
|---|---|---|---|---|---|---|
| 40 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 017 | Ukraine Update | 8/21/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email from DoD Comptroller to Comptroller's office personnel and senior DoD officials, including the DoD's General Counsel, regarding OMB notification of another pending apportionment pause footnote and providing background information to aid deliberation in crafting DoD response to the notification.<br><br>(b)(6): personal information - The email addresses of employees, including the names of junior DoD officials, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 41 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 018 - 019 | RE: Footnote | 8/7/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email exchange between DoD and OMB officials regarding possible continuation of the apportionment footnote and the potential impacts of such a pause, including references to conversations and advice provided by agency counsel.<br><br>(b)(6): personal information - The email addresses and telephone numbers of employees, including the names of junior DoD officials, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 42 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 020 | RE: Footnote | 8/6/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email exchange between DoD and OMB officials regarding possible continuation of the apportionment footnote and the potential impacts of such a pause, including references to conversations and legal advice provided by agency counsel.<br><br>(b)(6): personal information - The email addresses and telephone numbers of employees, including the names of junior DoD officials, have been withheld pursuant to agency practice to avoid undue risk of harassment.  Partial duplicate of Bates 018-19. |
| 43 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 021 | Re: USAI | 9/7/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege - Email exchange between OMB and DoD regarding possible continuation of the apportionment footnote<br><br>(b)(6): personal information - The email addresses of individual employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 44 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 022 - 023 | RE: Footnote | 9/12/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and presidential communications privilege - Email exchanges between OMB and DoD regarding possible continuation of the apportionment footnote and the potential impacts of such a pause. These exchanges include references to communications involving the President or his immediate advisors.<br><br>(b)(6): personal information - The email addresses and telephone numbers of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |

Vaughn Index

**CPI v. DoD, No. 19-3265 (D.D.C.)**

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemption(s) |
|---|---|---|---|---|---|---|
| 45 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 024 | RE: Footnote | 9/11/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email exchanges between OMB and DoD regarding possible continuation of the apportionment footnote and the potential impacts of such a pause, including references to conversations and legal advice provided by agency counsel.<br><br>(b)(6): personal information - The email addresses of individual employees have been withheld pursuant to agency practice to avoid undue risk of harassment.  Partial duplicate of Bates 22-23 |
| 46 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 025 | Re: SD COA | 9/1/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege, attorney-client privilege and presidential communications privilege - Eemail exchange between DoD Comptroller and SecDef Chief of Staff regarding possible courses of action SecDef  ("SD COA" as referenced in email subject line) could take regarding USAI pause situation, including references to conversations and legal advice provided by agency counsel as well as communications involving the President, the Vice President, or his immediate advisors. Partial duplicate of Bates 063.<br><br>(b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 47 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 026 | FW: Agreed TPs | 8/29/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email communications regarding proposed DoD-OMB joint talking points developed by agency counsel that were debated and not released.<br><br>(b)(6): personal information - The email addresses and telephone numbers of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 48 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 027 | RE: USAI Letter to OMB (Revised) | 8/27/2019 | DoD/OMB | (b)(6) | (b)(6): personal information - The email addresses and telephone numbers of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 49 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 028 | USAI Letter to OMB (Rev.).docx | 8/27/2019 | DoD | (b)(5) | (b)(5): deliberative process privilege -The exempt information is a pre-decisional draft letter from the Deputy SecDef to the Acting Director of the Office of Management and Budget that the Deputy did not send to the Acting Director; it does not reflect final DoD opinions or policy. |
| 50 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 029 | RE: USAI Letter to OMB (Revised) | 8/27/2019 | DoD/OMB | (b)(6) | (b)(6): personal information - The email addresses and telephone numbers of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |

CPI v. DoD, No. 19-3265 (D.D.C.)

Vaughn Index

**CPI v. DoD, No. 19-3265 (D.D.C.)**

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemption(s) |
|---|---|---|---|---|---|---|
| 51 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 030 - 033 | Re: Any news? | 8/19/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email exchange between DoD and OMB regarding possible implications of continuing USAI and the nature of the obligation process.  The email exchange reflects legal advice provided by OMB's Office of General Counsel.<br><br>(b)(6): personal information - The email addresses and telephone numbers of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 52 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 034 | Re: Apportionment | 8/12/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email exchange between OMB and DoD regarding draft apportionment footnote and the potential impacts of such a pause, including references to seeking legal advice on particular issues.<br><br>(b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 53 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 035 - 037 | Re: USAI | 8/11/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege - Email exchange between OMB and DoD regarding the possibility of continuing the USAI apportionment footnote and the potential implications of such a pause.<br><br>(b)(6): personal information - The email addresses of individual employees, including the names of junior DoD employees, have been withheld pursuant to agency practice to avoid undue risk of harassment.  Partial duplicate of Bates 106-08 from December 12 release. |
| 54 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 038 - 039 | RE: USAI | 7/30/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email exchange between OMB and DoD regarding the draft footnote apportionment that includes references to communications with OMB's Office of General Counsel.<br><br>(b)(6): personal information - The email addresses of individual employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 55 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 040 | Ukraine Foreign Assistance | 7/25/2019 | DoD/OMB | (b)(6) | (b)(6): personal information - The email addresses and telephone numbers of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 56 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 041 | Ukraine Funding Follow-up | 7/2/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and presidential communications privilege - Email from OMB to DoD about the status of funding for Ukraine, including references to communications involving the President or his immediate advisors.<br><br>(b)(6): personal information - The email addresses and telephone numbers of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |

CPI v. DoD, No. 19-3265 (D.D.C.)

Vaughn Index

**CPI v. DoD, No. 19-3265 (D.D.C.)**

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemption(s) |
|---|---|---|---|---|---|---|
| 57 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 042 - 043 | FW: POTUS follow up | 6/24/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and presidential communications privilege - Internal DoD email exchange discussing follow-up questions from the President that includes a specific reference to communications involving the President or his immediate advisors.<br><br>(b)(6): personal information - The email addresses and telephone numbers of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 58 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 044 - 046 | RE: Pentagon to send $250M in weapons to Ukraine | 6/20/2019 | DoD/OMB | (b)(6) | (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 59 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 047 - 19 048 | Re: Pentagon to send $250M in weapons to Ukraine | 6/20/2019 | DoD/OMB | (b)(6) | (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 60 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 049 | Re:Year End | 10/1/2019 | DoD | (b)(5), (b)(6) | (b)(5):  deliberative process privilege - Non-germane reference to the congressional committee that was the last (of four committee) responder on approvals for unrelated US Air Force funding, which is non-public and implicates the nature of the process for congressional DoD funding approvals.<br><br>(b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 61 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 050 | Ukraine | 9/12/2019 | DoD | (b)(6) | (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 62 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 051 - 052 | RE: Ukraine TPs | 9/12/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege - Email communications regarding proposed DoD-OMB joint talking points that were debated and not released.<br><br>(b)(6): personal information - The email addresses and telephone numbers of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 63 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 053 - 054 | Re: Footnote | 9/12/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and presidential communications privilege - Email exchanges between OMB and DoD regarding possible continuation of the apportionment footnote, including references to communications involving the President or his immediate advisors.<br><br>(b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment.  Partial duplicate of Bates 023. |
| 64 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 055 - 19 057 | Re: Footnote | 9/12/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and presidential communications privilege - Email exchanges between OMB and DoD regarding possible continuation of the apportionment footnote, including references to communications involving the President or his immediate advisors.<br><br>(b)(6): personal information - The email addresses and telephone numbers of employees have been withheld pursuant to agency practice to avoid undue risk of harassment.  Partial duplicate of Bates 023, 053-54. |

Vaughn Index

**CPI v. DoD, No. 19-3265 (D.D.C.)**

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemption(s) |
|---|---|---|---|---|---|---|
| 65 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 058 | Ukraine | 9/10/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email from DoD Comptroller to Deputy Chief of Staff with copy to DoD General Counsel and other senior lawyers seeking legal advice and policy options on how DoD and specifically DSCA should proceed given continuing USAI hold.<br><br>(b)(6): personal information - The email addresses of individual employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 66 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 059 - 19 060 | Re: USAI Status and Update Plan | 9/11/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege, attorney-client privilege and presidential communications privilege -Email exchanges between OMB and DoD regarding the apportionment footnote and the potential impacts of such a pause, including references to communications among the attorneys as well as communications involving the President or his immediate advisors.<br><br>(b)(6): personal information - The email addresses and telephone numbers of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 67 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 061 | Re: USAI | 9/7/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege - Email exchanges between OMB and DoD regarding the apportionment footnote and the potential impacts of such a pause<br><br>(b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 68 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 062 | RE: Ukraine | 9/5/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege - Email exchanges between OMB and DoD regarding the apportionment footnote and the potential impacts of such a pause<br><br>(b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 69 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 063 | RE: SD COA | 9/1/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Eemail exchange between DoD Comptroller and SecDef Chief of Staff regarding possible courses of action SecDef  ("SD COA" as referenced in email subject line) could take regarding USAI pause situation, including references to conversations and legal advice provided by agency counsel. Partial duplicate of Bates 025.<br><br>(b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |

**Vaughn Index**

**CPI v. DoD, No. 19-3265 (D.D.C.)**

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemption(s) |
|---|---|---|---|---|---|---|
| 70 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 064 - 19 065 | RE: Agreed TPs | 8/29/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): <u>deliberative process privilege and attorney-client privilege</u> - Email communications regarding proposed DoD-OMB joint talking points developed by agency counsel that were debated and not released.<br><br>(b)(6): <u>personal information</u> - The email addresses and telephone numbers of employees have been withheld pursuant to agency practice to avoid undue risk of harassment.  Partial duplicate of Bates 026. |
| 71 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 066 | USAI | 8/26/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): <u>deliberative process privilege and attorney-client privilege</u> - Email from DoD regarding possible continuation of the apportionment footnote and the potential impacts of such a pause, including discussion about advice from agency counsel.<br><br>(b)(6): <u>personal information</u> - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 72 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 067 | RE: USAI | 8/26/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): <u>deliberative process privilege</u> - Email between OMB and DoD regarding possible continuation of the apportionment footnote.<br><br>(b)(6): <u>personal information</u> - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 73 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 068 | RE: USAI | 8/26/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): <u>deliberative process privilege and attorney-client privilege</u> - Email between OMB and DoD regarding possible continuation of the apportionment footnote and the potential impacts of such a pause, including references to ongoing discussions by agency counsel on specific issues.<br><br>(b)(6): <u>personal information</u> - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 74 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 069 - 19 075 | RE: Any news? | 8/20/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): <u>deliberative process privilege and attorney-client privilege</u> - Email between OMB and DoD regarding possible continuation of the apportionment footnote and the potential impacts of such a pause. This email chain also reflects communications seeking and receiving legl advice from OMB's Office of General Counsel.<br><br>(b)(6): <u>personal information</u> - The email addresses and telephone numbers of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 75 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 076 | FW: Ukraine | 8/12/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5):  <u>deliberative process privilege and attorney-client privilege</u> - Email from DoD Comptroller to senior DoD officials, including General Counsel, regarding state of play and possible policy options given USAI pause to date, forwarded to OMB.<br><br>(b)(6): <u>personal information</u> - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |

**Vaughn Index**

**CPI v. DoD, No. 19-3265 (D.D.C.)**

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemption(s) |
|---|---|---|---|---|---|---|
| 76 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 077 | FW: Ukraine | 8/12/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attornry-client privilege - Duplicate of Bates 076 forwarded to two other DoD senior officials for informational purposes.<br><br>(b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 77 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 078 | FW: Ukraine Foreign Assistance | 7/25/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email exchange between OMB and DoD reflecting consultations and communications with DoD's Office of General Counsel about the hold on funding to Ukraine.<br><br>(b)(6): personal information - The email addresses and telephone numbers of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 78 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 079 | RE: Ukraine Funding Follow-up | 7/2/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and presidential communications privilege - Emails exchange between OMB and DoD regarding questions about funding for Ukraine that include references to communications involving the President or his immediate advisors.<br><br>(b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 79 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 080 | FY2019 USAI Tranches | 6/24/2019 | DoD | (b)(3) 10 USC 130c | (b)(3) 10 USC 130c:  The protected information is exempt from disclosure per statute which pertains to sensitive information of foreign governments. In this instance, the information was provided by the government of Ukraine to the United States in confidence and is not to be released to the public. |
| 80 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 081 - 19 087 | FY19 USAI Vendor Information | 6/25/2019 | DoD | (b)(3), 10 USC 130c | (b)(3), 10 USC 130c: Sensitive information about Ukraine's national security needs, plans for acquisition of specific military goods with USAI funds, and associated estimated costs. Duplicate of 12 Dec 2019 release Bates 121-27. |
| 81 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 088 - 19 089 | Ukraine Security Assistance: U.S. Industry Benefits and International Burden-Sharing | | DoD | (b)(3) 10 USC 130c, (b)(6) | (b)(3) 10 USc 130c: Sensitive information concerning amount and type of military aid provided to Ukraine by US and allied countries<br><br>(b)(6): personal information - The name and phone number of a junior DoD official have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 82 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 090 - 19 092 | RE: POTUS follow up | 6/25/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and presidential communications privilege - Internal DoD email exchange discussing follow-up questions from the President that includes a specific reference to communications involving the President or his immediate advisors. Partial duplicate of Bates 010-12.<br><br>(b)(6): personal information - The email addresses of employees and the names of junior DoD personnel  have been withheld pursuant to agency practice to avoid undue risk of harassment. |

**Vaughn Index**

**CPI v. DoD, No. 19-3265 (D.D.C.)**

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemption(s) |
|---|---|---|---|---|---|---|
| 83 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 093 - 19 094 | RE: POTUS follow up | 6/24/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and presidential communications privilege - Internal DoD email exchange discussing follow-up questions from the President that includes a specific reference to communications involving the President or his immediate advisors. Partial duplicate of Bates 010-12.<br><br>(b)(6): personal information - The email addresses of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 84 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 095 | USAI | 9/6/2019 | DoD/OMB | (b)(6) | (b)(6): personal information - The email addresses of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 85 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 096 | Re: USAI | 9/5/2019 | DoD/OMB | (b)(6) | (b)(6): personal information - The email addresses of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 86 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 097 - 19 098 | RE: update RE: 97-0100 O&M DW apportionment | 9/3/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege - Email between OMB and DoD regarding possible continuation of the apportionment footnote and the potential impacts of such a pause.<br><br>(b)(6): personal information - The email addresses and telephone numbers of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 87 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 099 | Fwd: SIGNED: DoD Apportionment-Operation and Maintenance, Defense-wide [Apportionment sent to Agency after Approval from [REDACTED] | 9/12/2019 | DoD/OMB | (b)(6) | (b)(6): personal information - The email addresses of individual employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 88 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 100 | USAI | 9/11/2019 | DoD/OMB | (b)(6) | (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 89 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 101 | USAI funds available for obligation | 9/12/2019 | DoD/OMB | (b)(6) | (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 90 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 102 | Updated 97-0100 O&M, Defense-wide apportionment | 9/5/2019 | DoD/OMB | (b)(6) | (b)(6): personal information - The email addresses and telephone numbers of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 91 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 103 | USAI another footnote extension | 9/7/2019 | DoD/OMB | (b)(6) | (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |

Vaughn Index

**CPI v. DoD, No. 19-3265 (D.D.C.)**

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemption(s) |
|---|---|---|---|---|---|---|
| 92 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 104 | Re: USAI | 9/12/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege and presidential communications privilege - Email from DoD SecDef Chief of Staff to DoD senior officials regarding press guidance. The email includes a specific reference to a communication involving the President or his immediate advisors. Partial duplicate of Bates 136 from December 12, 2019 production.<br><br>(b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 93 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 105 | RE: USAI latest apportionment footnote | 9/6/2019 | DoD | (b)(6) | (b)(6): personal information - The email addresses of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 94 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 106 - `19 107 | Ukraine | 9/5/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email from DoD Comptroller to Comptroller's office personnel and senior DoD officials, including the DoD's General Counsel, regarding OMB notification of another pending apportionment pause footnote and providing background information to aid deliberation in crafting DoD response to the notification. Duplicate of Bates 013-14.<br><br>(b)(6): personal information - The email addresses of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 95 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 108 - 19 109 | RE: From POLITICO - Trump slow-walks Ukraine military aid meant to contain Russia | 8/29/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege, attorney-client privilege and presidential communications privilege - Email communications regarding proposed DoD-OMB joint talking points developed by agency counsel that were debated and not released. The email exchange also includes a specific reference to communications involving the President or his immediate advisors. Partial duplicate of Bates 026.<br><br>(b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 96 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 110 | RE: From POLITICO - Trump slow-walks Ukraine military aid meant to contain Russia | 8/29/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email communications regarding proposed DoD-OMB joint talking points developed by agency counsel that were debated and not released. Partial duplicate of Bates 108-109.<br><br>(b)(6): personal information - The email addresses of employees  have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 97 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 111 - 19 112 | RE: [Non-DoD Source] Ukraine (USAI funding) | 8/27/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege - Email from DoD Comptroller to DoD senior officials regarding potential impact of USAI holds<br><br>(b)(6): personal information - The email addresses of employees  have been withheld pursuant to agency practice to avoid undue risk of harassment. |

**Vaughn Index**

**CPI v. DoD, No. 19-3265 (D.D.C.)**

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemption(s) |
|---|---|---|---|---|---|---|
| 98 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 113 | FW: Ukraine | 8/12/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Duplicate of Bates 077, which duplicates Bates 076, but forwarded to two other DoD senior officials for informational purposes.<br><br>(b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 99 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 114 - 19 116 | RE: POTUS follow up | 6/24/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege and presidential communications privilege - Internal DoD email exchange discussing follow-up questions from the President that includes a specific reference to communications involving the President or his immediate advisors. Duplicate of Bates 093-094.<br><br>(b)(6): personal information - The email addresses of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 100 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 117 - 19 119 | Comptroller 5 -15 for W/E 8/16/19 | 8/15/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege - This is a weekly summary provided by the Acting Comptroller to the Deputy SECDEF giving an overview of funding and related issues for military programs  in progress, including information on items unrelated to USAI.<br><br>(b)(6): personal information - The email addresses of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 101 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 120 - 19 121 | Comptroller 5 -15 for W/E 8/23/19 | 8/22/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege - This is a weekly summary provided by the Acting Comptroller to the Deputy SECDEF giving an overview of funding and related issues for military programs  in progress, including information on items unrelated to USAI.<br><br>(b)(6): personal information - The email addresses of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 102 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 122 - 19 123 | Comptroller 5 -15 for W/E 9/6/19 | 9/5/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege - This is a weekly summary provided by the Acting Comptroller to the Deputy SECDEF giving an overview of funding and related issues for military programs  in progress, including information on items unrelated to USAI.<br><br>(b)(6): personal information - The email addresses of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 103 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 124 - 19 125 | Comptroller 5 -15 for W/E 9/13/19 | 9/12/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege - This is a weekly summary provided by the Acting Comptroller to the Deputy SECDEF giving an overview of funding and related issues for military programs  in progress, including information on items unrelated to USAI.<br><br>(b)(6): personal information - The email addresses of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |

**Vaughn Index**

## CPI v. DoD, No. 19-3265 (D.D.C.)

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemption(s) |
|---|---|---|---|---|---|---|
| 104 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 126 - 19 128 | Comptroller 5 -15 for W/E 9/20/19 | 9/19/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege - This is a weekly summary provided by the Acting Comptroller to the Deputy SECDEF giving an overview of funding and related issues for military programs in progress, including information on items unrelated to USAI.<br><br>(b)(6): personal information - The email addresses of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 105 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 129 - 19 131 | Comptroller 5 -15 for W/E 9/27/19 | 9/26/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege - This is a weekly summary provided by the Acting Comptroller to the Deputy SECDEF giving an overview of funding and related issues for military programs in progress, including information on items unrelated to USAI.<br><br>(b)(6): personal information - The email addresses of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 106 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 132 | USAI Status | 7/30/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege - Email from DoD regarding possible continuation of the apportionment footnote and the potential impacts of such a pause.<br><br>(b)(6): personal information - The email addresses of employees, including the names of junior DoD personnel, have been withheld pursuant to agency policy to avoid undue risk of individual harassment |
| 107 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 133 - 19 136 | RAH for [REDACTED] (Final docs on USAI) | 8/16/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege and presidential communications privilege - Email exchange among senior DoD officials regarding briefing materials that also reference communications involving the President or his immediate advisors.<br><br>(b)(6): personal information - The email addresses of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 108 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 137 - 19 138 | READ AHEAD FOR THE SECRERTARY OF DEFENSE | N/A | DoD | (b)(1) 1.4(d), (b)(5), (b)(6) | (b)(1): classified information regarding national security interests related to Ukraine<br><br>(b)(5): deliberative process privilege and presidential communications privilege - briefing materials and talking points prepared for SECDEF in anticipation of a meeting with the President or his immediate advisors.<br><br>(b)(6): personal information - The email addresses of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 109 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 19 139 - 19 140 | [REDACTED] Ukraine Security Assistance | 8/19/2019 | DoD | (b)(1) 1.4(d), (b)(5), (b)(6) | (b)(1): classified information regarding national security interests related to Ukraine<br><br>(b)(5): deliberative process privilege and presidential communications privilege - briefing materials and talking points prepared for SECDEF in anticipation of a meeting with the President or his immediate advisors.<br><br>(b)(6): personal information - The email addresses of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |

**Vaughn Index**

**CPI v. DoD, No. 19-3265 (D.D.C.)**

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemption(s) |
|---|---|---|---|---|---|---|
| 110 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 19 141 - 19 143 | Ukraine Deputies Small Group Readout July 26, 2019 | 7/29/2019 | DoD | (b)(1) 1.4(d), (b)(5), (b)(6) | (b)(1): classified information regarding national security interests related to Ukraine<br><br>(b)(5): deliberative process privilege - summary aof discussions at Deputies' Small Group meeting and assessment of courses of action going forward relating to USAI<br><br>(b)(6): personal information - The email addresses of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 111 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 144 - 19 146 | Re: Ukraine Assistance Funding | 8/16/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege - responses to SECDEF's August 16 inquiry of senior DoD staff regarding the status of USAI funding and staff response including forwarding of guidance from OMB, to inform SECDEF regarding prospective courses of action.<br><br>(b)(6): personal information - The email addresses and telephone numbers of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---------------------------------------------------------

CENTER FOR PUBLIC INTEGRITY,  )
                           )
            *Plaintiff,*    )
                           )
   v.                   )     Civil Action No. 1:19-cv-3265
                           )
U.S. DEPARTMENT OF DEFENSE, et al.,  )
                           )
          *Defendants.*  )

---------------------------------------------------------

**DECLARATION OF HEATHER V. WALSH**

      I, Heather V. Walsh, make the following declaration based on personal knowledge and information made available to me in the course of my official duties:

1.     I am the Deputy General Counsel in the Office of Management and Budget's ("OMB") Office of the General Counsel ("OGC").  Previously, I was an Assistant General Counsel in this office, and I have worked at OMB since 2009.

2.     My office handles all requests submitted to OMB under the Freedom of Information Act (FOIA), 5 U.S.C. § 552.  One of my responsibilities is to supervise the staff responsible for handling FOIA requests.  Due to my official duties, I am familiar with the procedures followed by OMB OGC in responding to FOIA requests.  Additionally, I regularly work with OMB staff across multiple components of the agency, and am therefore familiar with the breadth and variety of OMB's involvement in issues across the Federal Government.

3.     I am aware of OMB's handling of the FOIA request at issue in this case, which was submitted to OMB by Plaintiffs on September 30, 2019 (the "Request").

4.     The purpose of this declaration is to describe the search conducted by OMB and the application of FOIA exemptions to the documents that OMB processed in response to Plaintiff's FOIA Request.

**OMB'S PROCESSING OF PLAINTIFF'S FOIA REQUEST**

5.      On September 30, 2019, OMB received Plaintiff's FOIA request via email.  A true and accurate copy of the request is attached hereto as Exhibit 1.  The request seeks "[a]ll records reflecting any communication between officials and employees of [OMB] and the office of Defense Department acting comptroller Elaine McCusker or other officials within the comptroller's [office] concerning the Ukraine Security Assistance Initiative, including but not limited to letters, emails, memoranda, reports, appointment calendars, and telephone logs … dated between April 2019 and the date [OMB] process[es] this request."  The request further specifies that responsive records "should include any and all communications pertinent to apportionment requests related to the funds for this initiative during this period."

6.      The following day, on October 1, 2019, OMB acknowledged receipt of Plaintiff's FOIA Request and assigned it OMB FOIA Number 2019-496.  A true and accurate copy of the acknowledgment is attached hereto as Exhibit 2.

7.      On October 30, 2019, Peter Smith, the Attorney for the Plaintiff, called OMB to inquire about the status of his client's FOIA request.  That same day, Plaintiff filed a Complaint for Declaratory and Injunctive Relief.  The following day, on October 31, 2019, Plaintiff filed a Motion for a Preliminary Injunction.

8.      In response to the Court's Order of November 25, 2019, granting Plaintiff's Motion for a Preliminary Injunction, Defendants began coordinating on the processing of Plaintiff's FOIA requests.  On December 12, 2019, Defendants jointly released 146 pages of records responsive to Plaintiff's FOIA requests and an additional 146 pages of responsive records on December 20, 2019.  The December 20th production also included 15 pages of revisions to the December 12th production reflecting additional disclosures. Additionally, Defendants are releasing additional information from two pages previously produced to Plaintiff in the final production on December

20, 2019. The two pages are CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 025 and CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 073. Defendants are making this additional release concurrent with this filing to be consistent with information released on duplicate pages in the December 20th production.

9.      Defendants did not withhold in full any responsive pages.  The entire production to Plaintiff consisted of 292 pages.

## ADEQUACY OF OMB'S SEARCH

10.      To expedite Plaintiff's Request and because time was of the essence, Defendants proposed that OMB would not need to independently conduct a redundant search for the requested communications between OMB and the Department of Defense ("DoD").  Plaintiff did not oppose this approach.  DoD had already begun processing the documents, and Plaintiff's Request to OMB was fully subsumed by its FOIA request to DoD.  As such, any responsive documents in OMB's custody and control would also be captured in DoD's system of records because Plaintiff sought from OMB only those communications exchanged between employees of the two agencies.  Hence, for purposes of meeting the Court's production deadlines, OMB relied upon DoD's search results.

11.      Subsequent to the two productions in this case and while preparing to submit this declaration, OMB released documents in another FOIA case, *American Oversight v. Office of Management and Budget et al.*, 19-cv-3213, on January 21, 2020.  In that case, OMB provided all of the sent emails of OMB's Principal Associate Director Michael Duffey, which partially overlapped with the production in this case insofar as it included communications between OMB and DoD's Office of the Under Secretary of Defense (Comptroller).  In conducting the search in that case, OMB relied on the documents it had collected in October 2019 from a back-end electronic search of all OMB employees' emails, calendars, and work folders.  The back-end

electronic search included the terms Ukraine, Ukraine Security Assistance Initiative, USAI or

Zelensk* (wild card).  All of the terms used in running the October 2019 search were in the

disjunctive to ensure the broadest collection of documents on the topic.

12.     In OMB's search for documents responsive for the January 21, 2020, production in the

*American Oversight* case, OMB did not identify any new records responsive to the Plaintiff's

Request for communications between OMB and DoD that had not been previously disclosed to

Plaintiff in this case.

### THE APPLICATION OF FOIA EXEMPTIONS

13.     Defendants did not withhold in full any responsive records, and therefore all

withholdings are represented by visible redaction markings on the productions.  The redactions

that this declaration addresses involve information withheld under FOIA Exemptions 5 and 6 in

which OMB has equities.  OMB provided input to DoD in the development of this *Vaughn* index

and I have personally reviewed it for accuracy in representing withholdings based on OMB's

equities.  A true and accurate copy of Defendants' *Vaughn* Index is attached hereto as Exhibit 3.

Further, I have personally reviewed each of the responsive records.

14.     Defendants applied redactions to withhold information from the responsive records

pursuant to FOIA Exemptions 5 and 6.  Exemption 5 protects from disclosure "inter-agency or

intra-agency memorandums or letters that would not be available by law to a party . . . in

litigation with the agency…."  *See* 5 U.S.C. § 552(b)(5).  Exemption 5 imports civil discovery

privileges into the FOIA, including the deliberative process privilege.  Exemption 5 has been

construed to exempt documents or information normally privileged in the civil discovery

context, and incorporates the attorney work product, attorney-client, deliberative process, and the

Presidential Communications Privilege.  Additionally, Exemption 6 protects against disclosure of

information that would constitute a clearly unwarranted invasion of personal privacy.  This

includes information such as direct telephone numbers and email addresses.

### DELIBERATIVE PROCESS PRIVELEGE

15.     The deliberative process privilege protects pre-decisional, deliberative communications

that are part of a process by which agency decisions are made.  It protects opinions, advice,

evaluations, deliberations, proposals, or recommendations that form part of an agency decision-

making process, as well as the selection and sorting of factual information relied upon as part of

the decision-making process.

16.     For both productions in this matter, Defendants withheld information through redactions

marked for Exemption 5 on a total of 81 documents pursuant to the deliberative process

privilege.[1] *See Vaughn* Index attached as Exhibit 3, Doc. Nos. 1, 6, 8, 9, 11, 12, 13, 14, 15, 16,

17, 20, 21, 22, 23, 24, 25, 28, 30, 31, 33, 34, 35, 36, 37, 38, 40, 41, 42, 43, 44, 45, 46, 47, 49, 51,

52, 53, 54, 56, 57, 60, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 82, 83, 86,

92, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110 & 111.  I have

reviewed each of these documents.  With respect to the threshold requirement of Exemption 5,

Defendants determined that each of the 81 documents containing information that Defendants

withheld under Exemption 5 contained inter-agency or intra-agency communications.

17.     With respect to the remaining elements of the deliberative process privilege, OMB

determined that all of the information that Defendants withheld was both pre-decisional and

deliberative. Specifically, and as explained more fully below and on a document-by-document

basis in Defendants' *Vaughn* Index, the withheld information contains pre-decisional and

deliberative communications or draft documents in the process of revision that do not reflect

---

[1] The 81 partially redacted documents protected from disclosure pursuant to the deliberative process privilege
overlap with both the 30 documents protected under the attorney-client privilege and the 24 documents protected
under the Presidential Communications Privilege.

final agency decisions.  These discussions and deliberations were part of a decision-making process conducted among senior officials at OMB and DoD in consultation with agency counsel and other components of the Executive Office of the President, such as the White House Office and the Office of the Vice President.

18.     More specifically, officials at OMB and DoD were determining how best to execute a series of short-term budgetary apportionment actions to allow time for a policy process to occur. The deliberations shown in the information being withheld concern the then-pending decisions by the Executive Branch on how and when to authorize the obligation of Federal funds appropriated for Ukraine, decisions on apportionment actions, and the potential implications of the apportionment actions.  This information is pre-decisional because, in each case of redacted information, officials were discussing matters intended to be subsequently decided based on these deliberations.  The redacted information is deliberative in that it reflects the weighing of options, opinions, and arguments as part of confidential discussions and deliberations that informed the Executive Branch's internal policy formulation process regarding the use of security assistance funds for Ukraine.  Defendants redacted such information from these records to protect internal Executive Branch discussions and deliberations from being chilled by the effects of public scrutiny of the deliberative process.

19.     OMB assists the President in carrying out his constitutional duty to "take Care that the Laws be faithfully executed."  *See* U.S. Const. Art. II, Sec 3.  As part of carrying out this duty, the Executive Branch must ensure that Federal agencies spend appropriated funds in an efficient and effective manner, consistent with the purpose for which the funds were appropriated.  When funds are appropriated by Congress, they are provided for particular purposes, for a specified time period, and in a specified amount.  Consistent with 31 U.S.C. §§ 1512 & 1513, OMB is required to apportion funds appropriated for a definite period to ensure that they last for the

entirety of the period for which they were appropriated by Congress, and to apportion funds appropriated for an indefinite period to achieve the most effective and economical use.  Those same laws expressly provide OMB with the authority to apportion funds for any time period (e.g., days, months, quarters) or purpose authorized by the appropriation.

20.     OMB closely coordinates and consults with the affected Federal agency in managing appropriations to ensure that the funds are being spent efficiently and in accordance with statutory directives, and to assess how or whether funds should be used for a particular activity. As was done here, OMB routinely uses its apportionment authority to prevent funds from being used: 1) during certain time periods, 2) for certain programs and activities, or 3) without adequate assurances from Federal agencies that the funds will be used effectively, consistent with law, and in accordance with programmatic need.

21.     Beginning around mid-June and continuing over the course of the summer of 2019, OMB engaged in precisely this collaborative process with DoD over the apportionment of approximately $214 million in DoD appropriations authorized for the Ukraine Security Assistance Initiative (USAI) during fiscal year 2019. The funds were authorized "to provide assistance, including training; equipment; lethal assistance; logistics support, supplies and services; sustainment; and intelligence support to the military and national security forces of Ukraine." *See* Department of Defense Appropriations Act, 2019, Pub. L. No. 115-245, div. A, title IX, § 9013, 132 Stat. 2981, 3044-45 (Sept. 28, 2018). OMB officials, including Principal Associate Director for National Security Programs Michael Duffey, engaged in an ongoing dialogue with officials at DoD, particularly DoD Acting Comptroller Elaine McCusker, to gather information and analysis with respect to the USAI for the purpose of providing advice and recommendations to the President concerning the apportionment of USAI funds. These

discussions between OMB and DoD informed a series of decisions made over the course of the summer about how to apportion USAI funds.

22.     Specifically, on July 25, 2019, OMB placed a footnote in the apportionment for the account that includes the USAI funds that stated:

> Amounts apportioned, but not yet obligated as of the date of this reapportionment, for the Ukraine Security Assistance Initiative (Initiative) are not available for obligation until August 5, 2019, to allow for an interagency process to determine the best use of such funds. Based on OMB's communication with DoD on July 25, 2019, OMB understands from the Department that this brief pause in obligations will not preclude DOD's timely execution of the final policy direction. DOD may continue its planning and casework for the Initiative during this period.

> *See* Doc. No. 3.

23.     In a series of decisions, OMB issued apportionment footnotes extending this pause in the availability of appropriated funds for obligation (often referred to as a "hold") for a limited period of time. *See* Doc. Nos. 1-5. OMB issued these apportionment footnotes, or variations on them, on August 6, 15, 20, 27, and 31; and on September 5, 6, and 10, 2019. *See* Doc. Nos. 1-5. OMB removed the footnote to the apportionment for USAI funds on September 12, 2019, thereby lifting the pause on the availability of USAI funds for obligation. *See* Doc. No. 4.

24.     The communications between OMB and DoD over the course of the summer of 2019 concerning the series of USAI apportionment footnotes reflect the type of dialogue and exchange essential to OMB's ability to carry out its apportionment authority. The compelled disclosure of such information would inhibit the frank and candid expression of views and the sharing of information that are essential for OMB to carry out its responsibilities, and would greatly impair the free exchange of information, ideas and analysis within OMB, and between OMB and other agencies in the Executive Branch.  As a consequence, disclosure would have an adverse impact on the quality of Executive Branch decision-making regarding the apportionment of Federal funds, a type of action that occurs frequently within OMB.

25.     The effectiveness of the deliberative process that OMB conducts depends on preserving

an environment in which Executive Branch officials can explore issues thoroughly and present

their views, concerns, and recommendations candidly.  The decision-making process regarding

apportionment actions is often a lengthy iterative process, where OMB staff gather information

from agencies and other sources, consolidate what they have learned, evaluate and analyze the

data, and develop policy recommendations.  These recommendations are reviewed and

potentially revised as more information and viewpoints are accumulated.  The information

generated during this process, including those at issue here, show in detail the thinking of OMB

and DoD officials as they considered recommendations and developed options for consideration.

OMB relies on the expertise of other agencies about the details of their respective programs and

operations in drafting and executing apportionments.  Without the assurance of confidentiality,

such agencies would not provide OMB the type of information it needs to properly inform the

President and to implement and oversee the Administration's priorities.  If such information were

to be publicly disclosed, the frank exchange of confidential opinions and analysis among

Executive Branch officials and staff would be significantly inhibited.

26.     The policy discussions and information gathering reflected in these documents are

representative of the kinds of deliberations that take place every day at OMB.  While the specific

subject matter, content, and course of deliberations vary, the deliberative process is generally

similar with respect to the overall way in which OMB works with Executive Branch agencies

when analyzing policies or legal issues.  Maintaining the confidentiality of these types of pre-

decisional and deliberative communications is critical for OMB to carry out its mission and

releasing this information therefore would cause foreseeable harm.

**ATTORNEY-CLIENT PRIVILEGE**

27.     Exemption 5 also incorporates the attorney-client privilege. The attorney-client privilege

protects confidential communications between an attorney and the client relating to a legal

matter for which the client has sought professional advice. The attorney-client privilege protects

confidential communications between the client agency and agency's attorney. The attorney-

client privilege justifies the withholding not only of communications from the client to the

attorney seeking legal advice, but also the communications from the attorney to the client

providing the requested advice. Recognition of this privilege supports the public policy of

promoting sound legal advice by ensuring free and candid communications between attorneys

and their clients.

28.     In the course of its decision-making process, OMB's policy officials occasionally sought

legal advice from their Office of General Counsel, including the General Counsel himself.

Additionally, OMB's Office of General Counsel met and conferred with DoD's Office of

General Counsel, including its General Counsel.  And policy officials at OMB and DoD

discussed and shared the legal advice that each had received from their respective legal offices.

All of these communications concerned the legal issues involved around the language of the

apportionment footnote, the duration of the hold in military assistance to Ukraine, and the

potential consequences associated with the pause in funding.

29.     OMB withheld information from a total of 30 documents on the basis of the attorney-

client privilege.  *See Vaughn* Index attached as Exhibit 3, Doc. Nos. 20, 21, 24, 31, 33, 34, 38,

40, 41, 42, 45, 46, 47, 51, 52, 54, 65, 66, 69, 70, 71, 73, 74, 75, 76, 77, 94, 95, 96 & 98.

Withholding communications seeking and conveying legal advice is necessary to ensure that

OMB continues to be able to receive sound and candid legal advice to inform its decision-

making on important policy issues and to carry out one of its core statutory responsibilities.  As

with the deliberative process privilege, OMB relies upon the assurance of such free and candid communications with other Executive Branch agencies.  Therefore, release of the withheld communications would cause foreseeable harm and have a chilling effect on the free flow of information with counsel, which in turn could result in unsound legal advice and advocacy.

## THE PRESIDENTIAL COMMUNICATIONS PRIVILEGE

30.     The Presidential Communications Privilege applies to documents reflecting the conversations that take place in the President's performance of his official duties, as well as information that is solicited and received by the President or an immediate White House advisor to the President who had broad and significant responsibility over the issues discussed in the document, or their immediate staff.  Public disclosure of the documents identified as subject to the Presidential Communications Privilege in this case would risk harming the quality of the information and advice available to the President.

31.     OMB has redacted portions of 24 documents pursuant to the Presidential Communications Privilege.  *See Vaughn* Index attached as Exhibit 3, Doc. Nos. 12, 13, 20, 28, 33, 34, 35, 37, 44, 46, 56, 57, 63, 64, 66, 78, 82, 83, 92, 95, 99, 107, 108 & 109.  Specifically, the documents in this category are emails that reflect communications by either the President, the Vice President, or the President's immediate advisors regarding Presidential decision-making about the scope, duration, and purpose of the hold on military assistance to Ukraine.

32.     I have reviewed the information withheld under the Presidential Communications Privilege, and my staff has consulted with the White House Counsel's Office in the review process.  As reflected in the *Vaughn* Index, the withheld information consists of either the status of an ongoing decision-making process involving the President, information that was solicited and received by the President as part of his official duties, or information that was solicited and received by the President's immediate advisors, including Robert Blair, who is an Assistant to

the President and Senior Advisor to the White House Chief of Staff whose official duties and responsibilities include national security issues.  Additionally, as reflected on the face of the email communications, the information solicited and received by Mr. Blair was in connection with an ongoing decision-making process involving the President.

## PROTECTION OF PERSONAL PRIVACY

33.     Exemption 6 protects against disclosure of information that would constitute a clearly unwarranted invasion of personal privacy.  Defendants redacted OMB staff email addresses and phone numbers from the documents.  Minor redactions of such information under Exemption 6 were applied to nearly every responsive record, as detailed in Defendants' *Vaughn* Index. Release of this information would constitute an unwarranted invasion of privacy because such disclosure would greatly increase the risk that these publicly-accessible communications tools could be abused by unsolicited "spam" email and calls, reducing their users' ability to avoid harassment and maintain their personal privacy.  Meanwhile, the exact email addresses and phone numbers of agency staff do not shed light on agency functions.

## REASONABLY SEGREGABLE INFORMATION

34.     In conducting a document-by-document review of all the records that are responsive to the FOIA requests, OMB assessed whether any factual or otherwise nonexempt information could be segregated and disclosed pursuant to 5 U.S.C. § 552(b).  Based on this assessment, OMB has determined that all nonexempt segregable information has been released.  In particular, OMB determined, with respect to each portion of information withheld under Exemption 5, that the information redacted consists of discussions involving deliberations in which facts are inextricably intertwined with deliberative discussion, opinions, and policy recommendations, such that disclosing any facts, and how they are presented, would reveal the thought processes of

OMB during deliberations.  Thus, I have determined that disclosure of such factual material would reveal the nature and substance of the agency deliberations.

In accordance with 28 U.S.C. § 1746, I hereby declare and affirm under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief, and that the accompanying *Vaughn* index and exhibits are true and correct.

Executed in Washington, District of Columbia, this 31st day of January, 2020.


_____
Heather V. Walsh
Deputy General Counsel
Office of the General Counsel
Office of Management and Budget

# EXHIBIT 1

*19-496*

**Hardy, Dionne M. EOP/OMB**

| | |
|---|---|
| **From:** | Smith, Jeffrey <jsmith@publicintegrity.org> |
| **Sent:** | Monday, September 30, 2019 5:58 PM |
| **To:** | MBX OMB FOIA |
| **Cc:** | Smith, Peter |
| **Subject:** | [EXTERNAL] OMB FOIA from the Center for Public Integrity with a request for urgent processing |

Dionne Hardy, FOIA Officer
Office of Management and Budget
725 17th Street NW, Suite 9204
Washington, DC 20503
E-mail address: OMBFOIA@omb.eop.gov

Dear Ms. Hardy:

   This is a request under the Freedom of Information Act.

   On behalf of the Center for Public Integrity and myself, jointly, I request that you provide us copies of the records identified and described below – or of records containing the information identified and described below:

   All records reflecting any communication between officials and employees of the Office of Management and Budget and the office of Defense Department acting comptroller Elaine McCusker or other officials within the comptroller's concerning the Ukraine Security Assistance Initiative, including but not limited to letters, emails, memoranda, reports, appointment calendars, and telephone call logs, and dated between April 2019 and the date you process this request. **These should include any and all communications pertinent to apportionment requests related to the funds for this initiative during this period.**

   Please note that since the aid to Ukraine under this program was released on September 12, we consider these communications **not** to be governed by FOIA exemptions pertinent to ongoing policy deliberations.

   Format: we prefer to receive records in the following formats, listed in order of preference:
   (1) word processing file, text-based PDF, or similar;
   (2) other non-proprietary electronic format;
   (3) paper copies.

   We specifically request all portions of any record responsive to the description above. If you withhold any record or any portion of a record as exempt, we specifically request the release of all segregable non-exempt portions, including but not limited to email header information (e.g., sender, recipients, date, subject) and analogous information in non-email documents.

   If you withhold any record or portion of a record, please specify which statutory exemptions are claimed for each withholding. Please separately state how disclosure would harm an interest protected by the cited exemption. Please describe each record withheld, including its date and size (e.g., amount of electronic memory or number of paper pages).

**Request for expedited processing**

   We request expedited processing for this request because the Center and I are "primarily engaged in disseminating information," and there is "urgency to inform the public concerning actual or alleged Federal

1

Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II). Specifically, the topic of the Defense Department's handling of the Ukraine Security Assistance program is a matter of immediate concern to the American public, given extensive media interest in the fate of the program and the pressures placed upon the department regarding this program. These matters are the subject of imminent congressional hearings and action.

**Request for fee reduction as a representative of the news media**

The Center for Public Integrity is a news media organization, and therefore this request should be exempt from all fees for search and review. This request is being made in connection with the Center's newsgathering functions and not for any other commercial purpose. The Center intends to produce one or more original investigative reports based on analysis of the requested information. The Center's work has won the Pulitzer Prize in 2014 and 2017 and numerous other journalism awards (see >http://www.publicintegrity.org/about/our-work/awards<).

The only federal court to consider the issue has held that the Center "is entitled to treatment as a representative of the news media for purposes of FOIA." <u>Center for Public Integrity v. HHS</u>, Civil Case No. 06-1818, 2007 U.S. Dist. LEXIS 56172 (D.D.C. Aug. 3, 2007), >https://ecf.dcd.uscourts.gov/cgi-bin/show_public_doc?2006cv1818-15<. In addition, our reporters covering Congress and congressional committees are credentialed by the Standing Committee of Correspondents of the Congressional Daily Press Gallery.

We expect that duplication fees for producing electronic records will be minimal. If there are processing fees greater than $25, inform me before you fill the request, and I will provide additional information in support of a public interest fee waiver.

Please feel free to contact me about any aspect of this request. In principle, the Center is willing to consider ways in which the request might reasonably be narrowed.

I certify that the information I have provided is true and correct. Thank you for your attention to this request.

Sincerely,

R. Jeffrey Smith
Center for Public Integrity
910 17th Street N.W., 7th Floor
Washington, DC 20006-2606
Office telephone 202-481-1206
jsmith@publicintegrity.org

R. Jeffrey Smith
Managing Editor for National Security
Center for Public Integrity
910 17th St. NW – 7th Floor
Washington, D.C. 20006
Landline 202-481-1206
Cellphone: 202-309-2359
GPG fingerprint: D27FC3FA32EE2938608047C5C50E1E64CF5D64F1


The Center for
**Public Integrity**

# EXHIBIT 2

| | |
|---|---|
| **From:** | MBX OMB FOIA |
| **To:** | "Smith, Jeffrey" |
| **Subject:** | RE: OMB FOIA from the Center for Public Integrity with a request for urgent processing |
| **Date:** | Tuesday, October 1, 2019 2:48:00 PM |
| **Attachments:** | image001.png |

Greetings:  This email acknowledges receipt of your Freedom of Information Act (FOIA) request to the Office of Management and Budget (OMB) dated and received in the office on September 30, 2019.  Your request has been logged in and is being processed.  For your reference, the OMB FOIA number is 2019-496.

Sincerely,
Dionne Hardy

**From:** Smith, Jeffrey <jsmith@publicintegrity.org>
**Sent:** Monday, September 30, 2019 5:58 PM
**To:** MBX OMB FOIA <MBX.OMB.FOIA@OMB.eop.gov>
**Cc:** Smith, Peter <psmith@publicintegrity.org>
**Subject:** [EXTERNAL] OMB FOIA from the Center for Public Integrity with a request for urgent processing

Dionne Hardy, FOIA Officer
Office of Management and Budget
725 17th Street NW, Suite 9204
Washington, DC 20503
E-mail address: OMBFOIA@omb.eop.gov

Dear Ms. Hardy;

This is a request under the Freedom of Information Act.

On behalf of the Center for Public Integrity and myself, jointly, I request that you provide us copies of the records identified and described below – or of records containing the information identified and described below:

All records reflecting any communication between officials and employees of the Office of Management and Budget and the office of Defense Department acting comptroller Elaine McCusker or other officials within the comptroller's concerning the **Ukraine Security Assistance Initiative**, including but not limited to letters, emails, memoranda, reports, appointment calendars, and telephone call logs, and dated between April 2019 and the date you process this request. **These should include any and all communications pertinent to apportionment requests related to the funds for this initiative during this period.**

Please note that since the aid to Ukraine under this program was released on September 12, we consider these communications **not** to be governed by FOIA exemptions pertinent to ongoing policy deliberations.

Format: we prefer to receive records in the following formats, listed in order of

preference:

    (1)  word processing file, text-based PDF, or similar;

    (2)  other non-proprietary electronic format;

    (3)  paper copies.


We specifically request all portions of any record responsive to the description above. If you withhold any record or any portion of a record as exempt, we specifically request the release of all segregable non-exempt portions, including but not limited to email header information (e.g., sender, recipients, date, subject) and analogous information in non-email documents.

If you withhold any record or portion of a record, please specify which statutory exemptions are claimed for each withholding. Please separately state how disclosure would harm an interest protected by the cited exemption. Please describe each record withheld, including its date and size (e.g., amount of electronic memory or number of paper pages).

**Request for expedited processing**

We request expedited processing for this request because the Center and I are "primarily engaged in disseminating information," and there is "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II). Specifically, the topic of the Defense Department's handling of the Ukraine Security Assistance program is a matter of immediate concern to the American public, given extensive media interest in the fate of the program and the pressures placed upon the department regarding this program. These matters are the subject of imminent congressional hearings and action.

**Request for fee reduction as a representative of the news media**

The Center for Public Integrity is a news media organization, and therefore this request should be exempt from all fees for search and review. This request is being made in connection with the Center's newsgathering functions and not for any other commercial purpose. The Center intends to produce one or more original investigative reports based on analysis of the requested information. The Center's work has won the Pulitzer Prize in 2014 and 2017 and numerous other journalism awards (see >http://www.publicintegrity.org/about/our-work/awards<).

The only federal court to consider the issue has held that the Center "is entitled to treatment as a representative of the news media for purposes of FOIA." Center for Public Integrity v. HHS, Civil Case No. 06-1818, 2007 U.S. Dist. LEXIS 56172 (D.D.C. Aug. 3, 2007), >https://ecf.dcd.uscourts.gov/cgi-bin/show_public_doc?2006cv1818-15<. In addition, our reporters covering Congress and congressional committees are credentialed by the Standing Committee of Correspondents of the Congressional Daily Press Gallery.

We expect that duplication fees for producing electronic records will be minimal. If there are processing fees greater than $25, inform me before you fill the request, and I will provide additional information in support of a public interest fee waiver.

Please feel free to contact me about any aspect of this request. In principle, the Center is willing to consider ways in which the request might reasonably be narrowed.

I certify that the information I have provided is true and correct. Thank you for your attention to this request.

Sincerely,


R. Jeffrey Smith

Center for Public Integrity

910 17th Street N.W., 7th Floor

Washington, DC 20006-2606

Office telephone 202-481-1206

jsmith@publicintegrity.org


R. Jeffrey Smith

Managing Editor for National Security

Center for Public Integrity

910 17th St. NW – 7th Floor

Washington, D.C. 20006

Landline 202-481-1206

Cellphone: 202-309-2359

GPG fingerprint: D27FC3FA32EE2938608047C5C50E1E64CF5D64F1



# EXHIBIT 3

# Vaughn Index

## CPI v. DoD, No. 19-3265 (D.D.C.)

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemption(s) |
|---|---|---|---|---|---|---|
| 1 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 001 - 028 | Hill Request for Apportionment Docs | 9/16/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege - This document is a draft "planned response" to congressional inquiry about "release of the Ukraine funding hold" sent by Elaine McCusker at DoD to Michael Duffey at OMB for input. The redacted information is predecisional because it involves a draft of a "planned response" and it is deliberative because it is part of a back-and-forth exchange with OMB.<br><br>(b)(6): personal information - email addresses of employees have been withheld pursuant to agency policy to avoid undue risk of individual harassment |
| 2 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 029 - 45 | RE: Footnote | 9/3/2019 | DoD/OMB | (b)(6) | (b)(6): personal information - email addresses and phone numbers of employees have been withheld pursuant to agency policy to avoid undue risk of individual harassment |
| 3 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 046 - 60 | FW: O&M Defense Wide 97-0100 OMB signed apportionment [Apportionment sent to Agency after Approval from | 7/26/2019 | DoD/OMB | (b)(6) | (b)(6): personal information - email addresses and phone numbers of employees, including the names of junior personnel at DoD, have been withheld pursuant to agency policy to avoid undue risk of individual harassment |
| 4 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 061 - 76 | O&M, DW apportionment | 9/16/2019 | DoD/OMB | (b)(6) | (b)(6): personal information - email addresses of employees have been withheld pursuant to agency policy to avoid undue risk of individual harassment |
| 5 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 077 - 91 | Updated USAI footnote | 9/7/2019 | DoD/OMB | (b)(6) | (b)(6): personal information - email addresses of employees have been withheld pursuant to agency policy to avoid undue risk of individual harassment |
| 6 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 092 - 094 | Re: From POLITICO - Trump slow-walks Ukraine military aid meant to contain Russia | 8/29-8/30/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege - Discussions among senior DoD officials about possible questions and proposed responses to Congress and the media concerning the Ukraine Security Assistance Initiative (USAI). Additionally, communications among senior DoD officials regarding whether to send a letter from the Deputy Secretary of Defense to OMB to express DoD's opinions regarding timing and logistical considerations for obligating USAI funds by the end of the fiscal year.<br><br>(b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |

# Vaughn Index

## CPI v. DoD, No. 19-3265 (D.D.C.)

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemption(s) |
|---|---|---|---|---|---|---|
| 7 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 095 | USAI | 8/16/2019 | DoD/OMB | (b)(6) | (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid risk of harassment. |
| 8 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 096 - 101 | USAI Contracting Info_16 Aug 19 0800 - Attachment to August 16, 2019 Email at Bates 095 | 8/16/2019 | DoD/OMB | (b)(3) 10 USC 130c; (b)(5) | (b)(3). 10 USC 130c: sensitive information about Ukraine's national security needs, plans for acquisition of specific military goods with USAI funds, and associated estimated costs. (b)(5): deliberative process privilege - Information about internal DoD contracting processes, timelines and procedures to help inform OMB's apportionment analysis. |
| 9 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 102- 103 | RE: Footnote | 8/20/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege - Email exchanges between OMB and DoD about proposed draft apportionment footnote regarding USAI funds. (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid risk of harassment. |
| 10 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 104 | USAI | 8/16/2019 | DoD/OMB | (b)(6) | (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid risk of harassment. (duplicate of Bates 095) |
| 11 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 105 | Apportionment | 8/12/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege - Email from DoD to OMB about the proposed footnote regarding the Ukraine apportionment (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid risk of harassment. |
| 12 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 106 -108 | RE: USAI | 8/12/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and presidential communications privilege - Email exchanges between DoD and OMB regarding possible continuation of the apportionment footnote and the potential impacts of such a pause.  This information was shared with OMB to inform its apportionment analysis.  These email exchanges also include references to communications involving the President or his immediate advisors. (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid risk of harassment. |

**Vaughn Index**

**CPI v. DoD, No. 19-3265 (D.D.C.)**

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemption(s) |
|---|---|---|---|---|---|---|
| 13 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 109 -111 | RE: USAI | 8/12/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and presidential communications privilege - Email exchanges between DoD and OMB regarding possible continuation of the apportionment footnote and the potential impacts of such a pause, including references to communications involving the President or his immediate advisors  (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. [partial duplicate of Bates 106-08] |
| 14 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 112 - 114 | RE: USAI | 8/1/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege - Email exchanges between DoD and OMB regarding possible continuation of the apportionment footnote and the potential impacts of such a pause  (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. [partial duplicate of Bates 106-08] |
| 15 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 115- 116 | RE: USAI | 8/10/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege – Email exchanges between DoD and OMB regarding possible continuation of the apportionment footnote and the potential impacts of such a pause  (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. [partial duplicate of Bates 106-08] |
| 16 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 117 - 118 | Attachment to August 9, 2019 email from DoD Comptroller at Bates 116. | 8/10/2019 | DoD/OMB | (b)(5) | (b)(5): deliberative process privilege – Draft questions and answers shared between DoD and OMB regarding USAI funding processes and timelines to aid OMB in its apportionment analysis. |
| 17 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 119 | For Big 4 Breakfast | 9/16/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege - Suggested talking points drafted by DoD Comptroller for Deputy Secretary of Defense in preparation for a breakfast meeting with "Big 4" chairs and ranking members of congressional armed services, on "Projection for USAI obligations by year end" and "Section 284 border barrier obligation status."  (b)(6): personal information - The email addresses of employees, including the name of a junior DoD official, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 18 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 120 | FW: FY 2019 USAI Vendor List | 9/9/2019 | DoD | (b)(6) | (b)(6): personal information - The email addresses of employees, including the name of a junior DoD official, have been withheld pursuant to agency practice to avoid undue risk of harassment. |

# Vaughn Index

## CPI v. DoD, No. 19-3265 (D.D.C.)

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemption(s) |
|---|---|---|---|---|---|---|
| 19 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 121-127 | FY 19 USAI Vendor Information | N/A | DoD | (b)(3) 10 USC 130c | (b)(3), 10 USC 130c: sensitive information about Ukraine's national security needs, plans for acquisition of specific military goods with USAI funds, and associated estimated costs |
| 20 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 128 -129 | RE: From POLITICO - Trump slow-walks Ukraine military aid meant to contain Russia | 8/29/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege, attorney-client privilege and presidential communications privilege - Email exchange among senior DoD officials, including General Counsel and Deputy General Counsel (Fiscal) deliberating draft talking points in response to a news article entitled "Trump slow-walks Ukraine military aid to contain Russia" and related discussions between DoD and OMB. One of the internal DoD email exchanges also includes a reference to communications involving the President or his immediate advisors. (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 21 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 130 | RE: From POLITICO - Trump slow-walks Ukraine military aid meant to contain Russia | 8/29/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email exchange among senior DoD officials, including General Counsel and Deputy General Counsel (Fiscal), and between DoD and OMB deliberating draft talking points in response to a news article entitled "Trump slow-walks Ukraine military aid to contain Russia." Partial duplicate of Bates 128-29. (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 22 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 131 | RE: Ukraine | 8/9/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege - Email from DoD to OMB regarding USAI funding processes and timelines to aid OMB in its apportionment analysis. (b)(6): personal information - The email addresses of employees, including the name of a junior DoD official, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 23 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 132 | Re: Ukraine Funding Plan | 22-Jul-19 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege - Email from OMB to DoD requesting "Ukraine funding plan" to assist OMB in its apportionment analysis. (b)(6): personal information - The email addresses of employees, including the name of a junior DoD official, have been withheld pursuant to agency practice to avoid undue risk of harassment. |

# Vaughn Index

## CPI v. DoD, No. 19-3265 (D.D.C.)

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemption(s) |
|---|---|---|---|---|---|---|
| 24 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 133 | Ukraine | 7/19/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email from OMB to DoD regarding USAI funding implications to aid OMB in its apportionment analysis, including legal implications and advice of counsel.

(b)(6): personal information - The email addresses of employees, including the name of a junior DoD official, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 25 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 134 | RE: Ukraine Funding Plan | 7/22/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege - Email from OMB to DoD requesting "Ukraine funding plan" to assist OMB in its apportionment analysis.

(b)(6): personal information - The email addresses of employees, including the name of a junior DoD official, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 26 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 135 | FY 19 Tranche I ($125M) notified to Congress in March | | DoD | (b)(3) 10 USC 130c | (b)(3), 10 USC 130c: sensitive information about Ukraine's national security needs, plans for acquisition of specific military goods with USAI funds, and associated estimated costs |
| 27 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 136 | RE: USAI | 9/12/2019 | DoD | (b)(6) | (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 28 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 137 | RE: USAI | 9/12/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege and presidential communications privilege - Email from DoD SecDef Chief of Staff to DoD senior officials regarding assessments about the release of funds, including references to communications involving the President or his immediate advisors. Partial duplicate of Bates 136.

(b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 29 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 138 | USAI | 8/26/2019 | DoD/OMB | (b)(6) | (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 30 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 139 | Footnote | 8/20/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege - Email from OMB about proposed draft apportionment footnote regarding USAI funds.

(b)(6): personal information - The email addresses and phone numbers of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |

# Vaughn Index

## CPI v. DoD, No. 19-3265 (D.D.C.)

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemption(s) |
|---|---|---|---|---|---|---|
| 31 | CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 140-146 | RE: Any news | 8/20/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email exchanges between DoD and OMB regarding possible continuation of the apportionment (footnote and the potential impacts of such a pause, including an email from OMB reflecting legal advice provided by its Office of General Counsel.<br><br>(b)(6): personal information - The email addresses and phone numbers of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 32 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 001 | RE: USAI | 9/12/2019 | DoD | (b)(6) | (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. Duplicate of Doc. 12 Bates 135. |
| 33 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 002 - 004 | Re_ Ukraine | 9/1/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege, attorney-client privilege and presidential communications privilege - Email exchanges among senior DoD officials, including the General Counsel, regarding whether to relay DoD's opinions regarding logistics and timing of obligating funds at a more senior level, such as the Deputy Secretary of Defense, to provide greater weight to those opinions, as well as email exchanges between OMB and DoD regarding possible continuation of the apportionment (footnote and the potential impacts of such a pause. These exchanges include references to communications involving the President or his immediate advisors.<br><br>(b)(6): personal information - The email addresses and phone numbers of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 34 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 005 - 007 | Re_ Ukraine | 9/1/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege, attorney-client privilege and presidential communications privilege - Email exchanges among senior DoD officials, including the General Counsel, regarding whether to relay DoD's opinions regarding logistics and timing of obligating funds at a more senior level, such as the Deputy Secretary of Defense, to provide greater weight to those opinions, as well as email exchanges between OMB and DoD regarding possible continuation of the apportionment (footnote and the potential impacts of such a pause. These exchanges include references to communications involving the President, the Vice President, or his immediate advisors.<br><br>(b)(6): personal information - The email addresses and phone numbers of employees have been withheld pursuant to agency practice to avoid undue risk of harassment [partial duplicate of Bates 002-004] |

# Vaughn Index

## CPI v. DoD, No. 19-3265 (D.D.C.)

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemption(s) |
|---|---|---|---|---|---|---|
| 35 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 008 | Ukraine | 9/1/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege and presidential communications privilege - Email exchange between SECDEF Chief of Staff and DoD Comptroller regarding whether to relay DoD's opinions regarding logistics and timing of obligating funds at more senior level, such as the Deputy Secretary of Defense, to provide greater weight to those opinions.  This exchange includes references to communications involving the President, the Vice President, or his immediate advisors.  (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 36 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 009 | Draft USAI Letter to OMB v2.docx | 8/28/2019 | DoD | (b)(5) | (b)(5): deliberative process privilege - The exempt information is a pre-decisional draft letter to OMB that was never sent and does not reflect final agency opinions or policy. |
| 37 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 010 - 012 | RE: POTUS follow up | 6/25/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege and presidential communications privilege - Internal DoD email exchange discussing follow-up questions from the President and how to respond to those questions.  The email exchange includes a specific reference to communications involving the President or his immediate advisors.  (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 38 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 013 - 014 | Ukraine | 9/5/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email from DoD Comptroller to Comptroller's office personnel and senior DoD officials, including the DoD's General Counsel, regarding OMB notification of another pending apportionment pause footnote and providing background information to aid deliberation in crafting DoD response to the notification.  (b)(6): personal information - The email addresses of employees, including the name of junior DoD official, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 39 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 015 - 016 | Copy of USAI Award Matrix_31 August_2019_working copy.xlsx | 9/5/2019 | DoD | (b)(3) 10 USC 130c | (b)(3), 10 USC 130c: Spreadsheet tracking commitment and obligation dates of USAI funded equipment that includes sensitive information about Ukraine's national security needs, plans for acquisition of specific military goods with USAI funds, and associated estimated costs. |

# Vaughn Index

## CPI v. DoD, No. 19-3265 (D.D.C.)

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemption(s) |
|---|---|---|---|---|---|---|
| 40 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 017 | Ukraine Update | 8/21/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email from DoD Comptroller to Comptroller's office personnel and senior DoD officials, including the DoD's General Counsel, regarding OMB notification of another pending apportionment pause footnote and providing background information to aid deliberation in crafting DoD response to the notification. <br><br> (b)(6): personal information - The email addresses of employees, including the names of junior DoD officials, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 41 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 018 - 019 | RE: Footnote | 8/7/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email exchange between DoD and OMB officials regarding possible continuation of the apportionment footnote and the potential impacts of such a pause, including references to conversations and advice provided by agency counsel. <br><br> (b)(6): personal information - The email addresses and telephone numbers of employees, including the names of junior DoD officials, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 42 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 020 | RE: Footnote | 8/6/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email exchange between DoD and OMB officials regarding possible continuation of the apportionment footnote and the potential impacts of such a pause, including references to conversations and legal advice provided by agency counsel. <br><br> (b)(6): personal information - The email addresses and telephone numbers of employees, including the names of junior DoD officials, have been withheld pursuant to agency practice to avoid undue risk of harassment. Partial duplicate of Bates 018-19. |
| 43 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 021 | Re: USAI | 9/7/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege - Email exchange between OMB and DoD regarding possible continuation of the apportionment footnote <br><br> (b)(6): personal information - The email addresses of individual employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 44 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 022 - 023 | RE: Footnote | 9/12/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and presidential communications privilege - Email exchanges between OMB and DoD regarding possible continuation of the apportionment footnote and the potential impacts of such a pause. These exchanges include references to communications involving the President or this immediate advisors. <br><br> (b)(6): personal information - The email addresses and telephone numbers of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |

# Vaughn Index

## CPI v. DoD, No. 19-3265 (D.D.C.)

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemption(s) |
|---|---|---|---|---|---|---|
| 45 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 024 | RE: Footnote | 9/11/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email exchanges between OMB and DoD regarding possible continuation of the apportionment footnote and the potential impacts of such a pause, including references to conversations and legal advice provided by agency counsel.<br><br>(b)(6): personal information - The email addresses of individual employees have been withheld pursuant to agency practice to avoid undue risk of harassment. Partial duplicate of Bates 22-23 |
| 46 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 025 | Re: SD COA | 9/1/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege, attorney-client privilege and presidential communications privilege - Eemail exchange between DoD Comptroller and SecDef Chief of Staff regarding possible courses of action SecDef ("SD COA" as referenced in email subject line) could take regarding USAI pause situation, including references to conversations and legal advice provided by agency counsel as well as communications involving the President, the Vice President, or his immediate advisors. Partial duplicate of Bates 063.<br><br>(b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 47 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 026 | FW: Agreed TPs | 8/29/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email communications regarding proposed DoD-OMB joint talking points developed by agency counsel that were debated and not released.<br><br>(b)(6): personal information - The email addresses and telephone numbers of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 48 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 027 | RE: USAI Letter to OMB (Revised) | 8/27/2019 | DoD/OMB | (b)(6) | (b)(6): personal information - The email addresses and telephone numbers of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 49 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 028 | USAI Letter to OMB (Rev.).docx | 8/27/2019 | DoD | (b)(5) | (b)(5): deliberative process privilege -The exempt information is a pre-decisional draft letter from the Deputy SecDef to the Acting Director of the Office of Management and Budget that the Deputy did not send to the Acting Director; it does not reflect final DoD opinions or policy. |
| 50 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 029 | RE: USAI Letter to OMB (Revised) | 8/27/2019 | DoD/OMB | (b)(6) | (b)(6): personal information - The email addresses and telephone numbers of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |

**Vaughn Index**

**CPI v. DoD, No. 19-3265 (D.D.C.)**

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemption(s) |
|---|---|---|---|---|---|---|
| 51 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 030 - 033 | Re: Any news? | 8/19/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email exchange between DoD and OMB regarding possible implications of continuing USAI and the nature of the obligation process. The email exchange reflects legal advice provided by OMB's Office of General Counsel. (b)(6): personal information - The email addresses and telephone numbers of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 52 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 034 | Re: Apportionment | 8/12/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email exchange between OMB and DoD regarding draft apportionment footnote and the potential impacts of such a pause, including references to seeking legal advice on particular issues. (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 53 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 035 - 037 | Re: USAI | 8/11/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege - Email exchange between OMB and DoD regarding the possibility of continuing the USAI apportionment footnote and the potential implications of such a pause. (b)(6): personal information - The email addresses of individual employees, including the names of junior DoD employees, have been withheld pursuant to agency practice to avoid undue risk of harassment. Partial duplicate of Bates 106-08 from December 12 release. |
| 54 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 038 - 039 | RE: USAI | 7/30/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email exchange between OMB and DoD regarding the draft footnote apportionment that includes references to communications with OMB's Office of General Counsel. (b)(6): personal information - The email addresses of individual employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 55 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 040 | Ukraine Foreign Assistance | 7/25/2019 | DoD/OMB | (b)(6) | (b)(6): personal information - The email addresses and telephone numbers of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 56 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 041 | Ukraine Funding Follow-up | 7/2/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and presidential communications privilege - Email from OMB to DoD about the status of funding for Ukraine, including references to communications involving the President or his immediate advisors. (b)(6): personal information - The email addresses and telephone numbers of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |

# Vaughn Index

CPI v. DoD, No. 19-3265 (D.D.C.)

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemption(s) |
|---|---|---|---|---|---|---|
| 57 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 042 - 043 | FW: POTUS follow up | 6/24/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and presidential communications privilege - Internal DoD email exchange discussing follow-up questions from the President that includes a specific reference to communications involving the President or his immediate advisors.<br><br>(b)(6): personal information - The email addresses and telephone numbers of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 58 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 044 - 046 | RE: Pentagon to send $250M in weapons to Ukraine | 6/20/2019 | DoD/OMB | (b)(6) | (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 59 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 047 - 048 | Re: Pentagon to send $250M in weapons to Ukraine | 6/20/2019 | DoD/OMB | (b)(6) | (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 60 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 049 | Re:Year End | 10/1/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege - Non-germane reference to the congressional committee that was the list (of four committee) responder on approvals (or unrelated US Air Force funding, which is non-public and implicates the nature of the process for) congressional DoD funding approvals.<br><br>(b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 61 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 050 | Ukraine | 9/12/2019 | DoD | (b)(6) | (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 62 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 051 - 052 | RE: Ukraine TPs | 9/12/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege - Email communications regarding proposed DoD-OMB joint talking points that were debated and not released.<br><br>(b)(6): personal information - The email addresses and telephone numbers of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 63 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 053 - 054 | Re: Footnote | 9/12/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and presidential communications privilege - Email exchanges between OMB and DoD regarding possible continuation of the apportionment footnote, including references to communications involving the President or his immediate advisors.<br><br>(b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. Partial duplicate of Bates 023. |
| 64 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 055 - 057 | Re: Footnote | 9/12/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and presidential communications privilege - Email exchanges between OMB and DoD regarding possible continuation of the apportionment footnote, including references to communications involving the President or his immediate advisors.<br><br>(b)(6): personal information - The email addresses and telephone numbers of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. Partial duplicate of Bates 023, 053-54. |

CPI v. DoD, No. 19-3265 (D.D.C.)

# Vaughn Index

## CPI v. DoD, No. 19-3265 (D.D.C.)

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemption(s) |
|---|---|---|---|---|---|---|
| 65 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 058 | Ukraine | 9/10/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email from DoD Comptroller to Deputy Chief of Staff with copy to DoD General Counsel and other senior lawyers seeking legal advice and policy options on how DoD and specifically DSCA should proceed given continuing USAI hold.<br><br>(b)(6): personal information - The email addresses of individual employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 66 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 059 - 19 060 | Re: USAI Status and Update Plan | 9/11/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege, attorney-client privilege and presidential communications privilege -Email exchanges between OMB and DoD regarding the apportionment footnote and the potential impacts of such a pause, including references to communications among the attorneys as well as communications involving the President or his immediate advisors.<br><br>(b)(6): personal information - The email addresses and telephone numbers of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 67 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 061 | Re: USAI | 9/7/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege - Email exchanges between OMB and DoD regarding the apportionment footnote and the potential impacts of such a pause<br><br>(b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 68 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 062 | RE: Ukraine | 9/5/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege - Email exchanges between OMB and DoD regarding the apportionment footnote and the potential impacts of such a pause<br><br>(b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 69 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 063 | RE: SD COA | 9/1/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email exchange between DoD Comptroller and SecDef Chief of Staff regarding possible courses of action SecDef ("SD COA" as referenced in email subject line) could take regarding USAI pause situation, including references to conversations and legal advice provided by agency counsel. Partial duplicate of Bates 025.<br><br>(b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |

# Vaughn Index

## CPI v. DoD, No. 19-3265 (D.D.C.)

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemption(s) |
|---|---|---|---|---|---|---|
| 70 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 064 - 19 065 | RE: Agreed TPs | 8/29/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email communications regarding proposed DoD-OMB joint talking points developed by agency counsel that were debated and not released.  (b)(6): personal information - The email addresses and telephone numbers of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. Partial duplicate of Bates 026. |
| 71 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 066 | USAI | 8/26/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email from DoD regarding possible continuation of the apportionment footnote and the potential impacts of such a pause, including discussion about advice from agency counsel.  (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 72 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 067 | RE: USAI | 8/26/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege - Email between OMB and DoD regarding possible continuation of the apportionment footnote.  (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 73 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 068 | RE: USAI | 8/26/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email between OMB and DoD regarding possible continuation of the apportionment footnote and the potential impacts of such a pause, including references to ongoing discussions by agency counsel on specific issues.  (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 74 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 069 - 19 075 | RE: Any news? | 8/20/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email between OMB and DoD regarding possible continuation of the apportionment footnote and the potential impacts of such a pause. This email chain also reflects communications seeking and receiving legl advice from OMB's Office of General Counsel  (b)(6): personal information - The email addresses and telephone numbers of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 75 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 076 | FW: Ukraine | 8/12/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email from DoD Comptroller to senior DoD officials, including General Counsel, regarding state of play and possible policy options given USAI pause to date, forwarded to OMB.  (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |

# Vaughn Index

## CPI v. DoD, No. 19-3265 (D.D.C.)

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemption(s) |
|---|---|---|---|---|---|---|
| 76 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 077 | FW: Ukraine | 8/12/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Duplicate of Bates 076 forwarded to two other DoD senior officials for informational purposes. (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 77 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 078 | FW: Ukraine Foreign Assistance | 7/25/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email exchange between OMB and DoD reflecting consultations and communications with DoD's Office of General Counsel about the hold on funding to Ukraine. (b)(6): personal information - The email addresses and telephone numbers of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 78 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 079 | RE: Ukraine Funding Follow-up | 7/2/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and presidential communications privilege - Emails exchange between OMB and DoD regarding questions about funding for Ukraine that include references to communications involving the President or his immediate advisors. (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 79 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 080 | FY2019 USAI Tranches | 6/24/2019 | DoD | (b)(3) 10 USC 130c | (b)(3) 10 USC 130c: The protected information is exempt from disclosure per statute which pertains to sensitive information of foreign governments. In this instance, the information was provided by the government of Ukraine to the United States in confidence and is not to be released to the public. |
| 80 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 081 - 19 087 | FY19 USAI Vendor Information | 6/25/2019 | DoD | (b)(3) 10 USC 130c | (b)(3), 10 USC 130c: Sensitive information about Ukraine's national security needs, plans for acquisition of specific military goods with USAI funds, and associated estimated costs. Duplicate of 12 Dec 2019 release Bates 121-27. |
| 81 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 088 - 19 089 | Ukraine Security Assistance: U.S. Industry Benefits and International Burden-Sharing | | DoD | (b)(3) 10 USC 130c, (b)(6) | (b)(3) 10 USC 130c: Sensitive information concerning amount and type of military aid provided to Ukraine by US and allied countries (b)(6): personal information - The name and phone number of a junior DoD official have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 82 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 090 - 19 092 | RE: POTUS follow up | 6/25/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and presidential communications privilege - Internal DoD email exchange discussing follow-up questions from the President that includes a specific reference to communications involving the President or his immediate advisors. Partial duplicate of Bates 010-12. (b)(6): personal information - The email addresses of employees and the names of junior DoD personnel have been withheld pursuant to agency practice to avoid undue risk of harassment. |

**Vaughn Index**

**CPI v. DoD, No. 19-3265 (D.D.C.)**

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemption(s) |
|---|---|---|---|---|---|---|
| 83 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 093 - 19 094 | RE: POTUS follow up | 6/24/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and presidential communications privilege - Internal DoD email exchange discussing follow-up questions from the President that includes a specific reference to communications involving the President or his immediate advisors. Partial duplicate of Bates 010-12. (b)(6): personal information - The email addresses of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 84 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 095 | USAI | 9/6/2019 | DoD/OMB | (b)(6) | (b)(6): personal information - The email addresses of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 85 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 096 | Re: USAI | 9/5/2019 | DoD/OMB | (b)(6) | (b)(6): personal information - The email addresses of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 86 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 097 - 19 098 | RE: update RE: 97-0100 O&M DW apportionment | 9/3/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege - Email between OMB and DoD regarding possible continuation of the apportionment footnote and the potential impacts of such a pause. (b)(6): personal information - The email addresses and telephone numbers of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 87 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 099 | Fwd: SIGNED: DoD Apportionment-Operation and Maintenance, Defense-wide [Apportionment sent to Agency after Approval from [REDACTED] | 9/12/2019 | DoD/OMB | (b)(6) | (b)(6): personal information - The email addresses of individual employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 88 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 100 | USAI | 9/11/2019 | DoD/OMB | (b)(6) | (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 89 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 101 | USAI funds available for obligation | 9/12/2019 | DoD/OMB | (b)(6) | (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 90 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 102 | Updated 97-0100 O&M, Defense-wide apportionment | 9/5/2019 | DoD/OMB | (b)(6) | (b)(6): personal information - The email addresses and telephone numbers of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 91 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 103 | USAI another footnote extension | 9/7/2019 | DoD/OMB | (b)(6) | (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |

# Vaughn Index

## CPI v. DoD, No. 19-3265 (D.D.C.)

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemptions(s) |
|---|---|---|---|---|---|---|
| 92 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 104 | Re: USAI | 9/12/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege and presidential communications privilege - Email from DoD SecDef Chief of Staff to DoD senior officials regarding press guidance. The email includes a specific reference to a communication involving the President or his immediate advisors. Partial duplicate of Bates 136 from December 13, 2019 production. |
| | | | | | | (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid risk of harassment. |
| 93 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 105 | RE: USAI latest apportionment footnote | 9/6/2019 | DoD | (b)(6) | (b)(6): personal information - The email addresses of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 94 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 106 - 19 107 | Ukraine | 9/5/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email from DoD Comptroller to Comptroller's office personnel and senior DoD officials, including the DoD's General Counsel, regarding OMB notification of another pending apportionment pause footnote and providing background information to aid deliberation in crafting DoD response to the notification. Duplicate of Bates 013-14. |
| | | | | | | (b)(6): personal information - The email addresses of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 95 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 108 - 19 109 | RE: From POLITICO - Trump slow-walks Ukraine military aid meant to contain Russia | 8/29/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege, attorney-client privilege and presidential communications privilege - Email communications regarding proposed DoD-OMB joint talking points developed by agency counsel that were debated and not released. The email exchange also includes a specific reference to communications involving the President or his immediate advisors. Partial duplicate of Bates 026. |
| | | | | | | (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid risk of harassment. |
| 96 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 110 | RE: From POLITICO - Trump slow-walks Ukraine military aid meant to contain Russia | 8/29/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Email communications regarding proposed DoD-OMB joint talking points developed by agency counsel that were debated and not released. Partial duplicate of Bates 108-109. |
| | | | | | | (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid risk of harassment. |
| 97 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 111 - 19 112 | RE: [Non-DoD Source] Ukraine (USAI funding) | 8/27/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege - Email from DoD Comptroller to DoD senior officials regarding potential impact of USAI holds |
| | | | | | | (b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid risk of harassment. |

# Vaughn Index

## CPI v. DoD, No. 19-3265 (D.D.C.)

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemption(s) |
|---|---|---|---|---|---|---|
| 98 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 113 | FW: Ukraine | 8/12/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege and attorney-client privilege - Duplicate of Bates 077, which duplicates Bates 076, but forwarded to two other DoD senior officials for informational purposes.<br><br>(b)(6): personal information - The email addresses of employees have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 99 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 114 - 19 116 | RE: POTUS follow up | 6/24/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege and presidential communications privilege - Internal DoD email exchange discussing follow-up questions from the President that includes a specific reference to communications involving the President or his immediate advisors. Duplicate of Bates 093-094.<br><br>(b)(6): personal information - The email addresses of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 100 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 117 - 19 119 | Comptroller 5 -15 for W/E 8/16/19 | 8/15/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege - This is a weekly summary provided by the Acting Comptroller to the Deputy SECDEF giving an overview of funding and related issues for military programs in progress, including information on items unrelated to USAI.<br><br>(b)(6): personal information - The email addresses of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 101 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 120 - 19 121 | Comptroller 5 -15 for W/E 8/23/19 | 8/22/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege - This is a weekly summary provided by the Acting Comptroller to the Deputy SECDEF giving an overview of funding and related issues for military programs in progress, including information on items unrelated to USAI.<br><br>(b)(6): personal information - The email addresses of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 102 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 122 - 19 123 | Comptroller 5 -15 for W/E 9/6/19 | 9/5/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege - This is a weekly summary provided by the Acting Comptroller to the Deputy SECDEF giving an overview of funding and related issues for military programs in progress, including information on items unrelated to USAI.<br><br>(b)(6): personal information - The email addresses of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 103 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 124 - 19 125 | Comptroller 5 -15 for W/E 9/13/19 | 9/12/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege - This is a weekly summary provided by the Acting Comptroller to the Deputy SECDEF giving an overview of funding and related issues for military programs in progress, including information on items unrelated to USAI.<br><br>(b)(6): personal information - The email addresses of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |

# Vaughn Index

## CPI v. DoD, No. 19-3265 (D.D.C.)

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemption(s) |
|---|---|---|---|---|---|---|
| 104 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 1 26 - 19 128 | Comptroller 5 -15 for W/E 9/20/19 | 9/19/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege - This is a weekly summary provided by the Acting Comptroller to the Deputy SECDEF giving an overview of funding and related issues for military programs in progress, including information on items unrelated to USAI.<br><br>(b)(6): personal information - The email addresses of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 105 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 1 29 - 19 131 | Comptroller 5 -15 for W/E 9/27/19 | 9/26/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege - This is a weekly summary provided by the Acting Comptroller to the Deputy SECDEF giving an overview of funding and related issues for military programs in progress, including information on items unrelated to USAI.<br><br>(b)(6): personal information - The email addresses of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 106 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 132 | USAI Status | 7/30/2019 | DoD/OMB | (b)(5), (b)(6) | (b)(5): deliberative process privilege - Email from DoD regarding possible continuation of the apportionment footnote and the potential impacts of such a pause.<br><br>(b)(6): personal information - The email addresses of employees, including the names of junior DoD personnel, have been withheld pursuant to agency policy to avoid undue risk of individual harassment |
| 107 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 133 - 19 136 | RAH for [REDACTED] (Final docs on USAI) | 8/16/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege and presidential communications privilege - Email exchange among senior DoD officials regarding briefing materials that also reference communications involving the President or his immediate advisors.<br><br>(b)(6): personal information - The email addresses of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 108 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 137 - 19 138 | READ AHEAD FOR THE SECRERTARY OF DEFENSE | N/A | DoD | (b)(1) 1.4(d), (b)(5), (b)(6) | (b)(1): classified information regarding national security interests related to Ukraine<br><br>(b)(5): deliberative process privilege and presidential communications privilege - briefing materials and talking points prepared for SECDEF in anticipation of a meeting with the President or his immediate advisors.<br><br>(b)(6): personal information - The email addresses of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 109 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 1 39 - 19 140 | [REDACTED] Ukraine Security Assistance | 8/19/2019 | DoD | (b)(1) 1.4(d), (b)(5), (b)(6) | (b)(1): classified information regarding national security interests related to Ukraine<br><br>(b)(5): deliberative process privilege and presidential communications privilege - briefing materials and talking points prepared for SECDEF in anticipation of a meeting with the President or his immediate advisors.<br><br>(b)(6): personal information - The email addresses of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |

CPI v. DoD, No. 19-3265 (D.D.C.)

# Vaughn Index

## CPI v. DoD, No. 19-3265 (D.D.C.)

| Doc. No. | Bates Number | Title | Date | Agency | Exemptions | Explanation of Withheld Information/Exemption(s) |
|---|---|---|---|---|---|---|
| 110 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 19 141 - 19 143 | Ukraine Deputies Small Group Readout July 26, 2019 | 7/29/2019 | DoD | (b)(1) 1.4(d), (b)(5), (b)(6) | (b)(1): classified information regarding national security interests related to Ukraine<br><br>(b)(5): deliberative process privilege - summary and discussions at Deputies' Small Group meeting and assessment of courses of action going forward relating to USAI<br><br>(b)(6): personal information - The email addresses of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |
| 111 | CPI v DoD 19-3265 (D.D.C.) 20 Dec 19 144 - 19 146 | Re: Ukraine Assistance Funding | 8/16/2019 | DoD | (b)(5), (b)(6) | (b)(5): deliberative process privilege - responses to SECDEF's August 16 inquiry of senior DoD staff regarding the status of USAI funding and staff response including forwarding of guidance from OMB, to inform SECDEF regarding prospective courses of action.<br><br>(b)(6): personal information - The email addresses and telephone numbers of employees, including the names of junior DoD personnel, have been withheld pursuant to agency practice to avoid undue risk of harassment. |

**CERTIFICATE OF SERVICE**

I hereby certify that on January 31, 2020, I electronically transmitted the foregoing to the parties and the clerk of court for the United States District Court for the District of Columbia using the CM/ECF filing system.

  /s/ Amber Richer
AMBER RICHER (CA Bar No. 253918)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Tel: (202) 514-3489
Email: amber.richer@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

|  |  |
|---|---|
| CENTER FOR PUBLIC INTEGRITY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )     Civil Action No. 1:19-cv-03265 (CKK) |
| U.S. DEPARTMENT OF DEFENSE, | ) |
| | ) |
| and | ) |
| | ) |
| OFFICE OF MANAGEMENT AND BUDGET, | ) |
| | ) |
| Defendants. | ) |

---

### [PROPOSED] ORDER

Upon consideration of the parties' cross-motions for summary judgment, relevant law, related legal memoranda in opposition and support, the entire record, and for the reasons set forth in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Defendants' motion for summary judgment is **GRANTED**; and it is further

**ORDERED** that Plaintiff's cross-motion for summary judgment is **DENIED.**

**JUDGMENT** shall be entered in favor of Defendants and the case shall be closed. This is a final, appealable Order.

Date: _____       _____

                                   HON. COLLEEN KOLLAR-KOTELLY

                                     United States District Judge