# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR PUBLIC INTEGRITY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )     Civil Action No. 1:19-cv-03265 (CKK) |
| U.S. DEPARTMENT OF DEFENSE, | ) |
| | ) |
| and | ) |
| | ) |
| OFFICE OF MANAGEMENT AND BUDGET, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANTS' COMBINED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 1

    I.      Defendants' search was adequate ........................................................... 1

    II.     Defendants properly applied the challenged exemptions ....................................... 3

        A.  Defendants properly withheld classified information under
            Exemption 1 ..................................................................................... 3

        B.  Defendants properly withheld sensitive foreign government
            information under Exemption 3 ........................................................ 6

        C.  Defendants properly withheld information protected by various legal
            privileges under Exemption 5 ......................................................... 7

               1.     Defendants properly applied the attorney-client privilege............. 7

               2.     Defendants properly applied the deliberative process
                     privilege ..................................................................................... 11

               3.     Defendants properly applied the presidential
                     communications privilege............................................................. 13

               4.     Defendants have sustained their burden to show reasonably
                     foreseeable harm ........................................................................ 17

                5.     Defendants' proper application of Exemption 5 cannot be
                     overcome by arguments about government misconduct............... 21

        D.  Defendants properly withheld email addresses under Exemption 6............... 28

    III.    *In camera* review is neither necessary nor appropriate ........................................ 29

    IV.    Defendants satisfied their duty to segregate ........................................................ 30

CONCLUSION................................................................................................................. 32

# TABLE OF AUTHORITIES

## CASES

*ACLU v. U.S. Dep't of Def.,*
  628 F.3d 612 (D.C. Cir. 2011) ............................................................................... 29

*Alfred A. Knopf, Inc. v. Colby,*
  509 F.2d 1362 (4th Cir.),
  *cert. denied,* 421 U.S. 992 (1975) ......................................................................... 19

*Brayton v. U.S. Trade Rep.,*
  657 F. Supp. 2d 138 (D.D.C. 2009) ......................................................................... 4

*Bureau of Nat. Affairs, Inc. v. U.S. Dep't of Justice,*
  742 F.2d 1484 (D.C. Cir. 1984) ............................................................................. 12

*Cause of Action Institute v. U.S. Dep't of Justice,*
  330 F. Supp. 3d 336 (D.D.C. 2018) ....................................................................... 11

*Coastal States Gas Corp. v. U.S. Dep't of Energy,*
  617 F.2d 854 (D.C. Cir. 1980) ................................................................................. 8

*Ctr. for Effective Gov't v. U.S. Dep't of State,*
  7 F. Supp. 3d 16 (D.D.C. 2013) ............................................................................. 15

*Ctr. for Int'l Envtl. Law v. Office of the U.S. Trade Rep.,*
  237 F. Supp. 2d 7 (D.D.C. 2002) ............................................................................. 4

*Dep't of Interior v. Klamath Water Users Protective Ass'n,*
  532 U.S. 1 (2001) ................................................................................................... 19

*Dudman Commc'ns Corp. v. Dep't of the Air Force,*
  815 F.2d 1565 (D.C. Cir. 1987) ............................................................................. 20

*Elec. Frontier Found. v. U.S. Dep't of Justice,*
  739 F.3d 1 (D.C. Cir. 2014) ................................................................................... 21

*EPA v. Mink,*
  410 U.S. 73 (1973) ................................................................................................. 21

*F.T.C. v. Grolier Inc.,*
  462 U.S. 19 (1983) ................................................................................................. 22

*Fitzgibbon v. CIA,*
  911 F.2d 755 (D.C. Cir. 1990) ............................................................................... 19

*FTC v. Boehringer Ingelheim Pharm., Inc.*,
    892 F.3d 1264 (D.C. Cir. 2018) ............................................................................... 9

*Hall & Assocs. v. U.S. Envtl. Prot. Agency*,
    14 F. Supp. 3d 1 (D.D.C. 2014) .............................................................................. 24

*Hayden v. Nat'l Sec. Agency*,
    608 F.2d 1381 (D.C. Cir. 1979) .............................................................................. 29

*Hinckley v. United States*,
    140 F.3d 277 (D.C. Cir. 1998) ......................................................................... 25, 26

*Hunton & Williams LLP v. U.S. Envtl. Prot. Agency*,
    248 F. Supp. 3d 220 (D.D.C. 2017) .......................................................................... 8

*ICM Registry, LLC v. U.S. Dep't of Commerce*,
    538 F. Supp. 2d 130 (D.D.C. 2008) ....................................................................... 25

*\*In re Sealed Case*,
    121 F.3d 729 (D.C. Cir. 1997) ........................................................... 14, 17, 22, 24

*Iturralde v. Comptroller of Currency*,
    315 F.3d 311 (D.C. Cir. 2003) ................................................................................. 2

*Johnson v. Exec. Office for U.S. Att'ys*,
    310 F.3d 771 (D.C. Cir. 2002) ............................................................................... 31

*Judicial Watch of Fla., Inc. v. U.S. Dep't of Justice*,
    102 F. Supp. 2d 6 (D.D.C. 2000) ........................................................................... 24

*Judicial Watch v. U.S. Dep't of State*,
    235 F. Supp. 3d 310 (D.D.C. 2017) ....................................................................... 28

*Judicial Watch, Inc. v. Export-Import Bank*,
    108 F. Supp. 2d 19 (D.D.C. 2000) ......................................................................... 20

*Judicial Watch, Inc. v. U.S. Department of Justice*,
    365 F.3d 1108 (D.C. Cir. 2004) ..................................................................... 16, 17, 20

*Judicial Watch, Inc. v. U.S. Dep't of Commerce*,
    No. 15-cv-2088-CRC, 2017 WL 3822733 (D.D.C. Aug. 21, 2017) ........................ 23

*Judicial Watch, Inc. v. U.S. Dep't of State*,
    241 F. Supp. 3d 174 (D.D.C.),
    *amended on reconsideration*, 282 F. Supp. 3d 338 (D.D.C. 2017) .......................... 23

*Judicial Watch, Inc. v. U.S. Dep't of State*,
  285 F. Supp. 3d 249 (D.D.C. 2018) ................................................................. *passim*

*Lardner v. U.S. Dep't of Justice*,
  No. 03-cv-0180-JDB, 2005 WL 758267 (D.D.C. Mar. 31, 2005) ........................... 25

*Larson v. U.S. Dep't of State*,
  565 F.3d 857 (D.C. Cir. 2009) ......................................................................... 4, 30

*Loving v. U.S. Dep't of Defense*,
  550 F.3d 32 (D.C. Cir. 2008) ............................................................... 14, 16, 17

*Mead Data Cent., Inc. v. U.S. Dep't of Air Force*,
  566 F.2d 242 (D.C. Cir. 1977) ............................................................................ 9

*Muttitt v. Dep't of State*,
  926 F. Supp. 2d 284 (D.D.C. 2013) .................................................................. 21

*Nat'l Whistleblower Ctr. v. U.S. Dep't of Health & Human Servs.*,
  903 F. Supp. 2d 59 (D.D.C. 2012) ................................................................. 24, 25

*Neighborhood Assistance Corp. of Am. v. U.S. Dep't of Hous. & Urban Dev.*,
  19 F. Supp. 3d 1 (D.D.C. 2013) ...................................................................... 23, 25

*NLRB v. Sears, Roebuck & Co.*,
  421 U.S. 132 (1975) ............................................................................... 20, 21, 22

*Perry v. Block*,
  684 F.2d 121 (D.C. Cir. 1982) .............................................................................. 2

*Protect Democracy Project, Inc. v. U.S. Dep't of Def.*,
  320 F. Supp. 3d 162 (D.D.C. 2018) ..................................................................... 8

*Pub. Citizen, Inc. v. United States Dep't of Educ.*,
  388 F. Supp. 3d 29 (D.D.C. 2019) ...................................................................... 13

*Ray v. Turner*,
  587 F.2d 1187 (D.C. Cir. 1978) ........................................................................ 5, 30

*SafeCard Services v. SEC*,
  926 F.2d 1197 (D.C. Cir. 1991) ............................................................................ 7

*Schiller v. NLRB*,
  964 F.2d 1205 (D.C. Cir. 1992),
  *abrogated on other grounds by Milner v. U.S. Dep't of Navy*, 562 U.S. 562 (2011) .............. 29

iv

*Sussman v. U.S. Marshals Serv.*,
   494 F.3d 1106 (D.C. Cir. 2007) ........................................................................ 30

*Talbot v. U.S. Dep't of State*,
   315 F. Supp. 3d 355 (D.D.C. 2018) ............................................................. 30, 31

*Tax Analysts v. IRS*,
   117 F.3d 607 (D.C. Cir. 1997) ................................................................... 10, 11

*Thompson v. U.S. Dep't of Justice, Crim. Div.*,
   146 F. Supp. 3d 72 (D.D.C. 2015) .................................................................. 25

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
   489 U.S. 749 (1989) ................................................................................... 22, 24

*Upjohn Co. v. United States*,
   449 U.S. 383 (1981) ........................................................................................ 9

*Vento v. IRS*,
   714 F. Supp. 2d 137 (D.D.C. 2010) ................................................................ 9

*Weisman v. CIA*,
   565 F.2d 692 (D.C. Cir. 1977) ........................................................................ 5

*Wolf v. CIA*,
   473 F.3d 370 (D.C. Cir. 2007) ...................................................................... 18

*Wright v. Admin. for Children & Families*,
   No. 15-cv-218-BAH, 2016 WL 5922293 (D.D.C. Oct. 11, 2016) ..................... 23

## STATUTES

2 U.S.C. §§ 681-688 ......................................................................................... 26

5 U.S.C. § 552 ................................................................................... 1, 5, 6, 30

10 U.S.C. § 130c ............................................................................................ 6, 7

31 U.S.C. § 1512 ......................................................................................... 26, 27

31 U.S.C. § 1513 ......................................................................................... 26, 27

**OTHER AUTHOROTIES**

H.R. Res. 755, 116th Cong. (2019)................................................................................ 27

OMB Response Letter to the Government Accountability Office (Dec. 11, 2019),
   https://www.whitehouse.gov/wp-content/uploads/2020/01/response_to_gao_re_b-331564.pdf
   ("OMB Letter")............................................................................................................. 26

U.S. Gov't Accountability Office, Decision (Jan. 16, 2020),
   https://www.gao.gov/assets/710/703909.pdf ("GAO Decision")............................................. 26

**INTRODUCTION**

Plaintiff Center for Public Integrity challenges various withholdings by Defendants the U.S. Department of Defense ("DoD") and the Office of Management and Budget ("OMB") in response to Plaintiff's requests submitted under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Defendants are entitled to summary judgment because they have conducted an adequate search for responsive records, withheld information properly exempt under the FOIA, and produced all reasonably segregable, non-exempt, responsive information. In response to Defendants' detailed descriptions of the withheld information and explanations demonstrating that the claimed exemptions apply, Plaintiff relies upon speculation and seeks to limit the application of privileges in ways not supported by the case law. Plaintiff's baseless argument for extending the government misconduct exception in this case to overcome application of Exemption 5 privileges should be rejected as well. Accordingly, Defendants are entitled to summary judgment.

**ARGUMENT**

**I.        Defendants' search was adequate**

In their opening brief, Defendants demonstrated that they conducted an adequate search for responsive records. Defendants' Motion for Summary Judgment ("Def. Mot.") at 10-15, ECF No. 22; Declaration of Colonel Henry Dolberry, Jr. ("Dolberry Decl.") ¶ 5; Declaration of Heather V. Walsh ("Walsh Decl.") ¶¶ 10-12. Defendants described the scope and method of their search, including the search terms applied, custodians searched, and timeframe applied. Def. Mot. 10-15; Dolberry Decl. ¶ 5; Walsh Decl. ¶¶ 10-12. Defendants thus showed that they are entitled to summary judgment with respect to the adequacy of the search.

Rather than challenge Defendants' search method, Plaintiff's sole argument that the search was inadequate is that it failed to identify one document. Plaintiff's Cross-Motion for

Summary Judgment ("Pl. Mot.") at 3-4, ECF No. 23. But it is axiomatic that "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). "The issue is not whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate." *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982).

In any event, Defendants' search was reasonable even though it did not identify the document Plaintiff points to. That single document is "an email dated August 26, 2019, from OMB's general counsel Mark Paoletta to Edwin Castle, an official in the Pentagon's general counsel's office, that was copied to Elaine McCusker, the Pentagon's comptroller." Pl. Mot. at 3. DoD's search did not locate this document because the parameters of that search were for communications "To" or "From" OMB and personnel in the DoD comptroller's office. Second Declaration of Mark H. Herrington ("Second Herrington Decl.") ¶ 6. This limitation was a reasonable interpretation of "communication between" the two entities identified in Plaintiffs' request because copying someone on an email is typically done for informational purposes and not to ask a question, direct an action, or otherwise seek a response from the person merely copied. *Id.* Such is the case for the email in question, which is a communication between OMB's Office of General Counsel ("OGC") and DoD OGC; Elaine McCusker was akin to an observer overhearing the discussion. *Id.*

Although Defendants' search was therefore reasonable, for the purpose of removing this issue from the case, DoD nonetheless conducted a further search of its set of records concerning the Ukraine Security Assistance Initiative ("USAI") for communications either "To" or "From" OMB personnel in which DoD comptroller personnel were included in either the "Cc" or "Bcc"

lines, or vice versa. *Id.* at ¶¶ 4 & 7. This search located 15 emails that could be deemed responsive to Plaintiff's requests. *Id.* at ¶ 7. Of those emails, 14 also included DoD comptroller or OMB personnel in the "To" line and therefore were produced in response to Plaintiff's requests. *Id.* The only email located in the supplemental search that had not been produced to Plaintiff is the email cited in Plaintiff's brief. *Id.* That record is being provided to Plaintiff concurrent with this filing. *Id.*

As Plaintiff has not presented any concrete, specific challenge to the scope or method of the search, Defendants are entitled to summary judgment with respect to the adequacy of the search.

## II.   Defendants properly applied the challenged exemptions

### A.  Defendants properly withheld classified information under Exemption 1

As demonstrated in Defendants' opening brief, Defendants logically and plausibly applied Exemption 1 to information in Documents 108, 109, and 110. Def. Mot. at 16-19; Declaration of David V. Trulio ("Trulio Decl.") ¶¶ 11-13. The withheld information reflects foreign relations or foreign activities of the United States. Trulio Decl. ¶ 11. It assesses how U.S. support to Ukraine might impact global competition and future economic opportunities of the United States, as well as ramifications of such support on the relative geo-political strengths and weaknesses of both partners and competitors of the United States. *Id.* Disclosure of such assessments involving a foreign government could reasonably be expected to harm national security because they can be used by competitors or adversaries to shape activities going forward, to the detriment of national security, and undermine the confidence of allies, also to the detriment of national security. *Id.* ¶ 12. The withheld information also includes intelligence source and methods, the disclosure of which could also reasonably be expected to damage national security. *Id.* ¶ 13.

In opposition, Plaintiff challenges the Government's conclusion that disclosure of this information could reasonably be expected to harm national security. Pl. Mot. at 21. The D.C. Circuit has emphasized the "substantial weight owed agency explanations in the context of national security." *Larson v. U.S. Dep't of State*, 565 F.3d 857, 867 (D.C. Cir. 2009). Where, as here, Defendants have provided "reasonable specificity of detail as to demonstrate that the withheld information logically falls within the claimed exemption and evidence in the record does not suggest otherwise . . . the court should not conduct a more detailed inquiry to test the agency's judgment and expertise or to evaluate whether the court agrees with the agency's opinions." *Larson*, 565 F.3d at 863.

Defendant's explanation of how disclosure of the withheld information could reasonably be expected to harm national security is reasonably specific, and is logical and plausible. Courts have upheld analogous descriptions of the justification for withholding classified information under Exemption 1, without requiring more detailed explanation of the agency's judgment that disclosure could harm national security by jeopardizing intelligence sources and methods, damaging the confidence of allies, or degrading the ability of the U.S. to pursue its geo-political, economic, and national security goals. *See, e.g., id.* at 863 ("In its affidavit the agency described with reasonably specific detail the reason for nondisclosure: the importance for continuing intelligence operations of keeping intelligence sources and methods classified and confidential."); *Brayton v. U.S. Trade Rep.*, 657 F. Supp. 2d 138, 144-45 (D.D.C. 2009) (agency declaration sufficiently identified and articulated harm by stating that disclosure "could have revealed sensitive negotiating positions, disrupted ongoing negotiations and undermined the confidence of other nations in U.S. government assurances of confidentiality"); *Ctr. for Int'l Envtl. Law v. Office of the U.S. Trade Rep.*, 237 F. Supp. 2d 7 (D.D.C. 2002) (finding reasonably

specific description of harm to national security in declaration which stated that disclosure would "expose U.S. legal, policy, and strategic analysis of these issues," which could "permit other governments . . . to gauge the strength of the U.S. negotiating positions"). Plaintiff provides no concrete reason why the Court should reject Defendants' assertion of Exemption 1.

Moreover, Plaintiff offers no reason why *in camera* inspection of the information withheld under Exemption 1 would be necessary or appropriate. *See* Pl. Mot. at 21. Contrary to Plaintiff's off-hand and unsupported request, "*[i]n camera* inspection is 'particularly a last resort in "national security" situations' like this case." *Id.* at 870 (quoting *Weisman v. CIA*, 565 F.2d 692, 697 (D.C. Cir. 1977)). Thus, when faced with requests for *in camera* review, "a court should not resort to it routinely on the theory that 'it can't hurt.'" *Id.* (quoting *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978)). Rather, the D.C. Circuit has "consistently deferred to executive affidavits predicting harm to the national security, and [has] found it unwise to undertake searching judicial review." *Id.* at 865.

Finally, as addressed in more detail below, Plaintiff offers insufficient evidence to overcome the presumption of good faith afforded the Trulio Declaration's attestation that "no further segregation of meaningful information in the redacted documents can be made." Pl. Mot. at 21-22. Contrary to Plaintiff's characterization, the declaration specifically attests that "DoD has conducted a page-by-page, line-by-line review" of Documents 108, 109, and 110 to determine that "no further segregation of meaningful information in the redacted documents can be made without disclosing information entitled to protection under the FOIA." Trulio Decl. ¶ 14. Absent contrary evidence or a showing of bad faith, the declaration provides sufficient basis to sustain Defendants' fulfillment of the requirement to conduct a reasonable segregation of non-exempt, responsive information under 5 U.S.C. § 552(a)(8)(A)(ii)(II). The statute requires only

reasonable segregation, *id.*; Defendants need not show that "every word constitutes such classified information." Pl. Mot. at 21; *see also* Second Herrington Decl. ¶ 9 (explaining that information has been withheld from Documents 108, 109, and 110 under Exemption 5, as well as Exemption 1).

Particularly in light of the substantial weight owed in this context to Defendants' declarations, Defendants have provided reasonable detail supporting the logical and plausible application of Exemption 1 to the withholdings from Documents 108, 109, and 110. Accordingly, Defendants are entitled to summary judgment with respect to these withholdings.

### B. Defendants properly withheld sensitive foreign government information under Exemption 3

Defendants previously explained that they logically and properly withheld under Exemption 3 information under 10 U.S.C. § 130c, which provides that DoD may withhold sensitive foreign government information. Def. Mot. at 19-22; Dolberry Decl. ¶ 25. Pursuant to 10 U.S.C. § 130c, DoD withheld under this exemption specific, sensitive information about the military equipment that Ukraine needed to fulfill its national security needs, the specification of the equipment, and the associated costs. Def. Mot. at 19-22; Dolberry Decl. ¶ 25. DoD withheld this information pursuant to a request from the Ukrainian government. Def. Mot. at 19-22; Dolberry Decl. ¶ 25.

Plaintiffs concede that 10 U.S.C. § 130c is a valid Exemption 3 statute, and that the only issue is whether the information withheld falls within the parameters of 10 U.S.C. § 130c. Pl. Mot. at 22. Plaintiff relies upon mere speculation to challenge the Dolberry Declaration. Pl. Mot. at 22. Plaintiff argues, for example, that because the documents were not classified, the information "should therefore be presumed not to be sensitive." Pl. Mot. at 22. However, the statute provides for withholding of information that a foreign government has shared on the

condition that the information not be publicly released. Defendants showed in their declaration that such is the case with the withheld information here. Dolberry Decl. ¶ 25. Plaintiffs offer no basis for the Court to reject the government's declaration. Pl. Mot. at 22. Plaintiff's unsubstantiated speculation does not overcome the presumption that the government's declaration is true and therefore satisfies the requirement to show that the information fits within the contours of 10 U.S.C. § 130c.

Nor has Plaintiff offered any evidence to overcome the presumption of good faith with respect to the determination by the declarant that the records could not be further segregated. *SafeCard Services v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (agency declarations are afforded a general presumption of good faith). Accordingly, Defendants have met their burden to justify the withholdings under Exemption 3.

### C. Defendants properly withheld information protected by various legal privileges under Exemption 5

#### 1. Defendants properly applied the attorney-client privilege

As shown in their opening brief, Defendants have properly applied the attorney-client privilege to protect confidential communications with agency attorneys for the purpose of seeking legal advice, as well as the resulting legal advice from those attorneys. Def. Mot. at 22-26; Dolberry Decl. ¶¶ 13-19; Walsh Decl. ¶¶ 27-29.

In opposition, Plaintiff first argues that Defendants have not established that the withheld communications were for the purpose of seeking legal advice. Pl. Mot. at 8. Plaintiff offers no evidence to overcome Defendants' declarations. *See, e.g.,* Def. Mot. at 22-26; Dolberry Decl. ¶¶ 13-19; Walsh Decl. ¶¶ 27-29. Plaintiff cites no authority for its position that attorney-client privilege cannot apply in the absence of an "overt indication" within the communications themselves that the purpose of the communication is to obtain legal advice. Pl. Mot. at 9. To the

7

contrary, application of the attorney-client privilege does not hinge upon any magical recitations to show that the purpose of the communication was to solicit legal advice. *See Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 320 F. Supp. 3d 162, 176 (D.D.C. 2018) (rejecting plaintiff's argument that government's descriptions were conclusory where the withheld document was "the sort of document that would routinely be protected by attorney-client privilege in civil discovery"); *Hunton & Williams LLP v. U.S. Envtl. Prot. Agency*, 248 F. Supp. 3d 220, 255 (D.D.C. 2017) (upholding assertion of attorney-client privilege where the nature of legal advice provided was sufficiently clear from the overall context). Not only do the declarations attest in good faith to the fact that the communications sought legal advice, but also the context reinforces the representations made in those declarations that agency officials were communicating with agency attorneys for the purpose of obtaining informed legal advice. *See, e.g.,* Def. Mot. at 24-25; *see also, e.g., Vaughn* Index, Doc. No. 20 (describing communications between DoD Comptroller McCusker and DoD General Counsel Ney as well as Deputy General Counsel (Fiscal) Castle). As Defendants explained in their opening brief and declarations, such communications thus were in fact made for the "primary purpose" of securing legal advice, and Plaintiff fails to establish reason to doubt that. Def. Mot. at 22-26; Dolberry Decl. ¶¶ 13-19; Walsh Decl. ¶¶ 27-29.

Likewise, the inclusion of other agency officials on these communications does not defeat confidentiality or demonstrate that the purpose was not to obtain legal advice. *Cf.* Pl. Mot. at 9 (arguing that privilege does not apply because "DoD's General Counsel was often among 'other DoD leaders' receiving the same communications"). Courts frequently have upheld the assertion of attorney-client privilege under precisely such circumstances. *See, e.g., Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980). As the D.C. Circuit has

recognized, the mere act of sharing confidential communications with other agency employees

does not of itself defeat confidentiality. *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566

F.2d 242, 253 n.24 (D.C. Cir. 1977). Rather, "[w]here the client is an organization, the privilege

extends to those communications between attorneys and all agents or employees of the

organization who are authorized to act or speak for the organization in relation to the subject

matter of the communication." *Id.*

　　Second, Plaintiff argues that Defendants are withholding "purely factual" information

sent to agency attorneys to keep them informed, not solicitations of legal advice. Pl. Mot. at 8.

However, the attorney-client privilege covers precisely such "communications in which the

client informs the attorney of facts." *FTC v. Boehringer Ingelheim Pharm., Inc.*, 892 F.3d 1264,

1267 (D.C. Cir. 2018). Of necessity, the privilege is fundamentally concerned with protecting the

confidential communication of facts to an attorney by a client for the purpose of obtaining legal

advice. *Vento v. IRS*, 714 F. Supp. 2d 137, 151 (D.D.C. 2010). Indeed, the purpose of the

privilege inheres in the recognition that lawyers will be best able to advocate and offer advice if

they are "fully informed by the client." *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981).

Defendants' declarations establish that this factual information was indeed provided for the

purpose of obtaining legal advice, and Plaintiff offers no basis for disbelieving that. Def. Mot. at

22-26; Dolberry Decl. ¶¶ 13-19; Walsh Decl. ¶¶ 27-29.

　　Third, Plaintiff accuses Defendants of "attempting to bootstrap the attorney-client

privilege onto non-legal communications on the grounds that a lawyer was part of the email

chain." Pl. Mot. at 9. Defendants have done no such thing. As the *Vaughn* Index demonstrates,

OMB General Counsel Mark Paoletta and DoD General Counsel Paul Ney were copied on a

number of documents for which Defendants have not asserted attorney-client privilege. *See, e.g., Vaughn* Index Doc. Nos. 12, 13, 14, 15, and 30.

Finally, Plaintiff speculates that the attorney-client privilege does not apply because government attorneys are not conveying legal advice but rather conveying "statement[s] of agency law." Pl. Mot. at 10. Plaintiff errs by equating statements of agency law with "statements of how [agency] attorneys interpreted applicable law." *Id.* This is not a case in which agency lawyers were merely providing generic statements of final agency law. Rather, in the communications at issue, agency lawyers were consulted repeatedly for context-specific advice involving confidential facts and the interpretation and application of law in a dynamic and complicated decision-making process. Def. Mot. at 22-26; Dolberry Decl. ¶¶ 13-19; Walsh Decl. ¶¶ 27-29. Plaintiff relies upon *Tax Analysts v. IRS*, 117 F.3d 607, 619 (D.C. Cir. 1997), in support of its argument that Defendants have inappropriately applied the attorney-client privilege "to protect [statements] of agency law." Pl. Mot. at 10.[1] In *Tax Analysts*, the court found that the attorney-client privilege did not apply to legal analysis requested by or dependent upon information obtained from third parties, as such communications did not involve confidential information concerning the agency. *Tax Analysts*, 117 F.3d at 619. By contrast, Defendants here have applied the attorney-client privilege to confidential communications involving agency attorneys for the purpose of seeking or providing confidential legal advice in the context of ongoing decision-making processes. Def. Mot. at 22-26; Dolberry Decl. ¶¶ 13-19; Walsh Decl. ¶¶ 27-29; *cf.* Pl. Mot. at 8.

---

[1] Defendants assume Plaintiff's citation on page 10 to "*Id.*, at 619," is to *Tax Analysts*, despite the fact that the previous citation is to Defendants' opening brief.

In support of its "agency law" argument, Plaintiff points to Document 31, an email involving a back-and-forth discussion between OMB and DoD, including confidential communications with, and legal advice from, OMB General Counsel Mark Paoletta. Plaintiff cites to one page of Document 31, Bates 143, and concludes that the attorney-client privilege cannot apply because the communication is between "a client at OMB and a third party at DoD," and because the short length of the redacted text suggests it is just a "secondhand statement of agency law" rather than "confidential information obtained from a client." Pl. Mot. at 10. It is well-established, however, that such inter-agency communications do not defeat confidentiality under the attorney-client privilege where the communication is shared with another executive agency on a matter within the agency's "wheelhouse." *See, e.g., Cause of Action Institute v. U.S. Dep't of Justice*, 330 F. Supp. 3d 336, 351 (D.D.C. 2018) ("If disclosure to a public-relations firm may not vitiate the privilege, there can be little doubt that OLA's presence on the email chain here does not breach confidentiality."). Moreover, elsewhere the thread seeks direct input from OMB General Counsel Mark Paoletta. Thus, as the thread in Document 31 demonstrates, far from communicating formal statements of final agency law to be routinely applied to the public, the information withheld under the attorney-client privilege involved the give-and-take of an ongoing, confidential discussion of matters requiring legal advice based upon confidential facts concerning DoD's program. *Cf. Tax Analysts*, 117 F.3d at 619 (finding attorney-client privilege did not apply to communications that "create a body of private law, applied routinely as the government's legal position in its dealings with [the public]").

Accordingly, Plaintiff's arguments fail to show that Defendants have improperly withheld confidential communications protected by the attorney-client privilege.

**2.      Defendants properly applied the deliberative process privilege**

As discussed in our opening brief, Defendants logically and plausibly withheld pursuant to the deliberative process privilege information that was both predecisional and deliberative. Def. Mot. 26-35; Dolberry Decl. ¶¶ 13-23; Walsh Decl. ¶¶ 15-26. This information was predecisional to a series of decisions made by OMB concerning the apportionment of USAI funds, or other agency decision-making processes such as the development of final versions of documents. *Id.* And the information was deliberative because it involved confidential recommendations and advice sent to senior agency officials and decision-makers to inform decision-making with respect to the series of USAI apportionment footnotes affecting the availability of USAI funds for obligation. *Id.* As Defendants showed in their opening brief and declarations, OMB's ability to carry out its apportionment function, for example, depends upon such robust dialogue with agency experts. Def. Mot at 28-35; Dolberry Decl. ¶¶ 13-23; Walsh Decl. ¶¶ 13-26.

Plaintiff argues in opposition that "[v]irtually every document" must be found to be ineligible under the deliberative process privilege because the documents post-date "a decision to withhold Congressionally approved aid to Ukraine made by the President" on either July 12, 2019, or June 19, 2019, and are not therefore predecisional. Pl. Mot. at 5. *See also* amicus brief at 10. The argument that this Presidential decision is the only decision at issue flies in the face of Defendants' explanation of the series of agency decisions about apportionment made throughout the course of the summer that the withheld information preceded. *See, e.g.,* Def. Mot. at 26-35; Dolberry Decl. ¶¶ 13-23; Walsh Decl. ¶¶ 15-26. Plaintiff acknowledges the "continuous series of footnotes to financial disbursement documents," Pl. Mot. at 6, but insists that they are not "relevant." Plaintiff's assertion contradicts the fact that each one of these very footnotes effectuated the series of decisions that Defendants discussed—that is, OMB's decisions to extend

the pause on the availability of USAI funds for obligation. *See* Def. Mot. at 31-35; Dolberry

Decl. ¶ 18; Walsh Decl. ¶¶ 15-26; *Bureau of Nat. Affairs, Inc. v. U.S. Dep't of Justice*, 742 F.2d

1484, 1497 (D.C. Cir. 1984). Other agency decisions that Defendants pointed to, that Plaintiff

fails to respond to, are DoD decisions about what advice and recommendations to provide to

OMB and whether and when to send a particular letter to OMB, and decisions about the content

of final versions of documents. Def. Mot. at 29-30; Dolberry Decl. ¶ 14.

Plaintiff's other arguments also miss the mark. Merely because the *Vaughn* Index refers

to "information" that has been withheld does not mean the information is purely factual and not

deliberative. *See* Pl. Mot. at 6-7. Defendants demonstrated that the factual information withheld

is inextricably intertwined with recommendations and analysis such that it cannot be disclosed

without revealing predecisional deliberations. *See* Def. Mot. at 32. Nor should the Court credit

Plaintiff's pure speculation that it is "unlikely" that redacted information reflects agency

deliberations simply because the documents in question are emails. Pl. Mot. at 7. Email is the

predominant way that agency officials communicate in writing, and emails often contain agency

deliberations properly protected under the deliberative process privilege. *See, e.g.*, *Pub. Citizen,*

*Inc. v. United States Dep't of Educ.*, 388 F. Supp. 3d 29, 42 (D.D.C. 2019) (Kollar-Kotelly, J.)

("[I]t is clear to the Court that this portion of the email is both pre-decisional and deliberative as

no decision had yet been made and the email reflects the give-and-take of the consultative

process. Accordingly, the redaction is proper under the deliberative process privilege grounds of

FOIA Exemption 5.").

Plaintiff thus fails to refute Defendants' demonstration that the information withheld

under the deliberative process privilege was both predecisional and deliberative.

### 3.  Defendants properly applied the presidential communications privilege

Defendants also demonstrated that they logically and properly withheld under the presidential communications privilege information that would reveal communications by the President, Vice President, or the President's immediate advisors regarding a matter of presidential decision-making, or information solicited or received by the President or his advisors. Def. Mot. at 35-37; Walsh Decl. ¶¶ 30-32. Defendants withheld a limited amount of information under this privilege from only 24 out of 111 documents. Def. Mot. at 36; Walsh Decl. ¶ 31. Moreover, although agencies may withhold entire documents in full under the presidential communications privilege, Defendants carefully segregated and withheld only information necessary to protect presidential decision-making. Walsh Decl. ¶¶ 30-32.

Information withheld under the presidential communications privilege consists of the status of an ongoing decision-making process involving the President, including Presidential communications; information about Presidential and Vice Presidential meetings or discussions; or information that was solicited and received by one of the President's immediate advisors, Robert Blair, who is an Assistant to the President and Senior Advisor to the White House Chief of Staff, for the purpose of advising the President with respect to the availability of Ukraine Security Assistance Initiative ("USAI") funds for obligation. Supplemental Walsh Decl. ¶ 7.

Similar to its argument regarding the deliberative process privilege, Plaintiff argues that there was no presidential decision-making process beyond July 12, 2019. Pl. Mot. at 12. But the presidential decision-making process about "the scope, duration, and purpose of the hold on military assistance to Ukraine" by definition continued through the time when the hold was lifted, in September 2019. Walsh Decl. ¶¶ 23, 31. *See also* Pl. Mot. at 12 ("the president did not

change his mind about the policy until a Congressional probe began on September 10, 2020 [sic].").

In any event, the presidential communications privilege is broader than the deliberative process privilege and does not require the information to be pre-decisional to be protected. *Loving v. U.S. Dep't of Defense*, 550 F.3d 32, 37-38 (D.C. Cir. 2008). *Amici* concede this point. Memorandum of *Amici Curiae* American Oversight and Democracy Forward Foundation ("*Amici*") at 12, ECF No. 25-1. But they argue based on *Ctr. for Effective Gov't v. U.S. Dep't of State*, 7 F. Supp. 3d 16, 25 (D.D.C. 2013), that the privilege does not apply to presidential directives that are "'distributed and implemented widely throughout the Executive Branch.'" *Amici* at 11. The presidential directive at issue in that case was "distributed widely within the Executive Branch and serves as guidance for several policy-making bodies, including twenty two Executive Branch agencies, as well as the National Security Staff and National Security Council Deputies and Principals." *Ctr. for Effective Gov't*, 7 F. Supp. 3d at 23-24. *Amici* do not show any similar distribution or implementation throughout the Executive Branch of the information withheld here; the sum total of their showing on this point is their unsupported remark that it "was not closely held." *Amici* at 14. The documents, however, suggest the contrary. Every document from which Defendants withheld information under the presidential communications privilege involves "closely held" communications among a limited number of high-level DoD and OMB officials. *See, e.g.,* Supplemental Walsh Decl. ¶ 9; *Vaughn* Index Doc. Nos. 12, 13, 20, 28, 33, 34, 35, 37, 44, 46, 56, 57, 63, 64, 66, 78, 82, 83, 92, 95, 99, 107, 108, & 109.

Plaintiff further argues that Defendants failed to show a connection to presidential decision-making. Pl. Mot. at 12. Not so. Defendants withheld information only where disclosure would reveal presidential communications, decision-making, and deliberations. Def. Mot. at 35-

37; Walsh Decl. ¶¶ 30-32. The direct involvement of the President or a presidential advisor suffices to implicate the "'confidentiality and candor concerns' animating the presidential communications privilege[.]" *Loving*, 550 F.3d at 40 (citation omitted). The D.C. Circuit's holding in *Judicial Watch, Inc. v. U.S. Department of Justice*, 365 F.3d 1108 (D.C. Cir. 2004), upon which both Plaintiff and *amici* rely is inapposite to the facts of this case. In that case, the D.C. Circuit found that the presidential communications privilege did not apply to internal agency documents that could not be considered to have been "solicited and received by the Office of the President." *Id.* at 1123-24. In this case, Defendants applied the presidential communications in limited fashion. Far from invoking the presidential communications privilege to withhold communications of "every person who plays a role in the development of presidential advice, no matter how remote and removed from the President," *Judicial Watch*, 365 F.3d at 1116 (citation omitted), as Plaintiff argues, Defendants withheld under the presidential communications privilege information solicited or received by a presidential advisor and which directly reflects "the President's personal decision-making process." *Id.* at 1118; *see also* Supplemental Walsh Decl. ¶ 7. Communications by Robert Blair, who is considered one of the most senior Presidential aides in the White House, soliciting and receiving information from senior agency officials to inform the President's decision-making process, Supplemental Walsh Decl. ¶ 11, fall squarely within the recognized scope of the presidential communications privilege. *See Loving*, 550 F. 3d at 40 (distinguishing *Judicial Watch*).

Plaintiff next argues that Robert Blair does not qualify as a presidential advisor for purposes of applying the privilege. Pl. Mot. at 13. While Plaintiff concedes that Mr. Blair communicated directly with the President about USAI, *id.*, it claims he was just "the messenger" and conveyed only factual information, not advice. *Id.* Mr. Blair is an Assistant to the President

and Senior Advisor to the White House Chief of Staff. *See* Walsh Decl. ¶ 32; Supplemental

Walsh Decl. ¶ 10. His official duties and responsibilities included national security issues

including military assistance to Ukraine. Supplemental Walsh Decl. ¶ 10. In his role as Assistant

to the President, Mr. Blair regularly briefed the President and participated in meetings with him

on subjects within his portfolio. Supplemental Walsh Decl. ¶ 10. Mr. Blair's responsibilities

included soliciting and receiving information from Executive Branch agencies to inform the

President's decision-making. Supplemental Walsh Decl. ¶ 11. Mr. Blair therefore is the type of

immediate advisor to the President contemplated by this privilege. *Loving*, 550 F.3d at 40

(suggesting that, although a document "does not lose its privileged status simply because it

traveled up the chain of command before the President received it," nonetheless "direct

communications with the President" most clearly "implicate the 'confidentiality and candor

concerns' animating the presidential communications privilege" (quoting *Judicial Watch*, 365

F.3d at 1115)). Plaintiff offers no evidence to rebut the fact that Mr. Blair's responsibilities as

Assistant to the President included soliciting and receiving information from Executive Branch

agencies as well as briefing the President on matters including military assistance to Ukraine.

Def. Mot. at 36-37; Walsh Decl. ¶¶ 31, 32; Supplemental Walsh Decl. ¶¶ 10, 11; *cf.* Pl. Mot. at

13. Moreover, unlike the deliberative process privilege, the presidential communications

privilege protects purely factual information. *See, e.g., In re Sealed Case*, 121 F.3d 729, 745

(D.C. Cir. 1997). Therefore, Plaintiff's argument that Mr. Blair "relayed to the president or

others in the White House purely factual information from the Pentagon" about USAI in fact

demonstrates that the presidential communications privilege properly applies, as it concedes that

Mr. Blair solicited and received information from DoD to inform the President about USAI. *See,*

*e.g., Loving*, 550 F.3d at 37-38.

17

Thus, Defendants properly withheld a limited amount of information under the presidential communications privilege.

### 4. Defendants have sustained their burden to show reasonably foreseeable harm

Defendants demonstrated in their opening brief and declarations that disclosure of the information withheld under Exemption 5 could result in reasonably foreseeable harm. Def. Mot. at 22-37; Dolberry Decl. ¶¶ ; Walsh Decl. ¶¶ 30-32. Defendants withheld information protected by the attorney-client privilege to avoid chilling future full and frank communications with agency attorneys and thus also to avoid hampering the ability of agency attorneys to provide sound legal advice and advocacy. Def. Mot. at 22-26; Dolberry Decl. ¶¶ 13-19; Walsh Decl. ¶¶ 27-29. Defendants withheld information protected by the deliberative process privilege to avoid chilling future deliberations within and among the agencies to inform various decisions and decision-making processes, including decisions about strategic interactions with other executive agencies, e.g. Def. Mot. at 29; Dolberry Decl. ¶ 14, as well as OMB's series of apportionment decisions. Def. Mot. at 26-35; Dolberry Decl. ¶ 13-23; Walsh Decl. ¶¶ 15-26. Defendants also withheld information under the deliberative process privilege to avoid chilling future full and frank discussion of internal analysis, creative review of drafts, briefings, and development of responses to inquiries from the public, the press, or Congress. Def. Mot. at 30-35; Dolberry Decl. ¶¶ 15, 18, 20-22; Walsh Decl. ¶¶ 15-26. By revealing information sought by a presidential advisor as well as information about presidential communications, disclosure of information protected by the presidential communications privilege could harm the quality of information and advice available to the President. Def. Mot. at 35-37; Walsh Decl. ¶¶ 30-32. Defendants have thus shown that disclosure of the information protected under Exemption 5 could lead to reasonably foreseeable harm to the interests protected by that exemption.

Plaintiff first contends that disclosure of the withheld communications would not have a chilling effect on future deliberations because "on October 17, 2019, OMB director Mick Mulvaney[2] disclosed the overall tenor and substance of this internal conversation" through comments made during a press conference. Pl. Mot. at 18. Plaintiff's argument fails to show a lack of ongoing, reasonably foreseeable harm because even a disclosure of "the overall tenor" is not the same as a public disclosure of the specific information withheld. *See, e.g., Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007) (requiring that a plaintiff claiming official acknowledgment of withheld information must show that the official disclosure and the withheld information are matching in specificity and content). The statements quoted are at a level of generality insufficient to show that Defendants' lack an ongoing interest in preserving the ability of agency officials to communicate freely and candidly about specific issues. *See, e.g., Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) ("The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the 'quality of agency decisions' by protecting open and frank discussion among those who make them within the Government." (citation omitted)).

Plaintiff and *Amici*'s further contention that media reports of unauthorized disclosures defeat Defendants' showing of reasonably foreseeable harm is plainly incorrect. Pl. Mot. at 19; *Amici* at 19-20. As shown in Defendant's opening brief, Defendants are not required to confirm or deny the accuracy of alleged unauthorized disclosures. Def. Mot. at 40-42. The D.C. Circuit has established the specific criteria that Plaintiff must satisfy when seeking to compel disclosure because of an official acknowledgement. *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990).

---

[2] On October 17, 2019, Mr. Mulvaney was serving as Acting White House Chief of Staff; Russell Vought was the Acting Director of OMB.

These criteria reflect the recognition that requiring the government to confirm or deny the accuracy of such reporting can be harmful. *Id.* (explaining that "it is one thing for a reporter or author to speculate or guess that a thing may be so or even, quoting undisclosed sources, to say that it is so; it is quite another thing for one in a position to know of it officially to say that it is so." (quoting *Alfred A. Knopf, Inc. v. Colby,* 509 F.2d 1362, 1370 (4th Cir.), *cert. denied,* 421 U.S. 992 (1975))).

Plaintiff's argument that Defendants have relied upon "generic, across-the-board articulations of harm" is incorrect. Pl. Mot. at 19. In their opening brief, Defendants carefully categorized the documents containing information withheld under Exemption 5 and explained the reasonably foreseeable harm that might result from disclosure of the withheld information. Def. Mot. at 26-35. Such categorization is permissible to avoid needless repetition so long as it makes clear why the information has been withheld. *See, e.g., Judicial Watch, Inc. v. U.S. Dep't of Justice*, 365 F.3d 1108, 1110-11 (D.C. Cir. 2004); *Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 34 (D.D.C. 2000) ("Rather than explaining over and over again the basis for withholding the same information from essentially identical forms, the Bank took the clear and more efficient course of setting forth only once the reason that the release of a particular type of information would be harmful to the submitter and/or the Bank."). Thus, far from relying upon "generic, across-the-board articulations of harm," as Plaintiff has accused, Defendants in fact have shown the particular harm foreseen in each specific context. *Cf.* Pl. Mot. at 19.

Finally, arguments about the "wholly unique" circumstances fail to refute Defendants' showing of reasonably foreseeable harm because the purpose of the deliberative process privilege is to protect the "decision making *processes* of government agencies," as opposed to the specific information at issue. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)

(emphasis added); *Dudman Commc'ns Corp. v. Dep't of the Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987) ("Congress enacted Exemption 5 to protect the executive's deliberative processes—not to protect specific materials"). As a threshold matter, Plaintiff disregards the fact that many of the discussions at issue were part of OMB's core function of apportionment. As explained in detail in the opening brief and the Walsh Declaration, OMB relies upon precisely such discussions with program experts at agencies throughout the Executive Branch for purposes of conducting investigations, formulating advice, and making decisions about apportionments. *See, e.g.,* Def. Mot. at 31-32 & 34-35; Walsh Decl. ¶¶ 15-26. It is reasonably foreseeable that if government employees know that such discussions will be publicly disclosed and subjected to media scrutiny, that knowledge will chill their openness in future discussions, thereby hampering OMB's decision-making process and potentially injuring the quality of agency decisions. *Sears*, 421 U.S. at 151.

It stands to reason that agencies of the Federal government face unusual and challenging issues regularly. This fact alone cannot be enough to overcome deliberative process privilege and expose privileged internal deliberations of such issues to public scrutiny. In fact, that is the very essence of the deliberative process privilege—to allow agency employees to engage in uninhibited discussions and exchanges to explore such complex issues. *Elec. Frontier Found. v. U.S. Dep't of Justice*, 739 F.3d 1, 7 (D.C. Cir. 2014) ("The deliberative process privilege protects agencies from being 'forced to operate in a fishbowl.'" (quoting *EPA v. Mink*, 410 U.S. 73, 87 (1973))). Thus, even assuming for the sake of argument that Plaintiff were correct about the "uniqueness of these circumstances," Plaintiff's argument here only demonstrates *a fortiori* the need to protect agency deliberations exploring such topics, lest disclosure here discourage future frank discussions when other "unique" topics arise in the future. *Cf.* Pl. Mot. at 19-20.

### 5.      Defendants' proper application of Exemption 5 cannot be overcome by arguments about government misconduct

Notably, Plaintiff does not challenge, and thus concedes, Defendants' argument that they have not waived the application of any of these exemptions. Def. Mot. at 40-42; *see Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 301 (D.D.C. 2013) ("The Court will treat the plaintiff's failure to contest these statements in any non-conclusory fashion as a decision to concede them."). Instead, Plaintiff argues that an exception for government misconduct overcomes the Exemption 5 privileges. This argument fails because: (1) the government misconduct exception does not apply in the FOIA context; (2) even if the government misconduct exception were applicable under FOIA, Defendants have demonstrated that the records do not reflect misconduct; and (3) in any event, the records cannot rise to the level of "extreme" misconduct contemplated by the government misconduct exception because agency officials operated in the good-faith belief that their actions did not violate the Impoundment Control Act or any other law.

As a threshold matter, and as this Court has recognized, it remains questionable, at best, whether the government misconduct exception can be applied in a FOIA case to pierce an otherwise proper withholding under Exemption 5. *Judicial Watch, Inc. v. U.S. Dep't of State*, 285 F. Supp. 3d 249, 253 (D.D.C. 2018) (Kollar-Kotelly, J.) ("It is not clear in this circuit whether a government misconduct exception may properly be invoked in a FOIA case."). The D.C. Circuit has held that, in the context of a grand jury subpoena, "[t]he deliberative process privilege is a qualified privilege and can be overcome by a sufficient showing of need," because "where there is reason to believe the documents sought may shed light on government misconduct, the privilege is routinely denied, on the grounds that shielding internal government deliberations in this context does not serve the public's interest in honest, effective government." *In re Sealed Case*, 121 F.3d at 737-38 & n.5. But in the same opinion, the D.C. Circuit

disclaimed the applicability of a government misconduct exception in the context of the FOIA,

explaining that "[t]his characteristic of the deliberative process privilege is not an issue in FOIA

cases because the courts have held that the particular purpose for which a FOIA plaintiff seeks

information is not relevant in determining whether FOIA requires disclosure." *Id.*; *see also U.S.*

*Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772 (1989) ("The

Act's sole concern is with what must be made public or not made public."); *F.T.C. v. Grolier*

*Inc.,* 462 U.S. 19, 20, 28 (1983) ("The test under Exemption 5 is whether the documents would

be 'routinely' or 'normally' disclosed upon a showing of relevance" not whether they would be

disclosed to a party who shows "substantial need" "sufficient to override the privilege" in a

particular case); *Sears*, 421 U.S. at 149 n.16 ("[I]t is not sensible to construe [the FOIA] to

require disclosure of any document which would be disclosed in the hypothetical litigation in

which the private party's claim is the most compelling," *i.e.*, it should not "turn on the extent of

the litigant's need").

Courts in this district, recognizing that "the only applicable Circuit authority militates

against recognizing a government misconduct exception in a FOIA case[,]" *Judicial Watch, Inc.*

*v. U.S. Dep't of State*, 241 F. Supp. 3d 174, 183 (D.D.C.), *amended on reconsideration*, 282 F.

Supp. 3d 338 (D.D.C. 2017), have held that "the government misconduct exception recognized

in *In re Sealed Case* cannot overcome an otherwise valid withholding pursuant to Exemption 5."

*Wright v. Admin. for Children & Families*, No. 15-cv-218-BAH, 2016 WL 5922293, at *11

(D.D.C. Oct. 11, 2016) ("This reading of *In re Sealed Case* is in accordance with an

understanding of the FOIA well-established in this Circuit: Exemption 5's protection of

privileged materials is not subject to the same exceptions to which the common law privilege is

susceptible."); *Judicial Watch, Inc. v. U.S. Dep't of State*, 285 F. Supp. 3d at 253 ("It is not clear

in this circuit whether a government misconduct exception may properly be invoked in a FOIA case."); *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, No. 15-cv-2088-CRC, 2017 WL 3822733, at *2 (D.D.C. Aug. 21, 2017) ("[T]he D.C. Circuit has never held that government misconduct can abrogate the deliberative process privilege in a FOIA case.");  *see also Neighborhood Assistance Corp. of Am. v. U.S. Dep't of Hous. & Urban Dev.*, 19 F. Supp. 3d 1, 13 (D.D.C. 2013) (observing that the "so-called government misconduct exception," arising from D.C. Circuit *dicta*, is "much less clearly defined" and "other than these general observations, our Court of Appeals has never squarely applied the exception"). *But see* Pl. Mot. at 14-15 (collecting cases in which district courts applied the government misconduct exception in FOIA disputes).

Indeed, the reasons for a misconduct exception in the grand jury subpoena or civil discovery context turn on the need to investigate wrongdoing. *In re Sealed Case*, 121 F.3d at 737, 745, 746 (requiring that the party seeking the material make "a focused demonstration of need, even when there are allegations of misconduct by high-level officials" for privileged information and that the Court perform an *in camera* review to "excise non-relevant material"). This rationale does not apply to FOIA because the requester's need for the information is irrelevant to the Court's analysis of whether disclosure is required under the FOIA. *See id.* at 737 n.5; *see also Reporters Comm. for Freedom of the Press*, 489 U.S. at 771 ("[W]hether [disclosure] is warranted cannot turn on the purposes for which the request for information is made."). There is no D.C. Circuit precedent suggesting that the Court should reverse its previous course and adopt a government misconduct exception to Exemption 5. For this reason alone, Plaintiff's misconduct argument fails.

Even if the misconduct exception were applicable under FOIA, Plaintiff has failed to meet its burden to provide an adequate basis for its belief that the documents at issue in this case might expose government misconduct. "The party seeking release of withheld documents under this exception must 'provide an adequate basis for believing that [the documents] would shed light upon government misconduct.'" *Nat'l Whistleblower Ctr. v. U.S. Dep't of Health & Human Servs.*, 903 F. Supp. 2d 59, 67 (D.D.C. 2012); *see Judicial Watch of Fla., Inc. v. U.S. Dep't of Justice*, 102 F. Supp. 2d 6, 15 (D.D.C. 2000) ("There is no authority before the court, however, to support the proposition that the burden is upon the government to prove a negative, i.e. to prove in the first instance that a document does not reveal any government misconduct."); *Hall & Assocs. v. U.S. Envtl. Prot. Agency*, 14 F. Supp. 3d 1, 9 (D.D.C. 2014) ("While there is little case law to guide the Court on what quantum of evidence must be shown to support the [government misconduct] exception, courts have recognized the need to apply the exception narrowly."); *Lardner v. U.S. Dep't of Justice*, No. 03-cv-0180-JDB, 2005 WL 758267, at *13 (D.D.C. Mar. 31, 2005) ("[The] plaintiff must meet a demanding burden to overcome the executive's invocation of a presidential communications privilege.").

At most, the government misconduct exception applies only in a narrow set of cases involving "extreme government wrongdoing." *Nat'l Whistleblower Ctr.*, 903 F. Supp. 2d at 68-69; *see also Thompson v. U.S. Dep't of Justice, Crim. Div.*, 146 F. Supp. 3d 72, 87 (D.D.C. 2015) (government misconduct exception applies "only in cases of extreme government wrongdoing"). In the context of this exception, "the word 'misconduct' implies 'nefarious motives.'" *Neighborhood Assistance Corp.*, 19 F. Supp. 3d at 13. "In the rare cases that have actually applied the exception, the 'policy discussions' sought to be protected with the deliberative process privilege were so out of bounds that merely discussing them was evidence of

25

a serious breach of the responsibilities of representative government." *ICM Registry, LLC v. U.S. Dep't of Commerce*, 538 F. Supp. 2d 130, 133 (D.D.C. 2008). In other words, "[t]he very discussion . . . was an act of government misconduct." *Id.* A narrow application of any hypothetical misconduct exception is essential, because otherwise the Exemption 5 privileges "would soon be meaningless, if all someone seeking information otherwise protected under the privilege had to establish is that there was disagreement within the government entity at some point in the decision-making process." *Neighborhood Assistance Corp.*, 19 F. Supp. 3d at 20-21 (quoting *Hinckley v. United States*, 140 F.3d 277, 285 (D.C. Cir. 1998); *Nat'l Whistleblower Ctr.*, 903 F. Supp. 2d at 69 (warning against allowing the government misconduct exception to "swallow" up the deliberative communications privilege); *Judicial Watch, Inc. v. U.S. Dep't of State*, 285 F. Supp. 3d at 254 ("District courts in this circuit that have considered whether to apply the government misconduct exception have often found that a plaintiff must meet a high bar to properly invoke it.").

Contrary to plaintiff's contention, the "official findings" of "government bodies independent of the administration" do not show that actions discussed in the responsive emails rise to the level of government misconduct. Pl. Mot. at 16. Plaintiff's argument relies substantially upon the GAO report concluding after the fact that OMB's apportionment actions with respect to USAI funds were contrary to the Impoundment Control Act. U.S. Gov't Accountability Office, Decision (Jan. 16, 2020), https://www.gao.gov/assets/710/703909.pdf ("GAO Decision"); Pl. Mot. at 16. GAO determined that OMB carried out its congressionally delegated apportionment authority under 31 U.S.C. §§ 1512, 1513 in a manner that was inconsistent with requirements under a separate statute, the Impoundment Control Act, 2 U.S.C. §§ 681-688. OMB, however, believed its actions were legal, and disagrees with GAO's view that

26

OMB's withholding of funds was for a policy reason and not a programmatic delay and thus was

"not permitted under the Impoundment Control Act." GAO Decision at 1. OMB has consistently

maintained that it carried out its apportionment function with respect to USAI funds in a manner

that was not contrary to law. *See* OMB Response Letter to the Government Accountability

Office (Dec. 11, 2019), https://www.whitehouse.gov/wp-

content/uploads/2020/01/response_to_gao_re_b-331564.pdf ("OMB Letter"). This type of

genuine dispute as to the proper interpretation of a statute cannot constitute "misconduct" within

the meaning of the misconduct exception. *See e.g.*, *Hinckley v. United States*, 140 F.3d 277, 285-

86 (D.C. Cir. 1998) (rejecting government-misconduct exception to deliberative process

privilege; the fact that John Hinckley's treatment team and the Hospital's Review Board came to

different conclusions about whether to grant Hinckley a conditional release does not suggest any

improper motive by the Review Board in denying the release). To hold otherwise would mean

that every time an agency advocated a losing legal position in court, the agency therefore could

be presumed to have committed "misconduct." Clearly that is not the intent of this exceedingly

narrow and rarely applied exception.

  OMB's very act of engaging in discussions with DoD for purposes of investigating the

USAI program to inform decision-making as part of its apportionment function—the content of

the information withheld here—does not rise to the level of severity necessary to apply the

government misconduct exception. As shown in Defendants' opening motion, this type of back-

and-forth discussion with other Executive Branch agencies is squarely within one of OMB's core

functions. *See, e.g.,* 31 U.S.C. §§ 1512, 1513. Whether one agrees with the underlying decisions

about apportionment is immaterial to the fact that the act of engaging in this type of discussion

with the subject agency is indisputably well within the bounds of OMB's statutory

responsibilities. *Judicial Watch v. U.S. Dep't of State*, 285 F. Supp. 3d at 255 ("Plaintiff essentially asks the Court to make, or rely on, a determination that the Secretary's conduct constituted wrongdoing . . . [b]ut it is unnecessary to decide that issue because the discussions themselves do not rise to the level so as to trigger the exception, regardless of the lawfulness, or propriety, of the underlying conduct.").

Plaintiff's reliance upon a charge in the Articles of Impeachment similarly fails to show that withheld information in this case would shed any light on government misconduct. Pl. Mot. at 17 (quoting H.R. Res. 755, 116th Cong. (2019)). Plaintiff offers no explanation of how this allegation against the President shows that the withheld communications in this case between OMB and DoD evidence government wrongdoing. Failure to make this connection is critical, as "[t]he relevant consideration for 'extreme government wrongdoing' sufficient to trigger the exception is the egregiousness of the contents of the discussion, not the egregiousness of the underlying conduct that the discussion concerns." *Judicial Watch v. U.S. Dep't of State*, 285 F. Supp. 3d at 254. Furthermore, even where alleged misconduct may have occurred, if that misconduct occurred in the *past*, government officials can still have "ordinary discussions about legitimate policy ends," protected by Exemption 5. *Judicial Watch v. U.S. Dep't of State*, 235 F. Supp. 3d 310, 314 (D.D.C. 2017). In other words, "[t]he public continues, after all, to have a clear interest in preserving the space necessary for government actors to engage in the type of honest and appropriate deliberations that preserve effective governance, even when they concern past misconduct." *Id*. at 314-15 (emphasis in original) (holding that government officials discussing State Department policy regarding private device use after Hillary Clinton's tenure as Secretary of State are not "nefarious government action or motive"). And, in any event, as

Plaintiff concedes, the U.S. Senate voted on February 5, 2020, to acquit the President of the allegations contained in the Articles of Impeachment. Pl. Mot. at 17.

For these reasons, the Court should decline to extend the government misconduct exception to override Defendants' logical and proper assertion of Exemption 5.

### D.  Defendants properly withheld email addresses under Exemption 6

Plaintiff's only argument with respect to the application of Exemption 6 concerns two documents: Documents 3 and 87. Pl. Mot. at 23. However, there is, in fact, no genuine issue as to the challenged redactions in these documents. As the documents make clear on their face, the withheld information in the subject line is an email address in both instances, as indicated in the *Vaughn* Index. Thus, for example, Document 3 at Bates 46 explains at the bottom that "[t]his email was generated from the OMB's web-based apportionment system" and that "[t]he subject line includes the email address of the person sending this email." Document 87 is a similar, system-generated email that likewise includes the sender's email address in the subject line. As Plaintiff does not object to the redaction of email addresses, there is no dispute over Defendants' justification for these withholdings under Exemption 6. *Cf.* Pl. Mot. at 23.

### III.    *In camera* review is neither necessary nor appropriate

The Court should reject Plaintiff's request for *in camera* review of the records. *See* Pl. Mot. at 21, 24-25; *Amicus* at 23-25. "*In camera, ex parte* review, though permitted under FOIA and sometimes necessary, is generally disfavored." *Schiller v. NLRB*, 964 F.2d 1205, 1209 (D.C. Cir. 1992), *abrogated on other grounds by Milner v. U.S. Dep't of Navy*, 562 U.S. 562 (2011). *In camera* review "should be invoked only when the issue at hand could not be otherwise resolved." *Id.* Whether *in camera* review is necessary or appropriate to resolve the issues at hand is a matter within this Court's discretion. *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 626 (D.C. Cir. 2011). The D.C. Circuit has found that a district court does not abuse its discretion by granting summary

judgment without *in camera* review of the documents where an agency's affidavits "provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith." *Id.* Thus, "[w]hen the agency meets its burden by means of affidavits, *in camera* review is neither necessary nor appropriate." *Id.* (quoting *Hayden v. Nat'l Sec. Agency*, 608 F.2d 1381, 1387 (D.C. Cir. 1979)). In this case, Defendants' declarations and *Vaughn* Index sustain Defendants' burden to demonstrate proper application of statutory exemptions justifying the withholdings. The declarations and *Vaughn* Index provide sufficiently detailed information about each document to place the withheld information within the claimed exemption category. The record does not contradict the declarations or the *Vaughn* Index.

Plaintiff's argument that *in camera* review is necessary because Defendants have misapplied the exemptions has been addressed with respect to each exemption above and in Defendants' opening brief, declarations, and *Vaughn* Index. Pl. Mot. at 24. As shown above, Defendants' declarations and *Vaughn* Index specifically describe in detail the basis for the withholdings in each of the documents.

Plaintiff's arguments that the small number of documents and the "extraordinary historical importance of the documents" justify *in camera* review similarly fail to show why such review is either necessary or appropriate to determine whether Defendants have logically and properly applied the statutory exemptions. Pl. Mot. at 24. To the contrary, the D.C. Circuit has recognized that courts "should not resort to [*in camera* review] routinely on the theory that 'it can't hurt.'" *Larson*, 565 F.3d at 870 (quoting *Ray v. Turner*, 587 F.2d at 1195).

In light of the showing Defendants have made in support of their motion for summary

judgment, the Court should grant Defendants' motion for summary judgment and reject

Plaintiff's request for *in camera* review as neither necessary nor appropriate.

## IV.   Defendants satisfied their duty to segregate

Finally, Defendants fully complied with the obligation to produce "[a]ny reasonably

segregable portion of a record" not exempt from disclosure. 5 U.S.C. § 552(b). Defendants

attached to their motion for summary judgment declarations from both agencies attesting that the

agencies have reviewed the responsive documents line-by-line and withheld only such portions

which are exempt from disclosure under 5 U.S.C. § 552(b). Def. Mot. at 42-43; Dolberry Decl. ¶

28; Walsh Decl. ¶ 34; Trulio Decl. ¶ 14. "Agencies are entitled to a presumption that they

complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S.*

*Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). Plaintiffs argue that Defendants'

declarations do not provide enough information about their "effort to parse document[s]" to

"allow "Plaintiff of the Court to assess" the reasonableness of their efforts. Pl. Mot. at 21.

Plaintiff's assertions entirely fail to meet their burden to "proffer contrary evidence to

rebut the applicable presumption," *Talbot*, 315 F. Supp. 3d 355, 374 (D.D.C. 2018), and their

segregability challenge thus should be rejected. Contrary to Plaintiff's assertions, Defendants in

fact provided "indication" of their efforts in the form of the three sworn declarations, which

attest to the careful, document-by-document and line-by-line review performed by both agencies.

*See, e.g.,* Trulio Decl. ¶ 14 ("DoD has conducted a page-by-page, line-by-line review of all

documents addressed herein for reasonable segregation of non-exempt information and has

determined that no further segregation of meaningful information in the redacted documents can

be made without disclosing information entitled to protection under the FOIA."); Dolberry Decl.

¶ 28; Walsh Decl. ¶ 34; *cf.* Pl. Mot. at 21 ("There is no indication that Defendants made any

effort . . . ."). Courts commonly uphold agencies' segregability determinations based on similar affirmations that the declarant has conducted a line-by-line review. *E.g., Johnson v. Exec. Office for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (affirming summary judgment based on agency declarant's affirmation that a line-by-line segregability analysis was conducted); *Talbot*, 315 F. Supp. 3d at 374 ("Ms. Shiner attests that the CIA conducted a segregability review and released all reasonably segregable records. Mr. Rolbin similarly attests that the State Department released all reasonably segregable information.") (citations omitted).

Plaintiff has failed to adduce any evidence showing why this case is any different from prior cases in which identical declarations were sufficient to show that the agencies had performed their obligation to conduct a reasonable segregation of responsive, non-exempt information. Accordingly, Plaintiff's pure speculation is insufficient at summary judgment to overcome the testimony in three sworn declarations confirming Defendants' reasonable efforts to segregate.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Defendants' opening brief and accompanying declarations, the Court should grant Defendants' motion for summary judgment and deny Plaintiff's cross-motion for summary judgment.


Dated: February 21, 2020                    Respectfully submitted,



                                            JOSEPH H. HUNT
                                            Assistant Attorney General

                                            MARCIA BERMAN
                                            Assistant Director
                                            Federal Programs Branch

32

  /s/ Amber Richer
AMBER RICHER (CA Bar No. 253918)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Tel: (202) 514-3489
Email: amber.richer@usdoj.gov

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| CENTER FOR PUBLIC INTEGRITY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 1:19-cv-03265 (CKK) |
| U.S. DEPARTMENT OF DEFENSE, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| OFFICE OF MANAGEMENT AND BUDGET, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' REPLY AND RESPONSE**
**TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS**
**AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Local Civil Rule 7(h)(1), Defendants the U.S. Department of Defense ("DoD") and the Office of Management and Budget ("OMB") submit the following response to Plaintiff Center for Public Integrity's Statement Addressing Defendants' Statement of Undisputed Material Facts and Plaintiff's Statement of Genuine Issues, ECF No. 23-1:

1-9.    ***Plaintiff:*** Plaintiff admits and/or does not contest ¶¶ 1-9 of Defendants' Statement of Material Facts. ***Defendant's Response:*** As Plaintiff admits or does not contest these facts, no response from Defendants is necessary and there is no genuine issue as to paragraphs 1-9 of Defendants' Statement of Material Facts as to Which There is No Genuine Issue ("Def. Statement of Material Facts"). ECF No. 22-1.

10-17.    ***Plaintiff:*** Plaintiff disputes Defendants' general characterizations in ¶¶ 10-17 (see Plaintiff's Memorandum, e.g., at 6), but does not contest the specific facts in ¶¶ 11, 14, 16, and 17. ***Defendants' Response:*** As Plaintiff admits or does not contest the facts in paragraphs 11,

14, 16, and 17, no response from Defendants is necessary and there is no genuine issue as to

paragraphs 11, 14, 16, and 17 of Defendants' Statement of Material Facts. It is unclear what

factual findings Plaintiff proposes by citing page 6 of its Memorandum. Page 6 is part of the

brief's "Argument" section. To the extent page 6 contains arguments rather than material facts,

Defendants are not required to respond. FED. R. CIV. P. 56(c), L.CV.R. 7(h). To the extent page 6

is deemed to contain factual assertions, Defendants deny those assertions. Def. Statement of

Material Facts ¶¶ 10-17; Declaration of Heather V. Walsh ("Walsh Decl.") ¶¶ 21-23; *Vaughn*

Index Doc. Nos. 1-5.

18-21. *Plaintiff:* Plaintiff admits and/or does not contest ¶¶ 18-21. Plaintiff has no record

of receiving the letter described in ¶ 19, but the facts in this paragraph are not material.

*Defendants' Response:* As Plaintiff admits or does not contest these facts, there is no genuine

issue as to paragraphs 18-21 of Defendants' Statement of Material Facts.

22-41. *Plaintiff:* Plaintiff admits and/or does not contest ¶¶ 22-41. As to Defendants'

statement in ¶ 41 that OMB did not identify any new responsive records, Plaintiff maintains that

OMB *should* have found one or more additional responsive records. See Plaintiff's

Memorandum, at 3-4. *Defendants' Response:* As plaintiff admits or does not contest these facts,

there is no genuine issue as to paragraphs 22-41 of Defendants' Statement of Material Facts.

Defendants conducted a supplemental search of emails with OMB custodians in the "From" field

and the DoD Comptroller's Office custodians in the "Cc" field. Second Declaration of Mark H.

Herrington ("Second Herrington Decl.") ¶¶ 6, 7. This search identified one document concerning

the Ukraine Security Assistance Initiative that was not already produced to Plaintiffs. *Id.* That

one document is the one Plaintiff describes in its Memorandum at pages 3-4. *Id.*

42-47.  ***Plaintiff:*** Plaintiff admits and/or does not contest ¶¶ 42-47.  ***Defendants'***
***Response:*** As Plaintiff admits or does not contest these facts, there is no genuine issue as to
paragraphs 42-47 of Defendants' Statement of Material Facts.

48-68.  ***Plaintiff:*** Plaintiff contests ¶¶ 48-68 to the extent that they suggest that
Defendants' redactions are proper and supported by the statute. See Plaintiff's Memorandum,
generally.  ***Defendants' Response:*** Defendants deny Plaintiff's factual representations in its
Memorandum. Def. Statement of Material Facts ¶¶ 48-68; Declaration of Colonel Henry
Dolberry, Jr. ("Dolberry Decl.") ¶¶ 7-28; Declaration of David V. Trulio ¶ 6-13; Walsh Decl. ¶¶
8-32; *Vaughn* Index.

Dated: February 21, 2020                    Respectfully submitted,


JOSEPH H. HUNT
Assistant Attorney General

MARCIA BERMAN
Assistant Director
Federal Programs Branch


 /s/ Amber Richer_____
AMBER RICHER (CA Bar No. 253918)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Tel: (202) 514-3489
Email: amber.richer@usdoj.gov

*Attorneys for Defendants*

3

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CENTER FOR PUBLIC INTEGRITY⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Plaintiff;⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀Civil No. 19-3265 (CKK)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
U.S. DEPARTMENT OF DEFENSE,⠀⠀⠀)
AND OFFICE OF MANAGEMENT AND⠀)
BUDGET⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Defendants.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)

## SECOND DECLARATION OF MARK H. HERRINGTON

Pursuant to 28 U.S.C. § 1746, I, Mark H. Herrington, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge:

1.  I am an Associate Deputy General Counsel in the Office of General Counsel ("OGC") of the United States Department of Defense ("DoD"). OGC provides legal advice to the Secretary of Defense and other leaders within the DoD. I am responsible for, among other things, overseeing Freedom of Information Act ("FOIA") litigation involving DoD. I have held my current position since March 2007. My duties include coordinating searches across DoD to ensure thoroughness, reasonableness, and consistency, and also coordinating the production of responsive documents, including the appropriate redaction of such documents.

2.  The statements in this declaration are based upon my personal knowledge and upon information provided to me in the course of my duties. Specifically, I am the OGC counsel currently assigned to this case.

1

3. This declaration is submitted in support of Defendants' Motion for Summary Judgment. The purpose of this declaration is to provide information concerning two issues raised in Plaintiff's Cross Motion for Summary Judgment.

## I.   DOD's SEARCH FOR RECORDS

4. DoD's initial collection of records concerning the Ukraine Security Assistance Initiative ("USAI") is described in the declaration of Colonel Dolberry, USMC, dated January 31, 2020. That set of records is held within an e-discovery software platform to which I have access. The initial search for records within that platform responsive to Plaintiff's request was described in Colonel Dolberry's declaration.

5. Plaintiffs note that another defendant in this case, the Office of Management and Budget ("OMB"), produced a document in similar FOIA litigation with American Oversight that Plaintiffs contend should have been included in the records located in DoD's search for responsive records in this litigation; specifically, "an email dated August 26, 2019, from OMB's general counsel Mark Paoletta to Edwin Castle, an official in the Pentagon's general counsel's office, that was copied to Elaine McCusker, the Pentagon's comptroller."

6. I investigated whether that email is contained in the set of potentially responsive records in the e-discovery software, and confirmed that it is. I determined that the reason it was not located in DoD's search was that the parameters of that search were for communications "To" or "From" OMB and personnel in the DoD comptroller's office. This limitation was a reasonable interpretation of "communication between" the two entities identified in Plaintiffs' request because copying someone on an email is typically for informational purposes and not a communication that asks a question, directs an action, or otherwise seeks a response from the person cc'd. Such is the case for the email in question, as the communication was between OMB

2

OGC and DoD OGC offices, for which Elaine McCusker was akin to an observer overhearing the discussion.

7.  With it clear that Plaintiffs do not agree with that interpretation of "communication between," I conducted a further search of the potentially responsive records for communications either "To" or "From" OMB personnel in which DoD comptroller personnel were included in either the "Cc" or "Bcc" lines, or vice versa. I located 15 emails that were responsive to Plaintiff's request. 14 of those emails also included DoD comptroller or OMB personnel in the "To" line and were produced in response to Plaintiffs' requests. Specifically, after deduplicating the emails chains, these communications appear in Document Nos. 12, 13, 14, 15, 22, 41, 42, 66, 85, and 86. The only email located in the subsequent search that had not been produced to plaintiff, is the email cited in Plaintiff's Cross Motion for Summary Judgment. That record has now been provided to Plaintiff.

## II.    Segregability of Classified Information

8.  Plaintiffs assert that "FOIA requires that agencies 'take reasonable steps necessary to segregate and release nonexempt information.' . . . Assuming there are intelligence sources and methods in this document as Defendants claim, it is unlikely that every word constitutes such classified information. There is no indication that Defendants made any effort to parse document 110 (or documents 108 and 109 for that matter) to disclose non-classified passages as required."

9.  As stated in paragraph 14 of his declaration, the Declaration of David V. Trulio addressed only the withholding of information pursuant to Exemption 1; other bases for withholding information were addressed in the other declarations. To be more explicit and provide clarity, I attest that the vast majority of the information withheld in Document Nos. 108, 109, and 110 was redacted pursuant to Exemption 5. DoD is only asserting that a very limited

amount, meaning a sentence or two in each section annotated with "(b)(1)," is currently and properly classified and has conducted a line by line review of the documents for classified information.

10.  I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 21st day of February 2020, at Arlington, Virginia.

_____

Mark H. Herrington, Esq.
Associate Deputy General Counsel

4

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| CENTER FOR PUBLIC INTEGRITY ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | Civil Action No. 1:19-cv-3265 |
| ) | |
| U.S. DEPARTMENT OF DEFENSE, et al., ) | |
| ) | |
| *Defendants.* ) | |

---

**SUPPLEMENTAL DECLARATION OF HEATHER V. WALSH**

I, Heather V. Walsh, make the following declaration based on personal knowledge and
information made available to me in the course of my official duties:

1.     I am the Deputy General Counsel in the Office of Management and Budget's ("OMB")
Office of General Counsel ("OGC").  Previously, I was an Assistant General Counsel in this
office, and I have worked at OMB since 2009.

2.     My office handles all requests submitted to OMB under the Freedom of Information Act
(FOIA), 5 U.S.C. § 552.  One of my responsibilities is to supervise the staff responsible for
handling FOIA requests.  Due to my official duties, I am familiar with the procedures followed
by OMB OGC in responding to FOIA requests.  Additionally, I regularly work with OMB staff
across multiple components of the agency, and am therefore familiar with the breadth and variety
of OMB's involvement in issues across the Federal Government.

3.     I am aware of OMB's handling of the FOIA request at issue in this case, which was
submitted to OMB by Plaintiffs on September 30, 2019 (the "Request").

4.     The purpose of this declaration is to supplement my prior declaration in this case, dated
January 31, 2020 (ECF No. 22-4), to provide additional description of the application of FOIA

Exemption 5, specifically the Presidential Communications Privilege, to the documents that OMB processed in response to Plaintiffs' FOIA Request.

5.      This declaration also provides a description of the application of FOIA Exemption 5 to one document, an email dated August 26, 2019, from OMB's General Counsel Mark Paoletta to Edwin Castle, Deputy General Counsel (Fiscal) within the Department of Defense's ("DoD") Office of General Counsel.  As explained in the Second Declaration of Mark H. Herrington, this document is being produced to Plaintiff concurrent with this filing.

## PRESIDENTIAL COMMUNICATIONS PRIVILEGE

6.      The Presidential Communications Privilege applies to communications of the President that take place in connection with the performance of his official duties, as well as information that is solicited and received by the President or an immediate White House advisor to the President in connection with presidential decision-making.

7.      As reflected in the *Vaughn* Index that was attached to my prior declaration, ECF No. 22-4 Exhibit 3, the withheld information consists of either the status of an ongoing decision-making process involving the President, including Presidential communications; information about Presidential and Vice Presidential meetings or discussions; or information that was solicited and received by one of the President's immediate advisors, Robert Blair, who is an Assistant to the President and Senior Advisor to the White House Chief of Staff, for the purpose of advising the President with respect to the Ukraine Security Assistance Initiative ("USAI") funds. Additionally, as reflected on the face of the email communications, the information solicited and received by Mr. Blair was in connection with an ongoing decision-making process involving the President.

8.      Preserving the confidentiality of the communications is paramount to ensure that the President receives the type of information necessary to make fully informed decisions.  Even knowing the content of the information sought by a White House advisor can expose the confidentiality of the President's deliberations.  If the email exchanges between an Executive Branch official and an immediate White House advisor on matters related to the advisor's responsibilities were to be publicly disclosed, this would stifle the future free flow of information and have a chilling effect on the sharing of frank and candid ideas and opinions that would enable the advisor to formulate the best possible advice to the President, thereby impairing the President's ability to fully and faithfully carry out his duties.  In sum, public disclosure of the documents identified as subject to the Presidential Communications Privilege would greatly risk harming the quality of the information and advice available to the President.

9.      In each of these 24 documents, the information withheld under the presidential communications privilege has been closely held among high-level DoD and OMB officials. *Vaughn* Index Doc. Nos. 12, 13, 20, 28, 33, 34, 35, 37, 44, 46, 56, 57, 63, 64, 66, 78, 82, 83, 92, 95, 99, 107, 108, & 109.

**ROBERT BLAIR'S POSITION AND RELATIONSHIP TO THE PRESIDENT**

10.     On February 2, 2019, the President announced the appointment of Mr. Blair to serve as Assistant to the President and Senior Advisor to the White House Chief of Staff.  His official duties and responsibilities involve national security issues including military assistance to Ukraine.  In his role as Assistant to the President, Mr. Blair was assigned an office on the first floor of the West Wing, reflecting his close operational proximity to the President on matters within his portfolio.  He regularly briefed the President and participated in meetings with him on subjects within his portfolio.  To perform his duties for the President, Mr. Blair also gathered

information to develop and formulate his advice to the President.  On December 23, 2019, Mr.

Blair assumed new responsibilities after the President appointed him as the Special

Representative for International Telecommunications Policy.

11.     Assistants to the President are considered the most senior Presidential aides in the White

House.  They often work in close proximity to the President, meet and travel with the President

frequently, and are tasked with obtaining information from Executive Branch agencies to inform

the President's decision-making process.  On average, there are approximately two dozen

Assistants to the President working in the White House.

**ADDITIONAL DOCUMENT RELEASE—EXEMPTION 5 APPLICATION**

12.     OMB withheld information through redactions marked for Exemption 5 on this

document—an email dated August 26, 2019, from OMB's General Counsel Mark Paoletta to

Edwin Castle, Deputy General Counsel (Fiscal) within DoD's Office of General Counsel—

pursuant to the deliberative process privilege. In this email exchange, the OMB General Counsel

discussed the ongoing interagency process with regard to the USAI funds, OMB's legal

responsibility regarding apportionments, and the legal rationale behind OMB's footnote.  OMB

determined that this document contained intra-agency communications and that is both pre-

decisional and deliberative.  Maintaining the confidentiality of these types of pre-decisional and

deliberative communications is critical for OMB to carry out its mission and releasing this

information therefore would cause foreseeable harm.

13.     OMB also withheld information through redactions marked for Exemption 5 on this

document pursuant to the attorney-client privilege.  In this document, the OMB General Counsel

provided legal advice to the DoD's Office of General Counsel about OMB's legal responsibility

regarding apportionments and the legal rationale behind OMB's footnote.  Withholding

communications seeking and conveying legal advice is necessary to ensure that OMB continues

to be able to receive and provide sound and candid legal advice to inform its decision-making on

important policy issues and to carry out one of its core statutory responsibilities.  As with the

deliberative process privilege, OMB relies upon the assurance of such free and candid

communications with other Executive Branch agencies.  Therefore, release of the withheld

communications would cause foreseeable harm and have a chilling effect on the free flow of

information with counsel, which in turn could result in unsound legal advice and advocacy.

Executed in Washington, District of Columbia, this 21st day of February, 2020.


Heather V. Walsh
Deputy General Counsel
Office of the General Counsel
Office of Management and Budget

**CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2020, I electronically transmitted the foregoing to the parties and the clerk of court for the United States District Court for the District of Columbia using the CM/ECF filing system.

  /s/ Amber Richer_____
AMBER RICHER (CA Bar No. 253918)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Tel: (202) 514-3489
Email: amber.richer@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| CENTER FOR PUBLIC INTEGRITY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:19-cv-03265 (CKK) |
| ) | |
| U.S. DEPARTMENT OF DEFENSE, ) | |
| ) | |
| and ) | |
| ) | |
| OFFICE OF MANAGEMENT AND ) | |
| BUDGET, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## [PROPOSED] ORDER

Upon consideration of the parties' cross-motions for summary judgment, relevant law, related legal memoranda in opposition and support, the entire record, and for the reasons set forth in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Defendants' motion for summary judgment is **GRANTED**; and it is further

**ORDERED** that Plaintiff's cross-motion for summary judgment is **DENIED.**

**JUDGMENT** shall be entered in favor of Defendants and the case shall be closed. This is a final, appealable Order.

Date: _____      _____

HON. COLLEEN KOLLAR-KOTELLY

United States District Judge

1