**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR PUBLIC INTEGRITY,        )<br>                                                              )<br>       Plaintiff,                                 )<br>                                                              )<br>v.                                                         )<br>                                                              )   Civil Action No. 1:19-cv-03265-CKK<br>U.S. DEPARTMENT OF DEFENSE  )<br>                                                              )<br>and                                                      )<br>                                                              )<br>OFFICE OF MANAGEMENT AND  )<br>BUDGET,                                            )<br>                                                              )<br>       Defendants.                            )<br>                                                              ) | |

**NOTICE OF FILING OF OMB'S SUPPLEMENTAL DECLARATION**

Pursuant to the Court's March 19, 2020 Order, Defendant the Office of Management and Budget ("OMB") hereby files the attached Third Declaration of Heather V. Walsh, OMB's Deputy General Counsel. Per the Court's order, this supplemental declaration provides additional details about the harm that would be caused by disclosure of the information OMB withheld under Exemption 5's deliberative process privilege.

Dated: May 1, 2020                                  Respectfully submitted,

 

                                    JOSEPH H. HUNT
Assistant Attorney General

MARCIA BERMAN
Assistant Director
Federal Programs Branch

 /s/ Amber Richer
AMBER RICHER (CA Bar No. 253918)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Tel: (202) 514-3489
Email: amber.richer@usdoj.gov

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 1, 2020, I electronically transmitted the foregoing to the parties and the clerk of court for the United States District Court for the District of Columbia using the CM/ECF filing system.

    /s/ Amber Richer
AMBER RICHER (CA Bar No. 253918)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Tel: (202) 514-3489
Email: amber.richer@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| _____ | ) | |
| CENTER FOR PUBLIC INTEGRITY | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:19-cv-3265 |
| | ) | |
| U.S. DEPARTMENT OF DEFENSE, et al., | ) | |
| | ) | |
| *Defendants*. | ) | |
| _____ | ) | |

## THIRD DECLARATION OF HEATHER V. WALSH

I, Heather V. Walsh, make the following declaration based on personal knowledge and information made available to me in the course of my official duties:

1. I am the Deputy General Counsel in the Office of Management and Budget's ("OMB") Office of the General Counsel ("OGC"). Previously, I was an Assistant General Counsel in this office, and I have worked at OMB since 2009.

2. My office handles all requests submitted to OMB under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. One of my responsibilities is to supervise the staff responsible for handling FOIA requests. Due to my official duties, I am familiar with the procedures followed by OMB OGC in responding to FOIA requests. Additionally, I regularly work with OMB staff across multiple components of the agency, and am therefore familiar with the breadth and variety of OMB's involvement in issues across the Federal Government.

3. I am aware of OMB's handling of the FOIA request at issue in this case, which was submitted to OMB by Plaintiffs on September 30, 2019 (the "Request").

4. This declaration supplements my prior declarations in this case, dated January 31, 2020, ECF No. 22-4, and February 21, 2020, ECF No. 26-3, as well as those submitted by various officials at the Department of Defense ("DoD"), ECF Nos. 22-2, 22-3, and 26-2.

1

5.      I am providing this supplemental declaration in response to the Court's Minute Order dated March 19, 2020, in which the Court stated: "In reviewing the parties' summary judgment briefing, the Court has determined that it requires a supplemental declaration from Defendant OMB. In keeping with the FOIA Improvement Act, Defendant must explain how a particular withholding under FOIA Exemption 5 would harm the agency's deliberative process. In the supplemental declaration, Defendant OMB shall provide additional details about the specific, identifiable harm that would be caused by disclosure of the specific information withheld. Defendant OMB may provide this information for each withholding or for particular categories of documents." Given the wording of the order, and the fact that Plaintiff's challenge regarding the FOIA Improvement Act's foreseeable harm requirement was limited to Defendants' assertion of the deliberative process privilege, *see* Plaintiff's Cross Motion for Summary Judgment, ECF No. 23, at 18-20; Plaintiff's Reply ECF No. 29 at 17-20, this supplemental declaration is limited to OMB's assertions of the deliberative process privilege, as opposed to its assertions of other privileges under Exemption 5 or other exemptions.

6.      After a careful analysis of each document containing information withheld under the deliberative process privilege, OMB determined that the release of the information withheld would result in reasonably foreseeable harm to the interests protected by the deliberative process privilege.

7.      In making this determination, OMB has considered Plaintiff's arguments about potential unauthorized disclosure of information withheld under the deliberative process privilege as well as statements allegedly made by Acting Chief of Staff Mick Mulvaney. Plaintiff's Cross Motion for Summary Judgment, ECF No. 23, at 18-20; Plaintiff's Reply ECF No. 29 at 17-20. Mr. Mulvaney did not disclose any of the substance of the withheld communications, and, as such,

there would indeed be harm as a result of disclosure here. If the government were forced to officially acknowledge information leaked or otherwise disclosed in an unauthorized manner, it would incentivize future leaks and unauthorized disclosures, to the detriment of the government's confidentiality interests.

8. In general, disclosure of the withheld portions of discussions between OMB and DoD would have a chilling effect on agency officials' willingness to engage in similar confidential discussions with OMB, and the harm from such a chilling effect would extend throughout OMB's frequent and government-wide activities. As explained in prior declarations, one way in which OMB helps the President "take Care that the Laws be faithfully executed," U.S. Const. Art. II, Sec. 3, is by apportioning federal agency funds in accordance with 31 U.S.C. §§ 1512 & 1513. OMB routinely engages in the apportionment process with respect to the management of appropriations for federal programs. In apportioning funds, OMB frequently relies upon back-and-forth exchanges of ideas with agency officials and upon candid analysis from agency experts to understand affected federal programs and thus carry out its apportionment duties.

9. The information withheld in these documents involves highly sensitive subject matter implicating complex legal and policy issues. The deliberations at issue involved senior officials at DoD and OMB, as well as an immediate advisor to the President, and pertained to Congressionally appropriated defense funds to assist a foreign nation. Thus, for example, some of the discussions at issue also include sensitive information of a foreign government, which, at the written request of the Ukrainian government, DoD has agreed not to disclose under FOIA. *See, e.g.,* Declaration of Colonel Henry Dolberry, Jr., ECF No. 22-3 at ¶ 25. These discussions also involve the advice of senior DoD and OMB attorneys, including DoD General Counsel Paul Ney and OMB General Counsel Mark Paoletta. In addition, these discussions in many cases

would reveal presidential and vice presidential communications, a fact which further demonstrates the extremely sensitive nature of this information. The highly sensitive nature of these issues and communications underscores the likelihood that substantial harm would result from disclosure of the withheld information, for all the reasons discussed in more detail below.

### REVIEW OF DRAFT APPORTIONMENT FOOTNOTES

10. Defendants have withheld under the deliberative process privilege portions of discussions about draft language for apportionment footnotes exchanged between OMB and DoD. *Vaughn* Index Doc. Nos. 9, 30, 54, and 67. In deliberating about the draft language, senior DoD and OMB officials discussed the expected impact of pausing the obligation of funds to Ukraine. This pause—a sensitive subject at the time and subsequently—was implemented through footnotes on the apportionments. The finalized versions of the apportionment footnotes have been released by OMB. *See Vaughn* Index Doc. Nos. 1-5.

11. The deliberative process privilege protects such discussions about sensitive issues to ensure that agency officials feel free to express their thoughts candidly. Disclosure of these interagency deliberations would chill officials from candidly providing their views in the future. The quality of agency decision-making would suffer if agency officials' exchange of ideas was inhibited by concern about disclosure of such discussions that are intended to develop non-final ideas.

12. In addition, disclosure of these discussions would risk public confusion about the text of the final apportionment footnotes, which differs from the draft versions, particularly as OMB issued a series of apportionment footnotes with respect to the Ukraine Security Assistance Initiative ("USAI") funding during the relevant time period.

## DELIBERATION REGARDING POTENTIAL TALKING POINTS FOR RESPONDING TO INQUIRIES FROM CONGRESS AND THE PRESS

13. Officials at OMB and DoD also engaged in deliberative discussions in the course of developing draft "talking points" intended to guide responses to inquiries from Congress or the press concerning USAI. *Vaughn* Index Doc. Nos. 1, 6, 17, 20, 21, 28, 47, 62, 70, 71, 92, 95, 96, 108, and 109. However, such talking points were not used for any such inquiries and thus no public communications were issued based on these drafts.

14. The deliberative process privilege covers such deliberative exchanges concerning draft talking points regarding how to respond to inquiries from the public, the press, or Congress. Disclosure of these iterative discussions of successive versions of working drafts would harm agency decision-making by revealing the internal development of potential communications regarding the pause on the availability of USAI funds for obligation. Exposing the process by which agency officials crafted a potential strategy for responding to the press and to Congress about these sensitive issues would chill the honest and free exchange of analysis and recommendations among agency employees involved in this review. Such free and creative exchanges are essential to ensure the highest-quality decision-making.

15. Disclosure would reveal the drafters' evolving thought processes, as well as ideas and alternatives considered but ultimately rejected. Disclosure of these drafts would undermine the ability of OMB staff and agency officials to freely engage in the candid "give and take" and forthright internal development of final agency actions. If OMB and agency officials believed that their internal working drafts would be made public under a FOIA request such as this, it is reasonably foreseeable that they would be more circumspect in the drafting process for such documents in the future, less willing to offer novel or alternative stances or proposals, and less frank in evaluating the work of others. This obviously would impair the quality of agency

decisions, as officials would temper their work-product with an eye to future public scrutiny of their nascent views.

16. Moreover, besides this harm to the free expression of ideas amongst agency officials, disclosure also would risk public confusion. Because these draft talking points were never finalized or implemented, there would be a particularly high risk of public confusion about the final agency position if these discussions of potential, draft talking points were disclosed. Such disclosure would likely result in giving members of the public a misleading impression about the activities of government agencies, as well as the thought processes, ideas, and positions discussed therein but never publicly adopted.

**DELIBERATIONS REGARDING LOGISTICS AND STATUS OF USAI LEADING UP TO ISSUANCE OF JULY 25 APPORTIONMENT FOOTNOTE PLACING TEMPORARY PAUSE ON AVAILABILTY OF USAI FUNDS FOR OBLIGATION**

17. As described in my original declaration, ECF No. 22-4 at ¶ 21, beginning around mid-June, OMB and DoD engaged in a collaborative process involving a series of discussions regarding the apportionment of approximately $214 million in DoD appropriations authorized for the USAI. OMB officials, including Program Associate Director for National Security Programs Michael Duffey, engaged in an ongoing dialogue with officials at DoD, particularly DoD Acting Comptroller Elaine McCusker, to gather DoD's input and analysis with respect to the USAI for the purpose of providing advice and recommendations to the President concerning the apportionment of USAI funds.

18. As part of this process, OMB and DoD discussed various aspects of the USAI funding, procurement planning, other programmatic analysis, and legal implications. *Vaughn* Index Doc. Nos. 23, 24, 25, 37, 56, 57, 77, 78, 82, 83, and 99. In these exchanges, Ms. McCusker provided sensitive deliberative analysis concerning the obligation status of USAI funds. These documents also include communications involving Robert Blair, one of the President's immediate advisors,

and some of the most senior officials at DoD.  These discussions informed OMB's decision-making as well as OMB's advice and recommendations to the President with respect to the first apportionment footnote that OMB issued on July 25, 2019, which made USAI funds temporarily unavailable for obligation.  As expressly described in, for example, an email from Mr. Duffey to senior officials at DoD, Doc. No. 77, these discussions were of a "sensitive nature" and were exchanged with the imperative that this information be "closely held to those who need to know to execute the direction."  Disclosure of such discussions therefore would be harmful to OMB's protected interests in many ways.  This is precisely the type of situation in which robust, private communications with agency experts is most critical to OMB's operations; disclosure of such highly sensitive deliberations would chill future similar collaboration from agencies under the circumstances in which OMB most relies upon communications with agency experts.  Disclosure of these discussions also would reveal legal advice from DoD and OMB attorneys concerning various legal questions involved in considering the potential pause on the availability of USAI funds for obligation.  Finally, disclosure of this information would reveal information protected by the presidential communications privilege and thus would have an adverse impact upon OMB's ability to provide the best advice and recommendations to the President.

19.     Disclosure of such deliberations would reasonably make agency officials less willing to convey their frank analysis and recommendations for fear that the confidentiality of such communications would not be maintained.  Disclosure thus would harm the ability of OMB's Resource Management Offices to obtain information and advice from their corresponding agencies throughout the federal government to inform the decision-making process with respect to apportionments.

20.     Were these types of internal deliberations disclosed, the agency employees who submit advice and recommendations to OMB would temper their assessments and be circumspect in the level of detail provided with an eye to future public scrutiny of their views and expectations regarding a wide variety of management and budget-related policy matters.  Disclosure thus would inhibit the free and full exchange of ideas and would seriously impair OMB's ability to foster the forthright discussions necessary for continued efficient and proper decision-making.  Additionally, OMB's leadership would lose access to the level of detail and frankness that these exchanges provide.  Agency decision-making is at its best when employees are able to focus on the substance of their views and not on whether their views may at some point be made publicly available.

**DELIBERATIONS CONCERNING EXTENSION OF PAUSE ON AVAILABILITY OF USAI FUNDS BY MEANS OF APPORTIONMENT FOOTNOTE ISSUED AUGUST 6**

21.     The July 25, 2019, footnote temporarily paused the availability of USAI funds for obligation for a limited time period.  After issuing the July 25 footnote, OMB engaged in discussions with DoD about the potential effects of extending that temporary pause beyond August 5.  *Vaughn* Index Doc. Nos. 54 and 106.  These discussions helped inform the decision to issue an apportionment footnote on August 6, 2019, to extend the pause that otherwise would have expired on August 5.

22.     In these discussions, OMB sought analysis and recommendations from DoD personnel concerning the USAI program.  OMB relied upon such exchanges to inform the decision whether to extend the temporary pause.  These discussions were essential to OMB's understanding of the logistics and implications of extending the pause.  These discussions took place with the expectation of confidentiality.  Disclosure of these discussions would harm agency officials' willingness to engage in full and frank discussions regarding apportionments in the future.

Disclosure would therefore impair similar future discussions in which OMB seeks input from agency experts to inform its exercise of apportionment authority.

**DELIBERATIONS CONCERNING EXTENSION OF PAUSE ON AVAILABILITY OF USAI FUNDS BY MEANS OF APPORTIONMENT FOOTNOTE ISSUED AUGUST 15**

23.    Documents 11, 12, 13, 14, 15, 16, 22, 52, 53, 75, 76, and 98 contain highly-sensitive discussions about another possible extension of the pause on the availability of USAI funds for obligation.  These sensitive discussions informed OMB's issuance of an apportionment footnote on August 15, 2019, which made USAI funds unavailable for obligation until August 20.  Like the documents discussed above, in these discussions, OMB and DoD engaged in a back-and-forth discussion of USAI and the effects of continuing to extend the pause on availability of USAI funds for obligation.  These documents include recommendations and advice of senior DoD officials to OMB concerning program implications and policy options.  These discussions include senior DoD officials' assessment of and concern about potential risk to the program resulting from extension of the pause.

24.    As discussed above, revealing details about the analysis and recommendations exchanged during the process of considering an extension of the pause would chill future, similar discussions between OMB and agency officials.  This would harm OMB's ability in the future to obtain candid input from agencies in response to inquiries relating to apportionment decisions, including in situations like this one.  OMB relies upon such frank and fulsome analysis of policy options and implications to make informed decisions.  If agency officials apprehend that their confidential discussions about such sensitive matters will be publicly disclosed, they will reasonably censor their own analyses and recommendations to OMB in the future.

## DELIBERATIONS CONCERNING EXTENSION OF PAUSE ON AVAILABILITY OF USAI FUNDS BY MEANS OF APPORTIONMENT FOOTNOTE ISSUED AUGUST 20

25.	Following the issuance of the August 15 footnote, DoD and OMB engaged in highly sensitive discussions about the implications of extending the pause beyond August 20. *Vaughn* Index Doc. Nos. 8 (attachment to 7), 9, 30, 31, 51, and 74. These discussions informed OMB's decision to issue an apportionment footnote on August 20, 2019, extending the pause through August 26.

26.	In these documents, DoD's Acting Comptroller discussed with OMB officials DOD's internal analysis and recommendations concerning DoD's contracting processes, timelines, and procedures for the purpose of informing OMB's apportionment decision-making. As described in the Declaration of Colonel Henry Dolberry, Jr, ECF No. 22-3 at ¶ 25, these discussions also include sensitive information of foreign governments that has been withheld under Exemption 3. These discussions also include DoD's analysis of the logistics of implementing the pause as well as the potential impacts of extending the pause on the availability of USAI funds. These discussions involve the DoD officials' assessment of and concern about potential risk to the program resulting from extension of the pause. In addition, these discussions include legal advice provided by OMB's Office of General Counsel. Confidentiality is essential to these discussions. Disclosure of these discussions would reasonably chill the future exchange of such fulsome, frank analysis as well as OMB's ability to obtain sound, high-quality legal advice. Underscoring the importance of maintaining the protection of the privilege over such discussions, in her cover email attaching an analysis of the process and timeline for USAI contracting, Ms. McCusker expressly requested that OMB "[p]lease keep [a] close hold" on this information. *Vaughn* Index Doc. No. 7 at CPI v DoD 19-3265 (D.D.C.) 12 Dec 19 095. Ms. McCusker sent this analysis to OMB for the purpose of informing OMB about the logistics of

contract obligation processes under the USAI program.  In sharing this analysis with OMB, Ms. McCusker expressly relied upon the expectation of maintaining confidentiality.  Disclosure of such discussions would harm future DoD operations by revealing internal processes and logistics, as well as sensitive information of foreign governments which DoD has agreed, at the request of the Ukrainian government, not to produce under the FOIA.  *See* Declaration of Colonel Dolberry, ECF No. 22-3 at ¶ 25.  Disclosure also would risk chilling DoD or any other agency's willingness to provide OMB such sensitive and internal analysis in the future.  Such a chilling of agency collaboration would impair OMB's decision-making by depriving its officials of analysis that is essential to OMB's ability to develop an informed understanding of the agency programs at issue in OMB's apportionment decision-making.

**DELIBERATIONS CONCERNING EXTENSION OF PAUSE ON AVAILABILITY OF USAI FUNDS BY MEANS OF APPORTIONMENT FOOTNOTE ISSUED AUGUST 27**

27.     Following the issuance of the August 20 footnote, OMB and DoD engaged in further discussion about the implementation of the short-term extension of the pause on the availability of USAI funds for obligation.  *Vaughn* Index Doc. Nos. 71, 72, and 73.  These discussions include Ms. McCusker's frank expression of her analysis of the logistics and implications of extending the pause on the availability of USAI funds for obligation.  These discussions also reflect the legal advice of senior attorneys at DoD and OMB.  These discussions informed the decision-making process leading up to OMB's issuance of an apportionment footnote on August 27, 2019.

28.     These discussions are essential to informed decision-making.  Disclosure would jeopardize the willingness of agency officials to exchange candid advice and recommendations to OMB concerning their programs.  OMB relies upon such advice and recommendations to inform its apportionment decisions.  Impairing OMB's ability to obtain uninhibited collaboration

from agency officials would have adverse implications for OMB's routine exercise of its apportionment authority for programs across the federal government.

29.   Some of these documents also include discussions of potential talking points in response to inquiries from Congress.  *See* ¶¶ 13-16, *supra*.  As discussed above, disclosure of such discussions would harm OMB's ability to engage in collaborative review of such drafts and would risk confusing the public about agency's actual position.

**DELIBERATIONS CONCERNING EXTENSION OF PAUSE ON AVAILABILITY OF USAI FUNDS BY MEANS OF APPORTIONMENT FOOTNOTE ISSUED AUGUST 31**

30.   Documents 6, 20, 21, 36, 49, 95, and 96 contain highly sensitive discussions of considerations informing OMB's eventual decision to issue an apportionment footnote on August 31, 2019, pausing the availability of USAI funds for obligation until September 5.

31.   These documents contain discussions involving senior DoD officials concerning possible questions and proposed responses to Congress and the media concerning USAI, as well as discussions contemplating a draft, unsent letter to OMB that would have expressed DoD's opinions regarding the timing and logistical considerations for obligating USAI funds by the end of the fiscal year.  These discussions include the DoD officials' assessment of and concern about potential risk to the program resulting from extension of the pause.  These discussions include the legal advice of senior DoD attorneys, including Mr. Ney and Deputy General Counsel (Fiscal) Edwin Scott Castle.  In addition, these exchanges refer to communications involving the President or his immediate advisors.  Disclosure of such highly sensitive discussions would have a chilling effect on future exchanges of analysis and recommendations with senior agency officials.  These candid discussions are essential to ensure that OMB receives sound analysis and advice from agencies when making even the most sensitive decisions in the exercise of OMB's apportionment authority.

32. Some of these documents also include discussions of potential talking points in response to inquiries from Congress. *See* ¶¶ 13-16, *supra*. As discussed above, disclosure of such discussions would harm OMB's ability to engage in collaborative review of such drafts and would risk confusing the public about the agency's actual position.

### **DELIBERATIONS CONCERNING EXTENSION OF PAUSE ON AVAILABILITY OF USAI FUNDS BY MEANS OF APPORTIONMENT FOOTNOTES ISSUED SEPTEMBER 5 AND 6**

33. Documents 33, 34, 68, and 86 contain discussions informing OMB's decision to issue apportionment footnotes on September 5 and 6, 2019.

34. These documents contain discussions involving senior DoD officials concerning the status of USAI, as well as discussions contemplating a draft, unsent letter to OMB that would have expressed DoD's opinions regarding the timing and logistical considerations for obligating USAI funds by the end of the fiscal year. These discussions involve legal advice from senior agency attorneys. These discussions include senior DoD officials' assessment of and concern about potential risk to the program resulting from extension of the pause. In addition, these discussions involve communications protected by the presidential communications privilege.

35. Disclosure would risk chilling such candid expression to OMB of agency officials' analysis and recommendations with respect to sensitive apportionment decisions and the implications thereof. OMB regularly relies upon the agency experts to provide such analysis and recommendations to inform its decision-making to ensure the best use of federal funds in a multiplicity of programs. If agency officials were to perceive that their advice would not be kept confidential, they would not be as willing in the future to engage in such candid discussions, particularly concerning such highly-sensitive matters.

### DELIBERATIONS CONCERNING EXTENSION OF PAUSE ON AVAILABILITY OF USAI FUNDS BY MEANS OF APPORTIONMENT FOOTNOTE ISSUED SEPTEMBER 10

36. Following the issuance of the September 6 footnote, Ms. McCusker continued to discuss with OMB her analysis of the effects of extending the pause and potential implications with respect to obligation of funds by September 30, 2019. *Vaughn* Index Doc. Nos. 43, and 67. These discussions informed the decision-making process leading up to the issuance of an apportionment footnote on September 10, 2019, which temporarily paused the availability of USAI funds for obligation through September 11.

37. These discussions address the timing and logistics needed to obligate the USAI funds by the end of the fiscal year on September 30, 2019, as well as the implications of continuing to implement the pause on availability of USAI funds. The withheld information reflects Ms. McCusker's analysis and recommendations to OMB.

38. Disclosure of such discussions would chill future frank exchanges of analysis between OMB and the agencies operating programs affected by OMB's decision-making. OMB relies upon such input from agency officials such as Ms. McCusker to ensure the highest quality decision-making with respect to apportionment. Impairing the trust of agency officials would thus impair OMB's ability to make informed decisions about the best use of appropriated funds.

### DELIBERATIONS ABOUT LOGISTICS OF OBLIGATING USAI FUNDS BY SEPTEMBER 30, 2019, AND RELEASING USAI FUNDS FOR OBLIGATION

39. Following the issuance of the September 10 footnote, Ms. McCusker sent Mr. Duffey her analysis and recommendations with respect to implementation of the pause in obligations. *Vaughn* Index Doc. Nos. 44, 45, 63, 64, and 66. These discussions addressed DoD actions to implement the pause, and informed OMB's advice and recommendations to the President

regarding the ultimate decision to lift the pause, thereby releasing USAI funds for obligation effective September 12, 2019.

40.     These documents contain exchanges involving considerations affecting the decision regarding whether or not to extend the pause past September 11.  These communications include analysis and recommendations from Ms. McCusker to Mr. Duffey concerning the status of the USAI and the potential implications of further extending the pause on availability of USAI funds for obligation, including the timing of DOD's planned administrative activities related to the spending of funds but preceding the actual obligation of the funds.

41.     Disclosure of these discussions would reveal the contents of communications held in confidence, which in turn would chill future frank exchanges of analysis between OMB and the agencies operating programs affected by OMB's decision-making.  OMB relies upon such input from agency officials like Ms. McCusker to ensure the highest quality decision-making with respect to apportionment, especially with respect to such highly sensitive matters as this. Impairing the trust of agency officials would thus impair OMB's ability to make informed decisions and to provide the best possible advice to the President concerning the best use of appropriated funds.

In accordance with 28 U.S.C. § 1746, I hereby declare and affirm under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed in Washington, District of Columbia, this 1st day of May, 2020.

*Heather V. Walsh* (signature)

Heather V. Walsh
Deputy General Counsel
Office of the General Counsel
Office of Management and Budget