## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR PUBLIC INTEGRITY,<br>    Plaintiff<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF<br>DEFENSE, *et al*.,<br>    Defendants | Civil Action No. 19-3265(CKK) |

### MEMORANDUM OPINION
(August 28, 2020)

This is a Freedom of Information Act ("FOIA") action, in which Plaintiff Center for Public Integrity seeks records from the United States Department of Defense ("DOD") and the United States Office of Management and Budget ("OMB") regarding communications between the DOD and the OMB with the DOD's comptroller concerning the DOD's Ukraine Security Assistance Initiative ("USAI"). Following the Court's grant of a preliminary injunction, Defendants responded to Plaintiff's FOIA requests by processing and producing approximately 292 pages of documents with redactions.  Before the Court are Defendants' [22] Motion for Summary Judgment and Plaintiff's [23] Motion for Summary Judgment. Plaintiff disputes certain redactions under FOIA Exemption 3, which allows for the withholding of information exempted from disclosure by statute; Exemption 5, which protects inter-agency or intra-agency communications which would not be available by law to a party in litigation with the agency; and Exemption 6, which protects information that implicates personal privacy concerns.[1]

---

[1] Initially, Plaintiff contested withholdings under FOIA Exemption 1 as well. But, Plaintiff later withdrew those objections. Pl.'s Reply, ECF No. 29, 20.

Upon consideration of the pleadings,[2] the relevant legal authorities, in camera review of certain documents, and the record for purposes of this motion, the Court GRANTS IN PART AND DENIES IN PART Defendants' Motion for Summary Judgment and GRANTS IN PART AND DENIES IN PART Plaintiff's Motion for Summary Judgment. As to the withholdings under FOIA Exemption 3, the Court concludes that Defendants have shown that the withholdings are appropriate under 10 U.S.C. § 130c, which allows for the withholding of sensitive information of foreign governments. As to the withholdings under FOIA Exemption 5, the Court has determined that Defendants' withholdings are proper, except as to certain material in documents 44, 63, 64, 54, and 67. And, as to the withholdings under FOIA Exemption 6, the Court concludes that the release of the withheld information—email addresses of agency workers—would clearly constitute an unwarranted invasion of personal privacy.

## I.      BACKGROUND

Plaintiff is a nonprofit, nonpartisan, non-advocacy, independent journalism organization. Compl., ECF No. 1, ¶ 4. Plaintiff submitted two FOIA requests. On September 25, 2019, Plaintiff requested from the DOD "[a]ll records reflecting any communication between Defense Department acting comptroller Elaine McCusker or other officials within the comptroller's office

---

[2] The Court's consideration has focused on the following documents:

   • Defs.' Mot. for Summary Judgment ("Defs.' Mot."), ECF No. 22;
   • Pl.'s Cross-Mot. for Summary Judgment ("Pl.'s Mot."), ECF No. 23;
   • Defs.' Combined Mem. of Points and Authorities in Opp'n to Pl.'s Cross-Mot for Summary Judgment and Reply in Support of Defs.' Mot. for Summary Judgment ("Defs.' Opp'n"), ECF No. 26;
   • Pl.'s Reply in Support of its Cross-Mot. for Summary Judgment ("Pl.'s Reply"), ECF No. 29; and
   • Mem. of Amici Curiae Am. Oversight and Dem. Forward Found. in Support of Pl. CPI's Cross-Mot. for Summary Judgment and Opp'n to Defs.' Mot. for Summary Judgment ("Amici Brief"), ECF No. 28.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

and employees or officials of the Office of Management and Budget concerning the Ukraine Security Assistance Initiative." Defs.' Statement of Material Facts as to which There is No Genuine Issue ("Defs.' Stat."), ECF No. 22-1, ¶ 18. Plaintiff also requested from the DOD "[a]ll records reflecting any communication between Defense Department acting comptroller Elaine McCusker or other officials within the comptroller's office and Secretary of Defense Mark Esper or Deputy Secretary of Defense David Norquist concerning the Ukraine Security Assistance Initiative." *Id*. And, on September 30, 2019, Plaintiff requested from the OMB "[a]ll records reflecting any communication between officials and employees of the Office of Management and Budget and the office of Defense Department acting comptroller Elaine McCusker or other officials within the comptroller's [office] concerning the Ukraine Security Assistance Initiative." *Id*. at ¶ 20. Plaintiff requested expedited processing for both FOIA requests.

Defendants acknowledged receipt of the FOIA requests. But, prior to the filing of this lawsuit on October 30, 2019, Defendants did not provide a determination on Plaintiff's requests. On October 31, 2019, Plaintiff filed a Motion for a Preliminary Injunction requesting all responsive, non-exempt information. *See* ECF No. 4. Ultimately, the Court granted Plaintiff's motion for a preliminary injunction, ordering Defendants to process all responsive documents and to produce all non-exempt information by December 20, 2019. *See* Nov. 25, 2019 Memorandum Opinion, ECF No. 17, 2.

In keeping with the Court's Order, Defendants processed and produced 292 pages, with redactions, in two productions. Defs.' Stat., ECF No. 22-1, ¶ 42. Following the first production, Plaintiff filed a motion to enforce the preliminary injunction, arguing that Defendants had violated the Court's preliminary injunction order by improperly withholding information. *See* ECF No. 19. The Court denied Plaintiff's Motion, explaining that the preliminary injunction applied only to the

production of non-exempt information. ECF No. 20. The Court recognized that the issue of disputed exemptions would have to be litigated at a different time. Those disputed exemptions are the issue currently before the Court. Specifically, Plaintiff disputes withholdings under FOIA Exemptions 3, 5, and 6.

On August 6, 2020, the Court issued a Memorandum Opinion requesting in camera review of certain material withheld under FOIA Exemption 5. The Court requested this material because deficiencies in Defendants' *Vaughn* index and accompanying declarations prevented the Court from making a responsible de novo determination of the claims of exemption. ECF No. 34. Specifically, the Court requested in camera review of material withheld under Exemption 5 in documents 8, 9, 11, 12, 13, 14, 15, 20, 21, 22, 23, 24, 25, 28, 30, 33, 34, 35, 38, 40, 41, 42, 43, 44, 45, 51, 52, 53, 54, 56, 60, 63, 64, 66, 67, 68, 69, 71, 72, 73, 74, 75, 76, 77, 78, 82, 83, 86, 92, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 111. *Id.*[3] For the remaining documents, information provided in Defendants' *Vaughn* index and accompanying declarations was sufficient to make a determination on the withholdings.

On August 11, 2020, Defendants provided the Court with the requested material. The Court reviewed the unredacted documents in camera.

## II.   LEGAL STANDARD

Congress enacted FOIA to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (internal quotation marks omitted). Congress remained sensitive to the need to achieve balance between these objectives and the potential that "legitimate governmental and private interests

---

[3] The Court also later requested in camera review of document 7 in order to better understand the context of document 8. *See* Aug. 19, 2020 Minute Order. Review of document 7 was also provided.

4

could be harmed by release of certain types of information." *Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 621 (1982). To that end, FOIA "requires federal agencies to make Government records available to the public, subject to nine exemptions." *Milner v. Dep't of Navy*, 562 U.S. 562, 562 (2011). Ultimately, "disclosure, not secrecy, is the dominant objective of the Act." *Rose*, 425 U.S. at 361. For this reason, the "exemptions are explicitly made exclusive, and must be narrowly construed." *Milner*, 562 U.S. at 565 (internal quotation marks and citations omitted).

When presented with a motion for summary judgment in this context, the district court must conduct a "de novo" review of the record, which requires the court to "ascertain whether the agency has sustained its burden of demonstrating the documents requested are ... exempt from disclosure under the FOIA." *Multi Ag Media LLC v. Dep't of Agriculture*, 515 F.3d 1224, 1227 (D.C. Cir. 2008) (internal quotation marks omitted). The burden is on the agency to justify its response to the plaintiff's request. 5 U.S.C. § 552(a)(4)(B). "An agency may sustain its burden by means of affidavits, but only if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Multi Ag Media*, 515 F.3d at 1227 (internal quotation marks omitted). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *Am. Civil Liberties Union v. U.S. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011). "Uncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d

504, 509 (D.C. Cir. 2011). Summary judgment is proper when the pleadings, the discovery materials on file, and any affidavits or declarations "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### III.    DISCUSSION

Plaintiff does not challenge the adequacy of Defendants' search for responsive records to Plaintiff's FOIA requests.[4] As such, the sole issue before the Court is whether or not Defendants' withholdings fall under FOIA Exemptions 3, 5, and 6. The Court has reviewed the parties' supporting Declarations, Defendants' *Vaughn* Index, and certain documents in camera. Considering the arguments of the parties, as well as the Court's own review of some of the documents, the Court concludes that Defendants' withholdings under FOIA Exemptions 3 and 6 are proper. The Court further concludes that Defendants' withholdings under FOIA Exemption 5 are proper, except as regards material withheld in documents 44, 63, 64, 54, and 67. The Court will explain its reasoning as to the withholdings under each Exemption.

### A.  Withholdings under FOIA Exemption 3

FOIA Exemption 3 applies to matters that are "specifically exempted from disclosure by [another] statute" if that statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). Here, Defendants withheld information pursuant to 10 U.S.C. § 130c which allows agencies to withhold "from

---

[4] Initially, Plaintiff did challenge the adequacy of Defendants' search. *See* Pl.'s Mot., ECF No. 23, 3-4. But, following the production of additional documents by Defendants, Plaintiff withdrew its objections to the adequacy of Defendants' search. Pl.'s Reply, ECF No. 29, 1.

public disclosure otherwise required by law sensitive information of foreign governments in accordance with this section." 10 U.S.C. § 130c(a).

For purposes of 10 U.S.C. § 130c, information is "sensitive information of a foreign government only if the national security official concerned makes each of the following determinations with respect to the information." 10 U.S.C. § 130c(b). The official must determine "[t]hat the information was provided by, otherwise made available by, or produced in cooperation with, a foreign government;" "[t]hat the foreign government … is withholding the information from public disclosure;" and that any one of the following conductions is met—"(A) [t]he foreign government … requests, in writing, that the information be withheld, (B) [t]he information was provided or made available to the United States Government on the condition that it not be released to the public, (C) [t]he information is an item of information, or is in a category of information, that the national security official concerned has specified … as being information the release of which would have an adverse effect on the ability of the United States Government to obtain the same or similar information in the future." 10 U.S.C. § 130c(b)(1)-(3).

Courts have found that 10 U.S.C. § 130c meets the requirements of FOIA Exemption 3, and Plaintiff does not contest the applicability of the statute. *See Nat'l Inst. of Military Justice v. U.S. Dep't of Def.*, 404 F. Supp. 2d 325, 336 (D.D.C. 2005) (the plaintiff conceded that 10 U.S.C. § 103c meets the standards for Exemption 3), *aff'd on other grounds*, 512 F.3d 677 (D.C. Cir. 2008); *American Civil Liberties Union v. Dep't of Def.*, 389 F. Supp. 2d 547, 554 (S.D.N.Y. 2005) (finding the statute applicable under FOIA Exemption 3). Lacking argument from Plaintiff to the contrary, the Court finds that 10 U.S.C. § 130c meets the requirements of FOIA Exemption 3 because it "establishes particular criteria for withholding or refers to particular

types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A)(ii). As such, the question before the Court is whether or not Defendants' withholdings meet the requirements of 10 U.S.C. § 130c.

Defendants withheld information under FOIA Exemption 3 in documents 8, 19, 26, 39, 79, 80, and 81. *See Vaughn* Index, ECF No. 22-3. Plaintiff has two arguments as to why the withholdings under FOIA Exemption 3 were improper. First, Plaintiff argues that the statute applies only to "sensitive information" and that none of the withheld information is sensitive. Second, Plaintiff argues that Defendants have failed to adequately parse the documents for releasable information. The Court will address each argument in turn.

First, the Court finds that the withheld information meets the requirements of 10 U.S.C. § 130c, including the requirement that the information be sensitive. In support of their Motion, Defendants submitted a declaration explaining that the DOD "withheld under Exemption 3 specific, sensitive information about the military equipment that Ukraine needed to fulfill its national security needs, the specification of equipment and associated costs." Dec. of Colonel Henry Dolberry, Jr., ECF No. 22-3, ¶ 25. The withheld information was "based upon extensive cooperation between the United States and Ukraine regarding what military aid best supports the national security interests of both countries." *Id*. Additionally, because the information could "reveal both Ukraine's capabilities and potential vulnerabilities, the Ukrainian government has informed the United States that Ukraine does not publicize such information and requested, in writing, that such information not be produced under the FOIA." *Id.*

In response to this declaration and Defendants' *Vaughn* index, Plaintiff argues that much of the information involves defense contracts and vendor information which is not sensitive. However, Plaintiff's arguments rest on speculation. For example, Plaintiff argues that documents 8, 19, and 80 consist of vendor information which is not secret and should not be presumed

sensitive. But, Defendants have made the required showing that the information is sensitive as defined by the statute. Defendants have provided a declaration explaining that the information is "based upon extensive cooperation between the United States and Ukraine," that "Ukraine does not publicize such information," and that Ukraine has "requested, in writing, that such information not be produced under the FOIA." *Id.*; 10 U.S.C. § 130c. Plaintiff's speculation does not overcome Defendants' declaration. *See Carter v. Nat'l Sec. Agency*, 962 F. Supp. 2d 130, 140 (D.D.C. 2013) (explaining that "opinion and speculation as to the deficiencies in the declaration" are insufficient). Plaintiff also argues that document 26 is a list of specific aid for Ukraine which is not classified and should not be presumed sensitive. However, 10 U.S.C. § 130c does not require that information be classified in order to be considered sensitive. As such, the fact that the document is unclassified does nothing to overcome the presumption of good faith afforded to the agency's declaration that the withheld information meets the statute's requirements for sensitive information. *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (explaining that agency affidavits are "accorded a presumption of good faith"). Finally, Plaintiff contends that document 81 is a list of "U.S. Industry Benefits" from the assistance program for Ukraine rather than an account by Ukraine of its security needs. Even if the document is not an account of Ukraine's security needs, the document can still have been produced "in cooperation with" Ukraine. 10 U.S.C. § 130c(b)(1). And, the agency declaration explains that the withheld information "is based upon extensive cooperation between the United States and Ukraine." Dec. of Colonel Henry Dolberry, Jr., ECF No. 22-3, ¶ 25. Accordingly, the Court finds that Defendants have provided evidence sufficient to show that 10 U.S.C. § 130c's requirements for sensitive information have been met, and Plaintiff has failed to produce evidence to overcome Defendants' declarations.

The Court next considers Plaintiff's argument that "Defendants have failed to adequately parse these documents for releasable information." Pl.'s Mot., ECF No. 23, 23. "[E]ven if [the] agency establishes an exemption, it must nonetheless disclose all reasonably segregable, nonexempt portions of the requested record[s]." *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1167 (D.C. Cir. 2011). The Court concludes that Defendants have met this requirement for withholdings under FOIA Exemption 3.

Having reviewed Defendants' declarations, the Court concludes that all reasonably segregable, non-exempt information withheld under Exemption 3 was released to Plaintiff. Defendants have produced a declaration explaining that the "DOD has conducted a page-by-page and line-by-line review of the 292 pages of documents at issue in this Declaration for reasonable segregation of non-exempt information and has determined that no further segregation of meaningful information in the redacted documents can be made without disclosing information entitled to protection under the FOIA." Dec. of Colonel Henry Dolberry, Jr., ECF No. 22-3, ¶ 28; *see also Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776-77 (D.C. Cir. 2002) (finding combination of *Vaughn* index and agency declaration sufficient to fulfill agency's obligation on segregability). Any non-exempt information contained in the withheld information is "inextricably intertwined with" portions exempt under FOIA Exemption 3. *See Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

For these reasons, the Court GRANTS Defendants' Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment as to withholdings under FOIA Exemption 3.

**B.  Withholdings under FOIA Exemption 5**

FOIA Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Over the years, it has been construed as protecting "those documents, and only those documents, normally privileged in the civil discovery context." *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co*., 421 U.S. 132, 149 (1975). It provides protection to "materials which would be protected under the attorney-client privilege, the attorney work-product privilege, or the executive 'deliberative process' privilege." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980) (internal citations omitted). In this case, Defendants rely on three recognized privileges: the attorney client privilege, the deliberative process privilege, and the presidential communications privilege. The Court will address the withholdings under each privilege in detail.

Under the federal common law, the proponent bears the burden of demonstrating the applicability of any asserted privilege. *In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n WD Energy Servs., Inc*., 439 F.3d 740, 750 (D.C. Cir. 2006). To meet that burden, the proponent must establish the claimed privilege with "reasonable certainty." *Fed. Trade Comm'n v. TRW, Inc*., 628 F.2d 207, 213 (D.C. Cir. 1980). Specifically, the proponent must adduce competent evidence in support of "each of the essential elements necessary to sustain a claim of privilege." *Alexander v. Fed. Bureau of Investigation*, 192 F.R.D. 42, 45 (D.D.C. 2000). The proponent "must offer more than just conclusory statements, generalized assertions, and unsworn averments of its counsel." *In re Application of Veiga*, 746 F. Supp. 2d 27, 34 (D.D.C. 2010). Where the proponent fails to adduce sufficient facts to permit the district

court to conclude with reasonable certainty that the privilege applies, its burden has not been met. *TRW*, 628 F.2d at 213.

Before the Court addresses Defendants' withholdings under each of the recognized privileges, the Court will first examine two of Plaintiff's arguments that apply to all withholdings under FOIA Exemption 5. First, Plaintiff argues that the Exemption 5 privileges "are [not] absolute, and they must yield to the need for disclosure of government misconduct." Pl.'s Mot., ECF No. 23, 14. Second, Plaintiff contends that Defendants have failed to specifically identify the harm that would be caused by disclosure of the withheld information, as required by the FOIA Improvement Act.

### 1. Government Misconduct Exception

As this Court previously explained *in Judicial Watch, Inc. v. United States Department of State*, 285 F. Supp. 3d 249 (D.D.C. 2018), it is not clear in this circuit whether a government misconduct exception may properly be invoked in a FOIA case. Cases acknowledging such an exception cite the U.S. Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") for the broad proposition that a government misconduct exception applies "[w]here there is reason to believe the documents sought may shed light on government misconduct ... on the grounds that shielding internal government deliberations in this context does not serve the public's interest in honest, effective government." *In re Sealed Case*, 121 F.3d 729, 738 (D.C. Cir. 1997) (internal quotation marks omitted)). Yet *In re Sealed Case* is distinguishable from the FOIA case currently before the Court. In that case concerning a grand jury subpoena, the D.C. Circuit drew certain lessons about the deliberative process privilege from the FOIA context, but expressly disclaimed that the portion of its discussion containing language about the government misconduct exception would be applicable to a FOIA case. 121 F.3d at 737-38 & n.5 ("The

deliberative process privilege is a qualified privilege and can be overcome by a sufficient showing of need," including to "shed light on government misconduct," but "[t]his characteristic of the deliberative process privilege is not an issue in FOIA cases because the courts have held that the particular purpose for which a FOIA plaintiff seeks information is not relevant in determining whether FOIA requires disclosure."). Other courts in this circuit have found a similar dearth of binding authority for the government misconduct exception in the FOIA context. *See, e.g., Judicial Watch, Inc. v. U.S. Dep't of Commerce*, No. 15-cv-2088-CRC, 2017 WL 3822733, at *2 (D.D.C. Aug. 21, 2017) ("[T]he D.C. Circuit has never held that government misconduct can abrogate the deliberative process privilege in a FOIA case ...."); *Neighborhood Assistance Corp. of Am. v. U.S. Dep't of Hous. & Urban Dev.*, 19 F. Supp. 3d 1, 13 (D.D.C. 2013) (considering *In re Sealed Case* language on misconduct to be "dicta" and stating that "other than these general observations, our Court of Appeals has never squarely applied the exception"). The parties do not cite, and the Court could not find, any other circuits where the law is clearer.

Despite the lack of authority from the D.C. Circuit, some district courts in this circuit have found that a government misconduct exception could apply in a FOIA case. *See, e.g., U.S. Dep't of Commerce*, 2017 WL 3822733, at *2 (collecting FOIA cases and finding that any such exception did not apply to documents withheld there); *Nat'l Whistleblower Ctr. v. Dep't of Health and Human Servs.*, 903 F. Supp. 2d 59, 67 (D.D.C. 2012) (finding that government misconduct exception could be invoked in FOIA cases but did not apply to documents withheld there); *But see Judicial Watch, Inc. v. U.S. Dep't of State*, 241 F.Supp.3d 174, 182-83 (D.D.C. 2017) (finding that *In re Sealed Case*, "the only applicable Circuit authority[,] militates against recognizing a government misconduct exception in a FOIA case"), *amended on reconsideration*

*on other grounds*, Civ. Action No. 14-1511 (ABJ), 282 F.Supp.3d 338, 2017 WL 4862108 (D.D.C. Oct. 24, 2017).

District courts in this circuit that have considered whether to apply the government misconduct exception have found that a plaintiff must meet a high bar to properly invoke it. S*ee, e.g., Hall & Assocs. v. U.S. Envtl. Prot. Agency*, 14 F. Supp. 3d 1, 9 (D.D.C. 2014) ("While there is little case law to guide the Court on what quantum of evidence must be shown to support the [government misconduct] exception, courts have recognized the need to apply the exception narrowly ...."). Some D.C. Circuit support for a narrow exception can be derived from non-FOIA contexts. *See Neighborhood Assistance Corp. of Am*., 19 F. Supp. 3d at 13 ("[O]ur Circuit has observed—again in dicta—that the word 'misconduct' implies 'nefarious motives.'" (quoting *In re Subpoena Served on the Office of the Comptroller of the Currency*, 145 F.3d 1422, 1425 n.2 (D.C. Cir. 1998))); *id.* at 20-21 (citing *Hinckley v. United States*, 140 F.3d 277, 285 (D.C. Cir. 1998) ("The deliberative process privilege would soon be meaningless, if all someone seeking information otherwise protected under the privilege had to establish is that there was disagreement within the governmental entity at some point in the decisionmaking process.")).

The relevant consideration for "extreme government wrongdoing" sufficient to trigger the exception is the egregiousness of the contents of the discussion, not the egregiousness of the underlying conduct that the discussion concerns. *ICM Registry, LLC v. U.S. Dep't of Commerce*, 538 F. Supp. 2d 130, 133 (D.D.C. 2008)). "In the rare cases that have actually applied the exception, the 'policy discussions' sought to be protected with the deliberative process privilege were so out of bounds that merely discussing them was evidence of a serious breach of the responsibilities of representative government," i.e., "[t]he very discussion ... was an act of

government misconduct." *Id.*; *see also Tax Reform Research Grp. v. IRS*, 419 F. Supp. 415, 426 (D.D.C. 1976)).

The Court further notes that while there is some authority for applying the government misconduct exception to information withheld under the deliberative process privilege, Plaintiff did not cite and the Court did not find any authority for applying the government misconduct exception to information withheld under the attorney client privilege or under the presidential communications privilege in the context of FOIA. *See Protect Democracy Project, Inc. v. U.S. Nat'l Security Agency*, Case No. 17-1000, 2020 WL 1331996, at \*7-10 (D.D.C. Mar. 23, 2020) (declining to extend the government misconduct exception to the presidential communications privilege under FOIA).

Assuming arguendo, for purposes of the discussion in this Memorandum Opinion, that the government misconduct exception applies to FOIA Exemption 5, the Court shall consider whether any misconduct alleged by Plaintiff satisfies the high standard for the exception. Plaintiff alleges two different aspects of misconduct. First, Plaintiff alleges that the OMB violated the Impoundment Control Act by withholding the USAI funds for an unauthorized reason. Pl.'s Mot., ECF No. 23, 16. Second, Plaintiff alleges that "the suspension of military aid to Ukraine was a central element of the president's efforts to obtain political favors from Ukraine's government." *Id.* at 17.

The Court finds that the first alleged aspect of misconduct—the OMB's violation of the Impoundment Control Act—is not sufficiently egregious or nefarious to meet the narrow standards for the government misconduct exception. "In the rare cases that have actually applied the exception, the 'policy discussions' sought to be protected with the deliberative process privilege were so out of bounds that merely discussing them was evidence of a serious breach of

the responsibilities of representative government." *ICM Registry*, 538 F. Supp. 2d at 133. Here, a

report from the Government Accountability Office ("GAO") concluded that the OMB's

apportionment with respect to the funds for Ukraine violated the Impoundment Control Act. U.S.

Gov't Accountability Office, Decision (Jan. 16, 2020),

https://www.gao.gov/assets/710/703909.pdf. The GAO's finding that OMB's apportionment

actions violated the Impoundment Control Act is insufficient to show nefarious intent or extreme

wrongdoing. *See Hinckley v. United States*, 140 F.3d 277, 285-86 (D.C. Cir. 1998) (finding that

"the simple fact that Hinckley's treatment team and the Hospital's Review Board came to

different conclusions does not suggest, in our view, any improper motivations on the part of the

Review Board"). The Court makes no decision as to whether or not an agency's action, found to

be in violation of a statute, could ever rise to the level of extreme government misconduct.

Instead, the Court decides only that Plaintiff has not established that the OMB's alleged violation

of the Impoundment Control Act is sufficient to show nefarious intent or extreme government

misconduct on the part of Defendants. *Compare with Alexander v. FBI*, 186 F.R.D. 154, 164

(D.D.C. 1999) (finding no privilege where documents concerned the misuse of a government file

to discredit a witness in an ongoing investigation); T*ax Reform Research Group v. IRS*, 419 F.

Supp. 415, 426 (D.D.C. 1976) (finding no privilege where documents concerned the possibility

of using the IRS against "enemies" of the Nixon administration).

　　　　The Court further notes that Plaintiff has not shown that the contents of Defendants'

discussions were sufficiently egregious to trigger the exception. Defendants withheld under

FOIA Exemption 5 discussions between and among "officials at OMB and DoD [] determining

how best to execute a series of short-term budgetary apportionment actions to allow time for a

policy process to occur. The deliberations shown in the information being withheld concern the

then-pending decisions by the Executive Branch on how and when to authorize the obligation of Federal funds appropriated for Ukraine, decisions on apportionment actions, and the potential implications of the apportionment actions." Dec. of Heather Walsh, ECF No. 22-4, ¶ 18. Discussions within the OMB and discussions with the DOD regarding apportionment of funds encompass one of the OMB's core responsibilities. *See* 31 U.S.C. §§ 1512, 1513. Even if the ultimate decision as to the apportionment of the funds was found by the GAO to violate the Impoundment Control Act, it is not clear that the discussions themselves, considering different options for the release or delay of the USAI funding, were sufficiently egregious as to trigger the government misconduct exception. *See Judicial Watch*, 285 F. Supp. 3d at 255 ("Plaintiff essentially asks the Court to make, or rely on, a determination that the Secretary's conduct constituted wrongdoing … [b]ut it is unnecessary to decide that issue because the discussions themselves do not rise to the level so as to trigger the exception, regardless of the lawfulness, or propriety, of the underlying conduct").

Plaintiff's second theory of government misconduct—that "the suspension of military aid to Ukraine was a central element of the president's efforts to obtain political favors from Ukraine's government"—suffers from the same shortcoming. Pl.'s Mot., ECF No. 23, 17. While such an allegation of misconduct may be sufficiently egregious, Plaintiff has failed to connect the withheld communications between the OMB and the DOD to the alleged presidential decision to delay funding to Ukraine in exchange for political favors. And, again, the relevant consideration for the government misconduct exception is the content of the discussions, not the "egregiousness of the underlying conduct." *Judicial Watch*, 285 F. Supp. 3d at 254; *see also Nat'l Whistleblower Ctr.*, 903 F. Supp. 2d at 69 ("The Court … makes no determination as to the ultimate question of the lawfulness of Defendant's actions; it merely finds that the misconduct

necessary to supersede the deliberative-process privilege of Exemption 5 is not present in the reviewed documents."). Even if the alleged presidential decision to suspend aid in exchange for political favors occurred, officials with the OMB and the DOD could still have had legitimate discussions about the decisions necessary for the release or the continued withholding of the funding which were completely disconnected from the motives behind the initial presidential decision. Afterall, "[t]he public continues … to have a clear interest in preserving the space necessary for government actors to engage in the type of honest and appropriate deliberations that preserve effective governance, even when they concern past misconduct." *Judicial Watch v. U.S. Dep't of State*, 235 F. Supp. 3d 310, 314 (D.D.C. 2017).

In sum, the Court finds that Plaintiff has failed to show that the withheld communications rise to the level of egregiousness so as to trigger the government misconduct exception, regardless of the lawfulness, or propriety, of the underlying conduct. For this reason, the government misconduct exception, assuming it exists in the FOIA context, does not apply to the material withheld under FOIA Exemption 5.

### 2.   FOIA Improvement Act

Congress passed the FOIA Improvement Act of 2016 both to address a "growing backlog" of FOIA requests and out of concern that "agencies [we]re overusing FOIA exemptions that allow, but do not require, information to be withheld from disclosure." S. Rep. No. 114-4 (2016), *as reprinted in* 2016 U.S.C.C.A.N. 321, 322. Senate Report 114-4 discussed in particular the "growing and troubling trend towards relying on these discretionary exemptions"—especially Exemption 5—"to withhold large swaths of Government information, even though no harm would result from disclosure." *Id.* at 323.

The Act therefore provided for a "presumption of openness" for FOIA requests and "mandate[d] that an agency may withhold information only if it reasonably foresees a specific identifiable harm to an interest protected by an exemption, or if disclosure is prohibited by law." *Id.* at 324. In particular, it was contemplated that information should "not be withheld 'merely because public officials might be embarrassed by disclosure, because errors and failures might be revealed, or because of speculative or abstract fears.'" *Id.* (quoting President Barack Obama, Memorandum for the Heads of Executive Departments and Agencies, Subject: Freedom of Information Act (Jan. 21, 2009)).

To that end, the FOIA Improvement Act provided that "[a]n agency shall withhold information" under the discretionary FOIA exemptions, including Exemption 5, "only if the agency reasonably foresees that disclosure would harm an interest protected by" a discretionary exemption or if "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i). "Stated differently, pursuant to the FOIA Improvement Act, an agency must release a record—even if it falls within a FOIA exemption—if releasing the record would not reasonably harm an exemption-protected interest and if its disclosure is not prohibited by law." *Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 73 (D.D.C. 2018).

While there are few cases interpreting the Act's requirements, two courts in this Circuit have considered the Act in some depth. In *Rosenberg v. U.S. Department of Defense*, the court examined persuasive authority and the text of the Act itself to find that the agency was required to "explain how a particular Exemption 5 withholding would harm the agency's deliberative process." *Id.* at 78. While the agency could "take a categorical approach—that is, group together like records," it still had to "explain the foreseeable harm of disclosure for each category." *Id.* The court ultimately found that the agency's statement that disclosure of the information

withheld would "impede open discussion on these issues" was insufficient. *See id.* at 77-78; *see also Ecological Rights Found. v. Fed. Emergency Mgmt. Agency*, No. 16-cv-05254-MEJ, 2017 WL 5972702, at *6 (N.D. Cal. Nov. 30, 2017) (finding that because agency did not "provide basic information about the deliberative process at issue and the role played by each specific document," it had "fail[ed] to explain how disclosure would expose [its] decision-making process so as to discourage candid discussion" and therefore did not "meet its burden"), *appeal dismissed*, No. 17-17539, 2018 WL 3155689 (9th Cir. Jan. 12, 2018).

The court in *Judicial Watch, Inc. v. U.S. Department of Commerce* similarly found that the Act imposed a "heightened standard" on the agency based on "the text and purpose of the Act." 375 F. Supp. 3d 93, 100 (D.D.C. 2019). The court examined the history underlying the Act, and noted in particular that House Report 114-391 specified that an " 'inquiry into whether an agency has reasonably foreseen a specific, identifiable harm that would be caused by a disclosure would require the ability to articulate both the nature of the harm and the link between the specified harm and specific information contained in the material withheld.'" *Id.* at 100 (quoting H.R. Rep. No. 114-391, at 9 (2016)). Ultimately, the court found that the agency's general explanations of a possible chilling effect were insufficient. *Id.* at 100-01. The agency had failed to meet its burden because it "provided no explanation as to why disclosure [wa]s likely to discourage frank and open dialogue as to the specific withholdings—or categories of withholdings—in [the] case." *Id.* at 101.

The Court finds the reasoning in *Rosenberg* and *Judicial Watch* persuasive in light of the Act's text, history, and purpose. Accordingly, the Court concludes that the FOIA Improvement Act imposes a meaningful and independent burden on agencies to detail the specific reasonably foreseeable harms that would result from disclosure of certain documents or categories of

documents. *See Rosenberg*, 342 F. Supp. 3d at 78 (noting that agency could take categorical approach); *see also Judicial Watch, Inc. v. U.S. Department of Justice*, No. 17-0832, 2019 WL 4644029, *3-4 (D.D.C. Sep. 24, 2019) (requiring specification of harm for categories of documents).

In its declaration, the DOD categorized the documents withheld under FOIA Exemption 5 and explained the harm that would result from disclosure of each category of withholding. The DOD divided the withheld information into six categories.[5]

First, the DOD withheld "deliberations regarding whether to elevate communications of DOD's impression of the timing and logistics for obligation of USAI funds." Dec. of Colonel Henry Dolberry, Jr., ECF No. 22-3, ¶ 14 (capitalizations removed). "Within DOD, there were deliberations regarding whether to relay DoD's opinions to OMB at a more senior level, such as the Deputy Secretary of Defense, to provide greater weight to those opinions. These internal DOD discussions included discussions about whether or not to send a letter to OMB …, the timing of such a letter …, draft versions such letters …, and analysis regarding how such a letter might be perceived.*" Id.* The DOD explained that "[c]onsiderations at the highest levels of DoD regarding how to communicate with other federal agencies in order to best represent the interests of the Department require frank and candid advice, and the release of such candid discussions of how to proceed could chill DoD personnel from providing such advice in future deliberations." *Id.*

---

[5] The Declaration's section on Exemption 5 withholdings also contains an additional category entitled "analysis of military support provided by other NATO members." Dec. of Colonel Henry Dolberry, Jr., ECF No. 22-3, ¶ 23 (capitalizations removed). However, this section appears to refer to redactions made under Exemption 3. *See Vaughn* Index, ECF No. 22-3, doc. no. 81 (relying on Exemption 3). Accordingly, the Court will not address that section here.

Second, the DOD withheld "deliberations regarding how to respond to questions from Congress and/or the press regarding USAI funding status." *Id.* at ¶ 15 (capitalizations removed). The DOD either received or anticipated receiving multiple requests for information related to news coverage on the USAI funds. The DOD explained that "[t]he release of the deliberations that officials engaged in before arriving at the official DoD response could hinder such discussions in the future and could confuse the public regarding the position of the department." *Id.* Additionally, some of the withheld information included confidential attorney client communications and requests for legal advice. *Id.*

Third, the DOD withheld "deliberations regarding effects of OMB's continuing pauses on obligation of USAI funds." *Id.* at ¶ 18 (capitalizations removed). These deliberations are reflected in email chains in mid-late August and early September in which DOD officials provided analysis of the implications of pausing USAI funds and the effects that such pauses could have on the timing and logistics of executing the funding. *Id.* According to the DOD, "[t]he release of this information could chill such candid advice in the future on sensitive matters, including how to engage with other federal agencies." *Id.* Additionally, some of the information was withheld pursuant to the attorney client privilege as it included questions and information relevant to analyzing certain legal issues. *Id.*

Fourth, the DOD withheld "weekly updates form the Comptroller to the Deputy Secretary of Defense." *Id.* at ¶ 20 (capitalizations removed). These weekly reports gave an overview of funding and related issues for military programs which were in progress. They also contain advice on actions that should be taken by the DOD and Ms. McCusker's determination of which issues are most relevant and important for the department. The DOD explained that "[t]he release

of this information could limit the use of such vital weekly reports in the future or greatly diminish their robust and candid analysis." *Id.*

Fifth, the DOD withheld "briefing materials in preparation for high-level meeting regarding USAI funding." *Id.* at ¶ 21 (capitalizations removed). The withheld material includes "briefing materials and talking points produced by the Under Secretary of Defense for Policy for the Secretary of Defense in preparation for a meeting to relay DoD's opinions and recommendations on the obligation of the USAI funds." *Id.* The materials include advice and recommendations as to which points should be emphasized in the meeting. According to the DOD "[t]he release of such information could child frank and candid deliberations on important Executive Branch decision-making." *Id.*

Finally, the DOD withheld a "readout from deputies meeting regarding Ukraine." *Id.* at ¶ 22 (capitalizations removed). The withheld information is from "an email communication from the Under Secretary of Defense for Policy to the Secretary of Defense relaying the discussion that occurred at an interagency meeting on July 26, 2019, regarding Ukraine and the USAI funding." *Id.* The readout included advice and recommendations of the DOD and other agencies as to how to proceed as well as requests for additional information. The DOD explains that "[t]he release of this information could similarly chill frank and candid deliberations on vital Executive Branch decision making." *Id.*

Reviewing the DOD's declaration, the Court finds that the DOD has categorized the withholdings under FOIA Exemption 5 and has explained the particular harm that would be caused by the release of the information in each category. The DOD did not present "generic, across-the-board articulations of harm … as to a broad range of document types." *Nat. Res. Def. Council v. U.S. Envtl. Prot. Agency*, No. 17-CV-5928 (JMF), 2019 WL 3338266, at *1

(S.D.N.Y. July 25, 2019). Instead, the DOD stated, in general terms, the content of each category of withholdings and explained how the release of the information would harm the decision-making process of the agency. As such, the Court finds that the DOD met the requirements under the FOIA Improvement Act.

Turning to the OMB, initially the agency failed to explain how particular withholdings under FOIA Exemption 5 would harm the agency. However, upon order of the Court, the agency rectified this mistake in its third declaration. *See* Third Dec. of Heather Walsh, ECF No. 32-1. In this declaration, the OMB divided the documents withheld under FOIA Exemption 5 into 11 categories and explained the harm that would result from disclosure of each category of withholding.

First, the OMB withheld under the deliberative process privilege parts of discussions about draft language for apportionment footnotes shared between the OMB and the DOD. *Id.* at ¶ 10. In discussing the draft language, senior officials at both agencies "discussed the expected impact of pausing the obligation of funds to Ukraine." *Id.* Due to the sensitive nature of such impacts, the OMB explains that disclosure could "chill officials from candidly providing their views in the future." *Id.* at ¶ 11. Additionally, because the draft language and the final language of the apportionment footnotes differ, disclosure could risk public confusion about which language was draft and which was the agency's final position. *Id.* at ¶ 12.

Second, the OMB withheld discussions regarding potential talking points for responding to inquiries from Congress and the press about USAI funds. The OMB notes that these talking points were never used for such inquiries and that no public statements were made based on the withheld drafts. *Id.* at ¶ 13. The OMB explains that disclosure of these materials would "[e]xpos[e] the process by which agency officials crafted potential strategy for responding to the

press and to Congress about these sensitive issues [and] would chill the honest and free exchange of analysis and recommendations among agency employees involved in this review." *Id*. at ¶ 14. Additionally, if agency employees feared that their internal working drafts would be made public, they would be less willing to "offer novel or alternative stances or proposals" and be "less frank in evaluating the work of others." *Id*. at ¶ 15. Finally, disclosure would risk public confusion as the talking points were not finalized or implemented. *Id*. at ¶ 16.

Third, the OMB defends its withholding of deliberations regarding aspects of the USAI funding, procurement planning, other programmatic analysis, and legal implications. *Id*. at ¶ 18. These discussions involved Elaine McCusker, Robert Blair, a presidential advisor, and other senior DOD officials and informed the OMB's decision-making and recommendations to the President concerning the July 25, 2019 apportionment footnote making USAI funds temporarily unavailable. *Id*. The OMB explains that disclosure of these very sensitive discussions would be harmful because it could have a chilling effect on future situations where robust, private communication is necessary. *Id*. Additionally, disclosure could make other agency officials less likely to share information and advice with the OMB, and such sharing is necessary to the OMB's decision-making process. *Id*. at ¶ 19. Disclosure could also make employees "circumspect in the level of detail provided with an eye to future public scrutiny of their views and expectations regarding a wide variety of management and budget-related policy matters." *Id*. at ¶ 20.

Fourth, deliberations regarding an extension on the pause of availability of USAI funds by means of an apportionment footnote on August 6, 2019 were withheld. During such discussions, the OMB sought advice from DOD employees and relied on such advice in deciding to extend the pause. The discussions took place "with the expectation of confidentiality." *Id*. at ¶

22. According to the OMB, disclosure of communications thought to be confidential would "harm agency officials' willingness to engage in full and frank discussions regarding apportionments in the future" and "would therefore impair similar future discussion in which OMB seeks input from agency experts to inform its exercise of apportionment authority." *Id*.

Fifth, OMB similarly withheld deliberations concerning a further extension on the pause of availability of USAI funds by means of an apportionment footnote on August 15, 2019. As with the withheld documents discussed in the fourth category, these documents include discussions between the DOD and the OMB about the effects of continuing to extend the pause on the funds. The discussions include recommendations and advice about consequences and policy options. *Id*. at ¶ 23. As with the previously discussed documents, the OMB contends that disclosure would cause OMB employees and the employees of other agencies to censor their analysis and recommendations. Disclosure could also result in other agencies being less willing to provide the OMB with insight and recommendations. *Id*. at ¶ 24.

The sixth category of withholding includes deliberations concerning a further extension on the pause of availability of USAI funds by means of an apportionment footnote on August 20, 2019. *Id*. at ¶ 25. These discussions include analysis and recommendations about the effects of a further pause on funding. *Id*. at ¶ 26. The discussions include DOD officials' assessment of and concern about potential risks to the program by continuing the pause. *Id*. As with the previous two categories, disclosure of such sensitive information would reveal the OMB's decision-making process and could deprive officials of the input from other agencies necessary to the OMB's development of an informed understanding of agency programs. *Id*. Additionally, some of the withheld information includes legal advice, the disclosure of which could chill the OMB's ability to seek and obtain sound legal advice. *Id*.

Seventh, the OMB also withheld deliberations concerning a further extension on the pause of availability of USAI funds by means of an apportionment footnote on August 27, 2019. *Id*. at ¶ 27. The discussions included Elaine McCusker's opinions on and analysis of the logistics and consequences of extending the pause on USAI funding. The discussions also included input from the DOD which was used to inform the OMB's decision as well as legal advice from senior attorneys at the DOD and the OMB. *Id*. As with the other deliberations concerning the extension of the pause on USAI funding, the disclosure of these deliberations would chill the provision of candid advice and would impair the OMB's ability to work collaboratively with other agencies. *Id*. at ¶ 28. Additionally, some of the withheld information concerns discussions relating to potential talking points in response to Congressional inquiry, the disclosure of which would chill the sharing of honest opinions and would confuse the public about the agency's final position on certain issues. *Id*. at ¶ 29.

In its eighth category of documents withheld, the OMB withheld deliberations concerning a further extension on the pause of availability of USAI funds by means of an apportionment footnote on August 31, 2019. *Id*. at ¶ 30. As with the previously discussed documents, the withheld material reveals the OMB's decision-making process in continuing the pause on USAI funding. *Id*. The withheld information also contains discussions with senior DOD officials relating to potential questions from Congress and the press. It also contains discussions concerning a draft, unsent letter to the OMB expressing the DOD's opinions on withholding the USAI funds. *Id*. at ¶ 31. Additionally, the withheld communications include legal advice on these issues from senior DOD attorneys. According to the OMB, the disclosure "of such highly sensitive discussions would have a chilling effect on future exchanges of analysis and

27

recommendations with senior agency officials" which are necessary to ensure that the OMB receives candid advice when making sensitive decisions. *Id*. at ¶ 31.

Ninth, the OMB withheld deliberations concerning a further extension on the pause of availability of USAI funds by means of an apportionment footnote on September 5, 2019 and September 6, 2019. *Id*. at ¶ 33. As with the deliberations on the August 31, 2019 apportionment footnote, these deliberations concern the OMB's decision-making on the further pause on USAI funds, communications about a draft, unsent letter from the DOD expressing opinions on the pause, concerns from senior DOD officials on the pause, and legal advice from agency attorneys. *Id*. at ¶ 34. As before, the OMB explains that disclosure would risk chilling the candid expression of opinions and recommendations with respect to sensitive apportionment decisions. *Id*. at ¶ 35. Disclosure could also make it more difficult for the OMB to obtain needed advice from experts and other agencies.

The tenth category of withholding includes deliberations concerning a further extension on the pause of availability of USAI funds by means of an apportionment footnote on September 10, 2019. *Id*. at ¶ 36. These communications include Elaine McCusker's analysis of the effects of extending the pause on USAI funding. They also include discussions about the timing and logistics needed to obligate the funding by the end of the fiscal year. *Id*. at 37. The OMB explains that disclosure of such information would chill future exchanges between the OMB and agencies operating programs affected by OMB funding. Disclosure would also impair the trust of agency officials which would hamper the OMB's decision-making process. *Id*. at ¶ 38.

Finally, the OMB withheld deliberations about the logistics of obligating the USAI funds by the end of the fiscal year and releasing those funds. *Id*. at ¶ 39. These discussions informed the OMB's ultimate advice to the President regarding the decision to lift the pause on the USAI

funds. *Id*. The withheld materials demonstrate the OMB's decision-making process such as communications and recommendations from high-level officials about the implications of extending the pause, including implications for the timing of the DOD's administrative activities relating to the spending of the funds. *Id*. at ¶ 40. According to the OMB, disclosure of such information risks chilling frank discussion between the OMB and other agencies affected by the OMB's decisions on apportionment and funding. Such chilling would be detrimental to the OMB as the agency relies on advice from experts and other officials when making decisions and when advising the President on the best use of appropriated funds. *Id*. at ¶ 41.

Reviewing the OMB's declaration, the Court finds that the OMB has categorized the withholdings under FOIA Exemption 5 and has explained the particular harm that would be caused by the release of the information in each category. The OMB did not present "generic, across-the-board articulations of harm … as to a broad range of document types." *Nat. Res. Def. Council*, 2019 WL 3338266, at *1. Instead, the OMB stated, in general terms, the content of each category of withholdings and explained how the release of the information would harm the decision-making process of the agency. As such, the Court finds that the OMB, like the DOD, met the requirements under the FOIA Improvement Act.

Having concluded that Defendants are not categorically barred from asserting FOIA Exemption 5, the Court now considers the withholdings under the individual asserted privileges.

### 3.   Attorney-client Privilege

"The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services," as well as "communications from attorneys to their clients if the communications rest on confidential information obtained from the client." *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997) (internal quotation

marks omitted). In order to demonstrate the applicability of the privilege, the proponent must establish each of the following essential elements: (1) the holder of the privilege is, or sought to be, a client; (2) the person to whom the communication is made is a member of the bar and, in connection with the communication at issue, is acting in his or her capacity as a lawyer; (3) the communication relates to a fact of which the attorney was informed by his client, outside the presence of strangers, for the purpose of securing legal advice; and (4) the privilege has been claimed and not waived by the client. *In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984). A "fundamental prerequisite to the assertion of the privilege" is "confidentiality both at the time of the communication and maintained since." *Coastal States*, 617 F.2d at 863; *accord Fed. Trade Comm'n v. GlaxoSmithKline*, 294 F.3d 141, 146 (D.C. Cir. 2002).

"In the governmental context, the 'client' may be the agency and the attorney may be the agency lawyer." *Tax Analysts*, 117 F.3d at 618; *accord Coastal States*, 617 F.2d at 863 (explaining that attorney-client privilege applies when "the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests, and needs the same assurance of confidentiality so it will not be deterred from full and frank communications with its counselors"). It is well-established, however, that not every communication between an attorney and a client—government or otherwise—is made for the purpose of securing legal advice or services. As this Circuit has explained, "consultation with one admitted to the bar but not in that other person's role as a lawyer is not protected." *In re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998) (per curiam) (internal quotation marks omitted). Hence, a government attorney's "advice on political, strategic, or policy issues, valuable as it may [be], would not be shielded from disclosure by the attorney-client privilege." *Id.*

In this case, Defendants withheld information in 30 documents based on the attorney-client privilege. *See Vaughn* Index, ECF No. 22-3, doc. nos. 20, 21, 24, 31, 33, 34, 38, 40, 41, 42, 45, 46, 47, 51, 52, 54, 65, 66, 69, 70, 71, 73, 74, 75, 76, 77, 94, 95, 96, and 98. Plaintiff has two primary arguments as to why Defendants' withholdings under the attorney-client privilege are improper. First, Plaintiff contends that there is no evidence that the withheld communications were sent for the primary purpose of obtaining or providing legal advice. In support, Plaintiff explains that much the information appears purely factual, that the attorneys were included in the communications merely so that they could be "kept in the loop," and that many of the withheld communications involve political or policy issues rather than legal issues. Second, Plaintiff argues that Defendants improperly withheld statements of how the agency applies the law, thus creating a body of secret law.

The Court reviewed Defendants' *Vaughn* index, the accompanying declarations, and many of the documents in camera. The Court has determined that none of the withheld information creates a body of secret law. The D.C. Circuit has recognized that "no private attorney has the power to formulate the law to be applied to others. Matters are different in the governmental context when the counsel rendering the legal opinion in effect is making law." *Tax Analysts*, 117 F.3d at 619. Where a document is "applied routinely as the government's legal position … FOIA exemption 5 and the attorney-client privilege may not be used to protect this … body of agency law from disclosure to the public." *Id.* In determining whether a document is "working law" requiring disclosure, the Court must consider "the function and significance of the document in the agency's decisionmaking process, the nature of the decisionmaking authority vested in the office or person issuing the disputed document, and the flow of documents." *In Defense of Animals v. Nat'l Inst. of Health*, 543 F. Supp. 2d 83, 104 (D.D.C.

2008) (internal quotation marks omitted). Here, none of the withheld material constitutes a policy or a statement of law which was adopted by Defendants for regular use. Instead, much of the redacted material concerns circumstance-specific requests for legal advice involving the interpretation and the application of the law in the context of an on-going decision-making process concerning a particular issue. As such, Defendants are not precluded from invoking the attorney client privilege on the grounds that the withheld information constitutes secret law.

Plaintiff's second argument, that the withheld communications do not involve legal advice, has more merit as to select documents. Some of the withheld communications do not involve the request for or the provision of legal advice. The Court's determination as to which documents were rightfully withheld under this privilege will be explained below. *See Infra* Sec. III.B.6.

### 4. Deliberative Process Privilege

The deliberative process privilege protects not only communications that are deliberative in nature, but all communications which, if revealed, would expose to public view the deliberative process of an agency. *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982). This privilege is intended to protect the decision-making "'processes of the executive branch in order to safeguard the quality and integrity of governmental decisions.'" *A. Michael's Piano, Inc. v. FTC*, 18 F.3d 138, 147 (2d Cir. 1994) (quoting *Hopkins v. Dep't of House & Urban Dev.*, 929 F.2d 81, 84 (2d Cir. 1991)). Discussions among agency personnel about the relative merits of various positions which may be adopted are just as a much a part of the deliberative process as the actual recommendations and advice which are agreed upon. *See Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 257 (D.C. Cir. 1977). Congress created this exception in the FOIA because it believed that forcing agencies to "operate in a fishbowl"

would undermine the quality of administrative decision-making by preventing the full and frank exchange of ideas on legal and policy matters. *Id.* at 256 (citing to S. Rep. No. 813, 89th Cong., 1st Sess. 9, and H.R. Rep. No. 1497, 89th Cong., 2d Sess. 10 (1966)). Consistent with congressional intent on the subject, this Circuit has construed Exemption 5 "as narrowly as consistent with efficient Government operation." *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 773 (D.C. Cir. 1988) (en banc) (citing *Mead Data*, 566 F.2d at 256).

For the deliberative process privilege to apply under Exemption 5, this Court must determine the material to be both pre-decisional and deliberative. *Id.* at 774. "A document is pre-decisional if it was 'prepared in order to assist an agency decision maker in arriving at his decision,' rather than to support a decision already made." *Petroleum Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975)). At its most basic, the courts have held that a document is deliberative in nature if "it reflects the give-and-take of the consultative process." *Coastal States*, 617 F.2d at 866. Because Exemption 5's goal is to "prevent injury to the quality of agency decisions," the deliberative process privilege can apply only to deliberative processes the results of which are or will be agency policy. *See Petroleum Info. Corp.*, 976 F.2d at 1434. Documents containing advisory opinions and recommendations, or reflecting deliberations comprising the process by which government policy is formulated are protected. *Mead Data*, 566 F.2d 256. Exemption 5 protection does not extend to documents that do not "discuss the wisdom or merits of a particular agency policy, or recommend new agency policy." *Coastal States*, 617 F.2d at 869.

In this case, Defendants withheld information in 81 documents based on the deliberative process privilege. *See Vaughn* Index, ECF No. 22-3, doc. nos. 1, 6, 8, 9, 11, 12, 13, 14, 15, 16,

17, 20, 21, 22, 23, 24, 25, 28, 30, 31, 33, 34, 35, 36, 37, 38, 40, 41, 42, 43, 44, 45, 46, 47, 49, 51, 52, 53, 54, 56, 57, 60, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 82, 83, 86, 92, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111. Plaintiff has two arguments as to why Defendants' withholdings under the deliberative process privilege are improper. First, Plaintiff argues that the majority of the withheld material is not predecisional as it relates to a decision to withhold congressionally-approved aid to Ukraine which was made by the President weeks or months before the documents were prepared. Second, Plaintiff argues that some of the withheld information is not deliberative because it is factual information. The Court will address each argument in turn.

The Court begins with Plaintiff's argument that the vast majority of the withheld material is not predecisional because it post-dates the President's decision to withhold congressionally-approved aid to Ukraine. The Court finds that the fact that the withheld material was created after the President's alleged decision to withhold the USAI funds is not determinative of whether or not the material is predecisional. Plaintiff's argument fails to address the realities of agency decision-making. Courts recognize that "[a]gencies are, and properly should be, engaged in a continuing process of examining their policies" and that courts should be "wary of interfering with this process." *Sears*, 421 U.S. at 151 n. 18. "Even after a path has been cut by an agency, 'it is the very process of debating, shaping, and changing a ... policy that needs candor, vigorous to-and-fro, and freedom of expression.'" *Judicial Watch, Inc. v. United States Dep't of Homeland Sec.*, 841 F. Supp. 2d 142, 162 (D.D.C. 2012) (quoting *Sierra Club v. U.S. Dep't of Interior*, 384 F. Supp. 2d 1, 16 (D.D.C. 2004)) (other citation omitted). As such, after a certain decision is made, "redaction of material that discusses how the current policy is implemented and potential recommendations for changes are properly characterized as predecisional and deliberative."

*Bloche v. Dep't of Defense*, 279 F. Supp. 3d 68, 83 (D.D.C. 2017). "For this reason, documents dated after one decision has been made 'may still be predecisional and deliberative with respect to other, nonfinal agency policies.'" *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 841 F. Supp. 2d 142, 162 (D.D.C. 2012) (quoting *Judicial Watch*, 449 F.3d at 151). As such, even after the decision to delay USAI funding was made, both the DOD and the OMB "faced multiple policy debates and decisions as to whether, where, and how to begin that process and how to achieve its success." *Sierra Club*, 384 F. Supp. 2d at 16. In determining if the withheld information is predecisional, what matters is not whether the withheld material post-dates the President's alleged decision but whether or not the material pre-dates a decision made by the agencies.

As such, the Court concludes that Defendants do not face a categorical bar to the use of the deliberative process privilege simply because the majority of the documents may post-date the President's alleged decision to withhold USAI funding. Instead, the Court must look to each incident of withheld material to determine if that material pre-dates an agency decision and was used as part of the decision-making process. The Court's determination as to which documents were rightfully withheld under this privilege will be explained below. *See Infra* Sec. III.B.6.

### 5. Presidential Communications Privilege

The presidential communications privilege ensures that the President can receive "frank and informed opinions from his senior advisers" who may otherwise "'be unwilling to express [those views] except privately.'" *Judicial Watch, Inc. v. U.S. Dep't of Defense,* 913 F.3d 1106, 1110 (D.C. Cir. 2019) (quoting *United States v. Nixon*, 418 U.S. 683, 708 (1974)). The shelter of this privilege is "properly invoked with respect to 'documents or other materials that reflect presidential decisionmaking and deliberations and that the President believes should remain

confidential.'" *Id*. at 1111 (quoting *In re Sealed Case*, 121 F.3d 729, 744 (D.C. Cir. 1997)).  And, it can be invoked by not only the President, but also his advisors, to insulate their communications "in the course of preparing advice for the President . . . even when these communications are not made directly to the President."  *Id.* (alteration in original) (quoting *In re Sealed Case*, 121 F.3d at 751-52).  The standard is whether the documents were "'solicited and received' by the President or his immediate White House advisers who have 'broad and significant responsibility for investigating and formulating the advice to be given the President.'" *Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1114 (D.C. Cir. 2004) (quoting *In re Sealed Case*, 121 F.3d at 752). This privilege "'should be construed as narrowly as is consistent with ensuring that the confidentiality of the President's decision-making process is adequately protected.'"  *Id.* at 1116 (quoting *In re Sealed Case*, 121 F.3d at 752).

"Unlike the deliberative process privilege . . . the presidential communications privilege . . .'applies to documents in their entirety, and covers final and post-decisional materials as well as pre-deliberative ones.'"  *Id.* at 1113-14 (quoting *In re Sealed Case*, 121 F.3d at 745).  Moreover, "[a]lthough the presidential communications privilege is a qualified privilege, subject to an adequate showing of need, FOIA requests cannot overcome the privilege because 'the particular purpose for which a FOIA plaintiff seeks information is not relevant in determining whether FOIA requires disclosure.'"  *Judicial Watch*, 913 F.3d at 1112 (quoting *Loving v. Dep't of Def.*, 550 F.3d 32, 40 (D.C. Cir. 2008)).

In this case, Defendants withheld information in 24 documents based on the presidential communications privilege. *See Vaughn* Index, ECF No. 22-3, doc. nos. 12, 13, 20, 28, 33, 34, 35, 37, 44, 46, 56, 57, 63, 64, 66, 78, 82, 83, 92, 95, 99, 107, 108, and 109. Defendants did not apply the privilege to any documents in full. Plaintiff has three arguments as to why the information

was improperly withheld under the presidential communications privilege. First, Plaintiff argues that the relevant advisor for many of the communications, Mr. Robert Blair, was not sufficiently close to the President to warrant invocation of the privilege and that there is no evidence that Mr. Blair advised the President on the relevant issue. Second, Plaintiff contends that because many of the communications withheld under this privilege were produced after the President's alleged decision to withhold the aid to Ukraine, the communications cannot have been made in the course of preparing advice for the President. Third, Plaintiff claims that the *Vaughn* index is insufficient as it states that information was withheld merely because the information involved "references to communications involving the President or his immediate advisors." *See, e.g., Vaughn* Index, ECF No. 22-3, doc. no. 33, 34, 35, 37. The Court will address each argument in turn.

First, Plaintiff contends that Mr. Blair fails to qualify as an advisor immediate enough to the President to warrant invocation of the presidential communications privilege. Plaintiff further contends that there is no evidence that Mr. Blair made recommendations to the President concerning the aid to Ukraine. Following Plaintiff's challenge to Mr. Blair's qualifications, Defendants filed a supplemental declaration. *See generally* Supp. Dec. of Heather Walsh, ECF No. 27-3. In that declaration, Defendants explained that Mr. Blair is an Assistant to the President and Senior Advisor to the White House Chief of Staff. As Assistant to the President, Mr. Blair was assigned an office on the first floor of the West Wing, providing proximity to the President. *Id.* at ¶ 10. "His official duties and responsibilities involve national security issues including military assistance to Ukraine." *Id*. Mr. Blair regularly briefed the President and gathered information to develop and formulate advice for the President to assist with the President's decision making on relevant issues in Mr. Blair's portfolio, including aid to Ukraine. *Id.* Based

37

on Defendants' declarations, and a lack of countervailing evidence from Plaintiff, the Court concludes that Mr. Blair constitutes an "immediate White House adviser[] … who ha[s] broad and significant responsibility for investigating and formulating the advice to be given the President on the particular matter to which the communications relate"— aid to Ukraine. *In re Sealed Case*, 121 F.3d 729, 752 (D.C. Cir. 1997). However, the Court notes that communications involving Mr. Blair will be protected under this privilege only insofar as they were obtained or solicited "in the course of preparing advice for the President." *Id.* at 751-52.

Second, Plaintiff argues that "all but five of the 24 documents withheld under the privilege were created after the last possible date the president made his decision to withhold Congressionally authorized Ukrainian aid." Pl.'s Mot., ECF No. 23, 12. As a result, according to Plaintiff, any documents which post-date the President's decision cannot have been a part of the President's decision-making process and were wrongfully withheld.

The Court addressed and declined to follow a very similar argument concerning the deliberative process privilege. *See Supra* Sec. III.B.4. As was previously explained, even after a decision is made, "redaction of material that discusses how the current policy is implemented and potential recommendations for changes are properly characterized as" implicating the decision-making process. *Bloche*, 279 F. Supp. 3d at 83. "For this reason, documents dated after one decision has been made may still be" related to the President's decision-making process. *Judicial Watch,* 841 F. Supp. 2d at 163 (internal quotation marks omitted).

Moreover, as compared to the deliberative process privilege, the inapplicability of Plaintiff's argument is even more clear in the context of the presidential communications privilege. Unlike the deliberative process privilege, the presidential communications privilege "covers final and post-decisional materials as well as pre-deliberative ones." *In re Sealed Case,*

121 F.3d at 745. The presidential communications privilege covers post-decisional materials so that "the President be given sufficient room to operate effectively." *Id.* And, effective operation of the government often requires that the President be provided follow-up reports after deciding to pursue a course of action and that the President be able to "communicate his decisions privately." *Id.* Accordingly, the Court finds that the relevant inquiry is not whether the withheld material post-dates the President's decision but whether or not the withheld information was "'solicited and received' by the President or his immediate White House advisers who have 'broad and significant responsibility for investigating and formulating the advice to be given the President.'" *Judicial Watch, Inc.*, 365 F.3d at 1114 (quoting *In re Sealed Case*, 121 F.3d at 752).

The Court now turns to Plaintiff's third argument—whether or not the withheld material truly implicates the President's decision-making process. The Court finds that some of the withheld communications are not protected by the privilege as they merely reference communication with the President by others and do not implicate the decision-making process. The Court's determination as to which documents were rightfully withheld under this privilege will be explained below. *See Infra* Sec. III.B.6.

### 6.  Application of Privileges

As previously stated, the Court requested in camera review of material withheld under Exemption 5 in documents 8, 9, 11, 12, 13, 14, 15, 20, 21, 22, 23, 24, 25, 28, 30, 33, 34, 35, 38, 40, 41, 42, 43, 44, 45, 51, 52, 53, 54, 56, 60, 63, 64, 66, 67, 68, 69, 71, 72, 73, 74, 75, 76, 77, 78, 82, 83, 86, 92, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 111. ECF No. 34. The Court did not request in camera review of the material withheld under Exemption 5 in the remaining documents as the Court found that information provided in Defendants' *Vaughn* index and accompanying declarations provided sufficient detail to conclude that such information was

rightfully withheld. *See Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 146 (D.C. Cir. 2006) (explaining that a *Vaughn* index is sufficient for determining privilege where it "provide[s] a relatively detailed justification, specifically identif[ies] the reasons why a particular exemption is relevant and correlat[es] those claims with the particular part of a withheld document to which they apply").

However, as to the material for which in camera review was requested, the *Vaughn* index and the declarations were insufficient to allow a responsible determination of privilege. The Court further notes that, even after conducting a thorough in camera review of the material, many of the privilege determinations were very close calls. The redacted material was primarily int the form of statements in email communications, rather than complete documents. As such, determining the precise purpose served by each redacted comment was not a simple task.

The Court shall proceed by dividing the documents which were reviewed in camera into categories explaining which exemptions apply and which do not apply.

First, the Court concludes that the following documents are protected by the deliberative process privilege. To the extent that other exemptions were invoked to protect the documents, the Court does not reach the applicability of those exemptions: documents 8, 9, 11, 12, 13, 14, 15, 22, 23, 25, 30, 53, 43, 68, 72, 86, 97, 100, 101, 102, 103, 104, 105, 106, 107, 111.

Second, the Court concludes that the following documents are protected by the deliberative process privilege only even though other privileges were invoked. These documents are not protected by the other privileges invoked: documents 24, 35, 45, 69, 71, 73, 75, 76, 77, 98.

Third, the Court concludes that the following documents are protected by the deliberative process privilege and at least some of the information is protected by the attorney client

privilege. To the extent that other exemptions were invoked to protect the documents, the Court does not reach the applicability of those exemptions: documents 20, 21, 38, 40, 41, 42, 51, 52, 74, 94, 95, 96.

Fourth, the Court concludes that the following documents are protected by the deliberative process privilege and at least some of the information is protected by the attorney client privilege and the presidential communications privilege: documents 33, 34, 66.

Fifth, the Court finds that documents 56 and 78 are covered by the deliberative process privilege and the presidential communications privilege.

Sixth, the Court considers documents that are protected by the presidential communications privilege only. Documents 28 and 92 are protected by that privilege and not by any other. Documents 82, 83, and 99 are protected by the presidential communications privilege, and the Court does not reach whether or not they are also protected by the deliberative process privilege.

Seventh, the Court concludes that the small portion of redacted material in document 60 was rightfully withheld as non-responsive as it does not concern aid to Ukraine.

The Court now turns to material which is not protected under any of the privileges of Exemption 5 and was wrongfully withheld.

The Court considers first document 44, portions of which were withheld pursuant to the deliberative process privilege and the presidential communications privilege. This document has two redacted portions. The Court concludes that the second portion is rightfully withheld under the deliberative process privilege as it is pre-decisional and related to the decision-making process. However, the first redacted portion is ordered released. The material is not protected by the deliberative process privilege as it was not produced to assist in making a decision and it

does not reflect the consultative process. Additionally, the material is not protected by the presidential communications privilege because it does not reflect the President's decision-making process. Nor does the redacted material contain information solicited or received by the President to aid in his decision-making. Instead, the redacted portion merely reflects that a decision had previously been made by the President. As this portion of redacted material is not protected by any invoked privilege, the Court finds that the first redacted portion of document 44 shall be released. Documents 63 and 64 contain the same redacted material, as such the same analysis applies to those documents and the material shall be released from those documents as well.

Next, the Court considers document 54, a portion of which was withheld under the deliberative process privilege and the attorney client privilege. The Court concludes that neither privilege is applicable to the withheld information. The withheld information is not deliberative as it does not reflect the decision-making process. The Court further finds that the information is not protected by the attorney client privilege as the information does not reflect a request for or the provision of legal advice. Instead, the redacted material provides general instructions should the recipient of the email choose to seek legal advice. Accordingly, the Court concludes that such information is not protected by any invoked privilege and that the information shall be released.

Finally, the Court considers document 67. Three portions of this document were redacted under the deliberative process privilege. The Court concludes that the first and the third redactions are proper as they reflect the consultative process of decision-making and reflect personal opinions about decisions being made. However, the second redaction on document 67 is not deliberative. The redacted material has no relation to the decision-making process and is,

instead, entirely factual. As such, the Court concludes that the second redaction on document 67 shall be released.

### 7.  Segregability

As the Court previously explained, the Court must make a separate finding as to segregability. "[E]ven if the agency establishes an exemption, it must nonetheless disclose all reasonably segregable, nonexempt portions of the requested record[s]." *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1167 (D.C. Cir. 2011). Having reviewed Defendants' declarations and many of the documents in camera, the Court is satisfied that no reasonably segregable information has been withheld under FOIA Exemption 5. Dec. of Colonel Henry Dolberry, Jr., ECF No. 22-3, ¶ 28 (DOD segregability); Dec. of Heather Walsh, ECF No. 22-4, ¶ 34 (OMB segregability); *see also Johnson*, 310 F.3d at 776-77 (D.C. Cir. 2002) (finding combination of *Vaughn* index and agency declaration sufficient to fulfill agency's obligation on segregability). Any non-exempt information is "inextricably intertwined with" information exempt under FOIA Exemption 5. *See Mead Data*, 566 F.2d at 260.

For these reasons, the Court GRANTS IN PART AND DENIES IN PART Defendants' Motion for Summary Judgment and GRANTS IN PART AND DENIES IN PART Plaintiff's Motion for Summary Judgment as to withholdings under FOIA Exemption 5.

### C.  Withholdings under FOIA Exemption 6

FOIA Exemption 6 allows the government to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Fundamentally, "Exemption 6 is designed to protect personal information in public records." *Multi Ag Media*, 515 F.3d at 1228 (internal quotation marks omitted). Exemption 6 is not limited to "a narrow class of files containing only a discrete kind of

personal information[,]" but was "intended to cover detailed Government records on an individual which can be identified as applying to that individual." *U.S. Dep't of State v. Washington Post Co*., 456 U.S. 595, 602 (1982) (citations omitted). So, when reviewing the withholding of records under Exemption 6, the Court first must determine whether the records in question are the sort of personnel, medical, or other records which are protected by the exemption.

Assuming the records at issue are of the type that fall within the ambit of Exemption 6, "the court must then determine whether their disclosure would constitute a clearly unwarranted invasion of personal privacy, which requires balancing the privacy interest that would be compromised by disclosure against any public interest in the requested information." *Wisdom v. U.S. Tr. Program*, 266 F. Supp. 3d 93, 108 (D.D.C. 2017) (internal quotation marks omitted). In order for the exemption to apply, the Court must determine that the "disclosure of the files would compromise a substantial, as opposed to de minimis, privacy interest, because if no significant privacy interest is implicated FOIA demands disclosure." *Multi Ag Media*, 515 F.3d at 1229 (internal quotation marks and alterations omitted). On the other side of the equation, the only relevant public interest in disclosure "is the extent to which disclosure would serve the core purpose of the FOIA, which is contributing significantly to public understanding of the operations or activities of the government." *U.S. Dep't of Def. v. Fed. Labor Relations Auth*., 510 U.S. 487, 495 (1994) (internal quotation marks and alterations omitted).

Plaintiff does not challenge the redactions of email addresses, phone numbers, and other similar contact information where the name of the person appears in the produced documents. Pl.'s Mot., ECF No. 23, 23. Instead, Plaintiff challenges redactions in only two documents, numbers 3 and 87. *See Vaughn* Index, ECF No. 22-3, doc. nos. 3 and 87. Each document

includes in a subject line: "Apportionment sent to Agency after Approval from [redacted (b)(6)]." Plaintiff posits that the redaction refers to the name of an official with the authority to approve the apportionment and should not be withheld.

Defendant counters that there is no genuine issue as to the challenged redactions because "[a]s the documents make clear on their face, the withheld information in the subject line is an email address in both instances." Defs.' Opp'n, ECF No. 26, 29; *see also Vaughn* Index, ECF No. 22-3, doc nos. 3, 87 (explaining that "email addresses" in addition to other information have been withheld). Plaintiff failed to respond to this argument in its Reply. *See generally* Pl.'s Reply, ECF No. 29. Having considered Defendants' argument and its *Vaughn* Index, and lacking any counter-argument from Plaintiff, the Court concludes that Defendants rightfully withheld under FOIA Exemption 6 the email addresses in document numbers 3 and 87, the disclosure of which would be a clearly unwarranted invasion of personal privacy. *See Gov't Accountability Project v. U.S. Dep't of State*, 699 F. Supp. 2d 97, 106 (D.D.C. 2010) (withholding email addresses); *Pinson v. Lappin*, 806 F. Supp. 2d 230, 234 (D.D.C. 2011) (same).

As the Court previously explained, the Court must make a separate finding as to segregability. "[E]ven if the agency establishes an exemption, it must nonetheless disclose all reasonably segregable, nonexempt portions of the requested record[s]." *Roth*, 642 F.3d at 1167. Having reviewed Defendants' declarations, the Court is satisfied that no reasonably segregable information has been withheld under FOIA Exemption 6. Dec. of Colonel Henry Dolberry, Jr., ECF No. 22-3, ¶ 28 (DOD segregability); Dec. of Heather Walsh, ECF No. 22-4, ¶ 34 (OMB segregability); *see also Johnson*, 310 F.3d at 776-77 (finding combination of *Vaughn* index and agency declaration sufficient to fulfill agency's obligation on segregability). Any non-exempt

information is "inextricably intertwined with" information exempt under FOIA Exemption 6. *See Mead Data*, 566 F.2d at 260.

For these reasons, the Court GRANTS Defendants' Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment as to withholdings under FOIA Exemption 6.

## IV.   CONCLUSION

For the reasons provided above, the Court GRANTS IN PART AND DENIES IN PART Defendants' Motion for Summary Judgment and GRANTS IN PART AND DENIES IN PART Plaintiff's Motion for Summary Judgment. As to the withholdings under FOIA Exemption 3, the Court concludes that Defendants have shown that the withholdings are appropriate under 10 U.S.C. § 130c, which allows for the withholding of sensitive information of foreign governments. As to the withholdings under FOIA Exemption 5, the Court concludes that the withholdings were proper, with the exception of the first redaction in documents 44, 63, and 64, the redaction in document 54, and the second redaction in document 67. The material which the Court has found to be wrongfully withheld shall be released. And, as to the withholdings under FOIA Exemption 6, the Court concludes that the release of the withheld information—email addresses of agency workers—would clearly constitute an unwarranted invasion of personal privacy. A separate Order accompanies this Memorandum Opinion.

_____
    /s/
**COLLEEN KOLLAR-KOTELLY**
United States District Judge